# Exhibit  "A"



**JOELLE J. TANNOUS**
*Sworn Translator*
*Traductrice Assermentée*

مكتب جويل طنوس للترجمة
مترجم محلف
ترجمة قانونية- تصديق معاملات

**Jounieh,  Serail Street , Boustany Center, Ground Floor**
**Tel: 70.69 59 15 – 09.93 88 31  -  email: joelle.t@live.com**

Decision No.11 /2005-2006
Dated 05/10/2005

**Petition number**: 12878/2005

**The Claimant Party**: Pierre and Moussa FATTOUCH

**The Defendant**: - The Lebanese State
- Ministry of Interior

**Governing Body**: the President Assem SAFIDDINE
The Counselor Rizkallah FREIFER
The Counselor Shawkat MAAKARON

## The State Consultative Council

**In the Name of the Lebanese People**

The State Consultative Council,
After reviewing the petition's file, the report of the reporting counselor, the review of the Government's commissioner and the remarks submitted by both parties,

And after duly deliberation,

Whereas the claimant party: Pierre and Moussa FATTOUCH, submitted through its legal representative a petition on 24/03/2005 registered upon this Council under No.12878, by virtue of which it requested to compel the State to pay the claimant the amount of the compensation for the damage incurred by the latter and resulting from the State's failure to execute a judicial decision in accordance with the report of the experts' committee, estimated at USD/ 92,669,349/ (ninety two million six hundred sixty nine thousand three hundred and forty nine US dollars) taking into account the damage occurring until the issuance of the final decision, and also to compel the State to pay the interest on the claimed amount and capitalize the said interest and to condemn the defendant to pay the damages, fees, expenses and lawyers' fees.

Whereas the claimant party indicates the following:



1- On 07/04/1995, the Governor of Mount Lebanon issued decision No.49 authorizing the claimant party to operate, for a period of twenty five years, the crushers and quarries located in the real estate properties owned by the claimant in the region of Ain Dara - Mount Lebanon governorate.

2- On 28/07/1999, the Council of Ministers issued decision No.33 on the operation of crushers and quarries which included provisions pertaining to permits, licenses, interruption of work, prohibition of operation, and dismantling of crushers and facilities, and granting a maximum period of two years and three months to dismantle the said facilities.

3- The claimant party appealed the abovementioned decision No. 31 on 20/09/1999 before the State Consultative Council requesting its annulment for misuse of power and for ignoring acquired rights.

4- On 29/03/2001, this Council issued the decision No.395/2001-2002, ordering the annulment of the decision issued by the Council of Ministers No.31 on 28/07/1999 in its non-regulatory part. The decision issued by the Council included the following: "the location is the property of the claimant party, and all of the real estate properties owned by them lie within the scope of the master plan in force; therefore, and on this basis, the permits were granted and were automatically and permanently renewed; all granted permits are in conformity with the provisions of the law and regulations, and the operation was not subject to any prohibition or interruption of any type whatsoever , the claimant party was protected by virtue of the provisions of the law and regulations and in a de facto position, which is not contrary to the legal provisions, and this legal position gives rise to acquired rights"

5- On 10/03/2003, The State Consultative Council issued decision No.348/2002-2003 aimed at explaining the content of the previous decision No.395/2001-2002 mentioned above, affirming the following: " The decision of the Council of Ministers No. 31 dated 28/07/1999 - in its non-regulatory part- and relating to the claimant party- was annulled and thus, the operation conditions are met in this scope."

6- On 15/07/2003, the parliamentary recommendation was issued stating the necessity of executing judicial decisions and requesting the government to retract any decree or decision that is contrary to or conflicting with the content of these decisions or evading them to rob them of their res judicata.

7- On 04/06/2003, the Presidency of the Council of Ministers issued letters No.752/s and 753/s, which were notified to the Ministry of the Environment and the Ministry of Interior and Municipalities as well as to the Council of Cases within the Ministry of Justice (Number 866/s dated 23/06/2003 requesting the two concerned ministries to execute the two decisions issued by the State Consultative Council, No. 395/2001-2002 and No.347/2002-2003, and abide by their content "in order to enable the claimant party to resume the operation of its quarries and crushers"

8 - On 24/07/2004, the Ministry of the Environment issued letter No. 2129/b addressed to the Presidency of the Council of Ministers stating that "the Ministry respects judicial decisions and recognizes their binding character... and that all of the legal, environmental and public safety conditions are met"

2



9- On 27/04/2004, the Ministry of Finance addressed to the Presidency of the Council of Ministers letter No.1334/s listing the negative consequences arising from the failure to execute decisions and the resulting damages, fines and accumulated interest.

10- On 30/07/2004, the Ministry of Justice sent to the Presidency of the Council of Ministers letter No.4185/3 indicating the following: " the twenty - year permit is in conformity with the laws and regulations on one hand, and article 93 of the State Consultative Council's regulations requires the execution of decisions within a reasonable time limit under liability, and in case of delay in the execution, the State shall be bound to pay a penalty. All of these documents are available and included in the file of petition No. 11299 /2003 pending before the State Consultative Council.

11 - On 30/08/2004, the Ministry of Interior issued decision No.18783 ordering the implementation of the law in accordance with the provisions of the decisions issued by the State Consultative Council and referring said decision to the Governor of Mount Lebanon for execution

12 - On 31/08/2004, the Governor of Mount Lebanon issued decision No.459/m "ordering the lifting of seals from the machinery, equipment, facilities and assets and their delivery to their owners to be operated in accordance with the content of the permits and the resumption of work in accordance with the abovementioned State Consultative Council's decisions" On 31/08/2004, the police executed the decision of the Governor and report 331/ 2004 dated 31/08/2004 was drawn up.

13- On 16/01/2003, the claimant party submitted a petition relating to penalty before this Council requesting the appointment of an expert to assess the damages incurred on the work site, machinery, equipment, assets and facilities. This petition was registered under No. 11 299 /2003.

14- On 30/01/2003, the reporting president decided to appoint a committee of experts to inspect the operation site, describe and assess the damages of any type whatsoever, and determine the damage resulting from the interruption of work in the crushers and quarries, and in particular, assess the daily damages and future and daily loss of profit as well as the daily losses and those resulting from the deterioration of the production equipment due to the interruption of work.

15- On 26/03/2003, the experts committee submitted the requested report and completed the mission entrusted to it by the State Consultative Council in the presence of a representative of the Sate - Council of cases- and the Presidency of the Government and the Ministry of environment.

16-The claimant party accepts all the content of this report and consider it a complementary part of the initiation of the action, and requests the State to pay the amounts specified in the experts' report as the element of damage is proven, certain, and determined in the report.

17- On 15/10/2004, the Minister of Interior sent a letter in which he recognizes that be approves the content of the experts committees report indicating that such report has been approved by the competent administrative authorities, and that he requests that the final decision be taken in light of this report"

18- On 20/10/2004, the Council of Cases sent a letter to the Ministry of Interior confirming the validity of the statements of the Minister of Interior and approving the content of the experts committee's report

3



19- On 22/12/2004, the Ministry of Environment confirmed the content of all of its previous letters, as well as its abidance by all the judicial decisions issued by the competent courts.

20- On 03/01/2005, the Minister of Interior sent a letter to the Council of cases confirming in a final way all of the letters issued by the Ministry of Interior as there was no reason to reconsider any of them, which means that the Ministry of Interior approved the report and requested that the final decision be taken in light of the report approved by the Ministry of Interior and all parties, which means that the experts committee's report had become a document enforceable towards the parties and binding upon all.

21- On 01/12/2004, the Council of Cases stated the following: "we confirm what was mentioned in the opinion of the competent administration- Ministry of Interior and Municipalities, as well as the remarks and claims included in the opinions of the concerned competent administrations", and requested to look into the petition in accordance with their contents.

22- The experts committee's report is the final document proving the occurrence of the damage as well as its size, value and consequences and involving the States responsibility, after that the competent administration and the Council of cases accepted and approved the content of the experts committee's report.

Whereas the claimant party indicates and requests the following:

1- They have the capacity and interest to institute all proceedings; they hold an investing permit and are directly affected by the damage resulting from the State's failure end refusal to execute judicial decisions issued in their favor and in favor of their acquired rights.

2- The present petition is in conformity with the provisions of Article 70 of the regulations of this Council as the legality of administrative decision 1999 was declared and became certain and proven by virtue of the res judicata principle, The present petition in full jurisdiction is based on the mentioned action for annulment No.8950 / 1999 and the present petition in full jurisdiction is also the result of the annulment of decision 31/999 dated 28/07/1999.

3- Accept the petition in form as it meets all of the form conditions

4. And in the merits:

- a- Declare the State's responsibility for its failure to execute the State Council decision No.395/2001-2002 dated 29/03/2001 which became final and enjoyed res judicata, giving rise to acquired rights. The State's refusal to respect the res judicta constitutes a serious offence and gives the claimant party a consecrated right to claim compensation as the fault, object of the complaint, involves various aspects and forms, such as negligence, reluctance, procrastination, failure to execute the judgment, and evading and transferring responsibility

- b- Confirm the damage as of the date of interruption of work on 30/09/2002 until the issuance of the decision of the Governor of Mount Lebanon No. 459/m dated 31/08/ 2004, in accordance with the experts committee's report dated 26/03/2003, which determined the value, size, extent, elements and consequences of the damages.

4



c- Compel the State to pay the compensation for the damage as specified and detailed in the experts committee's report, while reserving the right to claim compensation for the sustainable damage that might be caused after the date of the resumption of work or in case of aggravation of the damage.

d- Condemn the state to pay the interest on the adjudged amount from the date of rendering of the judgment until effective payment, and capitalize interests.

e- Compel the State to pay an advance on the requested amount in accordance with the provisions of Article 66 – 3 of the State Consultative Council regulations, provided such advance is not less than half of the requested amount.

f- Reserve all of the rights and claims that might arise subsequently.

g- Condemn the State to pay the damages, fees, expenses and lawyers' fees.

Whereas on 18/04/2005, the defendant submitted a plea in which it included the opinion of the Ministry of Finance stating that "it was not concerned with this petition or its content", the defendant did not mention any answers as to the merits of the dispute in it.

Whereas the claimant party submitted a memorandum dated 23/04/2005 requesting the acceptance of the State's plea dated 18/04/2005 and stating the necessity to apply the accelerated procedures in accordance with Article 104 of the regulations of this Council, including the decision to reject the litis contestati submitted on 23/03/2005

Whereas on 04/05/2005, the reporting judge issued a decision ordering the appointment of the experts George Zakhour and Sami Kassem to assess the value of the damage caused to the claimants, and in particular the daily loss and loss of profit for the period starting from the date of closing of the quarries and the interruption of work on 30/09/2002 until their re-opening on 31/08/2004, which is a closure period of one year and eleven months.

Whereas on 10/05/2002, the defendant submitted a plea responding to the memorandum submitted by the claimant party on 23/04/005 in which it reiterated its allegations and confirmed the content of the pleas and opinions of the competent administrations included in the penalty petition No. 390/2003

Whereas on 21/05/2003, the defendant submitted a plea including the opinions of the Ministry of Interior and Municipalities No. 7211 dated 13/05/2005 and the opinion of the Ministry of the Environment No. 1019/2 and Ministry of the plea No. 1422/b/2003 regarding the request of the imposition of a penalty.

Whereas on 14/06/2005, the defendant submitted pleas including the opinion of the Ministry of Interior and Municipalities No. 211/1 dated 06/06 /2005, commenting on the interlocutory judgment rendered by the reporting judge and regarding the appointment of an experts committee to assess the damage; it approved the decision and reiterated its previous approvals and positions regarding the expertise report dated 26/03/2003.

Whereas on 20/06/2005, the experts committee report was deposited before this Council.

5



Whereas on 22/062005, the reporting judge rendered the decision requesting the experts committee to determine whether the calculation method adopted to determine the value of the damages was the correct and technical calculation method, leading to an accurate result.

Whereas on 27/06/2005, the experts' committee replied by asserting that the calculation method was the correct method since it was based on all the technical, accounting and factual data, that the report was written in a detailed, complete and accurate way and did not ignore any issue related to the object of the petition , that inspections have been carried out in the presence of all the representatives of the concerned administrations and covered all sites and damage, and that they signed the reports and statements without any reservations or remarks being formulated in any respect.

Whereas on 11/07/2005, the claimant party submitted a plea commenting on the experts committee's report and requested the approval of its content, the adoption of the amounts mentioned in such report to compensate for the damage incurred and loss of profit. It indicated that for the purpose of facilitating the settlement of this petition, it renounced other rights (damage and loss of profit) during the rehabilitation, repair and renewal period as of 30/08/2001 until the first week of May 2005 for the resumption of work, in addition to the accumulated interest and the delay in the implementation of contracts and obligations. It requested to compel the State to pay the compensation specified in the experts committee's report dated 25/05/2005 with interest, and reiterated its previous allegations and claims.

Whereas on 12/07/2005, the defendant submitted a plea commenting on the experts committee's report stating that the investigation through technical expert and the determination of the damage elements and liability in accordance with the provisions of articles 342-362 f he Code of Civil Procedures lay within the scope of the State Council's prerogatives. It confirmed the content of its pleas and the opinions of the concerned administrations submitted within the scope of the penalty petition No.350/2003.

Whereas the defendant submitted on 27/07/2005 a plea including the opinion of the competent administration - the Ministry of Interior and Municipalities No.7211 dated 25/07/2005 , commenting on the experts committee's report and requested the competent ministry in its letter to take the appropriate decision in light of the content of the experts committee's reports, especially since the ministry had previously approved the content of the previous report by virtue of prior pleas No. 7211 dated 13/05/2005 and that there wasn't any reason to reconsider the issue.

Whereas on 03/09/2005, (the claimant party submitted a plea commenting on the report in which it approved the report , requested the calculation of the interest at a 9% rate as of the initiation of the action, and reiterated its previous allegations and claims.

Whereas the defendant submitted on 06/09/2005 a plea commenting on the report and opinion in which it requested not to accept the content of the report for lack of accuracy, to open the debates, apply Article 58 of the regulations of this Council, carry out a thorough investigation regarding the report submitted by the experts, and study the extent of its conformity with the principles specified in the laws and regulations. It finally requested to refer the petition to the Council of cases in accordance with Article 45 of the State Council's regulations for its correlation with petition No.390/2003, the unity of motives, object and claimants, noting that the two petitions included the same documents.

6



Whereas on 24/09/2005, the defendant submitted the opinion of the competent administration- the Ministry of Interior and Municipalities- No.7211 dated 12/08/2005, in which it requested that the appropriate decision be taken in light of the content of the experts committee's reports, as the Ministry had previously expressed its opinion on the subject by virtue of previous pleas approving the content of the experts committee's report, and as there was no reason to reconsider the issue.

Whereas on 29/09/2005, the defendant has submitted the opinion of the competent administration - the Ministry of Environment No. 2480/ b dated 05/09/2005 , in which it confirmed the content of its previous letter 1014/b and 1019/b dated 12/05/2005, and including its abidance by all of the judicial decisions rendered by the competent courts.

Whereas on 20/8/2005, the report was issued and the opinion dated 23/08/2005 was given, and both were published in communiqué 237 dated 01/09/2005,

On the basis of the foregoing

## 1- The request to refer the present petition to the Council of cases and join it to the petition No. 390/2003.

Whereas the defendant requests in its pleas commenting on the report of the reporting judge and submitted to this Council on 06/09/2005 to refer the present petition to the council of cases in accordance with Article 45 of the regulations of this Council, given the correlation with petition No. 390/2003 and the unity of motives, objects and claimants, and since they both include the same documents.

whereas by examining the file of petition No.390/2003 referred to the Council of cases on 13/03/2003, it clearly appears that the claimant party request in said file to condemn the state to pay a compulsory fine because of its failure to execute the Council 's decision No.395/2001, while the object of the present petition is the claimant party's request to consider the State responsible for the compensation arising from the damage suffered by them due to the latter's failure and delay in executing decision No. 295/2001 within a reasonable time limit , which implies the absence of unity of object and motives between the two petitions.

Whereas the jurisprudence of this Council considers that the "penalty has coercive character because of the administration's failure to respect the res judicata enjoyed by the judicial judgments and decisions and aims at preventing from executing a binding judicial decision or delay in its execution, with the purpose being to compel it to execute without having the character of compensation for damage; it may not be a cause of enrichment, otherwise, it loses its legal nature the judge shall determine its value in light of the circumstances of each case and regardless of the damage suffered by the concerned party due to non-execution or delay in the execution, which may constitute the object of an independent action for compensation for this damage"

Reference:



7

State consultative Council's decision No.243/2002-2003 dated 16/01/2003, the pharmacist Mahamned Ali Kleilat, the State - Ministry of Health, and decision No.386 dated 18/03/2003, Sharaf El Dine/State (not published)

Whereas the doctrine and jurisprudence also admitted that the penalty does not have the character of compensation for damage, whether due to the non-execution of judicial decisions or the delay in their execution, is independent from damages, and may not replace the claim for compensation for the damage arising from them, since its purpose is to ensure the execution of judicial decisions.

"The specificity of the penalty is confirmed by article 3: the penalty is independent from the damages. It does not aim at repairing a prejudice but obtaining the execution of a judicial decision by the administration.

(Tercinet, law No.80-539 dated 16 Jly 1980, ajda 1981, p.7)

However, obviously, the notions of damages and penalties are totally distinct. The function of compensation and interest is to repair as accurately as possible the harm caused to the beneficiary of a court decision, on the contrary, to directly incite the debtor to execute the judge's decisions.

Jcl. adm. Fascicule 1114 (2, 1997), Injunction and Penalty Payment.

"It is worth mentioning that the penalty payment does not replace in any way the default interest due for late payments, and may not dispense with the payment of this default interest, It is also independent from the damages, which may be possibly granted in reparation of the prejudice arising from the late execution of the judgment, since the penalty payment only aims at ensuring the execution of a judicial decision"

J .cl. adm. Fascicule 1114 (2, 1997).Injunction and Penalty Payment.

Whereas Article 569 of the Lebanese Code of Civil Procedures also "considers the penalty independent from the compensation."

Whereas the French legislator stipulated the independence of the penalty from the damages in Article 6 of law No .539/80 and Article 34 of the law dated 9 July 1991, which read as follows"

(The penalty is independent from damages).

Whereas according to the jurisprudence of the Supreme Court in France "the penalty is independent from compensation (damages) since it is a method to oblige the debtor to execute the obligation in kind and not to compensate for the damage. The debtor is also bound to pay an additional amount if he persists in refraining from executing a judicial decision."
Cass. Civ., 28/21/89, Rec. Civ No. 97, p.62
Cass. Civ., 29/3/90, Rec .Ci. p. 245

Whereas it appears from the foregoing that it is impossible to combine the administration's compensation responsibility arising from the failure to execute judicial decisions or the delay of their execution, and the penalty payment. The penalty aims at exciting pressure on the administration to execute judicial decisions, as understood from the text of the last paragraph of Article 93 of the State Council's regulations.

Whereas in addition, it is proven that on 31/08/2004, the police executed the decision of the Governor of Mount Lebanon No. 549/m dated 31/08/2004 , executing State Consultative Council 's decision No. 395/2001 by " lifting the seals from the machinery , equipment , facilities, and assets and their delivery to their owners to be operated in accordance with the content of the permits and for the resumption of work in accordance with the mentioned articles of the State Council, acquired rights, and res judicata of the aforementioned decisions of the State Council "

Whereas the defendant executed the State Council decision No. 395/2001, it is therefore no longer useful to join the present petition to petition No. 390/2003 and thus the defendant's request to join the two petitions and to refer the recourse to the council of cases must be rejected

## 2- **In the form** :

Whereas the present petition has been submitted within the legal time limit and meets all the form conditions, it is admissible in the form.

## 3- **In the merits:**

Whereas the claimant party requests to declare the State responsible for the non-execution of the State Consultative Council's decision No.395 / 2001-2002 dated 29/03/2001, and compel it to:

- Pay the claimant party the compensation for the damage incurred as of the date of interruption of work on 30/09/2002 until the issuance of the decision of the Governor of Mount Lebanon No.549/m dated 31/08/2004 ordering the resumption of work in the crusher and quarries in accordance with the experts committee's report, which determined the size, elements and consequence of the damage

-Pay the interest of the claimed amount and capitalize interest.

- Pay the claimant party an advance on the amount in accordance with the provisions of Article 66- 3 of the State Consultative Council's regulations provided such advance is not less than half the requested amount.

- Pay the damages,

## A- **The responsibility:**

Whereas the claimant party firstly requests to declare the State responsible for the non-execution of the State Consultative Council's decision No 395 / 2001-2002 dated 29/03/2001, which became final, enjoyed res judicata and gave rise to acquired rights.

Whereas the claimant party indicates that the State's failure to respect res judicata constitutes a serious offence and that the State's offense grants them a consecrated right to claim compensation and that the fault, failure and negligence harmed an acquired right since the

9



claimant party holds a legal investment license and since they obtained a final judgment placing them in a protected position and giving rise to rights that may not be ignored.

Whereas the State was notified of the petition and its annexes and did not invoke any motive for its rejection, and whereas the State did not challenge and did not submit any comments on the experts committee's report, considering that the determination of the responsibility and the compensation due to the claimant party lay within the prerogatives of this Council, which means that the petition must be examined in its present condition in light of the file of the petition and the attached documents, and in light of petition No. 11299/2003 regarding the request of a penalty, and including the experts committee's reports.

Whereas the following appears from the review of the petition file:

- On 28/07/1999, the Council of Ministers issued decision No.31 regarding the investment of crushers and quarries, including provisions pertaining to permits, licenses, interruption of work, prohibition of operation, and dismantling of crushers and facilities, and granting a maximum period of two years and three months to dismantle the facilities.

- On 20/09/1999, the claimant party submitted a petition to the State Consultative Council to annul the abovementioned decision No. 31, on 13/12/2001; this Council issued decision No. 395/ 2001-2002 Ordering the annulment of decision No. 31 issued by the Council of Ministers in its non - regulatory part. Decision No. 395 / 2001- 2002 stated the following: "... all granted licenses are in conformity with the provisions of the law and regulations, and the investment was not subject to any prohibition or interruption of any type whatsoever the claimants were in a legal position protected by virtue of the provisions of the law and regulations and a legal position that is not contrary to the legal provisions, and this legal position gives rise to acquired rights"

Whereas, despite the clarity of decision No. 395 / 2001-2002 mentioned above, the defendant, the State, submitted an action for interpretation before this Council resulting in rendering the decision No.347 / 2002-2003 dated 10/03/2003, asserting " that the decision of the Council of Ministers No. 31 dated 28/07/1999- in its non-regulatory part- and pertaining to the claimant party is annulled and therefore, the operation conditions are met in this respect.

Whereas it is proven that on 10/04/2001, decision No. 395/2001-2002 was notified to the council of cases within the Ministry Justice and that the claimant party submitted to the President of this Council on 18/10/2002 a request to execute the decision along with copy valid for execution; on 21/01/2003, He referred it to the Presidency of the Council of Ministers in accordance with the provisions of Article 126 of the Council's regulations. The decision was notified to the Presidency of the Council of Ministers.

Whereas it does not appear that the defendant challenged decision No. 395 / 2001-2002 through retrial or the rectification of material fault, as all time limits for challenge have expired and the decision became irrevocable and has res judicata.

Whereas res judicata is one of the general admitted principles set by the jurisprudence in civil and public laws.

Elaborated by private jurisprudence and doctrine, the rule applies as it is in administrative law. This is one of the general principles of law that the State Council applies in the absence of any contrary text.

10

(C.E July 26, 1912 Chem de fer p. 0..et midi) … this rule was confirmed by a State Council decision dated January 26, 1940 Courajoux.. as well as by a decision of the Dispute Tribunal dated December 12, 1942, Préfet de l'Ain

(Notes Pr. Weil under C.H. December 28, 1949. Soc Berliet, D 1950. 111.383).

Whereas res judicata binds jurisdiction itself, therefore it is not possible to question a final decision due to a change in the jurisprudence.

A change in the jurisprudence does not allow questioning a final decision (C.E June 25 1939 Sauvaire, rec 550-3 feb. 1971 Soc. d'aménagement foncier de l'Aveyron, rec, 91)

Encycl. Dalloz Cont. Adm.2002, T.I, chose jugée No.125).

Res judicata also binds the Government, and even the legislator, who may not censor judicial decisions.

"Indeed, for the constitutional judge neither the legislator nor the government may censor judicial decisions (Dec. 80-119 DC July 22. 1980,rec 46). however, according to the constitutional judge, the validation by the law of an administrative act, which was annulled by a decision enjoying res judicata, is deemed a censorship of the jurisdictional activity" (long et autres, the major decisions of the administrative jurisdiction, 2001, p. 588)

Whereas the annulment decisions for misuse of power produce their effects towards all parties and binds the entire administration and a ministers, and must be respected in all legal relationships between the concerned party and public departments.

The annulment for misuse of power has an erga omnes: is imposed to entire administration and all of the ministers, who must abide by the rendered decisions (C.E Sect. Dec 2, 1938, Spinetta, rec 094).

In this respect, the decision must now and in any case be respected in all legal relationships between the concerned party and the public departments (C.E. December 23, 1947 Gouv. général de l'ndochine , 675). (Concl. Guioni under C.E. December 28, 1949 Soc. Berliet S. 1951, 111, 7)

Whereas the administration is not only bound to take no measure that might contradict res judicata, it also must deduce the necessary consequences of res judicata; it is only then that it is possible to say that it respected and executed res judicata.

"The administration has the legal obligation to not take any measure that might contradict res judicata, but in most cases, by refraining from directly acting against res judicata, it does not respect it in a sufficient way. It must, in addition, in order to fulfill all of its obligations in this respect, deduce the necessary consequences of res judicata; it is only then that res judicata is entirely respected and executed."
(R. Odent, Cont. adm. 1676-01, p. 1300)

Whereas when the decision became final, it may not be questioned as it is considered final and intangible by the law.

"Res judicata pro veritate habetur"
C.E. Ass. March 16, 1943, Dauriac, D.1946, p. 141, Concl .LEFAS

11



And it is not possible afterwards to refrain from, contradict or not execute the said decisions,

What has been judged may not be judged again
What has been judged may not be contradicted
What has been judged must be executed

Whereas it is proven from the documents of the file that the defendant, despite its notification of a valid copy for execution of the decision to be executed, and which enjoys the res judicata, and despite its notification of the claimant's execution request, did not proceed with the execution or recognize the annulment, considering the decision No. 31, which was annulled, never existed.

"Acts annulled for misuse of power are deemed to have never existed. Jur. Cl. 1995".

This was despite the warning of the State's competent authorities as to the necessity of abiding by and executing the following judicial decisions:

1- The recommendation approved by the Parliament on 15/07/2003, requesting the Government to abide by and immediately execute the judicial decisions and go back on any decree or decision that conflicts or contradicts the content of these decisions or evades them in a way that robs them of their res judicata.

2- Letter of the Presidency of the Council of Ministers No. 1015/s dated 16/07/2003 addressed to the Ministry of Interior and Municipalities, requesting the said ministry to execute the abovementioned decisions of the State Consultative council, in order to enable the claimant to resume the operation of its crushers and quarries.

3- Letter of the Ministry of Environment No. 2129/b dated 24/07/2004 addressed to the presidency of the Council of Ministers indicating that the two decisions rendered by the State Consultative Council are final and enjoy res judicata in accordance with the provisions of article 93 of the Council's regulation, and that the Ministry respects judicial decisions and recognizes their binding character and the necessity of executing their provisions.

4- Letter of the minister of Justice No. 418/3 dated 30/07/2004 addressed to the Presidency of the Council of Ministers indicating that Article 93 of the State Consultative Council's regulations stipulates that the legal entity of the public law must execute within a reasonable time limit the final decisions rendered by the State Consultative Council on pain of responsibility.

5- Letter of the presidency of the Council of Ministers No. 1737/m dated 03/08/2004 addressed to the presidency of the Parliament (regarding the two parliamentary questions submitted by MP Nicolas FATTOUCH regarding the Non-execution of decisions No. 236 dated 13/12/2001 and No. 395 dated 29/03/2001 rendered by the State Consultative Council and regarding the non-respect of the content of the parliamentary recommendation concerning the annulment of decisions avoiding res judicata) indicating that, in the two letters No. 1015/s and 1016/s dated 16/07/2003, this presidency deposited with the Ministry of Environment and the Ministry of interior and Municipalities a valid copy for execution of the two decisions under study rendered by the state Consultative



council, and requested the two mentioned ministries to take the appropriate measures duly to enable the claimant to resume the operation of its crushers and quarries.

6- Letter of the Minister of Finance N. 1334/s dated 27/07/2004 addressed to the presidency of the council of Ministers, warning the defendant that the decision of closing was a precipitated decision resulting in negative effects, in particular for the state treasury and the National economy in general. It is worth mentioning that the abovementioned letter expressly included the following:

"A parliamentary recommendation was rendered on 15/07/2003 requesting the Government to execute the two decisions rendered in favor of my clients MP FATTOUCH and go back on any decision or decree aimed at avoiding execution and res judicata. In this regard, it is necessary to respect the content of the recommendation to avoid legal and financial consequences that might arise and saddle the public treasury with financial burdens that it could certainly do without."

Whereas, despite the abovementioned parliamentary recommendation and the letters of the competent authorities, which all implicated the necessity of executing and respecting the judicial decisions mentioned above, the defendant denied the res judicata of decision 395/2001 and took the following successive measures demonstrating that it had ignored the decision:

1- On 11/07/2002, the council of Ministers issued decision No. 2, Minutes No. 77, by virtue of which it decided to approve a new draft decree regulating quarries and crushers with some amendments and to stop the work in all of the quarries and crushers after he expiry of a two month period, as of the date of entry into force of the decree.

2- On 26/09/2002, the Council of Ministers issued decision No. 10 dated 26/09/2002, by virtue of which it approved the decree regulating the operation of quarries and crushers in accordance with its decision No. 2 dated 11/07/2002.

3- On 04/10/2002, decree No. 803 regarding the regulation of quarries and crushers was issued; article 28 of said decree stipulated that all quarries and crushers shall stop working as of 30/09/2002.

4- On 07/11/2002, the Council of Ministers issued decision No. 23, Minutes No. 95, by virtue of which it decided to request the Ministry of Environment and the Governors to immediately execute the Council's decision No. 10 dated 26/09/2002 regarding the closing of all quarries and crushers without exception, including those having a permit.

5- The issuance of many telegrams from the Commander of the Gendarmerie in Mount Lebanon, the Commander of Bhamdoun Squad and the Commander of Aley Brigade, requesting the closing of rock quarries, crushers and sand quarries in Mount Lebanon completely and totally, indicating that the work in the quarries of Pierre and Moussa FATTOUCH had been stopped, in accordance with the decision of the Council of Ministers, and requesting tight control over the crusher of the claimant party to prevent it from carrying out any activity.

13



Whereas the defendant did not merely take the above-mentioned measures to hinder the execution of decision No. 395/2001-2002, as on 30/09/2002, it closed the crusher of the claimant party by affixing seals until 31/08/2004, i.e. for almost one year and eleven months, which caused considerable damages to the claimant party, as detailed and proven in the experts committee's reports.

Whereas in the light of the foregoing, the defendant's reluctance and delay in the execution of the State Council's decision No. 395, which considered that " all permits granted to the claimant party are in full conformity with the provisions of law and regulations and that it enjoys a protected legal position..." constitutes a violation by the defendant and its ignoring the res judicata effect.

Whereas this Council considered that the administration's ignoring of res judicata, as ruled by the courts deciding the annulment, constitutes a misuse of power as well as a fault involving the responsibility of the public authority ( decision No. 569 / 98-99 dated 27/05/1999).

(The Code of Administrative Law, 2003, volume 2, p. 607)

Whereas in accordance with the provisions of Article 93 of this Council's regulations as amended, "the State Consultative Council's decisions are binding upon the administration, the administrative authorities are bound to respect the legal conditions as described by these decisions, and the legal entities of the public law must execute, within a reasonable time limit, the final decisions rendered by the State Consultative Council on pain of responsibility..."

Whereas it is proven that the defendant exceeded the reasonable time limit granted to it for execution in an exceptional way, as it was notified of the decision whose execution was requested on 10/04/2001, and refrained from executing its content until 21/08/2004, when the Governor of Mount Lebanon issued decision No. 549/m dated 31/08/2004, ordering " to lift the seals and the resumption of operation in accordance with the permits, the decisions of the State Council, the acquired rights and the res judicata and upon the request of the concerned ministries and administrations." The Security forces executed the decision of the Governor by virtue of the report No. 231/2004.

Whereas it is admitted by the French jurisprudence that the administration has a reasonable time limit to execute judicial decisions, and in case of non-execution within this time limit, such behavior constitutes a fault.

The Administration is granted a reasonable time limit to execute the judicial decision that was notified to it.

Beyond this reasonable time limit, the non-execution of a judgment constitutes a fault
(C.E. Nov. 16, 1960 Peyrat Rec. p. 625)

Whereas in addition, the jurisprudence of this Council admits the administration's responsibility towards citizens when it fails to execute judicial decisions rendered in their favor and duly deposited with the execution departments; therefore, the party to the litigation is entitled to claim compensation in the event the delay exceeds a reasonable time limit and in the event it suffers damage resulting from non-execution.

14



(State Council decision No. 255 dated 24/01/1995, The Code of Administrative Law 1996 p. 279 , decision No. 219 dated 14/01/1998 , Melfina Khoury , the State , The Code of Administrative Law 1999, vol. 1, p. 253.)

The failure and reluctance to execute final judicial decisions without justification also constitutes a fault involving the administration 's responsibility ( decision No. 62 dated 12/11/1996 , Elias Issa/ the State - The Code of Administrative Law Issue No. 12, 1998, volume I , p. 83 ) ( decision No. 288 dated 20/02/97 Itani / the State The Code of Administrative Law issue No. 12, 1998, p.303 ) and decision No. 289 dated 30/02/1997 Aoun / the State - the Ministry of Interior , The Code of Administrative Law issue No. 12 , 1998, vol.1, p. 305.

Whereas the damages caused to the claimant party as a result of the reluctance and delay in the execution of the Council's decision No. 359/ 2001-2002 are serious and certain, and the causal link is established between non-execution and the damages suffered as specified by the experts' report.

Whereas the defendant did not produce any evidence proving that the damages were due to a fault committed by the claimant party or resulted from a Force Majeure or third party act, in order to exempt itself from or minimize the responsibility involved.

Whereas the defendant's failure to invoke any reason to reject the present petition justifying the non-execution of a final judicial decision undoubtedly constitutes a presumption of the validity of the claimant's allegations regarding the State's responsibility.

Whereas on the basis of the foregoing, it is irrefutable that by delaying and failing to execute judicial decision No. 395 / 2001-2002 rendered in favor of the claimant and closing the crusher despite the existence of a legal permit granted for 25 years and the existence of acquired rights, the defendant committed a serious offence, rendering it totally liable for the damages caused to the claimant party.

### b- The Compensation

Whereas the claimant party requests to oblige the State to pay the value of the compensation for the damage suffered by it and resulting from its failure to execute the final judicial decision rendered by the State Consultative Council No. 359/ 2001-2002, in accordance with the experts committee's report, which was deposited with this Council on 20/06/2005, and oblige the State to also pay it the interest on this amount and capitalize interest as well as the damages, fees, and expenses.

Whereas the determination of the compensation requires resorting to expertise to carry out an investigation and technical inspection, on 30/01/2003, the President rendered a decision appointing a committee of experts within the scope of petition No. 11299/2003, whose mission consisted of inspecting the claimant party's real estate properties outside the real estate region of Ain Dara, and then, determining the damage suffered as a result of the interruption of work in the crusher and quarry, the loss of profit and the daily loss arising from the interruption of the production equipment and accessories, and the future loss of profit for the remaining years of the permit.



**- The experts committee's first report**:

Whereas it appears from the review of the report deposited with this Council on 26/03/2003 that the committee determined the following elements:

First: The inspection of the real estate properties returning to the claimant party

Second: The determination of the daily and future loss of profit

Third: The damage element represented by total damage.

Whereas by examining the three abovementioned elements, the committee assessed the damage suffered by claimant party and the due compensation as follows:

|  | USD (in millions) |
|---|---|
| **First** | |
| - The value of the site land (one million square meters) | 17.00 |
| - The cost of excavation and building of roads | 13.20 |
| - Material transportation cost | 25.85 |
| **Total of site preparation fees and establishment expenses:** | **56.05** |

Second
- The daily loss of profit and daily loss          USD 102,600
- Total loss of profit for the remaining years (17.5 years)   USD 448,875,000
- The actual value of the loss of profit discounted at 10 %   USD 208,114,000

Third
- The daily loss of profit or the daily loss for trucks     USD 25,272
- The annual loss of profit for trucks (250 working days)   USD 6,318,000
- Total annual loss of profit from 2003 to 2020        USD110, 565,000

Whereas the committee drew up a table of the loss of profit as follows:

Loss of profit (US dollars)

|  | Daily | For 5.17 years | Actual value (17.5 years) |
|---|---|---|---|
| Quarries and crashers | 102,600 | 448,875,000 | 208,114,000 |
| Trucks | 25,272 | 10.565.000 | 51,262,000 |
| Total | 127,872 | 559,440,000 | 259,376,000 |

Whereas it appears from the above table that the committee appointed by this Council assessed the loss of profit for the remaining years of the operation permit at USD 559,440,000 (five hundred fifty-nine million and four hundred forty thousand US dollars), while the actual value of the loss of profit i.e. on the date of this report amounts to US $ 259,376,000 with a 10 % discount, indicating that this calculation does not take into account any increase that might occur on the production, such as the sale prices or costs during the remaining period of the permit.

Whereas it appears from the documents of the file that the defendant was notified of the experts committee's report on 26/03/2003, and that after the expiry of more than a two- month period as of this notification, the Presidency of the Government sent letter No. 3755 dated 20/05/2003 to the Committee of Cases within the Ministry of Justice requesting the following:

Joelle J. Tannous
Sworn Translator
Traductrice Assermentée

" Whereas the Committee of Cases followed up the expertise issue when it was invited to attend the inspection works and follow the execution of the experts committee's mission, we leave the Committee of Cases to comment on the experts report's content in cooperation with the competent administrations."

Whereas on 24/05/2003, the Committee of Cases submitted a plea that doesn't contain any opposition to the content of the experts' report, and in which it did not discussed the three elements tackled by the report and did not comment on the specified compensation amount or the size of the assessed damages, but only indicated the following: the experts' report submitted by the experts committee includes technical information based on specific elements, i.e., the claimant party's real estate properties, the determination of the daily and future loss of profit, and the possible damage element", which means that the Committee of Cases accepted the content of the report regarding the damages suffered and the specified compensation.

Whereas the competent administration- the Ministry of Interior- confirmed in its opinion No. 21162 dated 15/10/2004 " the necessity of taking the final decision in light of the report", indicating: the "experts' committee has previously drawn up its report on the daily damage incurred as a result of the interruption of the operation and its content was finally approved by the competent administrative authorities, and the Ministry requests that the necessary final decision be taken in light of the experts' report", which means that the two litigant parties have agreed on the content of the experts committee's report.

Whereas, although the State did not oppose the content of the experts committee's report and the competent administration, i.e., the Ministry of Interior approved its content and requested that the final decision be taken in light of said report, it appears to this Council that the experts committee determined in its report the damage suffered by the claimant party at a time when the crusher was closed and on the basis that it was closed in a final way, which led this committee to assess the future loss of profit for a period of seventeen years, i.e., the remaining period of the permit, which led the reporting judge to appoint a second experts committee on 04/05/2005, whose mission was to limit the determination of damages and compensation to the period between the date of closing of the crusher and quarry and suspension of work on 30/09/2002 until its re- opening on 31/08/2004, i.e., the equivalent of one year and eleven months. Said committee submitted its report to this Council on 20/06/2005.

### The experts' committee's second report

Whereas it appears from the report that all technical inspection sessions have been performed by the experts' committee in the presence of a representative from the Committee of Cases within the Ministry of Justice, and a representative from the competent administration- the Ministry of Interior- as well in the presence of the claimant party, holder of the permit.

Whereas the report assessed the value of the damage in the crushers and quarries for the period specified in the assignment decision, extending from 30/09/2002 until 31/08/2004 as follows:

17



**1-   The assessment of the damage in the quarries from 30/09/2002 through 31/08/2004.**

- Daily production capacity        6,000 tons
- Number of production days       575 days
- Total production                     3,450,000 tons
- The loss of profit per ton         USD 6.83
- The value of the damage during the abovementioned period: USD 23,563,500 (Only twenty-three million five hundred sixty-three thousand and five hundred US dollars)

**2-   The assessment of the damage in the crushers from 30/09/2002 to 31/08/2004**

It appears from paragraph (d) p.15 of the previous experts committee's report that the loss of profit amounts to USD 127,872.

It also appears from the above report that the annual number of working days in the quarries is 250 days; therefore, the number of working days from 30/09/2002 to 31/08/2004 may be calculated as follows:

$$\frac{250+(11 x 250)}{12} = 479 \text{ days}$$

- The losses suffered by the quarries from 30/09/2002 until 31/08/2004:
127,872 x 479 = USD 61,250,688 (only sixty-one million two hundred fifty thousand six hundred and eighty-eight US dollars)

**3-   Summary of Total Damage Before Interests**

The experts committee assessed the damage suffered by the claimant party before calculation of interest during the period of closing of the quarries and crushers from 30/09/2002 until 31/08/2004 as follows:

- a- The damage in the quarries     USD 23,563,500
- b- The damage in the crushers     USD 61,250,688
    - Total damage suffered by the claimant party during the closing period. i.e., from 30/09/2002 until 31/08/2004: USD 84,814,188 (Only eighty-four million eight hundred fourteen thousand one hundred eighty-eight US dollars).

**4-   The calculation of interest borne by the claimant party during the period of loss of profit at an annual 9 % rate compounded on a monthly basis**

The total loss incurred by the company and mentioned above amounting to USD 84,814,188 occurred during the period from 30/09/2002 until 31/08/2004, i.e. during a total period of 700 days. To calculate the interest, the committee divided the daily loss over 700 days; the daily loss, i.e., the amount that the claimant party was unable to collect, which caused it to incur a loss of interest for daily payments amounts to:  84,814,188/700 = US 121,163.

It appears from the table of total interests on non-collected lost profits calculated at an annual rate of 9 % compounded on a monthly basis that during the closing period, interests



amounted to USD 7,855,161 (only seven million eight hundred fifty-five thousand one hundred and sixty-one US dollars).

Whereas the committee calculated the total damage suffered by the claimant party from 30/09/2002 to 31/08/2004 as follows:

-Total damage before calculation of interests USD 84,814,188
-Interest USD 7,855,161
-Total final damage during the closing period from 30/09/2002 to 31/08/2004: USD 92,669,349

Only ninety two million six hundred sixty nine thousand and three hundred forty-nine US dollars; i.e., the equivalent of 92,669,349 x 1,507.5 = 139,699,043,500 (one hundred thirty nine billion six hundred ninety nine million and forty-three thousand five hundred Lebanese Pounds)

Whereas on 22/06/2005, the reporting judge requested the experts committee to determine whether the calculation method adopted to determine the damage was the proper method leading to an accurate result. On 27/06/2005, the experts' committee confirmed that "the calculation method is the correct method since it is based on all of the technical, accounting and realistic data, that the report was drawn up in a detailed, complete and accurate way and does not ignore any issue related to the object of the petition, that inspections have been carried out in the presence of all of the representatives of the competent administrations and covered all sites and damages, and that they signed the reports and statements without any reservations or remarks being formulated in any respect regarding the legality of the contents of the experts' reports. This is proven by the official documents produced in the file.

Whereas the experts' committee report is accompanied by photographs showing the damage suffered by the equipment, machinery and the quarries and crushers, and whereas all of the inspections took place in the presence of representatives of the competent ministries and the Committee of Cases within the Ministry of Justice, without any of them expressing any reservation or opposition in this regard.

Whereas the State - represented by the Committee of Cases within the Ministry of Justice, i.e. the party legally authorized to file legal proceedings on behalf of the State and defend its interests in actions brought against it, and take all of the necessary measures to defend the State's interests before the courts (Article 18 of Legislative Decree No. 15183 , organization of the Ministry of Justice ) - was notified of the writ of summons of the petition along with the annexed documents and the experts committee's report, and did not contest it, whether regarding the facts, the responsibility, the damage or claimed compensation, despite the expiry of all legal time-limits, but rather presented to this Council a plea including some opinions of the competent administrations without requesting in this plea the rejection of this petition and without invoking any reason for its rejection, or the rejection of the claimed compensation, and without opposing the value of such compensation and interest compounded on a monthly basis, which means that the defendant approved everything present in the experts' report and in the writ of summons of the petition and its annexes, whether regarding the facts, responsibility, damage or claimed compensation, thus we can conclude that there is no longer any need to carry out any additional investigation as requested by the claimant party in its plea commenting on the report.

Whereas in its plea commenting on the experts committee's report presented to this Council on 12/07/2005, the defendant said: "The experts committee's report is based on the

report drawn up by the previous committee, which contained the result of inspections and expertise sessions in which representatives of the competent administrations participated, and pertained to factual, material, technical and financial issues, based on specific documents, information and remarks."

Whereas the Ministry of Finance, which is the concerned administration in accordance with the provisions of Article 1 of Legislative Decree No. 2868 dated 16/02/1959 (organization of the Ministry of Finance), regarding the managing and preservation of public funds, and thus the preservation of public money , indicated in its report No. 5336 dated 08/04/2005 and exhibited in the plea of the defendant presented to this Council on 18/04/2005, that it was not concerned with this petition or its content," despite the fact that this petition involves financial burdens on the Public Treasury, and also despite the fact that in its letter No. 1334 dated 27/07/2004, mentioned in this petition, this Ministry had warned the defendant about the financial and legal consequences that might arise from the failure to execute judicial decisions rendered by the State Consultative Council, which would saddle the Public Treasury with financial burdens that it could certainly do without.

Whereas the Ministry of Interior, which is the competent administration, indicated in its report No. 7211 dated 25/07/2005, commenting on the experts committee's report, that "the report complements the previous report and is based on the same factual, technical, accounting and financial data, in addition to the calculation of elements that were mentioned in the previous report and not calculated. And whereas the Ministry had approved the contents of the previous report by virtue of the previous pleas, the last of which being No. 7211 dated 13/05/2005, and there being no reason to reconsider, we reaffirm our previous opinion and request to take the necessary decision in light of the experts committee reports and the laws and regulations in force."

Whereas the experts committee appointed by this Council is considered as the official employee when carrying out the mission entrusted to it, and its report enjoys a corroboratory character towards the members of this committee and within the limits of its powers and prerogatives, and this plea may not be challenged, except by an action for falsification which the defendant did not lodge (State Council decision No. 46 dated 21/12/2000, Dakroub vs. Electricite du Liban and the Council for Development and Reconstruction, the Code of Administrative Law , 2004 , issue 16 , p. 106), decision No. 101 dated 01/12/1999 the State vs. Nabil Shami, the Code of Administrative Law, issue 15, p. 198)

Whereas it is proven that the State did not submit any proof or presumption challenging the content of the report, which constitutes a presumption of its validity.

Whereas the experts committee report constitutes one of the pieces of evidence submitted to the Court, and this latter must accept the content of the report if it is convinced that what it contains conforms to the truth, and must ignore it, if it deems upon its sole discretion, that it does not conform to the facts and all or part of the jurisprudence (decision No. 478 / 98-99 dated 22/04/99 The Code of Administrative Law, issue 14, p.489)

Whereas it appears that the experts' committee report became the principal document that should be adhered to after its approval by the competent administration- the Ministry of Interior- and its request to accept its content, and the defendant shall not comment on its content in terms of the determined damages and compensation due to the claimant party.

20

Whereas the damage subject to compensation is the certain and proven damage (decision No. 50 dated 03/11/1999, Ramadan vs. Electricite du Liban, the Code of Administrative Law 2003, volume 1, p. 9).

Whereas the claimant party requests to compel the State to pay the determined compensation for the damages that it suffered at the sum of USD 92,669,349, as per the second report of the experts' committee.

Whereas the claimant party is entitled to receive compensation for the damage it suffered, especially since the direct and certain causal link between the administration's serious offense in failing to execute a judicial decision and the damage it suffered is established in the present petition, which requires the payment of compensation for the damage suffered by the crusher and quarry, proven in the experts committee report, amounting to USD 84,814,188 (only eighty-four million eight hundred and fourteen thousand, one hundred and eighty-eight US dollars), without calculating the interest mentioned in the report.

Whereas regarding the interest and capitalization of interest borne by the claimant party during the period of loss of profit at an annual rate of 9% compounded on a monthly basis and estimated in the report at USD 7,855,161 (only seven million eight hundred and fifty-five thousand one hundred and sixty one US dollars), said interest does not merit consideration, for the two following reasons:

- The experts committee exceeded the mission entrusted to it by this Council and calculated the interest without being requested to do so, and without any justification.

- According to this Council's jurisprudence, "the interest on the debt only shall take effect as from the date in which the debt becomes certain, realized, and payable, which are conditions that are not met in the case, except upon the date of the issuing of the decision."

( Decision No. 199 dated 08/02/2001 Saad vs. the Council for Executing Large - Scale Projects for the City of Beirut, the Code of Administrative Law, issue 16, 2004, vol. 1, p. 309, Decision No. 48 dated 28/10/1999 Abi Khalil vs. the State - Ministry of Interior, the Code of Administrative Law, issue 1, p. 87)

Whereas, finally, regarding the claimant party's request to oblige the State to pay it an advance payment of the requested amount, in accordance with the provisions of Article 66 – third- of the State Consultative Council's regulation, provided that this advance payment shall be at least half of the requested amount, therefore this request must be rejected after the compensation has been determined in final way.

Whereas all allegations, contrary to the forgoing, must be rejected since they lack proper legal grounds,

Whereas there is no longer any need to review the entirety of invoked reasons, for absence of usefulness.

21



## For these Reasons,

Decides unanimously to:

1- Accept the petition in form

2- In the merits: Compel the State to pay the claimant party the amount specified in the second report of the committee of experts, of USD 84,814,188 (only eighty-four million eight hundred and fourteen thousand, one hundred and eighty-eight US dollars), for the damage suffered by the crusher and quarry, or its equivalent in Lebanese Pounds on the date of payment, with the legal interest at the rate of 9% as from the date of notification of this decision until the effective date of payment.

3- Reject all additional claims of the claimant party related to the interest and the capitalization of interests specified in the report of the experts committee, and to reject the request of an advanced payment for the claimed amount, damages and losses.

4- Condemn the defendant to pay all fees and expenses.

A decision rendered and publicly understood on the fifth of October of 2005.

| Clerk | Counselor | Counselor | President |
|-------|-----------|-----------|-----------|
| Nabiha Tannous | Shawkat MAAKARON | Rizkallah FREIFER | Assem SAFIDDINE |

**- Republic of Lebanon- State Consultative Council (signature & seal)**

True translation of the Arabic text herewith attached delivered on 30.05.2018
**The Sworn Translator Joelle Tannous**



22

Number 26991

Seen by me, Georges Tanios EL KHOURY, Notary Public in Beirut, for the authentification of the signature of the sworn translator Mr ............................ on the document, incurring no liability or responsibility as regards its content, on

2 7 JUL 2020
The Notary Public in Beirut
Georges Tanios EL KHOURY





ر.ش

قرار رقم : ١١/٢٠٠٥-٢٠٠٦
تاريـــــخ: ٥/١٠/٢٠٠٥

رقم المراجعة : ١٢٨٧٨/٢٠٠٥

الجهة المستدعية : بيار وموسى فتوش
المستدعى ضدها : – الدولة اللبنانية
                 – وزارة الداخلية

الهيئة الحاكمة : الرئيس : عاصم صفي الدين
المستشار: رزق الله فريفر
المستشار: شوكت معكرون

مجلس شورى الدولة
باسم الشعب اللبنانـــي

ان مجلس شورى الدولة ،
بعد الاطلاع على ملف المراجعة وعلى تقرير المستشار المقرر ومطالعة مفوض الحكومة
وعلى الملاحظات المقدمة من فريقي المراجعة ،
وبعد المذاكرة حسب الاصول ،

بما ان الجهة المستدعية : بيار وموسى فتوش تقدمت بواسطة وكيلها القانوني بمراجعة
بتاريخ ٢٤/٣/٢٠٠٥ سجلت لدى هذا المجلس برقم ١٢٨٧٨ ، تطلب فيها إلزام الدولة بأن تدفع
لها قيمة التعويض عن الضرر اللاحق بها والناتج عن مسؤوليتها عن عدم تنفيذ حكم قضائي وذلك

2

وفق تقرير لجنة الخبراء والمقدر بمبلغ /٩٢٦٦٩٣٤٩/ د. أ ( لثان وتسعون مليونا وستمائة وتسعة وستون الفا وثلاثمائة وتسعة واربعون دولارا اميركيا ) مع احتساب الضرر الحاصل حتى صدور القرار النهائي ، والزام الدولة ايضا بدفع فائدة المبلغ المطالب به ورسملة الفائدة ، وتضمين المستدعى ضدها العطل والضرر والرسوم والمصاريف واتعاب المحاماة .

وبما ان الجهة المستدعية تعرض ما يلي :

١-انه بتاريخ ١٩٩٥/٤/٧ صدر عن محافظ جبل لبنان القرار رقم ٤٩ والمتضمن الترخيص لها ولمدة خمسة وعشرين سنة باستثمار كسارات ومقالع في المغارات التي تملكها في منطقة عين دارة قضاء محافظة جبل لبنان .

٢-انه بتاريخ ١٩٩٩/٧/٢٨ صدر عن مجلس الوزراء القرار رقم ٣١ المتعلق باستثمار الكسارات والمقالع والمتضمن احكاما تخص الرخص والتراخيص والتوقيف عن العمل ومنع الاستثمار وتفكيك الكسارات والمنشآت ، واعطاء مهلة ادارية للمستثمر اقصاها سنتان وثلاثة اشهر لتفكيك الانشاءات .

٣-انها طعنت بالقرار رقم ٣١ المذكور اعلاه ، بتاريخ ١٩٩٩/٩/٢٠ امام مجلس شورى الدولة طالبة ابطاله لتجاوز حد السلطة ولتجاهله الحقوق المكتسبة .

٤-بتاريخ ٢٠٠١/٣/٢٩ اصدر هذا المجلس القرار رقم ٢٠٠١/٣٩٥-٢٠٠٢ القاضي بابطال القرار الصادر عن مجلس الوزراء رقم ٣١ تاريخ ١٩٩٩/٧/٢٨ في القسم منه الغير تنظيمي ، وقد تضمن القرار الصادر عن هذا السجلس " بأن الموقع ملك الجهة المستدعية ، وجميع العقارات العائدة لملكيتها تدخل كلها ضمن المخطط التوجيهي العام السرعي الاجراء وبناء عليه وعلى هذا الاساس منحت الرخص وتجددت تلقائيا وباستمرار ، وان جميع الرخص المعنوحة مطابق تماما لاحكام القانون والانظمة ولم يتعرض الاستثمار الى أي منع او توقف من أي نوع كان ، كما ان المستدعية وجدت في مرتبة قانونية محمية وفق احكام القانون والانظمة وفي وضع واقعي لا يتنافى والأحكام القانونية وبالتالي يترتب عن هذا الوضع القانوني حقوقا مكتسبة " .

3

٥-وبتاريخ ٢٠٠٣/٣/١٠ اصدر مجلس شورى الدولة القرار رقم ٢٠٠٣-٢٠٠٢/٣٤٧ الأيل الى
تفسير مضمون القرار السابق رقم ٢٠٠٢-٢٠٠١/٣٩٥ المشار اليه اعلاه وخلص الى التأكيـد :
" ان قرار مجلس الوزراء رقم ٣١ تاريخ ١٩٩٩/٧/٢٨ – في القسم منه الغير تنظيمي –
والخاص بالجهة المستدعية – قد ابطل وبالتالي تكون شروط الاستثمار متوافرة في هذا الاطار " .

٦-وبتاريخ ٢٠٠٣/٧/١٥ صدرت التوصية النيابية المتضمنة وجوب تنفيذ الاحكام القضائية وان
تعود الحكومة عن كل مرسوم او قرار يتعارض او يناقض مضمون هذه الاحكام او الالتفاف
عليها بشكل يسلبها قوة القضية المحكمة .

٧-وبتاريخ ٢٠٠٣/٦/٤ صدر عن رئاسة مجلس الوزراء الكتاب رقم ٧٥٢/ص و٧٥٣/ص
وابلغا الى وزارتي البيئة والداخلية والبلديات والى هيئة القضايا في وزارة العدل ( رقم ٨٦٦/ص
تاريخ ٢٠٠٣/٦/٢٣ ، وهو يتضمن الطلب من الوزارتين المعنيتين تنفيذ كل من القرارين
الصادرين عن مجلس شورى الدولة رقم ٢٠٠٢-٢٠٠١/٣٩٥ ورقم ٢٠٠٣-٢٠٠٢/٣٤٧ ،
والالتزام بمضمونهما وذلك " بغية تمكين الجهة المستدعية من اعادة استثمار المقلع والكسارة
خاصتها " .

٨-بتاريخ ٢٠٠٤/٧/٢٤ صدر عن وزارة البيئة الكتاب رقم ٢١٢٩/ ب الموجه الى رئاسة مجلس
الوزراء مفاده " ان الوزارة تحترم الاحكام القضائية وتعترف بالزاميتها ....... وان جميع
الشروط القانونية والبيئية والسلامة العامة متوفرة " .

٩-بتاريخ ٢٠٠٤/٧/٢٧ وجهت وزارة المالية الى رئاسة مجلس الوزراء الكتاب رقم ١٣٣٤/صن
الذي يعدد الآثار السلبية المترتبة عن عدم تنفيذ الاحكام وما ينتج عنها من عطل وضرر
وغرامات وفوائد متراكمة .

١٠-بتاريخ ٢٠٠٤/٧/٣٠ ارسلت وزارة العدل الى رئاسة مجلس الوزراء الكتاب رقم ٣/٤١٨٥ .
جاء فيه : " ان الترخيص لمدة عشرين سنة جاء مطابقا للانظمة والقوانين من جهة ، ومن جهة
ثانية ان المادة ٩٣ من نظام مجلس شورى الدولة تفرض تنفيذ الاحكام ضمن مهلة معقولة تحت

4

طائلة المسؤولية وفي حال التأخير عن التنفيذ يحكم على الدولة بدفع غرامة اكراهية ' . وان كل هذه المستندات والوثائق متوافرة وموجودة في ملف المراجعة رقم ٢٠٠٣/١١٢٩٩ العالقة امام مجلس شورى الدولة .

١١-بتاريخ ٢٠٠٤/٨/٣٠ صدر قرار وزير الداخلية رقم ١٨٧٨٣ والقاضي بتنفيذ القانون بمضمون الاحكام الصادرة عن مجلس شورى الدولة واحالة القرار المذكور الى محافظ جبل لبنان للتنفيذ .

١٢-بتاريخ ٢٠٠٤/٨/٣١ اصدر محافظ جبل لبنان القرار رقم ٥٤٩/م ' المتضمن رفع الاختام عن الآليات والمعدات والمنشآت والموجودات وتسليمها الى اصحابها بغية استثمارها وفقا لمضمون التراخيص ومعاودة العمل عملا بالاحكام المذكورة اعلاه لمجلس شورى الدولة والحقوق المكتسبة ولقوة القضية المحكمة العائدة لقرارات مجلس شورى الدولة المذكورة اعلاه ' ، وانه بتاريخ ٢٠٠٤/٨/٣١ قام رجال الدرك بتنفيذ قرار المحافظ وجرى تنظيم المحضر رقم ٢٠٠٤/٢٣١ تاريخ ٢٠٠٤/٨/٣١ .

١٣-بتاريخ ٢٠٠٣/١/١٦ تقدمت الجهة المستدعية بمراجعة غرامة اكراهية لدى هذا المجلس تضمنت طلب تعيين خبير للتحقق من الضرر الحاصل في موقع العمل والآليات والمعدات والموجودات والانشاءات سجلت هذه المراجعة برقم ٢٠٠٣/١١٢٩٩ .

١٤-بتاريخ ٢٠٠٣/١/٣٠ صدر قرار الرئيس المقرر والقاضي بتعيين لجنة خبراء وذلك لمعاينة موقع الاستثمار ووصف الاضرار من أي نوع كانت وتخمينها وتحديد الاضرار اللاحقة من جراء وقف العمل في الكسارات والمقالع وبالاخص تحديد الاضرار اليومية والربح الفائت اليومي والمستقبلي والخسائر اليومية وايضا الناتجة عن اتلاف معدات الانتاج بسبب التوقف عن العمل .

١٥-بتاريخ ٢٠٠٣/٣/٢٦ قدمت لجنة الخبراء التقرير المطلوب منها ونفذت المهمة الموكولة اليها من مجلس شورى الدولة وذلك بحضور ممثل عن الدولة – هيئة القضايا – ورئاسة الحكومة ووزارة البيئة .

5

١٦-انها تتبنى مضمون هذا التقرير بكامله وتعتبره جزءا متمما لربط النزاع وتطالب الدولة بان تدفع لها المبالغ المحددة في تقرير الخبراء لان عنصر الضرر ثابت وأكيد ومحدد في التقرير .

١٧-انه بتاريخ ١٥/١٠/٢٠٠٤ وجه وزير الداخلية كتابا يعترف فيه بأنه موافق على مضمون تقرير لجنة الخبراء وقد تم التوافق عليه من قبل المراجع الادارية المختصة ، وانه ' يطالب اتخاذ القرار النهائي على ضوء التقرير ' .

١٨-بتاريخ ٢٠/١٠/٢٠٠٤ قدمت هيئة القضايا كتابا الى وزارة الداخلية اكدت مضمون صحة اقوال وزارة الداخلية وتبنتيا بكاملها ، ووافقت على مضمون تقرير لجنة الخبراء .

١٩-بتاريخ ٢٢/١٢/٢٠٠٤ اكدت وزارة البيئة مضمون كافة كتبها السابقة ، واكدت التزامها بجميع الاحكام القضائية الصادرة عن المحاكم المختصة .

٢٠-بتاريخ ٣/١/٢٠٠٥ ارسل وزير الداخلية كتابا الى هيئة القضايا ، يصدق بشكل نهائي على كافة الكتب الصادرة عن وزارة الداخلية لانه لم يطرأ ما يستدعي اعادة النظر ، مما يعني ان وزير الداخلية تبنى التقرير وطلب اتخاذ القرار النهائي على ضوء التقرير ، وانه بموافقة وزارة الداخلية وكافة الاطراف مما يعني ان تقرير لجنة الخبراء اصبح مستندا يتمتع بالحجية تجاه الفرقاء والالزامية للجميع .

٢١-بتاريخ ١/١٢/٢٠٠٤ ادلت هيئة القضايا بما حرفيته : ' نؤكد ما ورد في مطالعة الادارة المختصة – وزارة الداخلية والبلديات . وفي لوائحها ومطالعات الادارات المختصة المعنية من ملاحظات ومطالب وتطالب البت بالمراجعة وفقا لمضمونها .

٢٢-ان تقرير لجنة الخبراء هو المستند الحاسم الذي يثبت حصول الضرر وحجمه وقيمته ونتائجه ويلقي المسؤولية على الدولة ؛ بعد ان سلمت ووافقت الادارة المختصة وهيئة القضايا على مضمون تقرير لجنة الخبراء .

6

وبما ان الجهة المستدعية تدلي وتطلب ما خلاصته :

١–انها تملك الصفة والمصلحة للادعاء وهي صاحبة الترخيص بالاستثمار وهي معنية مباشرة بالضرر الحاصل عن تقاعس الدولة ورفضها تنفيذ احكام قضائية صدرت لمصلحتها والحقوق المكتسبة التي تملكها .

٢–ان المراجعة الحاضرة مطابقة لما تنص عليه المادة ٧٠ من نظام هذا المجلس لان عدم شرعية القرار الاداري رقم ١٩٩٩/٣١ قد حكم بها واصبحت اكيدة وثابتة وذلك عملا بمبدأ قوة القضية المقضية ، وان مراجعة القضاء الشامل الحاضرة تستند الى مراجعة الابطال المذكورة رقم ١٩٩٩/٨٩٥٠ كما وان مراجعة القضاء الشامل الحاضرة هي نتيجة ابطال القرار رقم ١٩٩٩/٣١ تاريخ ١٩٩٩/٧/٢٨ .

٣–قبول المراجعة شكلا لانها مستوفية لجميع شروطها الشكلية .

٤–وفي الاساس :

أ–اعلان مسؤولية الدولة عن عدم تنفيذ قرار مجلس شورى الدولة رقم ٢٠٠١/٣٩٥– ٢٠٠٢ تاريخ ٢٠٠١/٣/٢٩ الذي اصبح مبرما ومتمتعا بقوة القضية المحكمة ونتج عنه حقوق مكتسبة . وان رفض الدولة احترام قوة القضية المحكمة يشكل خطأ فادحا وجسيما ويمنح الجهة المستدعية حقا مكرسا للمطالبة بالتعويض لأن الخطأ المشكو منه يرتدي اوجها واشكالا متنوعة من اهمال وتلكؤ ومماطلة وتهرب وحفظ الحكم دون تنفيذ والتنصل من المسؤولية وازاحتها من كاهل الى آخر .

ب –تثبيت الضرر الحاصل ابتداء من تاريخ التوقف عن العمل في ٢٠٠٢/٩/٣٠ وحتى صدور قرار محافظ جبل لبنان رقم ٥٤٩/م تاريخ ٢٠٠٤/٨/٣١ ووفق تقرير لجنة الخبراء تاريخ ٢٠٠٣/٣/٢٦ الذي حدد ما هية الضرر وحجمه ومداه وعناصره ونتائجه .

٢٠٢٥ـ٥٠-١٢٨٧٨

٧

ج –الزام الدولة بدفع التعويض الموازي للضرر كما هو محدد ومفصل في تقرير لجنة الخبراء مع الاحتفاظ عن ما يصيبها من ضرر مستديم بعد تاريخ معاودة العمل او في حال تفاقم الضرر .

د –الحكم على الدولة بالفائدة على المبلغ المحكوم به وذلك منذ تاريخ صدور الحكم وحتى الدفع الفعلي ، وكذلك رسملة الفوائد .

هـ –الزام الدولة بان تدفع سلفة لها عن قيمة المبلغ المطالب به عملا باحكام المادة ٦٦ – ثالثا   – من نظام مجلس شورى الدولة ، وعلى ان لا تقل السلفة عن نصف المبلغ المطالــب به .
و –الاحتفاظ بجميع الحقوق والمطاليب التي قد تظهر فيما بعد .

ز –تضمين الدولة العطل والضرر والرسوم والمصاريف واتعاب المحاماة .

وبما انه بتاريخ ٢٠٠٥/٤/١٨ تقدمت المستدعى ضدها بلائحة ابرزت فيها مطالعة وزارة المالية التي تفيد بان " لا علاقة لها بهذه المراجعة وهي غير معنية بموضوعها " ، ولم تدل المستدعى ضدها في هذه اللائحة بأي جواب في اساس النزاع .

وبما ان الجهة المستدعية تقدمت بمذكرة بتاريخ ٢٠٠٥/٤/٢٣ طلبت فيها الاخذ بلائحة الدولة بتاريخ ٢٠٠٥/٤/١٨ والى ضرورة تطبيق الاصول الموجزة عملا بالمادة ١٠٤ من نظام هذا المجلس ومن ضمنها القرار بالرفض جوابا على مذكرة ربط النزاع المتقدمة بتاريخ ٢٠٠٥/٣/٢٣ .

وبما انه بتاريخ ٢٠٠٥/٥/٤ صدر عن المستشار المقرر القرار القاضي بتعيين كل من الخبيرين جورج زخور وسميح قاسم للقيام بتحديد قيمة الاضرار اللاحقة بالجهة المستدعية وبالتحديد الخسارة اليومية والربح الفائت عن الفترة الممتدة من تاريخ اقفال الكسارة والمقلع

8

وتوقّفيما عن العمل في ٢٠٠٢/٩/٣٠ وحتى اعادة فتحهما بتاريخ ٢٠٠٤/٨/٣١ ، أي ما يوازي اقفال سنة واحدى عشرة شيرا .

وبما انه بتاريخ ٢٠٠٥/٥/١٠ تقدمت المستدعى ضدها بلائحة ردا على المذكرة المقدمة من الجهة المستدعية بتاريخ ٢٠٠٥/٤/٢٣ فكررت اقوالها واكدت مضمون ما ورد في اللوائح ومطالعات الادارات المختصة الموجودة في مراجعة الغرامة الاكراهية رقم ٢٠٠٣/٣٩٠ .

وبما انه بتاريخ ٢٠٠٣/٥/٢١ ابرزت المستدعى ضدها لائحة بمطالعات وزارة الداخلية والبلديات رقم ٧٢١١ تاريخ ٢٠٠٥/٥/١٣ ومطالعة وزارة البيئة رقم ٢/١٠١٩ ولائحة وزارة البيئة رقم ١٤٢٢/ب /٢٠٠٣ والمتعلقة بطلب فرض غرامة اكراهية .

وبما انه بتاريخ ٢٠٠٥/٦/١٤ تقدمت المستدعى ضدها بلائحة ابرزت فيها مطالعة وزارة الداخلية والبلديات رقم ٢١١/١ تاريخ ٢٠٠٥/٦/٦ تعليقا على القرار الاعدادي الصادر عن المستشار المقرر والمتعلق بتكليف لجنة خبراء لتحديد الاضرار ، فأيدت القرار ، وكررت موافقتيا وموقفها السابق لجهة تقرير الخبرة تاريخ ٢٠٠٣/٣/٢٦ .

وبما انه بتاريخ ٢٠٠٥/٦/٢٠ تم ايداع هذا المجلس تقرير لجنة الخبراء .

وبما انه بتاريخ ٢٠٠٥/٦/٢٢ صدر عن المستشار المقرر القرار المتضمن تكليف لجنة الخبراء الافادة عما اذا كانت الطريقة الحسابية المعتمدة في تحديد قيمة الاضرار هي الطريقة الحسابية الصحيحة والعلمية والتي تؤدي الى نتيجة دقيقة .

وبما انه بتاريخ ٢٠٠٥/٦/٢٧ اكدت لجنة الخبراء جوابا على الاستيضاح المشار اليه اعلاه ، بأن طريقة الاحتساب هي صحيحة ومعتمدة لانها تستند الى جميع المعطيات الفنية والحسابية والوائعية وان التقرير وضع بشكل مفصل وكامل ودقيق ولا يتجاهل أي أمر يتعلق بموضوع المراجعة وان الكشوفات جرت بحضور ممثلين عن كافة الادارات المعنية وعاينوا

المواقع والاضرار ووقعوا على المحاضر والكشوفات ولم تصدر ملاحظة او تحفظ لأية جهة
كانت ,

وبما انه بتاريخ ٢٠٠٥/٧/١١ تقدمت الجهة المستدعية بلائحة تعليق على تقرير لجنة
الخبراء وطلبت الاخذ بمضمونه ، واعتماد المبالغ المحددة فيه للتعويض عن الضرر الحاصل
والربح الفائت . وانه رغبة منها لتسهيل البت بهذه المراجعة ، قد تنازلت عن حقوق اخرى ( من
ضرر وربح فائت ) خلال فترة التأهيل والتصليح والتجديد ابتداء من تاريخ ٢٠٠٤/٨/٣٠ حتى
أول اسبوع من ايار٢٠٠٥ لمعاودة العمل ، ويضاف الى ذلك تراكم الفوائد والتأخير في تنفيذ
العقود والالتزامات . والزام الدولة بان تدفع لها التعويض المحدد في تقرير لجنة الخبراء تاريخ
٢٠٠٥/٥/٢٥ مع الفوائد وكررت اقوالها ومطالبها .

وبما انه بتاريخ ٢٠٠٥/٧/١٢ تقدمت المستدعى ضدها بلائحة تعليقا على تقرير لجنة
الخبراء والدت بان التحقيق بواسطة خبير فني وتحديد عناصر الضرر وتحقق المسؤولية وفقا لما
حددته المواد ٣٤٢-٣٦٢ من قانون اصول المحاكمات المدنية يدخل في صلاحية مجلس شورى
الدولة . واكدت على مضمون لوائحها ومطالعات الادارات المختصة والتي ابرزت في مراجعة
الغرامة الاكراهية رقم ٢٠٠٣/٣٩٠ .

وبما ان المستدعى ضدها ابرزت بتاريخ ٢٠٠٥/٧/٢٧ لائحة تضمنت مطالعة الادارة
المختصة – وزارة الداخلية والبلديات رقم ٧٢١١ تاريخ ٢٠٠٥/٧/٢٥ وذلك تعليقا على تقرير
لجنة الخبراء وطلبت الوزارة المختصة في كتابها اتخاذ القرار اللازم على ضوء مضمون تقارير
لجنة الخبراء خاصة وانه سبق للوزارة ان وافقت على مضمون التقرير السابق بموجب لوائح ،
سابقة رقم ٧٢١١ تاريخ ٢٠٠٥/٥/١٣ ولم يطرأ ما يستدعي اعادة النظر .

وبما انه بتاريخ ٢٠٠٥/٩/٣ تقدمت الجهة المستدعية بلائحة تعليقا على التقرير ايدت فيها
التقرير وطلبت احتساب الفائدة بمعدل ٩% ابتداء من تاريخ ربط النزاع وكررت اقوالها ومطالبها
السابقة .

10

وبما ان المستدعى ضدها تقدمت بتاريخ ٢٠٠٥/٩/٦ بلائحة تعليقا على التقرير والمطالبة فطلبت عدم الاخذ بما ورد في التقرير لعدم دقته ، وفتح المحاكمة واعمال المادة ٥٨ من نظام هذا المجلس واجراء تحقيق كامل بشأن التقرير المرفوع من الخبراء والنظر بمدى تقيدها بالاصول الواجب مراعاتها في القوانين والانظمة ، وطلبت اخيرا احالة المراجعة الى مجلس القضايا سندا للمادة ٤٥ من نظام مجلس شورى الدولة نظرا للتلازم بينها، وبين المراجعة رقم ٣٩٠ /٢٠٠٣ ووحدة الاسباب والموضوع والمستدعين علما ان المراجعتين تتضمنان المستندات نفسها .

وبما انه بتاريخ ٢٠٠٥/٩/٢٤ ابرزت المستدعى ضدها مطالعة الادارة المختصة – وزارة الداخلية والبلديات رقم ٧٢١١ تاريخ ٢٠٠٥/٨/١٢ التي طلبت فيها اتخاذ القرار اللازم على ضوء مضمون تقارير لجنة الخبراء لانه سبق للوزارة ان ابدت رأيها بالموضوع بموجب لوائح سابقة ومفاده الموافقة على مضمون تقرير لجنة الخبراء ، ولم يطرأ ما يستدعي اعادة النظر.

وبما انه بتاريخ ٢٠٠٥/٩/٢٩ ابرزت المستدعى ضدها ايضا مطالعة الادارة المختصة – وزارة البيئة رقم ٢٤٨٠/ب تاريخ ٢٠٠٥/٩/٥ والتي تؤكد فيها على مضمون كتابها السابق رقم ١٠١٤ /ب و١٠١٩/ب تاريخ ٢٠٠٥/٥/١٢ والمتضمن التزامها بجميع الاحكام القضائية الصادرة عن المحاكم المختصة .

وبما انه بتاريخ ٢٠٠٥/٨/٢٠ صدر التقرير واعطيت المطالعة بتاريخ ٢٠٠٥/٨/٢٣ ونشرا في البيان ٢٣٧ بتاريخ ٢٠٠٥/٩/١ .

بناء على ما تقدم ،

<u>أولا : في طلب احالة المراجعة الحاضرة الى مجلس القضايا وضمها الى المراجعة رقم ٢٠٠٣/٣٩٠</u>

11

بما ان المستدعى ضدها تطلب، في لائحة تعليقها على تقرير المستشار المقرر المقدمة الى هذا المجلس بتاريخ ٢٠٠٥/٩/٦ احالة المراجعة الحاضرة الى مجلس القضايا سندا للمادة ٤٥ من نظام هذا المجلس نظرا للتلازم بينها وبين المراجعة رقم ٢٠٠٣/٣٩٠ ووحدة الاسباب والموضوع والمستدعين وتتضمنان المستندات نفسها.

وبما انه من الرجوع الى ملف المراجعة رقم ٣٩٠ /٢٠٠٣ المحالة الى مجلس القضايا بتاريخ ٢٠٠٣/٢/١٣ يتبين بشكل واضح ان الجهة المستدعية تطلب فيها فرض غرامة اكراهية بسبب امتناع الدولة عن تنفيذ قرار هذا المجلسرقم ٢٠٠١/٣٩٥ ، في حين ان موضوع المراجعة الحاضرة هو طلب الجهة المستدعية اعتبار الدولة مسؤولة بالتعويض عن الاضرار التي لحقت بها بسبب تقاعسها وتأخرها في تنفيذ القرار رقم ٢٠٠١/٢٩٥ خلال مهلة معقولة ، مما يعني عدم وجود وحدة في موضوع وسبب كل من المراجعتين .

وبما ان اجتهاد هذا المجلس الاخير اعتبر " ان الغرامة الاكراهية لها طابع العقوبة والاكراه بسبب عدم امتثال الادارة لقوة القضية المحكمة التي تتمتع بها الاحكام او القرارات القضائية وتمنعها بالتالي عن تنفيذ قرار قضائي ملزم او تأخرها في تنفيذه، والغاية من كل ذلك الزامها بالتنفيذ وليس لها طابع التعويض عن الضرر، ولا يمكن ان تكون سببا للاثراء والا فقدت طبيعتها القانونية ، ويعود للقاضي لمر تحديد قيمتها في ضوء معطيات كل قضية وبصرف النظر عن الضرر اللاحق بصاحب العلاقة بسبب عدم التنفيذ او التأخير في التنفيذ ، الذي يمكن ان يشكل موضوعا لمراجعة مستقلة للتعويض عن هذا الضرر ".

يراجع :

م.ش.ل. قرار رقم ٢٠٠٢/٢٤٣-٢٠٠٣ تاريخ ٢٠٠٣/١/١٦ الصيدلي محمد علي قليسلات / الدولة وزارة الصحة ، وقرار رقم ٣٨٦تاريخ ٢٠٠٣/٣/١٨ ، المؤهل شرف الدين / الدولة ( غير منشور ) .

وبما ان العلم والاجتهاد اقرا ايضا بان الغرامة الاكراهية ليس لها طابع التعويض عن ضرر ، سواء بسبب الامتناع عن تنفيذ القرارات القضائية او التأخير في تنفيذها ، وهي مستقلة

12

عن تعويض العطل والضرر ، ولا يمكن ان تحل محل المطالبة بالتعويض عن الضرر الناتج
عنها ، لان الغرض منها هو ضمان تنفيذ قرار القضاء .

" La spécifité de l'astreinte est affimée par l'art . 3 : L'astreinte est
indépendante des dommages et intérêts . Elle ne tend pas réparer un
préjudice mais à obtenir l'exécution d'une décision de justice par
l'administration....
(Tercinet , la loi N.80-539 du 16 juill. 1980 AJDA 1981 p. 7)

Or , à l'évidence les notions de dommages et intérêts et d'astreintes
sont totalement distinctes . La fonction des dommages et intérêt est de
réparer aussi exactement que possible le préjudice causé au titulaire d'une
décision de justice . La fonction des astreintes est , au contraire , d'inciter
directement le débiteur à exécuter les édictions du juge .

J.cl. adm. Fascicule 1114( 2, 1997 ) , Injonction et Astreinte

« Il y a lieu de noter que l'astreinte ne se substitue en aucune manière
aux intérêts moratoires dus pour payement tardif, et ne peut dispenser de
s'acquitter ; de ces intérêts de retard . Elle est également indépendante des
dommages et intérêts qui pourront être éventuellement alloués en réparation
du préjudice causé par l'exécution tardive du jugement , puisque l'astreinte
vise seulement à assurer l'exécution d'une décision de justice »

J.cl. Adm. Fas. 1114(2,1997 ) injonction et Astreinte .

وبما ان المادة ٥٦٩ من قانون اصول المحاكمات المدنية اللبناني نصت ايضـــا علي
ان " تعتبر الغرامة الاكراهية متميزة عن بدل التعويض " .

وبما ان المشترع الفرنسي نص على استقلالية الغرامة الاكراهية عن العطل والضرر
وذلك في المادة السادسة من القانون رقم ٥٢٩/٨٠ والمادة ٣٤ من قانون ٩ تموز ١٩٩١ حيث
نصتا على ما يلي :

(L'astreinte est indépendante des dommages – intérêts )

٢ت ،٥٠.١٢٨٧٨

13

وبما أن اجتهاد محكمة التمييز في فرنسا استقر على " اعتبار الغرامة الاكراهية تتميز عن بدل التعويض ( العطل والضرر ) لانها وسيلة لاجبار المدين على تنفيذ الموجب عينا وليس التعويض عن العطل والضرر .وذلك عن تهديد المدين بدفع مبلغ نقدي متزايد مع ازدياد تعنته وازدياد مدة امتناعه عن التنفيذ ومقاومته لحكم القضاء " .

Cass. Civ. 28/2/89 , Rec. Civ. N° 97 .p. 62
Cass. Civ. 29/3/90 , Rec . Civ. P. 245.

وبما انه يستفاد مما تقدم ، انه ليس هناك من امكانية للجمع بين مسؤولية الادارة بالتعويض عن عدم تنفيذ القرارات القضائية او عن التأخر في تنفيذها ، وبين الغرامة الاكراهية ، فالغرامة الاكراهية شرعت للضغط على الادارة من أجل تنفيذ القرارات القضائية ، وهذا ما يفهم من نص الفقرة الاخيرة من المادة ٩٣ من نظام مجلس شورى الدولة .

وبما انه فضلا عن ذلك ، فانه من الثابت انه بتاريخ ٢٠٠٤/٨/٣١ قام رجال الدرك بتنفيذ قرار محافظ جبل لبنان رقم ٥٤٩ /م تاريخ ٢٠٠٤/٨/٣١ والمتضمن تنفيذ قرار مجلس شورى الدولة رقم ٢٠٠١/٢٩٥ وذلك " برفع الاختام عن الآليات والمعدات والمنشآت والموجودات وتسليمها الى اصحابها بغية استثمارها وفقا لمضمون التراخيص ومعاودة العمل عملا بالاحكام المذكورة لمجلس شورى الدولة والحقوق المكتسبة ولقوة القضية المقضية العائدة لقرارات مجلس شورى الدولة المذكورة اعلاه ".

وبما ان المستدعى ضدها بتنفيذها قرار مجلس شورى الدولة رقم ٢٠٠١/ ٢٩٥ ، فانه لم يعد هناك من فائدة لضم المراجعة الحاضرة الى المراجعة رقم ٢٠٠٣/ ٣٩٠ وبالتالي يقتضي رد طلب المستدعى ضدها بضم المراجعتين وباحالة المراجعة الى مجلس القضايا .

ثانيا : في الشكل :

14

بما ان المراجعة الحاضرة مقدمة ضمن المهلة القانونية ومستوفية لسائر شروطها الشكليـــة ، فأنه يقتضي قبولها شكلاً .

<u>ثالثاً : في الاساس :</u>

بما ان الجهة المستدعية تطالب اعلان مسؤولية الدولة عن عدم تنفيذ قرار مجلس شورى الدولة رقم ٣٩٥/٢٠٠١-٢٠٠٢ تاريخ ٢٩/٣/٢٠٠١ ، والزامها بما يلي :

ـــ بأن تدفع لها التعويض الموازي للضرر الحاصل ابتداء من تاريخ التوقف عن العمل في ٢٠٠٢/٩/٣٠ وحتى صدور قرار محافظ جبل لبنان رقم ٥٤٩/م تاريخ ٢٠٠٤/٨/٣١ والمتضمن اعادة العمل بالكسارة والمقلع ، وذلك وفق تقرير لجنة الخبراء الذي حدد ماهية الضرر وحجمه وعناصره ونتائجه .

ـــ بدفع فائدة المبلغ المطالب به ورسملة الفائدة .

ـــ بأن تدفع لها سلفة عن قيمة المبلغ عملاً باحكام المادة ٦٦– ثالثاً من نظام مجلس شورى الدولة وعلى ان لا تقل هذه السلفة عن نصف المبلغ المطالب به .

ـــ بدفع العطل والضرر

أ– <u>في المسؤولية</u>

بما ان الجهة المستدعية تطالب بادئ ذي بدء اعلان مسؤولية الدولة عن عدم تنفيذ قرار مجلس شورى الدولة رقم ٣٩٥/٢٠٠١-٢٠٠٢ تاريخ ٢٩/٣/٢٠٠١ الذي اصبح مبرما ومتمتعا بقوة القضية المحكمة ونتج عنه حقوق مكتسبة .

وبما ان الجهة المستدعية تدلي بان رفض الدولة احترام قوة القضية المحكمة يشكل خطأ فادحاً وجسيما ، وان خطأ الدولة يمنحها حقا مكرسا للمطالبة بالتعويض ، وان الخطأ والتقاعس

15

والاهمال اصاب حقا مكتسبا ، من جهة حيازتها على رخصة استثمار قانونية ومن جهة ثانية بحصولها على حكم مبرم وضعها في مرتبة محمية وخولها حقوقا يستحيل تجاهلها .

وبما ان الدولة تبلغت المراجعة ومرفقاتها ، ولم تدل بأي سبب لردها ، كما لم تنازع ولم تقدم أي تعليق على تقرير لجنة الخبراء ، معتبرة ان تحديد المسؤولية والتعويض المترجب للجهة المستدعية يدخل في اختصاص هذا المجلس ، مما يعني انه يقتضي السير في المراجعة بحالتها الحاضرة في ضوء ملف المراجعة والمستندات المرفقة بها وبالمراجعة رقم ٢٠٠٣/١١٢٩٩ والمتعلق بطلب غرامة اكراهية ، بما فيها تقريري اجنتي الخبراء .

وبما انه يستفاد من ملف المراجعة بما خلاصته :

ـ انه بتاريخ ١٩٩٩/٧/٢٨ صدر قرار مجلس الوزراء رقم ٣١ المتعلق باستثمار الكسارات والمقالع والمتضمن احكاما تخص الرخص والتراخيص والتوقيف عن العمل ومنع الاستثمار وتفكيك الكسارات والمنشآت ، واعطاء مهلة ادارية اقصاها سنتان وثلاثة اشهر لتفكيك الانشاآت .

ـ انه بتاريخ ١٩٩٩/٩/٢٠ تقدمت المستدعية بمراجعة لدى مجلس شورى الدولة لابطال القرار رقم ٣١ المشار اليه اعلاه ، فاصدر هذا المجلس بتاريخ ٢٠٠١/١٢/١٣ القرار رقم ٢٠٠١/٣٩٥-٢٠٠٢ القاضي بابطال القرار رقم ٣١ الصادر عن مجلس الوزراء في القسم منه غير التنظيمي . وقد تضمن القرار رقم ٢٠٠١/٣٩٥-٢٠٠٢ ما حرفيته : " ...... ان جميع الرخص الممنوحة مطابقة تماما لاحكام القانون والانظمة ، ولم يتعرض الاستثمار الى أي منع او توقف من أي نوع كان كما ان المستدعية وجدت في مرتبة قانونية محمية وفق احكام القانون والانظمة وفي وضع قانوني لا يثنائى والاحكام القانونية وبالتالي يترتب عن هذا الوضع القانوني حقوقا مكتسبة " .

ـ بما انه وعلى الرغم من وضوح القرار رقم ٢٠٠١/٣٩٥-٢٠٠٢ المشار اليه اعلاه ، تقدمت المستدعى ضدها الدولة من هذا المجلس بمراجعة تفسير صدر على اثرها القرار رقم ٢٠٠٢/٣٤٧-٢٠٠٣ تاريخ ٢٠٠٣/٣/١٠ والذي خلص الى التأكيد الى " ان قرار مجلس الوزراء

16

رقم ٣١ تاريخ ١٩٩٩/٧/٢٨ – في القسم منه غير التنظيمي – والخاص بالجهة المستدعية – قد ابطل وبالتالي تكون شروط الاستثمار متوافرة في هذا الاطار " .

وبما انه من الثابت انه بتاريخ ٢٠٠١/٤/١٠ تم تبليغ القرار رقم ٢٠٠١/٣٩٥-٢٠٠٢ الى هيئة القضايا في وزارة العدل ، وان الجهة المستدعية تقدمت بتاريخ ٢٠٠٢/١٠/١٨ بطلب تنفيذ القرار الى رئيس هذا المجلس مرفقا بصورة صالحة للتنفيذ عنه ، فاحاله بتاريخ ٢٠٠٣/١/٢١ الى الدولة – رئاسة مجلس الوزراء للتنفيذ عملا باحكام المادة ١٢٦ من نظام هذا المجلس ، وقد تم تبليغه من رئاسة مجلس الوزراء .

وبما انه لا يتبين ان المستدعى ضدها قد طعنت بالقرار رقم ٢٠٠١/٣٩٥-٢٠٠٢ عن طريق اعادة المحاكمة او تصحيح الخطأ المادي وقد انقضت كافة مهل الطعن واصبح القرار مبرما ويتمتع بقوة القضية المقضية .

وبما ان قوة القضية المقضية هي من المبادئ العامة المستقرة التي وضعها الاجتهاد في القانون الخاص والعام على السواء .

      Elaborée par la jurisprudence et la doctrine privatistes , la règle a passé telle quelle en droit administratif . Il s'agit là d'un de ces principes généraux du droit que le Conseil d'Etat applique , à défaut de texte contraire .... ( C.E. 26 juil . 1912 chem . de fer p. o. et Midi ) .... Cette régle a été confirmée par un arrêt du Conseil d'Etat du 26 janv.1940 Courajoux ... ainsi que par un arrêt du tribunal des conflits du 12 déc. 1942 Préfet de l'Ain .
      (notes Pr. Weil sous C.E. 28 déc. 1949 Soc. Berliet , D 1950,111.383)

وبما ان قوة القضية المحكوم فيها تلزم القضاء نفسه فلا يجوز اعادة النظر في حكم نهائي بسبب التحول في الاجتهاد .

      Un revirement de jurisprudence ne permet pas la remise en cause d'une décision définitive ( C.E. 25 juin 1939 Sauvaire ,rec 550-3 fév.1971 Soc.d'aménagement foncier de l'Aveyron ,rec ,91 ) .

17

(Encycl. Dalloz Cont. Adm. 2002, T.I, Chose jugée n°125) .

كما ان قوة القضية المحكوم فيها تلزم الحكومة وحتى المشرع اللذين لا يعود لهما مراقبة
الاعمال القضائية .

" Pour le juge constitutionnel en effet : il n'appartient ni au
législateur , ni au gouvernement de censurer les décisions des    juridictions
( déc. 80-119 DC du 22 juil .1980 ,rec,46 ) . Or selon le juge constitutionnel
, la validation par le loi de l'acte administratif qui a été annulé par une
décision passée en force jugée équivaut à une censure de l'activité
juridictionnelle « .

( Long et autres , les grands arrêts de la juris. adm. 2001, p.588 ) .

وبما ان قرارات الابطال بسبب تجاوز حد السلطة تنتج مفاعيلها تجاه الجميع ، وتلزم
الادارة بمجموعها وجميع الوزراء ، ويجب احترامها في جميع العلاقات القانونية بين صاحب
العلاقة والمرافق العامة .

'L'annulation pour excés de pouvoir a effet erga omnes : elle
s'impose à l'administration toute entière , à tous les ministres qui , tous
doivent se conformer à la décision rendue ( C.E . Sect. 2 déc. 1938 Spinetta ,
rec,904) .
A cet égard , la décision doit désormais , en toutes hypothèses , être
aussi respectée dans l'ensemble des relations juridiques entre l'intéressé et
les services publics ( C.E 23 déc .1947 Gouv.général de L'Indochine
rec,675 ) .

( Concl. Guionin sous C.E 28 déc.1949 Soc . Berliet
S.1951,111.7 ) .

وبما انه يترتب على الادارة ، ليس فقط ، الا تتخذ أي تدبير يمكن ان يتعارض مباشرة
مع القضية المحكوم فيها ، بل وان تستنتج ، بالاضافة الى ذلك ، كل ما تستلزمه من نتائج
ضرورية وحينئذ فقط يمكن القول انها احترمت قوة القضية المحكوم فيها ونفذتها .

18

« L'administration a donc l'obligation juridique de ne
rien faire qui soit en contradiction de la chose jugée . Mais dans la plupart
des cas , en s'abstenant ainsi d'agir directement à l'encontre de la chose
jugée , elle ne la respecte pas encore suffisamment . Il lui faut , en outre ,
pour remplir l'intégralité de ses obligations à cet égard , tirer les
conséquences nécessaires de la chose jugée ; c'est seulement alors que la
chose jugée est intégralement respectée et exécutée ' .

( R. Odent , Cont .adm.1676-01 p.1300 ) .

وبما ان الحكم متى اصبح نهائيا ومبرما ، لا يجـــــوز المسـاس به

لأنه يعتبـــــر بنظـــــر القانـــــون عنوانــــا للحقيقــة « Définitif et intangible

" res judicata pro veritate habetur '
C.E. Ass. 16 Mars 1943 Dauriac , D. 1946  p. 141 , Concl .LEFAS

ولا يجوز بعد ذلك الرجوع عنه أو معارضته أو عدم تنفيذه ،

Ce qui a été jugé ne peut l'être de nouveau
Ce qui a été jugé  ne peut être contredit
Ce qui a été jugé doit être exécuté .

وبما انه من الثابت من اوراق الملف ان المستدعى ضدها ، وعلى الرغم من تبلغيا
صورة صالحة للتنفيذ عن القرار المطلوب تنفيذه والذي يتمتع بقوة القضية المحكمة  ومطالبة
الجهية المستدعية بالتنفيذ ، لم تقم بالتنفيذ وباعطاء الابطال مفاعيله وذلك باعتبار القرار رقم ٣١
الذي ابطل كأنه لم يكن :
" Les actes annulés pour excès de pouvoir sont reputés n'être jamais
intervenus . Jur.cl. 1995".

وذلك على الرغم من تنبيه المراجع المختصة في الدولة من وجوب ضرورة التقيد بالاحكام
القضائية وتنفيذها وهي التالية :

19

١-التوصيية التي أقرها مجلس النواب بتاريخ ٢٠٠٣/٧/١٥ والمتضمنة الطلب الى الحكومة وجوب التقيد بالأحكام القضائية وتنفيذها فورا ، وأن تعود الحكومة عن كل مرسوم أو قرار يتعارض أو يناقض مضمون هذه الأحكام او الائتقاف عليها بشكل يسلبها قوة القضية المحكمة .

٢-كتاب رئاسة مجلس الوزراء رقم ١٠١٥/ ص تاريخ ٢٠٠٣/٧/١٦ ، الموجه الى وزارة الداخلية والبلديات والمتضمن الطلب· الى هذه الوزارة تنفيذ قراري مجلس شورى الدولة المذكورين وذلك لتمكين الجهة المستدعية من إعادة استثمار المقالع والكسارة خاصتها .

٣-كتاب وزارة البيئة رقم ٢١٢٩/ب تاريخ ٢٠٠٤/٧/٢٤ الموجه الى رئاسة مجلس الوزراء والمتضمن أن القرارين الصادرين عن مجلس شورى الدولة ، هما مبرمين ويتمتعان بقوة القضية المحكمة عملا باحكام المادة ٩٣ من نظام هذا المجلس ، وإن الوزارة تحترم الأحكام القضائية وتعترف بالزاميتها وتنفيذ احكاميا ،

٤-كتاب وزير العدل رقم ٣/٤١٨ تاريخ ٢٠٠٤/٧/٣٠ الموجه الى رئاسة مجلـــــس الوزراء والمتضمن ان المادة ٩٣ من نظام مجلس شورى الدولة تنص انه على الشخص المعنوي من القانون العام ان ينفذ في مهلة معقولة الاحكام المبرمة الصادرة عن مجلس شورى الدولة تحت طائلة المسؤولية .

٥-كتاب رئاسة مجلس الوزراء رقم ١٧٣٧/م تاريخ ٢٠٠٤/٨/٣ الموجه الى رئاسة مجلس النواب ( بموضوع السؤالان النيابيان المقدمان من النائب السيد نقولا فتوش حول عدم تنفيذ القرارين رقم ٢٣٦ تاريخ ٢٠٠١/١٢/١٣ ورقم ٢٩٥ تاريخ ٢٠٠١/٣/٢٩ الصادرين عن مجلس شورى الدولة ، وحول عدم التقيد بمضمون التوصية النيابية المتعلقة بإلغاء القرارات التي تلتف على القضية المحكمة ) والمتضمن أن هذه الرئاسة بكتابيها رقم ١٠١٥/ص و١٠١٦/ص ، تاريخ ٢٠٠٣/٧/١٦ اودعت وزارتي البيئة والداخلية والبلديات صورة صالحة للتنفيذ عن كل من قراري مجلس شورى الدولة مدار البحث ، وطلبت الى الوزارتين المذكورتين اجراء المقتضى وفقا للأصول وذلك بغية تمكين الجهة المستدعية من اعادة استثمار المقلع والكسارة خاصتها .

20

٦-كتاب وزير المالية رقم ١٣٣٤/ص تاريخ ٢٠٠٤/٧/٢٧ الموجه الى رئاسة مجلـس الوزراء والمتضمن تحذيرا الى المستدعى ضدها من ان قرار الاقفال كان قرارا متسرعا وادى الى آثار سلبية ، لا سيما بالنسبة الى خزينة الدولة والاقتصاد الوطني بصورة عامـة ، مع الاشارة الى انه ورد في الكتاب المشار اليه اعلاه ما حرفيته :

" لقد صدرت توصية نيابية بتاريخ ٢٠٠٣/٧/١٥ تطلب من الحكومة تنفيذ
" الحكمين الصادرين لمصلحة موكلي النائب فترش والرجوع عن كـــــل
" قرار او مرسوم يلتف على التنفيذ والقضية المحكمة . <u>في هذا الشأن فإنه</u>
" ما من شك في وجوب الأخذ بمضمون التوصية تجنبا للتبعات القانونيـــــة
" والمالية التي يمكن ان تترتب عن ذلك ، بما يؤدي الى تحميل الخزينـــــة
" اعباء مالية هي حتما بغنى عنها .

بما انه ، وعلى الرغم من التوصية النيابية وكتب المراجع المختصة ، التي تضمنت جميعها وجوب تنفيذ الاحكام القضائية والتقيد بها ، والمشار اليها اعلاه ، فان المستدعى ضدها تنكرت لقوة القضية المقضية الملازمة للقرار رقم ٣٩٥/٢٠٠١ ، واتخذت تدابير عديدة متلاحقة نؤكد تجاهلها القرار وعدم التسليم به وهي التالية :

١ -بتاريخ ٢٠٠٢/٧/١١ صدر عن مجلس الوزراء القرار رقم ٢ محضر ٧٧ قرر فيه الموافقة على مشروع مرسوم جديد لتنظيم المقالع والكسارات مع بعض التعديلات ووقف العمل في جميع المقالع والكسارات بعد انقضاء شهرين من تاريخ العمل بالمرسوم .

٢-بتاريخ ٢٠٠٢/٩/٢٦ اصدر مجلس الوزراء القرار رقم ١٠ تاريخ ٢٠٠٢/٩/٢٦ وافق فيه على مرسوم تنظيم استثمار المقالع والكسارات وفقا لقراره رقم ٢ تاريخ ٢٠٠٢/٧/١١ .

٣-بتاريخ ٢٠٠٢/١٠/٤ صدر المرسوم ٨٨٠٣ المتعلق بتنظيم المقالع والكسارات وقد نصت المادة ٢٨ منه على ان توقف عن العمل جميع المقالع والكسارات بتاريخ ٢٠٠٢/٩/٣٠ .

٢٠٠٥٠١٢٨٧٨ ت.

21

٤-بتاريخ ٢٠٠٢/١١/٧ اصدر مجلس الوزراء القرار رقم ٢٣ محضر ٩٥ قرر فيه الطلب الى وزارة البيئة والمحافظين المباشرة فوراً بتطبيق قرار المجلس رقم ١٠ تاريخ ٢٠٠٢/٩/٢٦ لجهة اقفال جميع المقالع والكسارات بدون استثناء بما فيها تلك التي تحمل ترخيصاً .

٥-صدور عدة اوامر برقية عن قائد درك منطقة جبل لبنان وآمر فصيلة بحمدون وقائد سرية عالية وهي تتضمن الطلب الى اقفال المقالع والكسارات والمراصل العاملة في نطاق جبل لبنان اقفالاً تاماً ، ونفيد انه اوقف العمل في كسارة ومقالع بيار وموسى فترش بناء لقرار مجلس الوزراء ، وتطلب النشدد بمراقبة كسارة الجهة المستدعية لمنعها من القيام بأية اعمال .

وبما ان المستدعى ضدها لم تكتف باتخاذ التدابير المشار اليها اعلاه لاعاقة تنفيذ القرار رقم ٢٠٠١/٣٩٥-٢٠٠٢ اذ هي اقدمت بتاريخ ٢٠٠٢/٩/٣٠ على اقفال كسارة الجهة المستدعية اقفالاً تاماً بوضع الاختام وحتى ٢٠٠٤/٨/٣١ أي ما يقارب سنة واحدى عشر شهراً مما الحق اضراراً جسيمة بالجهة المستدعية كما هو مفصل وثابت في تقريري لجنتي الخبراء .

وبما انه وعلى ضوء ما تقدم ، فان تقاعس المستدعى ضدها وتأخرها في تنفيذ قرار مجلس شورى الدولة رقم ٣٩٥ الذي اعتبر " ان جميع الرخص الممنوحة للجهة المستدعية مطابقة تماماً لاحكام القانون والانظمة وانها وجدت في مرتبة قانونية محمية .... " ينطوي على مخالفة وتجاهل حجية الشيء المقضى به .

وبما ان هذا المجلس اعتبر ان تجاهل الادارة الشيء المقضي به في قضاء الابطال يشكل تجاوزا لحد السلطة كما يشكل هذا التجاهل خطأ من شأنه ان يرتب مسؤولية السلطة العامة ( قرار رقم ٩٨/٥٦٩ -٩٩ تاريخ ٢٧/٥/١٩٩٩ .
م.ق.أ ٢٠٠٣ مجلد ٢ ص. ٦٠٧ )

22

وبما انه عملا باحكام المادة ٩٣ من نظام هذا المجلس المعدلة فان " احكام مجلس شورى الدولة ملزمة للادارة . وعلى السلطات الادارية ان تتقيد بالحالات القانونية كما وصفتها هذه الاحكام وعلى الشخص المعنوي من القانون العام ان ينفذ في مهلة معقولة الاحكام المبرمة الصادرة عن مجلس شورى الدولة تحت طائلة المسؤولية ... " .

وبما انه من الثابت ان المستدعى ان تجاوزت المهلة المعقولة المعطاة لها للتنفيذ بشكل غير مألوف ، اذ هي تبلغت القرار المطلوب تنفيذه بتاريخ ١٠/٤/٢٠٠١ وامتنعت عن تنفيذ مضمونه  حتى تاريخ ٣١/٨/٢٠٠٤ حيث اصدر محافظ جبل لبنان القرار رقم ٥٤٩/م تاريخ ٣١/٨/٢٠٠٤ والقاضي "برفع الاختتام واعادة الاستثمار وفقا للتراخيص ولاحكام مجلس شورى الدولة والحقوق المكتسبة ولقوة القضية المحكمة وبناء الى طلب الوزارات والادارات المختصة" . وقد نفذت القوى الامنية قرار المحافظ بموجب المحضر رقم ٢٣١/٢٠٠٤ .

وبما ان الاجتهاد الفرنسي استقر على القول بان الادارة لديها مهلة معقولة لتنفيذ الاحكام القضائية . وفي حال عدم التنفيذ خلال هذه المهلة فانً هذا التصرف يشكل خطأ .

L'Administration dispose d'un délai raisonnable pour exécuter la décision juridictionnelle qui lui a été notifiée .

Au – delà de ce delai raisonnable , la non-exécution d'un jugement est constitutive d'une faute ( C.E 16 nov.1960 Peyrat Rec. P. 625 )

وبما انه فضلا عن ذلك ، فان اجتهاد هذا المجلس مستمر على اعتماد مسؤولية الادارة تجاه المواطنين عندما تتقاعس عن تنفيذ الاحكام القضائية الصادرة لمصلحتهم والتي اوضحت دوائر التنفيذ حسب الاصول ، وبالتالي فانه من حق المتقاضي ان يطالب بالتعويض اذا ما تجاوز التأخير مدة معقولة واذا ما نتج له ضرر من جراء عدم التنفيذ .

( م.ش ل رقم ٢٥٥ تاريخ ٢٤/١/١٩٩٥  م ق . أ ١٩٩٦ ص. ٢٧٩ ، قرار رقم ٢١٩ تاريخ ١٤/١/١٩٩٨ ملفينا خوري / الدولة  م.ق.أ ١٩٩٩ مجلد ١ ص. ٢٥٣ ) .

كما أن الامتناع والتقاعس عن تنفيذ القرارات القضائية المبرمة بدون مبرر يشكل خطأ يرتب مسؤولية الادارة ( قرار رقم ٦٢ تاريخ ٩٦/١١/١٢ اليس حيسي / الدولة – م.ق.أ عدد ١٢ ، ١٩٩٨ مجلد ١ ص.٨٢ ) ( قرار رقم ٢٨٨ تاريخ ٩٧/٢/٢٠ عيثاني / الدولة م.ق.أ عدد ١٢ ، ١٩٩٨ مجلد صز٣٠٣ ) وقرار رقم ٢٨٩ تاريخ ٩٧/٢/٣٠ عون / الدولة – وزارة الداخلية م.ق.أ عدد ١٢ ، ١٩٩٨ مجلد ١ ص . ٣٠٥ .

وبما ان الاضرار التي لحقت بالجهة المستدعية نتيجة التقاعس والتأخير في تنفيذ قرار هذا المجلس رقم ٢٠٠٢-٢٠٠١/٣٥٩ هي جسيمة واكيدة ، وان الرابطة السببية ثائمة ببن عدم التنفيذ والاضرار الحاصلة كما حددها تقرير الخبراء .

وبما ان المستدعى ضدها لم تقدم أي دليل عن ان الاضرار كانت نتيجة خطأالجهة المستدعية او نجم عن قوة قاهرة او عن فعل الغير لاعفائها من المسؤولية او تخفيفها عنيا .

وبما ان عدم ادلاء الجهة المستدعى ضدها باي سبب لرد المراجعة الحاضرة يبرر عدم تنفيذ حكم قضائي مبرم ، يشكل بدون منازع قرينة على صحة ما ادلت به الجهة المستدعية لناحية مسؤولية الدولة .

وبما انه تأسيسا على ما تقدم فانه مما لا جدال فيه ان المستدعى ضدها بتأخرها وتقاعسها عن تنفيذ الحكم القضائي رقم ٢٠٠٢-٢٠٠١/٣٩٥ الصادر لمصلحة الجهة المستدعية واقفال الكسارة بالرغم من وجود رخصة قانونية منحت لمدة ٢٥ سنة وبالرغم من وجود حقوق مكتسبة ، تكون قد ارتكبت خطأ جسيما ، مما يجعلها مسؤولة بالكامل عن الاضرار اللاحقة بالجهة المستدعية.

ب-في التعويض :

بما ان الجهة المستدعية تطلب الزام الدولة بان تدفع لها قيمة التعويض عن الضرر اللاحق بها والناتج عن مسؤوليتها في عدم تنفيذ الحكم القضائي المبرم الصادر عن مجلس شورى

24

الدولة رقم ٢٥٩/٢٠٠١-٢٠٠٢ وذلك وفق تقرير لجنة الخبراء التي أودعت تقريرها هذا المجلس بتاريخ ٢٠٠٥/٦/٢٠ ، وإلزام الدولة بان تدفع لها ايضا فائدة هذا المبلغ ورسملة النوائد والعطل والضرر والرسوم والمصاريف .

وبما ان تحديد التعويض يستلزم الاستعانة باهل الخبرة والاختصاص للقيام بتحقيق ومعاينة فنية ، صدر بتاريخ ٢٠٠٣/١/٣٠ عن الرئيس المقرر القرار المتضمن تكليف لجنة من الخبراء في المراجعة رقم ٢٠٠٣/١١٢٩٩ مهمتها الكشف على عقارات الجهة المستدعية في خراج منطقة عين دارة العقارية ، وبعدها تحديد الاضرار اللاحقة من جراء وقف العمل في الكسارة والمقلع وتحديد الربح الفائت والخسارة اليومية الناتجة عن معدات الانتاج وتوابعها عند توقيفها عن العمل وتحديد الربح الفائت المستقبلي على السنوات المتبقية من الرخصة .

<u>- في تقرير لجنة الخبراء الاولى :</u>

بما انه يتبين من الاطلاع على التقرير الذي تم ايداعه هذا المجلس بتاريخ ٢٠٠٣/٢/٢٦ ان اللجنة قامت بتحديد العناصر التالية :

أولا : الكشف على العقارات العائدة للجهة المستدعية .

ثانيا : تحديد الربح الفائت اليومي والمستقبلي .

ثالثا : عنصر الضرر المتمثل بالضرر الشامل .

وبما ان اللجنة في معالجتها للعناصر الثلاثة المشار اليها اعلاه ، قامت بتحديد حجم الاضرار اللاحقة بالجهة المستدعية وتقدير التعويض عنها ، على الشكل التالي :

دولار اميركي بالملايين

أولا : -قيمة ارض الموقع ( مليون متر مربع)     ١٧،٠٠٠

. -كلفة الحفر لتجهيز وشق الطرقات     ١٣،٢٠

25

| | |
|---|---|
| ٢٥ ،٨٥ | -كلفة نقل المواد |
| ٥٦ ،،٥ . | مجموع كلفة تحضير الموقع ومصاريف التأسيس : |

ثانيا :

| | |
|---|---|
| ١٠٢،٦٠٠ د.أ | - الربح الفائت اليومي والخسارة اليومية |
| ٤٤٨ ،٨٧٥ ،٠٠٠ د.أ | - اجمالي الربح الفائت للسنوات المتبقية (٥، ١٧ سنة ) |
| ٢٠٨ ،١١٤ ،٠٠٠ د.أ | -القيمة الحالية للربح الفائت محسوما باستخدام ١٠% |

ثالثا :

| | |
|---|---|
| ٢٥٢٧٢ د.أ | -الربح الفائت اليومي او الخسارة اليومية للشاحنات |
| ٦٣١٨،٠٠٠ د.أ | -الربح الفائت السنوي للشاحنات (٢٥٠ يوم عمل ) |
| ١١،٥٦٥،٠٠٠ د.أ | - اجمالي الربح الفائت السنوي من ٢٠٠٣-٢٠٢٠ |

وبما ان اللجنة خلصت الى وضع جدول بالربح الفائت على الوجه التالي :

الربح الفائت ( دولار اميركي )

| | اليومي | على ٥،١٧ سنة | القيمة الحالية(١٧،٥ سنة) |
|---|---|---|---|
| الكسارات والمقالع | ١٠٢٦٠٠ | ٤٤٨٨٧٥،٠٠٠ | ٢٠٨١١٤،٠٠٠ |
| الشاحنات | ٢٥٢٧٢ | ١١،٥٦٥،٠٠٠ | ٥١٢٦٢،٠٠٠ |
| المجموع | ١٢٧٨٧٢ | ٥٥٩٤٤،٠٠٠ | ٢٥٩٣٧٦،٠٠٠ |

وبما انه يستفاد من الجدول اعلاه ، ان اللجنة المكلفة من قبل هذا المجلس قدرت الربح الفائت للسنوات المتبقية من الترخيص للاستثمار بمبلغ ٥٥٩٤٤،٠٠٠ دولار اميركي ، خمسماية وتسعة وخمسون مليونا واربعماية واربعون الف دولار اميركي ) الا ان القيمة الحالية للربح الفائت – أي بتاريخ وضع هذا التقرير – تبلغ ٠٠٠ ،٣٧٦ ،٢٥٩، د.أ دولار اميركي باستخدام حسم ١٠% مشيرة الى ان هذا الاحتساب، لا يأخذ في الاعتبار اية زيادة يمكن ان تطرأ على اسعار البيع او الاكلاف خلال الفترة المتبقية من الرخصة .

وبما انه يتبين من اوراق الملف ان المستدعى ضدها تبلغت تقرير لجنة الخبراء بتاريخ ٢٠٠٣/٣/٢٦ ، وانه بعد انقضاء اكثر من شهرين على هذا التبليغ وجهت رئاسة الحكومة

بموجب كتابها رقم ٣٧٥٥ تاريخ ٢٠٠٣/٥/٢٠ الى هيئة القضايا في وزارة العدل تطلب فيه ما حرفيته :

" بما ان هيئة القضايا تابعت ملف الخبرة من خلال دعوتها لحضور اعمال الكشف، والوقوف على تنفيذ مهمة لجنة الخبراء . فاننا نترك لهيئة القضايا التعليق على مضمون تقرير لجنة الخبراء بالتعاون مع الادارات المختصة " .

وبما انه بتاريخ ٢٠٠٣/٥/٢٤ تقدمت هيئة القضايا بلائحة لم تتضمن أي اعتراض على ما جاء في تقرير الخبرة . ولم تناقش فيها العناصر الثلاثة التي عالجها التقرير ، ولم تعلق فيها على مبلغ التعويض المحدد ، ولا على حجم الاضرار المقدرة ، بل اكتفت بالقول ما حرفيته " ان تقرير الخبرة المرفوع من لجنة الخبراء يتضمن تحديد معلومات تقنية تستند الى عناصر معينة وهي العقارات الخاصة بالجهة المستدعية ، تحديد الربح الفائت اليومي والمستقبلي ، وعنصر الضرر المحتمل بالضرر الشامل " مما يعني ان هيئة القضايا سلمت بمضمون التقرير لجهة الاضرار الحاصلة والتعويض المحدد . .

وبما ان الادارة المختصة – وزارة الداخلية اكدت في مطالعتها رقم ٢١١٦٢ تاريخ ٢٠٠٤/١٠/١٥ " اتخاذ القرار النهائي اللازم على ضوء التقرير " وتابعت " انه سبق للجنة الخبراء ان وضعت تقريرها بالاضرار التي تنتج يومياً عن توقف الاستثمار وتم التوائق النهائي على مضمونه من قبل المراجع الادارية المختصة ، وتطلب اتخاذ القرار النهائي اللازم على ضوء تقرير الخبراء " مما يعني ان التوائق قد حصل بين الفريقين المتنازعين حول مضمون تقرير لجنة الخبراء .

وبما انه ، وعلى الرغم من عدم اعتراض الدولة على مضمون تقرير لجنة الخبراء ، وموافقة الادارة المختصة وزارة الداخلية على ما جاء فيه والطلب باتخاذ القرار النهائي على ضوئه ، فانه تبين لهذا المجلس ان لجنة الخبراء حددت في تقريرها الاضرار اللاحقة بالجهة المستدعية في وقت كانت الكسارة مقفلة وعلى اساس انها اقفلت بصورة نهائية ، مما حمل هذه اللجنة الى تحديد الربح الفائت المستقبلي لمدة سبع عشرة سنة وهي المدة المتبقية لانتهاء الترخيص ، مما اقتضى بالمستشار المقرر الى تكليف لجنة خبراء ثانية بتاريخ ٢٠٠٥/٥/٤ تكون

27

مهمتيا حصر تحديد الاضرار والتعويض بالفترة الممتدة بين تاريخ اقفال الكسارة والمقلع وتوقيفيما عن العمل في ٢٠٠٢/٩/٣٠ وحتى اعادة فتحيما بتاريخ ٢٠٠٤/٨/٣١ أي ما يوازي اقفال سنة واحدى عشر شيرا واودعت تقريرها الى هذا المجلس بتاريخ ٢٠٠٥/٦/٢٠،

## – في تقرير لجنة الخبراء الثانية

بما انه يتبين من التقرير ان جميع جلسات المعاينة الفنية تمت من قبل لجنة الخبراء بحضور ممثل عن هيئة القضايا في وزارة العدل ، وممثل عن الادارة المختصة – وزارة الداخلية وبحضور الجهة المستدعية صاحبة الترخيص .

وبما ان التقرير خلص الى تحديد قيمة الاضرار في المقالع والكسارات عن المدة المحددة في قرار التكليف والواقعة بين ٢٠٠٢/٩/٣٠ وحتى ٢٠٠٤/٨/٣١ على الوجه التالي:

## ١ – تحديد قيمة الاضرار في المقالع عن المدة من ٢٠٠٢/٩/٣٠ وحتى ٢٠٠٤/٨/٣١.

| | |
|---|---|
| ٦٠٠٠ طن | – قيمة الانتاج اليومية |
| ٥٧٥ يوم | – عدد ايام الانتاج |
| ٣٤٥٠٠٠٠ طن | – اجمالي قيمة الانتاج |
| ٦٨٣ د.ا | – الربح الفائت عن كل طن |
| | – قيمة الاضرار خلال المدة |
| ٢٣٥٦٣٥٠٠ د.ا | المشار اليها اعلاه |

فقط ثلاثة وعشرون مليوناً وخمسمائة وثلاثة وستون الفاً وخمسمائة دولار اميركي لا غير.

## ٢ – تحديد قيمة الاضرار اللاحقة في الكسارات عن المدة من ٢٠٠٢/٩/٣٠ وحتى ٢٠٠٤/٨/٣١

28

- يتبين من الفقرة (د) صفحة ١٥ من تقرير لجنة الخبراء السابقة ان قيمة الربح الفائت اليومي تبلغ ١٢٧٨٧٢ د.أ.

- كما يتبين من التقرير السابق ان عدد ايام العمل السنوية في الكسارات يبلغ ٢٥٠ يوماً لذلك يمكن حساب عدد ايام العمل من ٢٠٠٢/٩/٣٠ وحتى ٢٠٠٤/٨/٣١ كما يلي :

$$\frac{٢٥٠ + (١١×٢٥٠)}{١٢} = ٤٧٩ \text{ يوماً}$$

- وتكون قيمة الخسائر اللاحقة بالكسارات خلال المدة من ٢٠٠٢/٩/٣٠ وحتى ٢٠٠٤/٨/٣١ :

١٢٧٨٧٢ × ٤٧٩ = ٦١٢٥٠٦٨٨ د.أ.

فقط واحد وستون مليوناً ومائتان وخمسون الفاً وستمائة وثمانية وثمانون دولاراً اميركياً لا غير .

### ٣- تلخيص الاضرار الاجمالية قبل الفوائد

لخصت لجنة الخبراء الاضرار اللاحقة بالجهة المستدعية قبل احتساب الفوائد خلال فترة اقفال الكسارات والمقالع من ٢٠٠٢/٩/٣٠ حتى ٢٠٠٤/٨/٣١ كما يلي :

أ- الاضرار اللاحقة بالمقالع :        ٢٣٥٦٣٥٠٠ د.أ.

ب - الاضرار اللاحقة بالكسارات :      ٦١٢٥٠٦٨٨ د.أ.

- اجمالي الاضرار اللاحقة بالجهة المستدعية خلال مدة الاقفال  من ٢٠٠٢/٩/٣٠ حتى ٢٠٠٤/٨/٣١.      ٨٤٨١٤١٨٨ د.أ.

فقط اربعة وثمانون مليوناً وثمانمائة واربعة عشر الفاً ومائة وثمانية وعشرون دولاراً اميركياً لا غير .

### ٤- حساب الفوائد التي تحملتها الجهة المستدعية خلال مدة عدم تحصيل الربح الفائت بمعدل ٩ % سنوياً مركبة شهرياً

ان الخسارة الاجمالية اللاحقة بالشركة والمشار اليها اعلاه وقيمتها ٨٤٨١٤١٨٨ قد حصلت خلال المدة من ٢٠٠٢/٩/٣٠ وحتى ٢٠٠٤/٨/٣١ أي خلال مدة اجمالية تبلغ ٧٠٠ يوماً. ولحساب الفوائد وزعت اللجنة الخسارة اليومية على ٧٠٠ يوم تكون الخسارة اليومية أي المبلغ التي لم تتمكن الجهة المستدعية من تحصيله مما سبب لها خسارة فوائد لدفعات يومية قيمتها:

٨٤٨١٤١٨٨ ÷ ٧٠٠ = ١٢١١٦٣ د. أ. يومياً

وبستفاد من جدول اجمالي فوائد دفعات الربح الفائت غير المحصلة بمعدل ٩% سنوياً " مركبة شيرياً " ان الفوائد بلغت خلال فترة الاقفال : ٧٨٥٥١٦١ د.أ.

فقط سبعة ملايين وثمانمائة وخمس وخمسون الفاً ومائة وواحد وستون دولاراً اميركياً.

وبما ان اللجنة خلصت في تقريرها الى اعطاء الحساب النهائي للاضرار اللاحقة بالجهة المستدعية من تاريخ ٢٠٠٢/٩/٣٠ وحتى تاريخ ٢٠٠٤/٨/٣١ على الشكل التالي :

– اجمالي الاضرار قبل احتساب الفوائد ٨٤٨١٤١٨٨ د.أ.

– الفوائـــــــد     <u>٧٨٥٥١٦١</u> د.أ.

– اجمالي الاضرار النهائية خلال فترة ٩٢٦٦٩٣٤٩ د.أ.

الاقفال من تاريخ ٢٠٠٢/٩/٣٠ وحتى تاريخ ٢٠٠٤/٨/٣١.

فقط اثنان وتسعون مليوناً وستمائة وتسعة وستون الفاً وثلاثمائة وتسعة واربعون دولاراً اميركياً أي ما يعادل : ٩٢٦٦٩٣٤٩ × ١٥٠٧،٥ = ١٣٩٦٩٩٠٤٣٥٠٠ ( مائة وتسعة وثلاثون مليارا ً وستمائة وتسعة وتسعون مليوناً وثلاثة واربعون الفاً وخمسمائة ليرة لبنانية لا غير ) .

وبما انه بتاريخ ٢٠٠٥/٦/٢٢ كلفت لجنة الخبراء من قبل المستشار المقرر الافادة عما اذا كانت الطريقة الحسابية المعتمدة في تحديد قيمة الاضرار هي الطريقة الحسابية الصحيحة. والتي تؤدي الى نتيجة دقيقة . فأكدت لجنة الخبراء بتاريخ ٢٠٠٥/٦/٢٢ ٠ ان طريقة الاحتساب

30

هي صحيحة ومعتمدة لأنها تستند الى جميع المعطيات الفنية والحسابية والواقعية وان التقرير وضع بشكل مفصل وكامل ودقيق ولا يتجاهل أي امر يتعلق بموضوع المراجعة وقد جرت الكشوفات بحضور ممثلين عن كافة الادارات المختصة ، وعاينوا الموقع والاضرار ووقعوا على المحاضر والكشوفات ولم تصدر ملاحظة او تحفظ لاية جهة كانت سواء حول قانونية ما ورد في محاضر الخبراء ومضمونها. وهذا ثابت بالمستندات الرسمية المبرزة بالملف .**

وبما ان تقرير لجنة الخبراء مرفق بصور فوتوغرافية تبين الاضرار اللاحقة بالمعدات والاليات وواقع الكسارة والمقلع ، وان جميع الكشوفات حصلت برجود ممثلين عن الوزارات المختصة وهيئة القضايا في وزارة العدل، ولم يبد أي منهم أي تحفظ او اعتراض على ذلك .

وبما ان الدولة – ممثلة بهيئة القضايا لدى وزارة العدل – وهي الجهة المخولة قانوناً بائقامة الدعاوى باسم الدولة والدفاع عنها في الدعاوى المقامة عليها والقيام بجميع الاعمال التي يتطلبها الدفاع عن مصالح الدولة امام المحاكم ( المادة ١٨ من المرسوم الاشتراعي رقم ٨٣/١٥١ تنظيم وزارة العدل ) تبلغت استدعاء المراجعة مع المستندات المرفقة وتقرير لجنة الخبراء ، ولم تنازع بشأنها ، سواء لجهة الوقائع ام لجهة المسؤولية ام لجهة الاضرار والتعويض المطالب به ، على الرغم من انقضاء جميع المهل القانونية ، بل اكتفت بايداع هذا المجلس لائحة بابراز بعض مطالعات الادارات المختصة ودون ان تطلب في لائحتها هذه رد هذه المراجعة ودون ان تدلي باي سبب لردها او لعدم توجب التعويض المطالب به او لجهة قيمة ومقدار هذا التعويض والفوائد " المركبة شهرياً " ، مما يستفاد من موقف المستدعى ضدها هذا ، الموافقة على جميع ما ورد في تقرير الخبرة وفي استدعاء المراجعة ومرفقاتها سواء لجهة الوقائع او المسؤولية او الاضرار او المبالغ المطالب بها ، مما يستنتج معه انه لم يعد من اية حاجة لاجراء أي تحقيق اضافي كما تطالب الجهة المستدعية في لائحة تعليقها على التقرير .

وبما ان المستدعى ضدها في لائحة تعليقها على تقرير لجنة الخبراء الواردة الى هذا المجلس بتاريخ ٢٠٠٥/٧/١٢ اكتفت بالقول : " ان تقرير لجنة الخبراء يستند الى التقرير الذي وضعته اللجنة السابقة وقد وضع نتيجة كشوفات وجلسات خبرة اشترك فيها ممثلون عن الادارات

31

المختصة وهو يتعلق بمسائل واقعية ومادية وتقنية ومالية ويستند الى مستندات ومعطيات
وملاحظات محددة ".

وبما ان وزارة المالية وهي الادارة المعنية عملاً بأحكام المادة الاولى من المرسوم رقم
٢٨٦٨ تاريخ ١٩٥٩/٢/١٦ ( تنظيم وزارة المالية ) ادارة الاموال العمومية وحفظها ، وبالتالي
المحافظة على المالية العامة ، افادت في مطالعتها رقم ٥٣٣٦ تاريخ ٢٠٠٥/٤/٨ والمبرزة في
لائحة المستدعى ضدها المقدمة الى هذا المجلس بتاريخ ٢٠٠٥/٤/١٨ " ان لا علاقة لها بهذه
المراجعة وهي غير معنية بموضوعها " ، وذلك على الرغم مما ترتّبه هذه المراجعة من اعباء
مالية على الخزينة العامة ، وعلى الرغم ايضاً الى انه سبق لهذه الوزارة في كتابها رقم ١٣٣٤
تاريخ ٢٠٠٤/٧/٢٧ المشار اليه في هذه المراجعة ، ان حذرت المستدعى ضدها من التبعات
المالية والقانونية التي يمكن ان تترتب عن عدم تنفيذ القرارات القضائية الصادرة عن مجلس
شورى الدولة ، بما يؤدي الى تحميل الخزينة اعباء مالية هي حتماً بغنى عنها .

وبما ان وزارة الداخلية وهي الادارة المختصة ادلت في مطالعتها رقم ٧٢١١ تاريخ
٢٠٠٥/٧/٢٥ تعليقاً على تقرير لجنة الخبراء " ان التقرير هو بمثابة تكملة للتقرير السابق ويستند
الى ذات المعطيات الواقعية والفنية والحسابية والمالية بالاضافة الى احتساب عناصر ذكرت في
التقرير السابق ولم يتم احتسابها . وحيث انه سبق للوزارة ان وافقت على مضمون التقرير السابق
بموجب لوائح سابقة آخرها رقم ٧٢١١ تاريخ ٢٠٠٥/٥/١٣ ولم يطرأ ما يستدعي اعادة النظر ،
نؤكد موقفنا السابق ونطلب اتخاذ القرار اللازم على ضوء مضمون تقارير لجنة الخبراء والقوانين
والانظمة النافذة ".

وبما ان لجنة الخبراء المكلفة من قبل هذا المجلس تعتبر بمثابة الموظف الرسمي عند
قيامها بتنفيذ المهمة المعهودة اليها وان تقريرها يتمتع بثبوتية على الكافة لجهة اعضاء هذه اللجنة
وضمن حدود سلطتها واختصاصها ولا يمكن دحض هذه الحجة الا بادعاء التزوير وهو ما لم
تقدم عليه الجهة المستدعى ضدها ( م.ش.ل. قرار رقم ٤٦ تاريخ ٢١/١٢/٢٠٠٠ دكروب /
مؤسسة كهرباء لبنان ومجلس الانماء والاعمار م.ق.أ ، ٢٠٠٤ عدد ١٦ مجلداً ص.١٠٦ ) قرار
رقم ١٠١ تاريخ ١٩٩٩/١٢/١ الدولة / نبيل الشامي م.ق.أ عدد ١٥ ص. ١٩٨ ).

وبما انه من الثابت ان الدولة لم تقدم أي دليل او قرينة تدحض فيه ما ورد في التقرير ، مما يشكل قرينة على صحة ما جاء فيه .

وبما ان تقرير لجنة الخبراء يشكل دليلاً من جملة الادلة التي تعرض على المحكمة ، وعلى هذه الاخيرة ان تأخذ بمضمون التقرير اذا اقتنعت بأن ما ورد فيه مطابق للحقيقة ، كما لها ان تهمله اذا تبين لها بسلطانها التقديري انه لا يتفق مع الواقع والاجتهاد بكامله او بجزء منـــــــه ( قرار رقم ٩٨/٤٧٨-٩٩ تاريخ ١٩٩٩/٤/٢٢ م.ق.أ عدد ١٤ ص. ٤٨٩).

وبما انه يتبين ان تقرير لجنة الخبراء اصبح المستند الاساسي المفروض التقيد به والعمل بمضمونه بعد موافقة الادارة المختصة وزارة الداخلية عليه ، وطلبها الاخذ بمضمونه ، وعدم تعليق المستدعى ضدها على ما جاء فيه لناحية الاضرار والتعويض المحدد المتوجب للجهة المستدعية .

وبما ان الضرر الذي يعوض عنه هو الضرر الاكيد والثابت ( قرار رقم ٥٠ تاريخ ١٩٩٩/١١/٣ رمضان / مؤسسة كهرباء لبنان م.ق.أ ٢٠٠٣ مجلد ١ ص. ٩ ) .

وبما ان الجهة المستدعية تطلب الزام الدولة بان تدفع لها التعويض المحدد عن الاضرار اللاحقة بها بمبلغ ٩٢٦٦٩٣٤٩د.أ. كما جاء في تقرير لجنة الخبراء الثانية .

وبما ان من حق الجهة المستدعية ، ان تعوض عن الضرر الذي لحق بها ، خاصة وان الصلة السببية المباشرة والاكيدة بين خطأ الادارة الجسيم في عدم تنفيذها حكم قضائي والضرر الذي اصابها متوفرة في المراجعة الحاضرة مما يستوجب التعويض الموازي للضرر اللاحق بالخسارة والمقلع والثابت في تقرير لجنة الخبراء والبالغ ٨٤٨١٤١٨٨ د.أ ( فقط اربعة وثمانون مليوناً وثمانماية واربعة عشر الفاً وماثة وثمانية وثمانون دولاراً اميركياً لا غير ) دون احتساب الفائدة المحددة في التقرير .

33

وبما انه فيما يتعلق بالنوائد ورسملة النوائد التي تحملتها الجهة المستدعية خلال مدة عدم تحصيل الربح النائت بمعدل ٩ %سنوياً مركبة شهرياً والمحددة في التقرير بمبلغ ٧٨٥٥١٦١ د.أ. ( سبعة ملايين وثمانماية وخمس وخمسون الفاً وماية وواحد وستون دولاراً اميركياً) ، فلا يمكن الاخذ به للسببين التاليين :

– لأن لجنة الخبراء تجاوزت المهمة الموكولة اليها من قبل هذا المجلس ، واحتسبت النوائد بدون ان يطلب منها ذلك وبدون أي مبرر .

– لأن اجتهاد هذا المجلس استقر على القول بأن° فائدة الدين لا تسري الا من التاريخ الذي يصبح فيه اكيداً ومحققاً ومستحق الاداء وهي شروط لا تتوفر في القضية الا بتاريخ صدور القرار°.

( قرار رقم ١٩٩ تاريخ ٢٠٠١/٢/٨ سعد / مجلس تنفيذ المشاريع الكبرى لمدينة بيروت ، م.ق.أ عدد ١٦ ٢٠٠٤ المجلد ١ ص. ٣٠٩ ، قرار رقم ٤٨ تاريخ ١٩٩٩/١٠/٢٨، ابي خليل / الدولة وزارة الداخلية ، م.ق.أ ٢٠٠٣ عدد ١ ص. ٨٧).

وبما انه وفيما يتعلق اخيراً بمطلب الجهة المستدعية الزام الدولة بأن تدفع لها سلفة عن قيمة المبلغ المطالب به عملاً باحكام المادة ٦٦ -ثالثاً -من نظام مجلس شورى الدولة وعلى ان لا تقل هذه السلفة عن نصف المبلغ المطالب به ، فيقتضي رده بعد ان تم تحديد التعويض بصورة نهائية .

وبما انه كل ما ادلي به خلافاً لما تقدم يكون مردوداً لعدم ارتكازه على اساس قانوني صحيح .

وبما انه لم يعد من حاجة لبحث سائر ما ادلي به من اسباب لعدم الفائدة .





34

لذلـــــك

يقرر بالاجماع :

١- قبول المراجعة شكلاً .

٢- وفي الاساس :الزام الدولة بأن تدفع للجهة المستدعية المبلغ المحدد في تقرير لجنة الخبراء الثانية وقدره ٨٤٨١٤١٨٨ د.أ.( فقط اربعة وثمانون مليوناً وثمانماية واربعة عشر الفاً ومائة وثمانية وثمانون دولاراً اميركياً لا غير) عن الاضرار اللاحقة بها في الكسارة والمقلع . او ما يوازيه بالنقد اللبناني بتاريخ الدفع ، مع الفائدة القانونية بمعدل ٩ % من تاريخ تبليغ هذا القرار وحتى الدفع الفعلي .

٣- رد جميع مطالب الجهة المستدعية الزائدة والمتعلقة بالفائدة ورسملة الفوائد المحددة في تقرير لجنة الخبراء ورد طلب السلفة عن قيمة المبلغ المطالب به والعطل والضرر .

٤- تضمين المستدعى ضدها كافة الرسوم والمصاريف .

قرارا اصدر وافهم علنا بتاريخ الخامس من تشرين الاول ٢٠٠٥ .

| الكاتب | المستشار | المستشار | الرئيس |
|---|---|---|---|
| نبيها طنوس | شوكت معكرون | رزق الله فريفر | عاصم صفي الدين |

