# Exhibit "B"

**JOELLE J. TANNOUS**
*Sworn Translator*
*Traductrice Assermentée*

مكتب جويل طنوس للترجمة
مترجم محلف
ترجمة قانونية- تصديق معاملات

**Jounieh, Serail Street , Boustany Center, Ground Floor**
**Tel: 70.69 59 15 – 09.93 88 31 - email: joelle.t@live.com**

Decision No.15/2005-2006
Date: 06/10/2005

**Petition number**: 12855/2005

**The claimant**: United Lebanese Excavators & Crushers Company S.A.L. (ULECC)

**The defendant**: The Lebanese State - Ministry of Interior

**Governing Body**: The President Assem SAFIDDINE
The Counselor: Talal BAYDOUN
The Counselor: Naji SERHAL

# The State Consultative Council

### In the name of the Lebanese people

The State Consultative Council,

After reviewing the petition's file, the report of the reporting counselor, the review of the Government's commissioner and the remarks submitted by both parties,

And after duly deliberation,

Whereas the claimant, United Lebanese Excavators & Crushers Company S.A.L. (ULECC) submitted through its legal representative a petition on March 11th 2005, registered at this Council under No.12855/2005, by virtue of which it requested to accept the petition in form, and in the merits, compel the state to pay the amount of compensation according to the content of the experts' committee's report, dated 25/2/2005 with the calculation of damages incurred after this date until the issuance of the final judgment, compel the State to pay the interest on the claimed amount and capitalize the said interest and condemn the defendant to pay the damages, fees and legal expenses.

Whereas the claimant indicates the following:

- On 31/09/1998, the Governor of Bekaa issued decision No.28 authorizing the claimant to operate for a period of twenty years, as of this date, a crusher (classified as category One ) in Hadath , caza of Baalbeck, owned by the company.

- On 28/07/1999, the Council of Ministers issued decision No.31 relating to the operation of crushers and quarries which included provisions pertaining to permits, licenses, interruption of work, prohibition of operation, and dismantling of crushers and facilities, and granting a maximum period of two years and three months to dismantle the said facilities

- On 20/09/1999, the claimant submitted a petition with the State Consultative Council to annul the abovementioned decision No.31. On 13/12/2001, this Council issued decision No.236, ordering the annulment of decision No.31 issued by the Council of Ministers on 28/07/1999 in its non-regulatory part. The decision rendered by the State Consultative Council stated the following: "The location is the property of the claimant and all of the real estate properties owned by it lie within the scope of the master plan in force; therefore, and on this basis, the permits were granted and were automatically and permanently renewed; all granted permits are in conformity with the provisions of the law and regulations, and the operation was not subject to any prohibition or interruption of any type whatsoever; the claimant was in a legal position protected by virtue of the provisions of the law and regulations and in a de facto position, which is not contrary to the legal provisions, and this legal position gives rise to acquired rights".

- On 09/04/2003, the State Council issued decision No.461/2002-2003, aimed at interpreting the content of decision Nno.36/2001-2002, asserting that the decision of the Council of Ministers No.31 – in its no-regulatory part and regarding the claimant – was annulled and therefore the operation conditions are met in this regard.

- On 15/07/2003, the parliamentary recommendation was issued stating the necessity of executing judicial decisions and on 16/07/2003, the Presidency of the Council of Ministers issued letters No.1015/s and No.1016/s, which were notified to the Ministry of the Environment and the Ministry of Interior and Municipalities, and which requested the two ministries to execute the two decisions rendered by this Council, No.236/2001-2002 and No.416/2002-2003.

On 24/07/2004, the Ministry of the environment issued letter No.2129/b addressed to the Presidency of the Council of Ministers, stating that " the Ministry respects judicial decisions and recognizes their binding character... and that all of the legal, environmental and public safety conditions are met". On 27/04/2004, the Ministry of Finance addressed to the Presidency of the Council of Ministers letter No.1334/s listing the negative consequences arising from the failure to execute decisions and the resulting damages. On 30/07/2004, the Ministry of Justice sent to the Presidency of the Council of Ministers letter No.4185/3 indicating the following: " the twenty - year permit is in conformity with the laws and regulations on one hand, and article 93 of the State Consultative Council's regulations requires the execution of decisions within a reasonable time limit under liability, and in case of delay in the execution, the State shall be bound to pay a penalty"

- On 30/08/2004, the Ministry of Interior issued decision No.18783 ordering the implementation of the law in accordance with the provisions of the decisions issued by the State Consultative Council and referring said decision to the Governor of the Bekaa for execution. On 01/09/2004, the latter decision No.25/m, ordering the lifting of the seals from the machinery, equipment, facilities and assets and their delivery to their owners to be operated in accordance with the contents of the permits and the resumption of work in accordance with the State Consultative Council's decisions".



- On 04/09/2004, the police officers executed the abovementioned decision of the Governor of the Bekaa and report No.1175 was drawn up; stating the following: "In the area of the crusher, indicated in decision No.25/m dated 01/09/2004, there is no crusher equipment, machinery or facilities upon which to execute the decision regarding the lifting of seals from the site and equipment, and their delivery to the company's representative … regarding the resumption of operation of the crusher. In their report, the police officers added: "The chairman of the board of directors of the claimant company indicated, after questioning that the equipment, machinery and assets were dismantled and delivered to unauthorized persons without the notification of the company and the concerned parties. He added that the production of the crusher, amounting to at least USD /3million/ was stolen"

- On 17/11/2004, the claimant requested this Council to appoint an expert to investigate the resulting damage at the work sites, and the loss of machinery, equipment and assets. On 23/11/2004, the judge in charge of legal enquiry appointed an experts committee to inspect the operation site and describe and assess the damage, of any type. On 25/02/2005, the abovementioned experts committee submitted the requested report, which decisively sates that the element of damage is proven and certain.

Whereas the claimant alleges the following:

- The present petition is in conformity with the provisions of Article 70 of the State Consultative Council regulations.
- The claimant submitted to the Ministry of Interior on 07/03/2005 a litis contestati, and by virtue of the minutes of the claimant's Board of Directors, dated 04/03/2005, it was decided to lodge the present petition, and therefore the present petition meets all of the legal conditions, and is admissible in the form.

- The State is responsible for the non-execution of State Consultative Council decision No.236/2001-2002, dated 13/12/2001, which became final, resulted in acquired rights, and despite the decisions and recommendations issued by the various authorities, the State did not reconsider its position. Instead, it destroyed the facilities of the company and deprived it of profit. The stat's fault lies in its rejection of executing decision No.236/2001-2002, which renders it responsible, by refusing to respect res judicata. This fault entitled the harmed party to claim compensation as a result of the defendant's fault, which harmed an acquired right enjoyed by the claimant; this fault resulted in damage.

- The fault, object of the complaint involves various aspects and forms, such as negligence, reluctance, procrastination, failure to execute the judgment, and evading and transferring responsibility. The fault was not limited to passive behavior, but involved prohibition, repression, sabotage, aggression, destruction, deterioration and negligence in protection.

- The damage suffered by e claimant from the issuance of decision No.31 dated 28/07/1999, until the resumption of operations, means that the compensation must cover all of the elements constituting the damage, as detailed in the experts committee report, which limited the compensation up to the date of the issuing of the decision by the Governor of the Bekaa number No.25/m dated 01/09/2004, and which determined the net profit; however, the claimant must reserve the right to request compensation for the sustainable damage after this date, and its calculation upon issuing of the final decision.

- Interest must be paid on the amount awarded, after the capitalization of interest.

3



- The claimant reserves all of its rights to claim compensation in the case of aggravation of the damage; it also reserves the right to benefit from the provisions of Paragraph 3 of Article 66 of the State Consultative Council's regulations.

Whereas on 01/04/2005, the claimant submitted the letter of the Ministry of Interior, No.5235, dated 24/03/2005, containing the notification to the claimant of the petition submitted to the competent jurisdiction.

Whereas on 26/04/2005, the State, through the litis contestati within the Ministry of Justice, presented pleas in which it submitted the opinions of the competent ministries and did not invoke any motive to reject the petition. The following appeared in the abovementioned opinions:

1- Finance Ministry statements, according to which the Ministry said it was not concerned with this petition or its subject.

2- Statements by the Ministry of environment, according to which the experts' committee report relied on financial issues, and stating that the ministry was unable to comment on the abovementioned report or produce an opinion in this regard, since it did not fall under the Ministry's prerogatives. As for the content of the litis contestati, this ministry said it was not concerned with the subject, and confirmed all letters in this respect, and its abidance by all the judicial decisions rendered by the competent courts.

3- The Ministry of Interior indicated that the experts committee appointed by virtue of the State Consultative Council's decision dated 21/12/2004, drew up its report after inspecting the site and assessing the damage in the presence of representatives from the ministries (the Ministry of Interior and Municipalities , The Ministry of Justice, the Ministry of the Environment and he Finance Ministry), and with their approval of the related reports, and that the assessment of the damage incurred by the claimant lay within the scope of the principal mission entrusted to the experts committee; the Ministry requested that the necessary decision be taken in light of the experts committee's report and the laws and regulations in force.

Whereas on 8/04/2005, the claimant was notified of the pleas submitted by the State on 26/04/2005, and did not submit an answer.

Whereas on 09/08/2005, the reporting judge issued his report and the Government's delegate gave his opinion, and both were published in the Official Gazette – communiqué 237-dated 01/09/2005.

Whereas on 10/08/2005, the State submitted pleas containing the administration's opinion and commenting on the experts committee, in which it alleged that the experts committee's report pertained to factual, material, technical and financial matters, was based on documents and data, and included a few comments and remarks, accompanied by the Finance Ministry's opinion in which the latter indicated that it was not concerned by the petition or its subject.

Whereas on 31/08/2005, the State submitted answering a plea along with the opinion of the Ministry of Interior in which it indicated that this Ministry had previously given its opinion on the subject by virtue of the submitted document No.6025 dated 18/04/2005, and that there was no reason to reconsider the issue, and in which it reiterated its previous allegations and claims.

4



Whereas on 27/09/2005, the claimant submitted its remarks on the report and the opinion, by virtue of which it accepted the contents of the report and the opinion and requested the acceptance of their contents.

Whereas on 28/09/2005, the State submitted pleas containing its remarks on the report and opinion, in which it requested the rejection of the content of the report, the opening of the trial, the implementation of Article 85 of this council's regulations, and the carrying out of a thorough investigation regarding the reports submitted by the expert. It also requested that the present petition be referred to the litis contestati in accordance with article 4 of this Council's regulations given the correlation of this petition with the penalty petition, and the issuance of a report by the reporting president stating the absence of any failure to execute judicial decisions.

On the basis of the foregoing,

## 1- Request to refer the present petition to the Council of cases and join it to the penalty petition

Whereas the defendant requests in its pleas commenting on the report of the reporting judge and submitted to this Council on 28/09/2005 to refer the present petition to the council of cases in accordance with Article 44 of the regulations of this Council, given the correlation with penalty petition, and join it to the petition pending before the State Consultative Council.

Whereas the jurisprudence of this Council considers that the "penalty has a coercive character because of the administration's failure to respect the res judicata enjoyed by the judicial judgments and decisions and aims at sanctioning the failure to execute a binding judicial decision or the delay in its execution, with the purpose being to compel it to execute without having the character of compensation for damage; it may not be a cause of enrichment, otherwise, it loses its legal nature. The judge shall determine its value in light of the circumstances of each case and regardless of the damage suffered by the concerned party due to non-execution or delay in the execution, which may constitute the object of an independent action for compensation for this damage"

Reference:
State consultative Council's decision No.243/2002-2003 dated 16/01/2003, the pharmacist Mahamned Ali Kleilat, the State - Ministry of Health, and decision No.386 dated 18/03/2003, Sharaf El Dine/State (not published)

Whereas the doctrine and jurisprudence also admitted that the penalty does not have the character of compensation for damage, whether due to the non-execution of judicial decisions or the delay in their execution, is independent from damages, and may not replace the claim for compensation for the damage arising from them, since its purpose is to ensure the execution of judicial decisions.

"The specificity of the penalty is confirmed by article 3: the penalty is independent from the damages. It does not aim at repairing a prejudice but obtaining the execution of a judicial decision by the administration.
(Tercinet, law No.80-539 dated 16 Jly 1980, ajda 1981, p.7)



However, obviously, the notions of damages and penalties are totally distinct. The function of the damages is to repair as exactly as possible the prejudice caused to the beneficiary of a judicial decision. The function of penalties is, on the contrary, to directly incite the debtor to execute the judge's decisions.

Jcl. adm. Fascicule 1114 (2, 1997), Injunction and Penalty Payment

"It is worth mentioning that the penalty payment does not replace in any way the default interest due for late payments, and may not dispense with the payment of this default interest. It is also independent from the damages, which may be possibly granted in reparation of the prejudice arising from the late execution of the judgment, since the penalty payment only aims at ensuring the execution of a judicial decision".

Whereas Article 569 of the Lebanese Code of Civil Procedures also "considers the penalty independent from the compensation."

Whereas the French legislator stipulated the independence of the penalty from the damages in Article 6 of law No .539/80 and Article 34 of the law dated 9 July 1991, which read as follows"

(The penalty is independent from damages).

Whereas according to the jurisprudence of the Supreme Court in France "the penalty is independent from compensation (damages) since it is a method to oblige the debtor to execute the obligation in kind and not to compensate for the damage. The debtor is also bound to pay an additional amount if he persists in refraining from executing a judicial decision."
Cass. Civ., 28/21/89, Rec. Civ No. 97, p.62
Cass. Civ., 29/3/90, Rec .Ci. p. 245

Whereas it appears from the foregoing that it is impossible to combine the administration's compensation responsibility arising from the failure to execute judicial decisions or the delay of their execution, and the penalty payment. The penalty aims at exerting pressure on the administration to execute judicial decisions, as understood from the text of the last paragraph of Article 93 of the State Council's regulations.

Whereas in addition, it is proven that on 04/09/2004, the police executed the decision of the Governor of Mount Lebanon No. 25/m dated 01/09/2004 , executing State Consultative Council 's decision No. 236/2001-2002 and No.416/2003-2004 by " lifting the seals from the machinery , equipment , facilities, and assets and their delivery to their owners to be operated in accordance with the content of the permits and for the resumption of work in accordance with the mentioned articles of the State Consultative Council, acquired rights, and res judicata of the aforementioned decisions of the State Council "

Whereas the defendant executed the two abovementioned State Consultative Council decisions, it is therefore no longer useful to join the present petition to the penalty, and thus the defendant's request to join the two petitions and to refer the petition to the council of cases must be rejected.

Whereas in addition to the foregoing, the referring of the petition to the Council of cases is not subject to the will of parties in accordance with the provisions of Article 44 of the State Consultative Council's regulations.

6

2- **In the form** :

Whereas the present petition has been submitted within the legal time limit and meets all the form conditions, it is admissible in the form.

**3- In the merits:**

Whereas the claimant requests to compel the State to pay it the amount of the compensation in accordance with the content of the experts' committee report, dated 25/02/2005, amounting to thirty million one hundred forty-four thousand nine hundred and thirty- nine US dollars with the calculation of the damage incurred after this date and until the issuance of the final decision, and compel the state to pay the interest on the requested amount and capitalize said interest.

Whereas the claimant alleges that the damages incurred by it results from the state's responsibility arising from its non-execution of a final judicial decision, and that compensation must cover all of the elements that constitute the damage, i.e., the value of the damage incurred by the site, equipment, and machinery resulting from their destruction and negligence in protection by the defendant, as well as the cost of reinstallation and re-operation of said equipment and machinery, including the daily loss of profit as of the date of interruption of the work on 28/07/1999 until the resumption of work on the site of the claimant , object of the present petition.

Whereas on 23/11/2004 and 21/12/2004, the reporting judge in petition No.895 dated 17/12/2004 (request for the appointment of an experts committee to assess the damage incurred by the claimant), issued two decisions appointing an experts committee to assess the damage incurred by the claimant, said committee being formed of the following members:
1- Expert Dib Darar El Hajjar - Mehanical engineering
2- Expert Geores Khoury Philippe Zakhour- Accounting
3- Expert Toufic Khalil Moussa – Assessment

Whereas the report submitted by the abovementioned experts committee is thus in conformity with the provisions of Article 66 of the State Consultative Council's regulations and must be relied on in the present petition as it is in compliance with the provisions of paragraph one of said Article 66 stipulating that the President of the State Consultative Council or the judge appointed by the latter shall appoint , upon the request of the concerned party, and within one week as of the submittal of the request , an expert in charge of examining the facts that might result in a petition before the State Consultative Council.

Whereas it appeared that the experts committee implemented the mission entrusted to it in the presence of representatives from both parties to the petition, with the State being represented by Mr. Samir Mikhael, appointed to attend the inspection sessions by the President of the Council of cases within the Ministry of Justice , the Ministry of Finance being represented by Mr. Mohamad Sleimane, then by Mr. Joe Helou, the Ministry of Interior by engineer Richard Jamous and the ministry of Environment by engineers Adel Yaacoub and Nadim Mroueh, and the specialist Khalil Zein.

Whereas the State did not invoke any motive to reject the petition, and did not challenge or comment on the abovementioned experts committee's report despite the expiry of all legal limits, the present petition must proceed in its current condition, to ensure the smooth functioning of

7



justice and the redress of grievance, and thus rule on the legality and validity of the request of the claimant in light of the file of the petition and the attached documents, including the experts committee's report that was not contested by the State.

Whereas it appeared from the file of the petition that on 28/07/1999, the Council of Ministers issued decision No.31 regarding the operation of crushers and quarries including provisions pertaining to permits, licenses, interruption of work, prohibition of operation, and dismantling of crushers and facilities , and granting a maximum period of two years and three months to dismantle said facilities, and transfer them to areas where the operation of quarries and crushers is authorized in the Anti-Lebanon chain.

Whereas on 13/12/2001, the State Consultative issued decision No.236/2001-2002 sating the following: « The location of the property of the claimant, and all the real estate properties owned by it lie within the scope of the master plan in force; all granted permits are in conformity with the provisions of the law and regulations. The decision covered all of the real estate properties reverting to the claimant, and ordered the annulment of the challenged decision rendered by the Council of ministers No.31 dated 28/07/1999 in its non-regulatory part and pertaining to the claimant. The council also added in said decision that it was worth mentioning that the claimant was in a legal opposition protected by virtue of the provisions of the law and regulations and in de facto position which is not contrary to the legal provisions, and this legal position gives rise to acquired rights".

Whereas it appeared from the file of the petition No.894/99, by virtue of which the abovementioned decision No.236/2001-2002 was rendered, that this council issued on 26/10/1999 the interlocutory decision No.37/99-2000 ordering the suspension of execution of the council of Ministers' decision No.21 dated 28/07/1999 in its on regulatory part related to the claimant.

Whereas the decision ordering the suspension of execution rendered by this council means that suspension of the challenged administrative decision until the ruling on the merits of the case, which implies that the administration should have allowed the claimant to resume in operations in its crusher as usual, until the issuance of a final decision b this council regarding the merits of the case.

Whereas despite the clarity of the two decisions rendered by this council, the first interlocutory decision No.37/1999-2000, and the second, final decision No.236/2001-2002, containing the suspension of execution and the annulment of the council of Ministers' decision No.31 dated 28/07/1999 in its non-regulatory part related to the claimant , the state submitted to this council on 13/01/2003 a petition requesting the interpretation of the enacting terms regarding the annulment of the Council of Ministers' decision No.31 dated 28/07/1999 in the non-regulatory part, related to the claimant, of the decision rendered by this council No.236/2001-2002, dated 13/12/2001. This council rendered its decision No416/2002-2003, dated 09/04/2003, stating that twenty-year operation permit was in conformity with the regulation and laws and the master plan adopted in 1997, and that the council of Ministers' decision No.31 dated 28/07/1999, in its non-regulatory part related to the claimant, was annulled and therefore the operation conditions are met in this respect.

Whereas the decision rendered by the State Consultative Council annulling the abovementioned decision by the Council of Ministers No.31, in its non-regulatory part related to the claimant, considered that the operation conditions were met by the claimant party, the

8



defendant must execute the decision rendered by this council regarding the claimant's rights to resume operation in its crusher.

Whereas it is admitted by doctrine and jurisprudence that decisions rendered by the jurisdiction deciding annulment for misuse of power enjoy res judicata.

"The annulment decisions rendered within the scope of an action for misuse of power enjoy res judicata"

Odent contentieux Administraif – V- 1761 and SVT

Whereas the two decisions rendered by the State Consultative Council, No.236/2001-2002, dated 13/12/2001, and No 416/2002-2003, enjoy res judicata, and whereas the defendant's failure to execute final decisions, its ignoring of res judicata, its reluctance to execute the decision, and alteration of its provisions, are deemed illegal acts that involve its directly responsibility and constitute a misuse of power.

State Consultative Council decision No.270 dated 15/01/1996, Shhip Pilot station vs. the State.

Whereas according to provisions of article 93 of the State Consultative Council's regulations, the State Council's decisions are binding upon the administration, administrative authorities are bound to abide by the legal conditions as described by such decisions, and the legal entity of the public law must execute within a reasonable time limit the final decisions rendered by the State Consultative Council on pain of responsibility.

Whereas it is proven that the defendant exceeded the reasonable time limit granted to it for execution in an unprecedented way, as it was notified of the decision whose execution was requested on 10/04/2001, and refrained from executing its content until 01/09/2004, when the Governor of Mount Lebanon issued decision No.25/m, ordering the "lifting of seals ad the resumption of operation in accordance with the permits and the decisions of the State Consultative Council, the acquired rights and the res judicata and upon the request of the concerned ministries and administrations" Security forces executed the decision of the governor by virtue of report No.231/2004.

Whereas it is admitted by French jurisprudence that the administration has a reasonable time limit to execute judicial decisions, and in case of non-execution within this time limit, such behavior constitutes a fault.

"The administration is granted a reasonable time limit to execute the judicial decision that was notified to it.

Beyond this reasonable time limit, the non-execution of a judgment constitutes a fault (C.E. NOV, 16, 1960 Peyrat REC p.625).

Whereas in addition, the jurisprudence of this Council admits the administrations' responsibility towards citizens when it fails to execute judicial decisions rendered in their favor and duly deposited with the execution departments' therefore, the party to the litigation is entitled to claim compensation in the event the delay exceeds a reasonable time limit and in the event suffers damage resulting from non-execution.

(State Consultative Council No.255 dated 24/01/1995, The Code of Administrative Law 1996, p.279, decision No.219 dated 14/01/1998, Melfina Khoury/the State , the Code of Administrative law 1999, vol.1, p.253).

9



The failure and reluctance to execute final judicial decisions without justification also constitutes a fault involving the administration's responsibility (decision No.62 dated 12/11/1996, Alice Issa/the State – The Code of Administrative Law Issue No.12,1998, volume 1, p.83)(decision No.288 dated 20/02/1997 Iani/the State the ode of administrative Law issue No.12,1998, p.303) and decision No.289 dated 30/02/197 Aoun/The State- the Ministry of Interior, The Code of Administrative Law issue No.12, 1998, vol.1 , p.305.

Whereas the prejudice caused to the claimant as a result of the reluctance and delay in the execution of the Council's decision No.336/2001-2002 is considerable and certain, and the casual link is established between non-execution and the prejudice suffered, as specified by the experts' report in clear and accurate way, as we will demonstrate below.

Whereas the defendant did not produce any evidence proving that the prejudice was due to a fault committed by the claimant or resulted from a Force Majeure or third party act, in order to exempt itself from or minimize the responsibility involved.

Whereas the defendant's failure to invoke any motive to reject the present petition justifying the non-execution of a final judicial decision undoubtedly constitutes a presumption of the validity of the claimant's allegations regarding the State's responsibility.

Whereas on the basis of the foregoing, it is irrefutable that by delaying and failing to execute judicial decision No.236/2001-2002 rendered in favor of the claimant and closing the crusher despite the existence of a legal permit granted for twenty years and the existence of acquired rights, the defendant committed a serious offence, rendering it totally liable for the damage caused to the claimant party, as detailed in the experts committee's report.

Whereas the damage suffered by the claimant part and the condition of its equipment are proven in the report of the experts committee appointed by the council, as shown on p.29 of this report, which reads as follows:

"all of the abovementioned equipment is permanently non-operational, and in case it is necessary to rehabilitate the equipment, the result will be unacceptable since it was dismantled from its original location in a disorganized method and was torn up; as a result, the equipment lost the power of its main body and de-linked its base from its body, and became unbalanced and unusable in production. The method of storage of the equipment also contributed to its deterioration, as all equipment was discarded on to dirt and stones, exposed to the open air, and under the snow, rain and sun, causing the metal to rust and depriving it of much of its power. All of the bodies of the various pieces of equipment were bent and it became difficult to re-straighten them.

The rehabilitation of this equipment and returning it to a condition in which it would function in an acceptable way require more than 3,000 hours of maintenance. Based on the condition of the abovementioned equipment, it would be impossible for it to return to its original production capacity prior to its dismantling, following maintenance and installation, since the biggest portion of the equipment would be suitable only as scrap metal, being impossible to rehabilitate. It would be better to purchase new equipment instead of performing maintenance and rehabilitation, since the spare parts required for the equipment are likely to be unavailable at the factory, since the form and engineering aspects of the equipment have changed, meaning that purchasing spare parts will be more costly due to the need to remanufacture them anew.

10



The electrical motors of the equipment are also totally unusable and their number does not match the remaining equipment. Rehabilitating them requires dismantling them from inside and re-rolling them, spraying them with insulating liquid, changing their ball bearings and bars, which will be more costly than purchasing new ones.

The claimant party may obtain and retrieve this equipment, since it was discarded in a rocky area and unprotected by any wall or barrier preventing an individual from collecting it, with no guards on duty. Any individual who wishes to collect any of this equipment may do so, which we discovered upon assessing this equipment, as some of it had lost electrical and mechanical parts."

Whereas it appears from the facts of the case and from the various documents, in particular the experts committee report, that the decision of closure rendered by the defendant was followed by real execution procedures - despite the issuance of the two State Consultative Council decisions, No. 236/2001-2002 and No. 416/ 2002-2003, enjoying res judicata - that covered the assets, equipment and machinery, as a result of the affixing of seals, and in order to prevent any operation by the claimant party.

Whereas the report of the experts' committee is accompanied by photographs and video tapes proving this fact, and whereas all of the inspections took place in the presence of representatives of the competent ministries (Justice, Environment, Finance and Interior and Municipalities), without any of them expressing any opposition about the situation or the damage to machinery and equipment.

Whereas in implementation of the decision of the Minister of Interior No. 8783 dated 30/08/2004, the Governor of Bekaa issued decision No. 25/m dated 01/09/2001 ordering the lifting of seals from the machinery, equipment, facilities and assets and their delivery to their owners to be operated in accordance with the contents of the permits, and the resumption of work in accordance with the decisions rendered by the State Consultative Council, with the acquired rights, and res judicata enjoyed by the decisions of said Council.

Whereas it appears that when the police officers executed on 04/09/2004 the abovementioned decision of the Governor of Bekaa, the report No. 1175/ 2004 dated 04/09/2004 was drawn up, and included the following:

"Whereas at the location of the crusher mentioned in decision No. 25 / m dated 01/09/2004, there is no equipment, machinery or facilities to enable the execution of the decision regarding the lifting of seals and wax seals from the site and equipment and their delivery to the company's representative, who was present with us, and return the situation to its previous state, in order to enable the resumption of operations of the crusher."

Whereas it may be deduced from the foregoing that on the date of issuance of the abovementioned decision by the Governor ordering the lifting of seals, that the administration had legally removed its protection from the site and assets, after they suffered considerable damage, at a time when it was legally under the protection of the defendant.

Whereas regarding the description of these damages, and the occurrence and size of these damage, the experts committee report tackled all of the issues raised and accurately and objectively described the state of the site, and the assets, machinery and buildings present there.

11



Whereas the competent ministries did not oppose to the experts committee report after they participated in the inspection of the site and also investigated the scope of the damage, which implies their approval of the description that was contained in the abovementioned report.

Whereas the Ministry of Interior showed an opinion concerning the subject in question and stated the necessity of compensating the claimant party and accepting the report of the committee of experts.

Whereas the defendant is thus responsible for the situation in which the claimant party company found itself, and the destruction and damage it incurred, resulting from the defendant's persistence in not executing the two final judicial decisions rendered by the State Consultative Council No. 236/2001-2002 dated 13/12/2001 and No. 416/ 2002-2003 dated 08/05/2003 regarding the annulment of the Council of Ministers' decision No. 31 dated 28/07/1999 and executing the effects of this annulment considering that the decision that was annulled as it never existed, and thus the need to lift the seals from the claimant party company and to resume its operations as usual.

- Refer to: State Consultative Council decision No. 39 dated 21/10/1999, Dr. Raymond Youssef Farhat vs. the Lebanese University.

Whereas the defendant failed to execute the two decisions mentioned above rendered by this Council, despite the warning of the State's competent authorities as to the necessity of executing the following:

1- The recommendation approved by the Parliament on 15/07/2003, requesting the Government to abide by and immediately execute the judicial decisions and go back on any decree or decision that conflicts or contradicts the content of these decisions or evades them in a way that robs them of their res judicata.

2- Letter of the Presidency of the Council of Ministers No. 1015/s dated 16/07/2003 addressed to the Ministry of Interior and Municipalities, requesting the said ministry to execute the abovementioned decisions of the State Consultative council, in order to enable the claimant to resume the operation of its crushers and quarries.

3- Letter of the Ministry of Environment No. 2129/b dated 24/07/2004 addressed to the presidency of the Council of Ministers indicating that the two decisions rendered by the State Consultative Council are final and enjoy res judicata in accordance with the provisions of article 93 of the Council's regulation, and that the Ministry respects judicial decisions and recognizes their binding character and the necessity of executing their provisions.

4- Letter of the minister of Justice No. 418/3 dated 30/07/2004 addressed to the Presidency of the Council of Ministers indicating that Article 93 of the State Consultative Council's regulations stipulates that the legal entity of the public law must execute within a reasonable time limit the final decisions rendered by the State Consultative Council on pain of responsibility.

5- Letter of the presidency of the Council of Ministers No. 1737/m dated 03/08/2004 addressed to the presidency of the Parliament (regarding the two parliamentary questions submitted by MP Nicolas FATTOUCH regarding the Non-execution of decisions No.

12



236 dated 13/12/2001 and No. 395 dated 29/03/2001 rendered by the State Consultative Council and regarding the non-respect of the content of the parliamentary recommendation concerning the annulment of decisions avoiding res judicata) indicating that, in the two letters No. 1015/s and 1016/s dated 16/07/2003, this presidency deposited with the Ministry of Environment and the Ministry of interior and Municipalities a valid copy for execution of the two decisions under study rendered by the state Consultative council, and requested the two mentioned ministries to take the appropriate measures duly to enable the claimant to resume the operation of its crushers and quarries.

6- Letter of the Minister of Finance N. 1334/s dated 27/07/2004 addressed to the presidency of the council of Ministers, warning the defendant that the decision of closing was a precipitated decision resulting in negative effects, in particular for the state treasury and the National economy in general. It is worth mentioning that the abovementioned letter expressly included the following:

"A parliamentary recommendation was rendered on 15/07/2003 requesting the Government to execute the two decisions rendered in favor of my client MP FATTOUCH and go back on any decision or decree aimed at avoiding execution and res judicata. In this regard, it is necessary to respect the content of the recommendation to avoid legal and financial consequences that might arise and saddle the public treasury with financial burdens that it could certainly do without."

Whereas the experts committee appointed by this Council that carried out the assigned mission in the presence of the two parties is considered as the official employee when carrying out the mission assigned to it, and its report enjoys a corroboratory character in terms of what was mentioned in it concerning things it carried out personally or matters signed by the concerned persons in the presence of the members of this committee, and within the limits of its powers and prerogatives, and this plea may not be challenged, except by an action for falsification which the defendant did not do.

Refer to: State Council decision No. 46 dated 21/12/2000, Naim Dakroub vs. Electricite du Liban and the Council for Development and Reconstruction, and Kelmsi company.
- Decision of the State Consultative Council No. 101 dated 01/12/1999 the State vs. Nabil Shami

Whereas the experts committee determined in its report the daily net profit of the total production of the crusher during the authorized working hours, as indicated in p. 29, 30 and 31 of the abovementioned committee's report.

### 8-Determination of the daily quantity of production resulting from licensed operations during the authorized working hours, at the date of work's suspension

"According to clauses No. 3 and 5 of this report, the crusher's production capacity was determined to be 1,000 tons per hour, after assessing all of the equipment, electrical generators and movable machinery of the crusher, which are provided with rock. It also appeared that the authorized working hours of the crusher are not specified by the permit; therefore, the claimant company has the right to work twenty four hours (document No. 28). However, in order to determine the daily production quantity, the actual daily working hours were set at twenty hours per day. Based on this, the daily production capacity resulting from licensed operations during authorized working hours at the date of the suspension of work is of 20,000 tons, with the

13



remaining four hours allocated for daily maintenance on the crusher and its equipment, in order to preserve the production capacity and sustainability of crusher."

**9-Determining the daily net profit resulting from the crusher's total production capacity during authorized working hours, at the date of the work's suspension, after deducting the manufacturing costs and expenses, with determining the manufacturing cost per ton and the sales price in the local market.**

"To determine the daily net profit resulting from the crusher's total production capacity, we must examine the company's accounts and documents. We requested the books, documents and balance sheets from Mr. Pierre FATTOUCH, who indicated that the items we requested had been stolen and destroyed upon the dismantling of the crusher, including the prefabricated buildings that included the accounting department and administration, and since the company did not operate for one ear, the claimant company did not draw up any balance sheet, as its operations only covered approximately three months of production.

Therefore,
We submit to your esteemed Council the following detailed study upon your request, regarding the method of calculating the company's daily net profit.

It appeared to us that the crusher production sales price (delivery on site), i.e. gravel and powder is of S5.5 per ton, based on the letter by the firm Techno Beton, specialized in ready-mixed concrete, and by the firm Zeid, specialized in the purchase and sale of gravel and its derivatives in the Lebanese markets (documents No. 21 and 22 ).

 The production price appeared to us that it is 0.73 USD per ton, based on the mentioned below study that we carried out and that is based on the reports of experts specialized in excavation and demolition (the specialized engineer Jacques Bordan, document No. 35 ), engineer Ziad Shammas ( document No. 34 ), companies specialized in operating crushers, such as Armco ( documents No. 23 and No. 24 ) the Company for the Manufacture of Quicklime and Plaster SAL ( document No. 37 ) and companies specialized in the selling of machinery and equipment for use in quarries and crushers , such as Sehnaoui company ( documents No. 26 and No. 27 ) and Abdel Massih company ( document No. 29 ), as detailed hereinafter.

| Item | Cost per ton (USD) |
|---|---|
| Excavation and demolition at the quarry (Sehnaoui, Shammas, Bordan companies) | 0.1438 |
| Transporting rocks and stones from the quarry (Sehnaoui company) | 0.0887 |
| Transporting rocks and stones from the quarry to the crusher (Sehnaoui company) | 0.1808 |
| Crushing (Armco) | 0.2296 |
| Loading crushed production (Abdel Masih Company) | 0.321 |
| Administrative expenses | 0.0300 |
| **Total cost per ton** | **0.7269** |

14



Based on this, the daily net profit is determined by the sales price after rotation (delivery on site), amounting to USD 5.5 per ton, after deducting the production cost, amounting to USD 0.73 per ton, which results in a profit margin of USD 4.77 per ton. Based on this and on the production capacity of the crusher mentioned above, the daily net profit is determined as follows:

Daily production x net profit margin per ton produced, i.e. 20,000 tons x USD 4.77 per ton, equals USD 95,400 per day (fifty nine thousand and four hundred US dollars).

Whereas the abovementioned committee presented in its report a detailed study about the damages suffered by the claimant, whether regarding the purchase value of the missing equipment and machinery required to restore the operation to its condition prior to the date of the suspension of work, or regarding the calculation of the total damage suffered by the claimant as of the date of suspension of work until the resumption of operations of the crusher, and thus, submitted to tis Council in its report all of the information that could enlighten the court regarding the issues whose investigation is required, the abovementioned report included the following:

"The period of closure of the crusher shall be from 28/07/1999 until 01/09/2004, i.e. five years and 36 days, while the period of actual operation shall be five years x 270 days = 1,350, in addition to 26 working days during the 36-day period.
Thus, the total is: 1,350+ 26= 1,376 days.

Whereas the daily net profit of the crusher, as previously detailed, is USD 95,400, the damage suffered by the claimant as a result of the closure of the crusher is:
USD 94,500 x 1,376 days = USD 131,270,400 (one hundred and thirty-one million two hundred and seventy thousand and four hundred US dollars).

The damage affecting the value of the crusher:
Value of the crusher with installation: USD 5,916,923
Minus the value of consumption for the period of the suspension of work of the crusher, calculated out of the total production cost, which amounted to USD 591,692 per year, i.e. the total of 591,692 x 5 years = 2,958,460 USD
591,692 x 36 days/365 days = 58,359
Total USD 3,016,819

Thus the remaining balance shall be the damage suffered by the claimant from the crusher's price:
5,916,923 - 3,016,819 = 2,900,104 (two million nine hundred thousand and one hundred and four US dollars)

Whereas the value of what remained of the crusher equals, according to our assessment, USD 25,565; this amount must be deducted from the amount of the damage.

Therefore,
The total damage suffered by the claimant is:
131,270,400 during the period of work suspension from the issuance of the decision by the Council of Ministers, No. 31 dated 28/07/1999 until the issuance of the decision by the Governor of Bekaa No. 25/m dated 01/09/2004

15



/2,900,104/ shall be the value of the crusher after calculating the consumption as if it is still operating.

25,565 minus the value of the crusher as scrap = $134,144,939 (one hundred thirty-four million and one hundred forty-four thousand nine hundred and thirty-nine US dollars).

Whereas the experts committee report constitutes one of the pieces of evidence submitted to the Court, and the latter must accept the content of the report if it is convinced that what it contains conforms to the truth, and must ignore it, if it deems upon its sole discretion, that it does not conform to the facts.

Whereas the experts committee assigned by this Council carried out the mission entrusted to it and assessed the scope of the damage suffered by the claimant party, as it estimated the damage suffered by the latter based on material and technical criteria and used this as a basis for calculating total losses; whereas it appeared that it determined, contrary to what was alleged by the representative of the claimant, that the actual daily hours of production were twenty hours instead of twenty-four, and determined the daily production quantity of the crusher to be twenty thousand (20,000) tons per day, instead of twenty-four thousand (24,000) tons per day, as alleged by the representative of the claimant party. The abovementioned committee also reached a result different from what was alleged by said representative regarding the daily net profit of the claimant party, as said representative alleged that the daily net profit realized by the crusher was of USD 125,000 (one hundred and twenty-five thousand US dollars), while the experts committee estimated this net profit at 94,500 (ninety-four thousand and five hundred US dollars).

Whereas the experts committee's calculation of the damage suffered by the claimant party on the basis of the daily net profit throughout the duration of closure, from 28/07/1999 to 01/09/2004, based on 1,376 actual working days, is not deemed a possible damage, but certain damage, because the claimant party was granted for a twenty-year period, and the work of this crusher would have continued throughout this period without the forcible and illegal closure issued by the defendant, which led to wasting approximately five years of work from the duration of the permit granted to the claimant to operate its crusher.

Whereas the experts committee's report exhibited with the file of this petition is serious and realistic, as it explained and detailed the method by which the damage was calculated and by which the compensation due to the claimant party was assessed; therefore, the experts committee was sufficiently informed to carry out the task that was assigned to it by this Council.

Whereas the burden of proving the contrary of the abovementioned report's findings is incumbent upon the defendant -the State - which did not submit to this Council any proof or presumption challenging the contents of the report, and enabling this Council to verify the estimate of the experts committee in light of the State's presumed allegations, in order to ascertain whether this assessment was contrary to the facts.

Whereas the Ministry of Finance, which is the concerned administration in accordance with the provisions of Article 1 of Legislative Decree No. 2868 dated 16/12/1959 (organization of the Ministry of Finance), regarding the managing and preservation of public funds, and thus the preservation of public money, indicated in its opinion No. 4543 dated 08/04/2005 that it was not concerned with this petition or its subject, despite the fact that this petition involves financial burdens on the Public Treasury. It is worth mentioning that in its letter No. 1334/s dated 27/07/2004, mentioned in this petition, this Ministry had warned the defendant about the

16



financial and legal consequences that might arise from the failure to execute the two judicial decisions rendered by the State Council, which would saddle the Public Treasury with financial burdens that it could certainly do without.

Whereas the State, represented by the Committee of Cases within the Ministry of Justice, and it is the party legally authorized in accordance with Article 18 of Legislative Decree No. 151 dated 16/09/1983 ( organization of the Ministry of Justice ) to institute legal proceedings on behalf of the State and defend its interests in actions brought against it, and take all of the necessary measures to defend the State's interests before courts, was notified of the writ of summons of the recourse along with the annexed documents and the experts committee's report, and did not contest it, whether regarding the facts, the responsibility, or claimed compensation, despite the expiry of all legal time-limits, but rather presented to this Council pleas including some opinions of the competent administrations without requesting in these pleas the rejection of this recourse and without invoking any motive for its rejection, or the rejection of the claimed compensation, and without opposing the value of such compensation, which means that the State approved everything contained in the writ of summons of the petition and its annexes, whether regarding the facts, responsibility, damage or claimed compensation.

whereas The Ministry of Interior indicated in its opinion No. 6025 dated 18/04/2005 that the experts committee, appointed by this Council, drew up its report after inspecting the site and assessing the damage in the presence of representatives from the ministries (the Ministry of Interior and Municipalities, the Ministry of Justice, the Ministry of the Environment and the Ministry of Finance), and with their approval of the related reports, and that that the assessment of the damage incurred by the claimant lay within the scope of the principal mission entrusted to the experts committee; the Ministry requested that the necessary decision be taken in light of the experts committee's report and the laws and regulations in force.

Whereas the request of the claimant has been approved by the defendant, the two parties of the present petition agreed on the description of facts, the size and nature of the damage, and the convergence of allegations and wills occurred. Therefore, the judge must take what has been achieved between them.

Whereas the conclusion from the forgoing is that the elements of damage are proven and accurately described in the experts committee's report, and no objection was lodged in this respect, regarding the legal, material, factual, technical, or financial aspects.

Whereas, in addition to the above, it did not appear to this Council, and the State did not indicate, any legal, financial or factual impossibility or any other reason or excuse to not execute the three decisions rendered by the State Consultative Council mentioned in the present petition, as the final decision, is the title of truth, and the administration's failure to execute a judicial decision is an exceptional matter in the relationship of the administration to individuals in a state in which the law shall be respected; Therefore, the claimant party is entitled to request the compensation for the incurred damage.

Whereas the fault of the administration was very serious, and led to serious and certain damage on the claimant, and whereas this latter is entitled to be completely compensated for the damage it suffered, which is enshrined by the principles of justice and equity, and this is not considered as an enrichment at the expense of public money, as the adjudge amount to the claimant party is only a compensation for the damages it suffered because of the unjustified fault committed by the defendant.

17

Whereas on the basis of all elements mentioned above, the contents of the experts' committee report must be accepted.

Whereas the direct and certain causal link between the administration's fault and the incurred damage to the claimant was established in the present case; which requires the payment of compensation that is to the damage determined in the experts committee's report.

Whereas all allegations, contrary to the forgoing, must be rejected, since they lack proper legal grounds.

Whereas all of the additional and contrary claims must be rejected

## Therefore,

**Decides unanimously**:

**First: In form**
To accept the petition

**Second: In the merits**:

1- To Compel the defendant to pay to the claimant the amount specified in the report of the committee of experts, amounting to USD 143,144,939 (only one hundred forty three million one hundred forty four thousand and nine hundred thirty nine US dollars) with the legal interest at the rate of 9% as from the date of notification of this decision until the effective date of payment or its equivalent in Lebanese pounds at the date of payment.

2- Reject all additional claims of the claimant related to the interest and the capitalization of interests specified in the experts report, and to reject the request of referring the petition to the Council of Cases.

3- Condemn the defendant to pay all legal fees and expenses.

A decision rendered and publicly understood on the sixth of October of 2005.

| **Clerk** | **Counselor** | **Counselor** | **President** |
|---|---|---|---|
| **Nabiha Tannous** | **Naji SERHAL** | **Talal BAYDOUN** | **Assem SAFIDDINE** |

- Republic of Lebanon- State Consultative Council (signature & seal)

---

True translation of the Arabic text herewith attached delivered on 30.05.2018
**The Sworn Translator Joelle Tannous**



18

Number 2699

Seen by me, Georges Tanios EL KHOURY,
Notary Public in Beirut, for the
authentification of the signature of the sworn
translator Mr.
on the document, incurring no liability or
responsibility as regards its content, on

..............................................................

2 7 JUL 2020 The Notary Public in Beirut
Georges Tanios EL KHOURY



ر.ش

قرار رقم: ٢٠٠٥/١٥-٢٠٠٦
تاريخ : ٢٠٠٥/١٠/٦

<u>رقم المراجعة</u> : ٢٠٠٥/١٢٨٥٥

<u>الجهة المستدعيـــــــة</u> : الشركة اللبنانية المتحدة للمقالع والكسارات ش.م.ل.
<u>الجهة المستدعى ضدها</u>: الدولة – وزارة الداخلية

<u>الهيئة الحاكمة</u> : الرئيس : عاصم صفي الدين
المستشار: طلال بيضون
المستشار: ناجي سرحال

مجلس شورى الدولـــــــــــة
باسم الشعب اللبنانـــــــــــــي

ان مجلس شورى الدولة ،
بعد الاطلاع على اوراق المراجعة وعلى تقرير المستشار المقرر ، ومطالعة مفوض
الحكومة والملاحظات المقدمة بشأنهما،
وبعد المذاكرة حسب الاصول ،

بما أن الجهة المستدعية الشركة اللبنانية للمقالع والكسارات ، تقدمت بواسطة وكيليها
القانوني بتاريخ ١١آذار ٢٠٠٥ بمراجعة سجلت لدى قلم هذا المجلس تحت رقم ٢٠٠٥/١٢٨٥٥،
تطلب فيها قبول المراجعة في الشكل ، وفي الاساس الزام الدولة بأن تدفع لها قيمة التعويض وفق
مضمون تقرير لجنة الخبراء تاريخ ٢٠٠٥/٢/٢٥ مع احتساب الضرر الحاصل بعد هذا التاريخ



وحتى صدور الحكم النهائي ، والزام الدولة بدفع فائدة المبلغ المطالب به ورسملة الفائدة وتضمين المستدعى ضدها العطل والضرر والرسوم والمصاريف القانونية .

وبما أن الجهة المستدعية تعرض :

– أنه بتاريخ ٣١أيلول ١٩٩٨ أصدر محافظ البقاع القرار رقم ٢٨ يتضمن الترخيص للجهة المستدعية ولمدة عشرين سنة ابتداء من تاريخه باستثمار كسارة بحص – مؤسسة مصنفة من الفئة الأولى – في منطقة الحدث العقارية ، قضاء بعلبك بملك الشركة المستدعية .

– بتاريخ ١٩٩٩/٧/٢٨ صدر قرار مجلس الوزراء رقم ٣١ المتعلق باستثمار الكسارات والمقالع والمتضمن احكاما تخص الرخص والتراخيص والتوقيف عن العمل ومنع الاستثمار وتفكيك الكسارات والمنشاءات ، واعطاء مهلة ادارية أقصاها سنتان وثلاثة اشهر لتفكيك الإنشاءات .

– بتاريخ ١٩٩٩/٩/٢٠ تقدمت المستدعية بمراجعة أمام مجلس شورى الدولة طلبت بموجبها إبطال القرار رقم ٣١ المشار اليه أعلاه ، فاصدر هذا المجلس بتاريخ ٢٠٠١/١٢/١٣ القرار رقم ٢٢٦ القاضي بإبطال القرار رقم ٣١ الصادر عن مجلس الوزراء بتاريخ ١٩٩٩/٧/٢٨ في القسم منه غير التنظيمي ، وقد تضمن القرار الصادر عن مجلس شورى الدولة بأن الموقع وجميع العقارات تعود لملكية الجهة المستدعية وهي كلها تدخل ضمن المخطط التوجيهي العام المرعي الإجراء وعلى هذا الأساس مُنحت الرخص وتجددت بإستمرار ، وان جميع هذه الرخص هي مطابقة تماما لأحكام القانون والأنظمة ، كما أن المستدعية وجدت في مرتبة قانونية محمية وفق أحكام القانون والأنظمة وفي وضع واقعي لا يتنافى والأحكام القانونية النافذة ويترتب عن هذا الوضع القانوني حقوق مكتسبة .

– بتاريخ ٢٠٠٣/٤/٩ اصدر مجلس شورى الدولة القرار رقم ٢٠٠٢/٤١٦–٢٠٠٣ الأيل الى تفسير مضمون القرار رقم ٢٠٠١/٢٣٦–٢٠٠٢ وخلص الى التأكيد الى أن قرار مجلس الوزراء رقم ٣١ – في القسم منه الغير تنظيمي – والخاص بالجهة المستدعية – قد أبطل وبالتالي تكون شروط الاستثمار متوافرة في هذا الاطار .

- بتاريخ ٢٠٠٣/٧/١٥ صدرت التوصية النيابية المتضمنة وجوب تنفيذ الاحكام القضائية ، كما أنه بتاريخ ٢٠٠٣/٧/١٦ صدر عن رئاسة مجلس الوزراء الكتاب رقم ١٠١٥ /ص و ١٠١٦/ص وأبلغ الى وزارتي البيئة والداخلية والبلديات وهو يتضمن الطلب من الوزارتين المعنيتين تنفيذ كل واحد من القرارين الصادرين عن هذا المجلس رقم ٢٣٦/١-٢٠٠١-٢٠٠٢ ورقم ٢٠٠٢/٤١٦-٢٠٠٣ .

- بتاريخ ٢٠٠٤/٧/٢٤ صدر عن وزارة البيئة الكتاب رقم ٢١٢٩/ب الموجه الى رئاسة مجلس الوزراء مفاده أن الوزارة تحترم الأحكام القضائية وتعترف بقانونيتها وان جميع الشروط القانونية والبيئية والسلامة العامة متوفرة . كما أنه بتاريخ ٢٠٠٤/٧/٢٧ وجهت وزارة المالية الى رئاسة مجلس الـــــــوزراء الكتاب رقم ١٣٣٤ /ص تعدد فيه الآثار السلبية المترتبة عن عدم تنفيذ الأحكام القضائية وما ينتج عنها من عطل وضرر . وأنه بتاريخ ٢٠٠٤/٧/٣٠ أرسلت وزارة العدل الى رئاسة مجلس الوزراء الكتاب رقم ٣/٤١٨٥ الذي ورد فيه بأن الترخيص لمدة عشرين سنة جاء مطابقا للقوانين والأنظمة من جهة ومن جهة ثانية إن المادة ٩٣ من نظام مجلس شورى الدولة تفرض تنفيذ الاحكام ضمن مهلة معقولة تحت طائلة المسؤولية وفي حال التأخير عن التنفيذ يحكم على الدولة بدفع غرامة اكراهية .

- بتاريخ ٢٠٠٤/٨/٣٠ صدر قرار وزير الداخلية رقم ١٨٧٨٣ المتضمن تنفيذ القانون بمضمون الأحكام الصادرة عن مجلس شورى الدولة واحالة القرار المذكور الى محافظ البقاع للتنفيذ ، فأصدر هذا الاخير بتاريخ ٢٠٠٤/٩/١ القرار رقم ٢٥/م المتضمن رفع الاختام عن الآليات والمعدات والمنشآت والموجودات وتسليمها الى أصحابها بغية استثمارها وفقا لمضمون التراخيص ومعاودة العمل عملا بقرارات مجلس شورى الدولة .

- بتاريخ ٢٠٠٤/٩/٤ قام رجال الدرك بتنفيذ قرار محافظ البقاع المشار اليه أعلاه وجرى تنظيم المحضر ١١٧٥ الذي ورد فيه ما حرفيته " أنه لا يوجد في موقع الكسارة المشار اليها في حيثيات القرار رقم ٢٥/م تاريخ ٢٠٠٤/٩/١ أي معدات أو آليات أو انشاءات كسارة ليصار الى تطبيق مضمون القرار لجهة فك الأختام والشمع الأحمر عن الموقع والمعدات وتسليمها لممثل الشركة ... لجهة السماح بمعاودة الاستثمار للكسارة . وأضاف رجال الدرك في تقريرهم بأنه "جرى استماع رئيس

4

مجلس ادارة الشركة المستدعية بأنه جرى فك المعدات والآليات والموجودات وتسليمها الى أشخاص لا صفة لهم ودون ابلاغ الشركة وأصحاب العلاقة . كما جرى سرقة انتاج الكسارة الذي لا يقل عن ثلاثة ملايين دولار° .

– بتاريخ ٢٠٠٤/١١/١٧ تقدمت الجهة المستدعية من هذا المجلس بطلب تعيين خبير وذلك للتحقق من الخراب الحاصل في مواقع العمل وفقدان الآليات والمعدات والموجودات ، وبتاريخ ٢٠٠٤/١١/٢٣ صدر قرار المستشار المقرر بتعيين لجنة خبراء وذلك لمعاينة موقع الاستثمارو وصف الاضرار من أي نوع كانت وتخمينها وبتاريخ ٢٠٠٥/٢/٢٥ قدمت لجنة الخبراء المذكورة التقرير المطلوب منها الذي يؤكد بصورة جازمة أن عنصر الضرر ثابت وأكيد .

وبما ان الجهة المستدعية تدلي :

– ان المراجعة الحاضرة مطابقة لاحكام المادة ٧٠ من نظام مجلس شورى الدولة .

– ان الجهة المستدعية تقدمت من وزارة الداخلية بتاريخ ٢٠٠٥/٣/٧ بمذكرة ربط نزاع وبموجب محضر جلسة مجلس ادارة الشركة المستدعية تاريخ ٢٠٠٥/٣/٤ تقرر الموافقة على تقديم هذه المراجعة وبالتالي تكون المراجعة الحاضرة مستوفية جميع الشروط القانونية مقبولة شكلا .

– ان الدولة مسؤولة عن عدم تنفيذ قرار مجلس شورى الدولة رقم ٢٣٦/٢٠٠١–٢٠٠٢ تاريخ ٢٠٠١/١٢/١٣ الذي اصبح مبرما ونتج عنه حقوق مكتسبة وذلك على الرغم من المقررات والتوصيات التي صدرت عن مختلف المراجع المسؤولة ، لم تحرك الدولة ساكنا بل عمدت الى تهديم عناصر المؤسسة وحرمانها من الربح . وان خطأ الدولة يكمن في رفضها تنفيذ القرار رقم ٢٣٦/٢٠٠١ –٢٠٠٢ يلقي المسؤولية عليها وذلك برفضها احترام قوة القضية المحكمة ، هذا الخطأ الذي يمنح الضحية حق المطالبة بالتعويض ، من جراء خطأ المستدعى ضدها الذي اصاب حقا مكتسبا للجهة المستدعية ، نتج عنه ضرر .

– يرتدي الخطأ المشكو منه اوجها واشكالا متنوعة من اهمال وتلكؤ ومماطلة وتهرب وحفظ الحكم دون تنفيذ والتنصل من المسؤولية وازاحتها من كاهل الى آخر . ولم

5

يقتصر الخطأ الى التصرف السلبي ، بل تحول منعا وقمعا وتخريبا واعتداء وتكسيرا
وإتلافا وهدما وتقصيرا في الحراسة .

- ان الضرر الذي أصاب الجهة المستدعية منذ صدور القرار رقم ٣١ تاريخ
  ١٩٩٩/٧/٢٨ وحتى معاودة العمل ، يجب ان يشمل التعويض جميع العناصر المكونة
  للضرر كما هو مفصل في تقرير لجنة الخبراء ، الذي حصر توجب التعويض حتى
  تاريخ صدور قرار محافظ البقاع رقم ٢٥/م تاريخ ٢٠٠٤/٩/١ وحدد من ضمنه
  الربح الصافي ، غير انه لا بد من أن تحتفظ الجهة المستدعية بالمطالبة بالتعويض
  عن ما يصيبها من ضرر مستديم بعد هذا التاريخ واحتسابه عند صدور الحكم
  النهائي.

- تتوجب الفائدة على المبلغ المحكوم به وذلك بعد رسملة الفائدة .

- تحتفظ الجهة المستدعية بجميع حقوقها في حال تفاقم الضرر ، كما تحتفظ بحقها
  بالاستفادة من احكام الفقرة الثالثة من المادة ٦٦ من نظام مجلس شورى الدولة .

وبما انه بتاريخ ٢٠٠٥/٤/١ قدمت الجهة المستدعية لائحة بإبراز كتاب وزارة الداخليـــة
رقم ٥٢٣٥ تاريخ ٢٠٠٥/٣/٢٤ المتضمن إبلاغ الجهة المستدعية مراجعة القضاء المختص :

وبما انه بتاريخ ٢٠٠٥/٤/٢٦ قدمت الدولة بواسطة هيئة القضايا لدى وزارة العدل لائحة
ابرزت فيها مطالعات الوزارات المختصة ولم تدل بأي سبب لرد المراجعة ، وقد تبين من
المطالعات المذكورة آنفا ما يلي :

١- أفادت وزارة المالية ، أن لا علاقة لها بهذه المراجعة وهي غير معنية بموضوعها .
٢- أفادت وزارة البيئة بأن تقرير لجنة الخبراء قد ارتكز على أمور مالية ، وأنه يتعذر
  على وزارة البيئة التعليق على تقرير اللجنة المذكورة وابداء الرأي بشأنه كونه لا
  يدخل ضمن الصلاحيات المنوطة بوزارة البيئة واما بالنسبة لموضوع مذكرة ربط
  النزاع ، فان هذه الوزارة غير معنية بالموضوع وانها تؤكد على جميع كتبها السابقة
  في هذا المجال وعلى التزامها بجميع الاحكام القضائية الصادرة عن المحاكم
  المختصة .

٣- أفادت وزارة الداخلية بأن لجنة الخبراء المكلفة بموجب قرار مجلس شورى الدولة تاريخ ٢٠٠٤/١١/٢٣ المعدل بموجب القرار تاريخ ٢٠٠٤/١٢/٢١ ، قد وضعت تقريرها بعد اجراء الكشوفات ومعاينة الموقع والتحقق من الأضرار وذلك بوجود ممثلي الوزارات ( الداخلية والبلديات والعدل والبيئة والمالية ) ومرافقتهم على محاضر الجلسات ، وأن تقدير الضرر اللاحق بالجهة المستدعية يدخل ضمن المهام الأساسية للجنة الخبراء وانما تطلب اتخاذ القرار اللازم على ضوء تقرير لجنة الخبراء والقوانين والانظمة النافذة .

وبما انه بتاريخ ٢٠٠٥/٤/٢٨ تبلغت الجهة المستدعية اللائحة المقدمة من الدولة بتاريخ ٢٠٠٥/٤/٢٦ . وتنازلت عن الجواب بشأنها .

وبما انه بتاريخ ٢٠٠٥/٨/٩ صدر تقرير المستشار المقرر واعطى مفوض الحكومة بتاريخه ونشرا في الجريدة الرسمية – البيان ٢٣٧– تاريخ ٢٠٠٥/٩/١ .

وبما انه بتاريخ ٢٠٠٥/٨/١٠ قدمت الدولة لائحة بابراز مطالعة الادارة وتعليقا على تقرير لجنة الخبراء واذات فيها بان تقرير لجنة الخبراء يتعلق بمسائل واقعية ومادية وفنية ومالية ويستند الى مستندات ومعطيات ويتضمن تعليقات وملاحظات محدودة وارفق بها مطالعة وزارة المالية افادت فيها بانه لا علاقة لها بهذه المراجعة وغير معنية بموضوعها .

وبما انه بتاريخ ٢٠٠٥/٨/٣١ قدمت الدولة لائحة جوابية مع مطالعة وزارة الداخلية ادلت فيها انه سبق لهذه الوزارة ان ابدت رأيها في الموضوع بموجب ابداعها رقم ٦٠٢٥ تاريخ ٢٠٠٥/٤/١٨ ولم يطرأ ما يستدعي اعادة النظر وكررت اقوالها ومطالبها السابقة .

وبما انه بتاريخ ٢٠٠٥/٩/٢٧ قدمت الجهة المستدعية ملاحظاتيا على التقرير والمطالعة ايدت بموجبها ما ورد في التقرير والمطالعة وطلبت الاخذ بمضمونهما.

وبما انه بتاريخ ٢٠٠٥/٩/٢٨ قدمت الدولة لائحة تتضمن ملاحظاتها على التقرير والمطالعة طلبت فيها عدم الاخذ بما ورد في التقرير وفتح المحاكمة واعمال المادة ٨٥ من نظام هذا المجلس واجراء تحقيق كامل بشأن التقارير المرفوعة من الخبراء كما وطلبت احالة المراجعة الى مجلس القضايا سندا للمادة ٤ من نظام هذا المجلس نظرا للتلازم بينها وبين مراجعة الغرامة الاكراهية وصدور التقرير عن الرئيس المقرر بعدم وجود تقاعس من تنفيذ الاحكام القضائية .

فعلى ما تقدم

## أولا : في طلب احالة المراجعة الحاضرة الى مجلس القضايا وضمها الى مراجعــــة الغرامة الاكراهية

بما ان المستدعى ضدها تطالب في لائحة تعليقيا على تقرير المستشار المقرر المقدمة الى هذا المجلس بتاريخ ٢٠٠٥/٩/٢٨ احالة المراجعة الحاضرة الى مجلس القضايا سندا للمادة ٤٤ من نظام هذا المجلس نظرا للتلازم بينها وبين مراجعة الغرامة الإكراهية وضمها الى المراجعة العالقة لدى مجلس القضايا.

وبما ان اجتهاد هذا المجلس الاخير اعتبر " ان الغرامة الاكراهية لها طابع العقوبة والاكراه بسبب عدم امتثال الادارة لقوة القضية المحكمة التي تتمتع بها الاحكام او القرارات القضائية وتمنعها بالتالي عن تنفيذ قرار قضائي ملزم او تأخرها في تنفيذه ، والغاية من كل ذلك الزامها بالتنفيذ وليس لها طابع التعويض عن الاضرار ، ولا يمكن ان تكون سببا للاثراء والا فقدت طبيعتها القانونية ، ويعود للقاضي امر تحديد قيمتها في ضوء معطيات كل قضية وبصرف النظر عن الضرر اللاحق بصاحب العلاقة بسبب عدم التنفيذ او التأخير في التنفيذ ، الذي يمكن ان يشكل موضوعا لمراجعة مستقلة للتعويض عن هذا الضرر ".

يراجع :

8

م.ش.ل. قرار رقم ٢٠٠٢/٢٤٣-٢٠٠٣ تاريخ ٢٠٠٣/١/١٦ الصيدلي محمد علي
قليلات / الدولة وزارة الصحة ، وقرار رقم ٣٨٦ تاريخ ٢٠٠٣/٣/١٨ ، المؤهل شرف الدين /
الدولة ( غير منشور ) .

وبما ان العلم والاجتهاد اقرا ايضا بأن الغرامة الاكراهية ليس لها طابع التعويض عن
ضرر ، سواء بسبب الامتناع عن تنفيذ القرارات القضائية او التأخر في تنفيذها ، وهي مستقلة
عن تعويض العطل والضرر ، ولا يمكن ان تحل محل المطالبة بالتعويض عن الضرر الناتج
عنهما ، لأن الغرض منها هو ضمان تنفيذ قرار القضاء .

" La spécificité de l'astreinte est affirmée par l'art.3 : L'astreinte est
indépendante des dommages et intérêts . Elle ne tend pas à réparer un
préjudice mais à obtenir l'exécution d'une décision de justice par
l'administration ..."

(Tercinet , la loi N. 80 -539du juill. 1980 AJDA 1981p.7)

« ... Or , à l'evidence les notions de dommages et intérêts et
d'astreintes sont totalement distinctes . La fonction des dommages et intérêts
est de réparer aussi exactement que possible le préjudice causé au titulaire
d'une décision de justice . La fonction des astreintes est . au contraire ,
d'inciter directement le débiteur à exécuter les éditions du juge.

- Jcl,adm facicule 1114(2, 1997), Injonction et Astreinte.

« Il y a lieu de noter que l'astreinte ne se substitue en aucune manière
aux intérêt moratoires dus pour payement tardif , et ne peut dispenser de
s'acquiter , de ces intérêts de retard . Elle est également indépendante des
dommages et intérêts qui pourront être éventuellement alloués en réparation
du préjudice causé par l'exécution tardive du jugement , puisque l'astreinte
vise seulement à assurer l'exécution d'une décision de justice » (p.21)

وبما ان المادة ٥٦٩ من قانون اصول المحاكمات المدنية اللبناني نصت ايضا على ان "
تعتبر الغرامة الاكراهية متميزة عن بدل التعويض " .

9

وبما ان المشترع الفرنسي نص على استقلالية الغرامة الاكراهية عن العطل والضرر
وذلك في المادة السادسة من القانون رقم ٨٠/٥٣٩ والمادة ٣٤ من قانون ٩ تموز ١٩٩١ حيث
نصتا على ما يلي :

L'artreinte est indépendante des dommages intérêts )

وبما ان اجتهاد محكمة التمييز في فرنسا استقر على " اعتبار الغرامة الاكراهية تتميز عن
بدل التعويض ( العطل والضرر ) لانها وسيلة لاجبار المدين على تنفيذ الموجب عينا وليس
التعويض عن العطل والضرر . وذلك عن تهديد المدين بدفع مبلغ نقدي متزايد مع ازدياد
تعنتـــه وازدياد مدة امتناعه عن التنفيذ ومقاومته لحكم القضاء ".

Cass. Civ. 28/2/89 , Rec . civ. N° 97 , p. 62.
Cass. Civ. 29/3/90 , Rec. civ. P. 245.

وبما انه يستفاد مما تقدم ، انه ليس هناك من امكانية للجمع بين مسؤولية الادارة
بالتعويض عن عدم تنفيذ القرارات القضائية او عن التأخر في تنفيذها ، وبين الغرامة الاكراهية ،
فالغرامة الاكراهية شرعت للضغط على الادارة من اجل تنفيذ القرارات القضائية ، وهذا ما يفهم
من نص الفقرة الاخيرة من المادة ٩٣ من نظام مجلس شورى الدولة .

وبما انه فضلا عن ذلك ، فانه من الثابت انه بتاريخ ٢٠٠٤/٩/٤ قام رجال الدرك بتنفيذ
قرار محافظ جبل لبنان رقم ٢٥/م تاريخ ٢٠٠٤/٩/١ والمتضمن تنفيذ القرارين الصادرين عن
هذا المجلس رقم ٢٠٠١/٢٣٦- ٢٠٠٢ ورقم ٢٠٠٣/٤١٦-٢٠٠٤ وذلك " برفع الاختام عن
الآليات والمعدات والمنشآت والموجودات وتسليمها الى اصحابها بغية استثمارها وفقا لمضمون
التراخيص ومعاودة العمل عملا بالاحكام المذكورة لمجلس شورى الدولة والحقوق المكتسبة ولقوة
القضية المقضية العائدة لقرارات مجلس شورى الدولة المذكورة اعلاه ".

وبما ان المستدعى ضدها بتنفيذها قراري مجلس شورى الدولة المشار اليهما اعلاه ، لم
يعد هناك من فائدة لضم المراجعة الحاضرة الى مراجعة الغرامة الإكراهية ، وبالتالي يقتضي رد
طلب المستدعى ضدها بضم المراجعتين واحالتهما الى مجلس التضايا للبت بهما .

وبما انه فضلا عما تقدم فان احالة المراجعة امام مجلس القضايا لا يخضع لمشيئة الفرقاء عملا باحكام المادة ٤٤ من نظام مجلس شورى الدولة .

أولا : في الشكل
بما أن المراجعة مقدمة ضمن المهلة مستوفية سائر الشروط القانونية فهي مقبولة شكلا.

ثانيا : في الاساس
بما ان الجهة المستدعية تطلب الزام الدولة بأن تدفع لها قيمة التعويض وفق تقرير لجنـــة الخبراء تاريخ ٢٠٠٥/٢/٢٥ والبالغ ماية وأربعة وثلاثون مليونا وماية وأربعة وأربعون الفا وتسماية وتسعة وثلاثون دولارا اميركيا مع احتساب الضرر الحاصل بعد هذا التاريخ وحتى صدور الحكم النهائي ، والزام الدولة بدفع فائدة المبلغ المطالب به ورسملة الفائدة .

وبما ان الجهة المستدعية تدلي بأن الاضرار اللاحقة بها ناتجة عن مسؤولية الدولة بسبب عدم تنفيذها حكم قضائي مبرم ، وان التعويض يجب ان يشمل جميع العناصر المكونة للضرر تماما والمتمثلة بقيمة الاضرار اللاحقة بالموقع والمعدات والآليات من جراء تخريبها وتكسيرها وتفصيرا في الحراسة من قبل المستدعى ضدها ، وقيمة الكلفة لإعادة تركيب هذه المعدات والآليات وإعادة تشغيلها ، بما فيها قيمة الربح الفائت اليومي منذ تاريخ التوقف عن العمل الحاصل في ١٩٩٩/٧/٢٨ وحتى معاودة العمل في مشروع الجهة المستدعية موضوع هذه المراجعة .

وبما انه بتاريخ ٢٠٠٤/١١/٢٣ وتاريخ ٢٠٠٤/١٢/٢١ أصدر المستشار المقرر في المراجعة رقم ٨٩٥ تاريخ ٢٠٠٤/١٢/١٧ ( بموضوع طلب تعيين لجنة خبراء للتحقق من الأضرار اللاحقة بالجهة المستدعية ) قرارين بتعيين لجنة خبراء اخصائيين للتحقق من الأضرار اللاحقة بالجهة المستدعية وهي مؤلفة من :

١– الخبير ديب ضرار الحجار – فرع هندسة الميكانيك .
٢– الخبير جورج الخوري فيليب زخور – فرع المحاسبة

11

٣– الخبير توفيق خليل موسى – فرع التخمين

وبما ان التقرير المقدم من لجنة الخبراء المذكورة أعلاه يكون بالتالي متوافقا مع أحكام
المادة ٦٦ من نظام مجلس شورى الدولة ويقتضي الاعتداد به في المراجعة الحاضرة وذلك
لتوافقه مع أحكام الفقرة الاولى من المادة ٦٦ المذكورة التي تنص على أنه لرئيس مجلس شورى
الدولة أو من ينتدبه من القضاة أن يعين بناء على طلب صاحب العلاقة وخلال أسبوع من ورود
الطلب ، خبيرا يكلف بمعاينة الوقائع التي من شأنها أن تسبب مراجعة لدى مجلس شورى الدولة .

وبما أنه تبين أن لجنة الخبراء قامت بتنفيذ المهمة الموكولة اليها بحضور ممثلي فريقي
المراجعة ، بحيث كانت الدولة ممثلة من كل من السيد سمير مخايل المكلف حضور جلسات
الكشف من قبل رئيس هيئة القضايا في وزارة العدل ، ومن وزارة المالية ممثلة بالسيد محمد
سليمان  ومن ثم بالسيد جو حلو ومن المهندس ريتشارد جاموس الذي حضر عن وزارة الداخلية
والبلديات، ومن المهندس عادل يعقوب والمهندس نديم مروه والأخصائي خليل زين ، الذين
حضروا عن وزارة البيئة .

وبما أن الدولة لم تدل بأي سبب لرد المراجعة ، كما لم تنازع ولم تقدم أي تعليق على
تقرير لجنة الخبراء المشار اليه أعلاه، على الرغم من انقضاء جميع المهل القانونية. فيقتضي
السير بالمراجعة في حالتها الحاضرة ، وذلك تأمينا لحسن سير العدالة والحؤول دون عدم احقاق
الحق ، وبالتالي البت في قانونية وصحة المطالب المقدمة من الجهة المستدعية في ضوء ملف
المراجعة والمستندات المرفقة به بما فيها تقرير لجنة الخبراء والغير منازع فيها من قبل الدولة .

وبما انه تبين من ملف المراجعة أنه بتاريخ ١٩٩٩/٧/٢٨ صدر قرار مجلس الوزراء
رقم ٣١ المتعلق بإستثمار الكسارات والمقالع والمتضمن أحكاما تخص الرخص والتراخيص
والتوقيف عن العمل ومنع الاستثمار وتفكيك الكسارات والمنشآت وإعطاء مهلة إدارية أقصاها
سنتان وثلاثة اشهر لتفكيك الكسارات ونقلها للاماكن المسموح بها انشاء مقالع وكسارات في
السلسلة الشرقية .

٠٥١٢٨٥٥

12

وبما انه بتاريخ ٢٠٠١/١٢/١٣ أصدر مجلس شورى الدولة القرار رقم ٢٣٦/٢٠٠١-
٢٠٠٢ المتضمن أن الموقع ملك الجهة المستدعية – وجميع العقارات العائدة لملكيتها – تدخل كلها
ضمن المخطط التوجيهي العام المرعي الاجراء ، وان جميع الرخص الممنوحة للجهة المستدعية
هي مطابقة تماما لاحكام القانون والانظمة وهو يشمل جميع العقارات خاصة الجهة المستدعية
المعنية به ، وخلص قرار المجلس المشار اليه أعلاه الى إبطال القرار المطعون فيه الصادر عن
مجلس الوزراء رقم ٣١ تاريخ ١٩٩٩/٧/٢٨ في القسم منه غير التنظيمي والخاص بالجهة
المستدعية كما أكد هذا المجلس في قراره المذكور الى أنه يجدر التذكير بأن الجهة المستدعية
وجدت في مرتبة قانونية محمية وفق احكام القانون والانظمة وفي وضع واقعي لا يتنافى والاحكام
القانونية النافذة ويترتب على هذا الوضع حقوقا مكتسبة .

وبما انه تبين من ملف المراجعة رقم ٩٩/٨٩٤٩ ، الصادر بموجبها القرار النهائي رقم
٢٣٦/٢٠٠١-٢٠٠٢ المشار اليه أعلاه . أن هذا المجلس أصدر بتاريخ ١٩٩٩/١٠/٢٦ القرار
الاعدادي رقم ٣٧ /٢٠٠٠-٩٩ ، المتضمن وقف تنفيذ قرار مجلس الوزراء رقم ٣١تاريخ
١٩٩٩/٧/٢٨ في القسم منه الغير تنظيمي والخاص بالجهة المستدعية .

وبما لن قرار وقف التنفيذ الصادر عن هذا المجلس يعني وقف العمل بالقرار الاداري
المطعون وتجميده لحين البت في أساس النزاع . مما كان يستوجب على الإدارة ، السماح للجهة
المستدعية بمعاودة العمل في كسارتها كالمعتاد ، لحين صدور قرار نهائي عن هذا المجلس يبت
في أساس النزاع.

وبما أنه ، وعلى الرغم من وضوح القرارين الصادرين عن هذا المجلس ، الأول
الاعدادي رقم ٣٧/٩٩-٢٠٠٠ ، والثاني ، النهائي رقم ٢٣٦/٢٠٠١-٢٠٠٢ ، المتضمنين وقف
تنفيذ وابطال قرار مجلس الوزراء رقم ٣١ تاريخ ١٩٩٩/٧/٢٨ ، في القسم منه الغير تنظيمي
والخاص بالجهة المستدعية تقدمت الدولة من هذا المجلس بتاريخ ٢٠٠٣/١/١٣ بمراجعة تطالب
فيها تفسير ما ورد في الفقرة الحكمية لجهة إبطال قرار مجلس الوزراء رقم ٣١ تاريخ
١٩٩٩/٧/٢٨ في القسم غير التنظيمي والخاص بالجهة المستدعية من القرار الصادر عن هذا

13

المجلس رقم ٢٣٦/٢٠٠١-٢٠٠٢ تاريخ ٢٠٠١/١٢/١٣ ، فأصدر هذا المجلس قراره رقم
٤١٦/٢٠٠٢-٢٠٠٣ تاريخ ٢٠٠٣/٤/٩ بالتأكيد على أن الترخيص بالاستثمار الممنوح لمدة ٢٠
سنة جاء مطابقا للأنظمة والقوانين وللنظام التوجيهي العام المعتمد منذ سنة ١٩٩٧ وان قرار
مجلس الوزراء رقم ٣١ تاريخ ١٩٩٩/٧/٢٨ – في القسم غير التنظيمي منه والخاص بالجهة
المستدعيـــة – قد أبطل وبالتالي تكون شروط الاستثمار متوافرة ضمن هذا الاطار .

وبما ان القرار الصادر عن مجلس شورى الدولة بإبطال قرار مجلس الوزراء رقم ٣١
المشار اليه أعلاه في القسم غير التنظيمي والخاص منه بالمستدعية واعتباره أن شروط الاستثمار
متوفرة للجهة المستدعية ، يستوجب تنفيذ المستدعى ضدها للقرار الصادر عن هذا المجلس لجهة
حق الجهة المستدعية بمعاودة الاستثمار في كسارتها.

وبما ان العلم والاجتهاد قد اجمعاعلى القول أن القرارات الصادرة في قضاء الابطال
لتجاوز حد السلطة تتمتع بقوة القضية المحكوم بها المطلقة .

    Les decision d'annulation rendues sur recours pour excés ….de pouvoir , ont
l'autorité absolue de chose jugée .

    Odent , Contentieux Administratif - V- 1761 et SVT .

وبما ان القرارين الصادرين عن مجلس شورى الدولة رقم ٢٣٦/٢٠٠١-٢٠٠٢ تاريخ
٢٠٠١/١٢/١٣ ورقم ٤١٦ /٢٠٠٢-٢٠٠٣ يتمتعان بقوة القضية المحكوم بها المطلقة ، وان
امتناع المستدعى ضدها عن تطبيق الاحكام المبرمة وتجاهليا لقوة القضية المحكمة أو تقاعسها في
التنفيذ او تحويرها لاحكاميا يعتبر عملا غير شرعيا تنتج عنه مسؤوليتيا المباشرة ويشكل بدوره
تجاوزا لحد السلطة .

– قرار مجلس شورى الدولة رقم ٢٧٠ تاريخ ١٩٩٦/١/١٥ ، دعوى محطة ارشاد
السفن / الدولة .

وبما انه عملا باحكام المادة ٩٣ من نظام هذا المجلس فان احكام مجلس شورى الدولـــة

14

ملزمة للادارة وعلى السلطات الادارية ان تتقيد بالحالات القانونية كما وصفتها هذه الاحكام وعلى الشخص المعنوي من القانون العام ان ينفذ في مهلة معقولة الاحكام المبرمة الصادرة عن مجلس شورى الدولة تحت طائلة المسؤولية .

وبما انه من الثابت ان المستدعى ان تجاوزت المهلة المعقولة المعطاة لها للتنفيذ بشكل غير مألوف ، اذ هي تبلغت القرار المطلوب تنفيذه بتاريخ ٢٠٠١/٤/١٠ وامتنعت عن تنفيذ مضمونه حتى تاريخ ٢٠٠٤/٩/١ حيث اصدر محافظ جبل لبنان القرار رقم ٢٥/م والقاضي برفع الاختام واعادة الاستشار وفقا للتراخيص ولاحكام مجلس شورى الدولة والحقوق المكتسبة ولقوة القضية المحكمة وبناء الى طلب الوزارات والادارات المختصة ، وقد نفذت القوى الامنية قرار المحافظ بموجب المحضر رقم ٢٠٠٤/٢٣١ .

وبما ان الاجتهاد الفرنسي استقر على القول بان الادارة لديها مهلة معقولة لتنفيذ الاحكام القضائية . في حال عدم التنفيذ خلال هذه المهلة فان هذا التصرف يشكل خطأ .

L'administration dispose d'un délai raisonnable pour exécuter la décision juridictionnelle qui lui a été notifiée.

Au – délà de ce delai raisonnable , la non-exécution d'un jugement est constitutive d'une faute ( C.E. 16 nov. 1960 Peyrat Rec.p. 625)

وبما انه فضلا عن ذلك ، فان اجتهاد هذا المجلس مستمر على اعتماد مسؤولية الادارة تجاه المواطنين عندما تتقاعس عن تنفيذ الاحكام القضائية الصادرة لمصلحتهم والتي اودعت دوائر التنفيذ حسب الاصول ، وبالتالي فانه من حق المتقاضي ان يطالب بالتعويض اذا ما تجاوز التأخير مدة معقولة واذا ما نتج له ضرر من جراء عدم التنفيذ .

( م.ش.ل. رقم ٢٥٥ تاريخ ١٩٩٥/١/٢٤ م .ق. ١ ١٩٩٦ ص . ٢٧٩ ، قرار رقم ٢١٩ تاريخ ١٩٩٨/١/١٤ ملفينا خوري / الدولة م.ق.أ ١٩٩٩ مجلد أ .ص . ٢٥٣ ).

كما ان الامتناع والتقاعس عن تنفيذ القرارات القضائية المبرمة بدون مبرر يشكل خطأ يرتب مسؤولية الادارة ( قرار رقم ٦٢ تاريخ ٩٦/١١/١٢ اليس عيسى / الدولة – م.ق.أ عدد ١٢،

١٩٩٨ مجلد ١ ص. ٨٣ ) ( قرار رقم ٢٨٨ تاريخ ٢٠/٢/٩٧ عيتاني / الدولة م.ق.أ عدد ١٢ ، ١٩٩٨ مجلد ص. ٣٠٣ ) وقرار رقم ٢٨٩ تاريخ ٣٠/٢/٩٧ عون / الدولة – وزارة الداخلية م.ق.أ . عدد ١٢ ، ١٩٩٨ مجلد ١ ص ٣٠٥ .

وبما ان الاضرار التي لحقت بالجهة المستدعية نتيجة التقاعس والتأخير في تنفيذ القرار رقم ٢٣٦/٢٠٠١-٢٠٠٢ هي جسيمة واكيدة ، وان الرابطة السببية قائمة بين عدم التنفيذ والاضرار الحاصلة وان تقرير الخبراء قد حددها بشكل دقيق وواضح كما سنرى ذلك لاحقا .

وبما ان المستدعى ضدها لم تقدم أي دليل عن ان الاضرار كانت نتيجة خطأ الجهة المستدعية او نجم عن قوة قاهرة او عن فعل الغير لاعفائها من المسؤولية او تخفيفها عنها .

وبما ان عدم ادلاء الجهة المستدعى ضدها باي سبب لرد المراجعة الحاضرة يبرر عدم تنفيذ حكم قضائي مبرم يشكل بدون منازع قرينة على صحة ما ادلت به الجهة المستدعية لناحية مسؤولية الدولة .

وبما انه تأسيسا على ما تقدم فانه مما لا جدال فيه ان المستدعى ضدها بتأخرها وتقاعسها عن تنفيذ الحكم القضائي رقم ٢٣٦/٢٠٠١-٢٠٠٢ الصادر لمصلحة الجهة المستدعية واقفال الكسارة بالرغم من وجود رخصة قانونية منحت لمدة ٢٠ سنة وبالرغم من وجود حقوق مكتسبة ، تكون قد ارتكبت خطأ جسيما ، مما يجعلها مسؤولة بالكامل عن الاضرار اللاحقة بالجهة المستدعية والمفصلة في تقرير لجنة الخبراء .

وبما أن الاضرار اللاحقة بالجهة المستدعية والحالة التي آلت اليها المعدات العائدة لها ثابتة في تقرير لجنة الخبراء الاخصائيين المعينة من قبل هذا المجلس ،حيث تبين من التقرير المذكور ص ٢٩ ما يلي :

16

"إن جميع المعدات المذكورة أعلاه غير صالحة للعمل نهائيا
"وفي حال توجب إعادة تأهيلها فإن تأتي بنتيجة مقبولة بعد ذلك لأنها
"فككت من مكانها الأساسي بطريقة عشوائية وبواسطة القطع والخلع
"مما أفقد جميع المعدات قوة هياكلها الأساسية وجعلها تفقد ايضا ترابط
"قاعداتها مع هياكلها كما جعلها غير متوازنة ونتيجة لذلك غير صالحة
"للإنتاج . وساهمت ايضا طريقة تخزين المعدات باتلافها إذ جميعها
"رمي على التراب والحجارة عرضة للفلاء الطلق وتحت الثلج والشتاء
"والشمس مما تسبب بصدء الحديد وأفقده جزء كبير من قّوته وسبب
"أيضا تطعيج بهياكل جميع المعدات يصعب إعادة تجليسه .

"أما لإعادة تأهيل مثل هذه المعدات ، فيما لو كانت بحالة أحسن
"مما هي عليه ، وإعادتها لوضع يسمح لها بالعمل المقبول يتوجب أكثر
"من 3000 ساعة عمل صيانة وبناء على حالة المعدات المذكورة سابقا
"فبعد صيانتها وتركيبها من المستحيل أن تعود الى قدرتها الإنتاجية
"السابقة التي كانت عليها قبل تفكيكها لأن هنالك القسم الأكبر من
"المعدات لا يصلح إلا كخردة ويستحال إعادة تأهيله . ومن الأفضل
"شراء معدات جديدة بدلا من صيانة وإعادة تأهيلها وذلك لأنه من
"المحتمل أن تكون قطع التبديل اللازمة للمعدات غير متوفرة لدى
"المصنع بسبب تغيير شكل وهندسة انمعدات مما يجعل ثمن شراء القطع
"يتضاعف بسبب إعادة تصنيعها من جديد.

"أما موتورات الكهرباء المحركة للمعدات فهي أيضا غير صالحة
"للعمل بتاتا وعددها غير مطابق لبقايا المعدات . وإعادة تأهيلها توجب
"فرطها من الداخل وإعادة لفها ورشها بسائل عازل وتغيير رولماناتها
"وموانعها مما يكلف أكثر من ثمنها جديدة . .

"بامكان الجهة المستدعية الحصول على هذه المعدات
"وإستعادتها كونها مرمية في ارض وعرة وغير محاطة بأي سور أو
"مانع يمنع أحد من أخذها ولا يوجد أي حراس عليها ، من أراد أن يأخذ
"أي شيئ فبإمكانه ذلك وهذا ما تبين لنا من الكشف على هذه المعدات
"حيث انتزعت من بعضها قطع كهربائية وميكانيكية.

وبما أنه يتبين من معطيات القضية ومن مختلف المستندات ولا سيما من تقرير لجنة
الخبراء ان قرارالاقفال الصادر عن انجهة المستدعى ضدها استتبعته اجراءات تنفيذية واقعية –
على الرغم من صدور قراري مجلس شورى الدولة رقم ٢٣٦/٢٠٠١-٢٠٠٢ ورقم
٤١٦/٢٠٠٢-٢٠٠٣ ، المتمتعين بقوة القضية المحكوم بها المطلقة – طالت الموجودات والمعدات
والآليات وذلك نتيجة وضع الاختام ولأجل منع أي استثمار او اشغال من قبل الجهة المستدعية .

وبما ان تقرير لجنة الخبراء مرفق بصور فوتوغرافية وافلام فيديو تثبت هذا الواقع ،
ويضاف الى ذلك ان جميع الكشوفات حصلت بوجود ممثلين عن الوزرات المختصة – العدل
والبيئة والمالية والداخلية والبلديات – ولم يبد أي منهم أي اعتراض على الموقع وعلى الوضع
التخريبي للآليات والمعدات .

وبما أنه تنفيذا لقرار وزير الداخلية رقم ٨٧٨٣تاريخ ٢٠٠٤/٨/٢٠ ، أصدر محافظ البقاع
القرار رقم ٢٥/م تاريخ ٢٠٠٤/٩/١ المتضمن رفع الاختام عن الآليات والمعدات والمنشآت
والموجودات وتسليمها الى اصحابها بغية استثمارها وفقا لمضمون التراخيص ومعاودة العمل
عملا بالاحكام الصادرة عن مجلس شورى الدولة وللحقوق المكتسبة ولقوة القضية المحكمة العائدة
لقرارات هذا المجلس .

وبما انه تبين ، انه لدى قيام رجال الدرك بتاريخ ٢٠٠٤/٩/٤ بتنفيذ قرار محافظ البقاع
المشار اليه أعلاه جرى تنظيم المحضر رقم ٢٠٠٤/١١٧٥ تاريخ ٢٠٠٤/٩/٤ ، حيث ورد في
المحضر المذكور ما يلي :

"حيث انه لا يوجد في موقع الكسارة المشار اليها في حيثيات
"القرار رقـــــم ٢٥/م تاريخ ٢٠٠٤/٩/١ أي معدات أو آليات او
"انشاءات كسارة ليصار لتطبيق مضمون القرار لجهة فك الاختام
"والشمع الأحمر عن الموقع والمعدات وتسليمها لممثل الشركة الذي
"حضر معنا وإعادة "الحال الى ما كانت عليه لجهة السماح بمعاودة
"الاستثمار للكسارة .

وبما انه يستفاد مما تقدم أنه بتاريخ صدور قرار المحافظ المشار اليه برفع الاختام ،
يعني قانونا ان الادارة رفعت حراستها عن الموقع والموجودات بعد ان كانت لحقت بها الأضرار
الجسيمة وإزيلت من معالمها ، في الوقت التي كانت قانونا تحت حراسة المستدعى ضدها .

وبما أنه لجهة وصف هذه الأضرار وحقيقة وقوعيا وحجميا ، فإن تقرير لجنة الخبراء قد
عالج جميع النقاط المثارة ووصف وموضوعية حالة الموقع بما يحويه من موجودات وآليات
وأبنية .

وبما أن الوزارات المعنية لم تعترض على تقرير لجنة الخبراء بعد ان اشتركت في معاينة
الموقع وتحققت هي أيضا من ضخامة الضرر مما يستنتج موافقتها على الوصف الحقيقي الذي
يتضمنه تقرير اللجنة المذكورة .

وبما ان وزارة الداخلية بالتحديد قد أبرزت مطالبة حول الموضوع المطروح وخلصت
الى ضرورة توجب التعويض للجهة المستدعية والأخذ بتقرير لجنة الخبراء .

وبما أن المستدعى ضدها تكون مسؤولة بالتالي عن الوضع الذي آلت اليه مؤسسة الجهة
المستدعية وعن الخراب والأضرار اللاحقة بها والناتجة عن امعان المستدعى ضدها وإصرارها
على عدم تنفيذ القرارين القضائيين المبرمين الصادرين عن مجلس شورى الدولة رقم
٢٣٦/٢٠٠١-٢٠٠٢ تاريخ ٢٠٠١/١٢/١٣ ورقم ٢٠٠٢/٤١٦-٢٠٠٣ تاريخ ٢٠٠٣/٥/٨ لجهة
إبطال قرار مجلس الوزراء رقم ٣١ تاريخ ١٩٩٩/٧/٢٨ وتنفيذ مفاعيل هذا الابطال باعتبار ان

19

القرار الذي أُبطل اصبح كأنه لم يكن ، وبالتالي وجوب فك الاختام عن مؤسسة الجهة المستدعية والسماح لها بمعاودة عملها كالمعتاد .

- يراجع : قرار مجلس شورى الدولة رقم ٣٩ تاريخ ١٩٩٩/١٠/٢١ الدكتور ريمون يوسف فرحات / الجامعة اللبنانية .

وبما ان المستدعي ضدها لم تنفذ القرارين الصادرين عن هذا المجلس والمشار اليهما أعلاه وذلك على الرغم تنبيه الجهات المختصة في الدولة من وجوب ضرورة التنفيذ وهي التاليـــة :

١- التوصية التي أقرها مجلس النواب بتاريخ ٢٠٠٣/٧/١٥ والمتضمنة الطلب الى الحكومة وجوب التقيد بالاحكام القضائية وتنفيذها فورا ، وان تعود الحكومة عن كل مرسوم او قرار بتعارض او يناقض مضمون هذه الاحكام او الالتفاف عليها بشكل يسلبها قوة القضية المحكمة .

٢- كتاب رئاسة مجلس الوزراء رقم ١٠١٥ /ص تاريخ ٢٠٠٣/٧/١٦ ، الموجه الى وزارة الداخلية والبلديات والمتضمن الطلب الى هذه الوزارة تنفيذ قراري مجلس شورى الدولة المذكورين وذلك لتمكين الجهة المستدعية من إعادة استئمار المقالع والكسارة خاصتها .

٣- كتاب وزارة البيئة رقم ٢١٢٩/ب تاريخ ٢٠٠٤/٧/٢٤ الموجه الى رئاسة مجلس الوزراء والمتضمن أن القرارين الصادرين عن مجلس شورى الدولة ، هما مبرمين ويتمتعان بقوة القضية المحكمة عملا بأحكام المادة ٩٣ من نظام هذا المجلس ، وان الوزارة تحترم الاحكام القضائية وتعترف بإلزاميتها وتنفيذ احكامها .

٤- كتاب وزير العدل رقم ٣/٤١٨ تاريخ ٢٠٠٤/٧/٣٠ الموجه الى رئاسة مجلس الوزراء ( بموضوع السؤال النيابي من النائب السيد نقولا فتوش حول عدم تنفيذ قرارين صادرين عن مجلس شورى الدولة بموضوع هذه المراجعة والمتضمن ان المادة ٩٣ من نظام مجلس شورى الدولة تنص أنه على الشخص المعنوي من

20

القانون العام أن ينفذ في مهلة معقولة الاحكام المبرمة الصادرة عن مجلس شورى الدولة تحت طائلة المسؤولية .

٥- كتاب رئاسة مجلس الوزراء رقم ١٧٣٧/م ص تاريخ ٢٠٠٤/٨/٣ الموجه الى رئاسة مجلس النواب ( بموضوع السؤالان النيابيان المقدمان من النائب السيد نقولا فتوش حول عدم تنفيذ القرارين رقم ٢٣٦ تاريخ ٢٠٠١/١٢/١٣ ورقم ٣٩٥ تاريخ ٢٠٠١/٣/٢٩ الصادرين عن مجلس شورى الدولة ، وحول عدم التقيد بمضمون التوصية النيابية المتعلقة بإلغاء القرارات التي تنتف على القضية المحكمة ) والمتضمن ان هذه الرئاسة بكتابيها رقم ١٠١٥/ ص و١٠١٦ /ص ، تاريخ ٢٠٠٣/٧/١٦ أودعت وزارتي البيئة والداخلية والبلديات صورة صالحة للتنفيذ عن كل من قراري مجلس شورى الدولة مدار البحث ، وطلبت الى الوزارتين المذكورتين اجراء المقتضى وفقا للأصول وذلك بنية تمكين الجهة المستدعية من اعادة استثمار المقلع والكسارة خاصتيها .

٦- كتاب وزير المالية رقم ١٣٣٤ /ص تاريخ ٢٠٠٤/٧/٢٧ الموجه الى رئاسة مجلس الوزراء ( بموضوع سؤالان من النائب نقولا فتوش حول عدم تنفيذ قراري مجلس شورى الدولة المشار اليهما في هذه المراجعة ) والمتضمن تحذيرا الى المستدعى ضدها من أن قرار الإقفال كان قرارا متسرعا وأدى الى آثار سلبية ، لا سيما بالنسبة الى خزينة الدولة والإقتصاد الوطني بصورة عامة ، مع الإشارة الى أنه ورد في الكتاب المشار اليه أعلاه ما حرفيته :

" لقد صدرت توصية نيابية بتاريخ ٢٠٠٣/٧/١٥ تطلب من "الحكومة تنفيذ الحكمين الصادرين لمصلحة موكلي النائب "فتوش والرجوع عن كل قرار او مرسوم يلتف على التنفيذ "والقضية المحكمة . في هذا الشأن فإنه ما من شك في وجوب "الأخذ بمضمون التوصية تجنبا للتبعات القانونية والمالية التي "بمكن ان تترتب عن ذلك ، بما يؤدي الى تحميل الخزينة أعباء "مالية هي حتما بغنى عنها .

وبما ان لجنة الخبراء المكلفة من قَبل هذا المجلس ، والتي قامت بالمهمة الموكولة اليها ، بحضور فريقَي المراجعة تعتبر بمثابة الموظف الرسمي عند قيامها بتنفيذ المهمة المعهودة اليها ، وان تقريرها يتمتع بثبوتية على الكافة لجهة ما دون فيه من امور قامت بها شخصيا او وُقعت من ذوي العلاقة في حضور أعضاء هذه اللجنة ، وضمن حدود سلطتها واختصاصها ولا يمكن دحض هذه الحجة إلا بإدعاء التزوير وهو ما لم تقدم عليه الجهة المستدعى ضدها .

يراجع : قرار مجلس شورى الدولة رقم ٤٦ تاريخ ٢١/١٢/٢٠٠٠ ، دعوى نعيم دكروب / مؤسسة كهرباء لبنان ومجلس الانماء والاعمار وشركة كلمسي .
– قرار مجلس شورى الدولـــــة رقم ١٠١ تاريـــــــخ ١٩٩٩/١٢/١الدولة / نبيل ميشال الشامي .

وبما أن لجنة الخبراء حددت لهذا المجلس في تقريرها ، الربح اليومي الصافي عن كامل الطاقة الانتاجية للكسارة خلال دوام العمل المسموح به حيث ورد في الصفحات ٢٩ و٣٠و٣١ من تقرير اللجنة المذكورة ما يلي :

## ٨–تحديد كمية الإنتاج اليومي الناتج عن العمل بالترخيص ، خلال دوام العمل المسموح به ، بتاريخ التوقف عن العمل.

"إستنادا الى البندين رقم ٣و٥ من هذا التقرير حددت القوة
"الإنتاجية للكسارة بكمية ألف طن في الساعة وذلك بعد الكشف على
"جميع معداتها ومولداتها الكهربائية والآليات المتحركة التابعة لها
"والتي تغذيها بالصخور ، كما تبين أيضا أن دوام العمل المسموح به
"للكسارة غير محدد في الترخيص لذلك يحق للشركة المستدعية العمل
"اربعة وعشرون ساعة ( مستند رقم ٢٨) في اليوم ولكن ولإحتساب
"كمية الانتاج اليومي حددت ساعات الانتاج الفعلية في اليوم بعشرين

"ساعة من اصل أربعة وعشرين ساعة عمل في اليوم . بناء على ذلك
"تصبح كمية الانتاج اليومي الناتج عن العمل بالترخيص خلال دوام
"العمل المسموح به ، بتاريخ التوقف عن العمل عشرون الف طن
"يوميا (20000) ، والاربع ساعات المتبقية مخصصة للصيانة اليومية
"على الكسارة والمعدات وذلك من أجل المحافظة على قوة إنتاجية
"الكسارة وإستمراريتها .

٩ – تحديد الربح اليومي الصافي عن كامل الطاقة الانتاجية
للكسارة خلال دوام العمل المسموح به بتاريخ التوقف عن
العمل، بعد حسم كلفة التصنيع والمصاريف ، مع تحديد كلفة
تصنيع الطن الواحد وسعر مبيعه في السوق المحلي .

"لتحديد الربح اليومي الصافي عن كامل الطاقة الانتاجية
"للكسارة ، لا بد لنا من الاطلاع على محاسبة ومستندات الشركة وقد
"طلبنا الدفاتر والمستندات والميزانيات من السيد بيار فتوش الذي
"أفادنا بأن ما طلبناه قد سرق وأتلف عند تفكيك الكسارة ومن ضمنها
"البيوت الجاهزة التي كانت تحتوي على المحاسبة والادارة ، وبما ان
"الشركة لم تعمل لمدة سنة كاملة لذلك لم تقدم الشركة المستدعية
"بتنظيم أية ميزانية كونها لم تعمل سوى فترة ثلاثة أشهر إنتاجية
"تقريبا .

لذلــــــك

23

"تقدم الى المجلس الموقر الدراسة التفصيلية التالية وفقا لطلب
"مجلسكم عن كيفية تحديد الربح اليومي الصافي للشركة .

" تبين لنا أن اسعار مبيع إنتاج الكسارة ( تسليم في الكسارة)
"أي مواد البحص والسرك والبودرة هي ٥،٥٠ دولار اميركي للطن
"الواحد بالاستناد الى كتاب شركة تكنو باطون المتخصصة بصناعة
"الباطون الجاهز وشركة زيد التي تختص بشراء وبيع مواد البحص
"ومشتقاته في السوق اللبنانية ( مستند رقم ٢١و٢٢) .

"أما سعر الانتاج فتبين لنا انه ٧٣،٠ دولار أميركي للطن الواحد
"بناء على الدراسة التي قمنا بها والمذكورة ادناه والمستندة على
"تقارير الخبراء المختصين بالحفر والتفجير ( المهندس المخصص
"جاك بوردان ، مستند رقم ٣٥) والمهنـــــدس زياد شماس ( مستند
"رقم ٣٤) والشركات المختصة بتشغيل الكسارات كشركة
"ارميكــــــــو ( مستند رقم ٢٣و٢٤) وشركة مصانع الكلس
"والجفصين ش. م.ل. ( مستند رقم ٣٧) والشركات المختصة ببيع
"الآليات والمعدات الصالحة للعمل في المقالع والكسارات كشركة
"الصحناوي ( مستند رقم ٢٦،٢٧) وشركة عبد المسيـــــح ( مستند
"رقم ٢٩ ) وكما هو مفصل لاحقا :

| البيـــــــان | الكلفة للطن |
|---|---|
| | دولار أميركي |

"الحفر والتفجير في المقلع( شركة الصحناوي      ٠،١٤٣٨
"وشماس وبوردان )
"نقل الصخور والحجارة من المقلع(شركة الصحناوي)  ٠،،٨٨٧
"نقل الصخور والحجارة من المقلع الى الكســـارة    ٠،١٨٠٨

"( شركة الصحناوي )

"التكسير ( شركة أرميكو )                ٠،٢٢٩٦

"تحميل الإنتاج المكسر ( شركة عبد المسيح)          ٠،٣٢١

"مصاريف إدارية                ٠،٠٣٠٠

"إجمالي كلفة الطن                ٠،٧٢٦٩

" إستنادا إلى ذلك يحدد الربح اليومي الصافي بسعر المبيع بعد
"التدوير ( تسليم في الكسارة) البالغ ٥،٥٠ دولار أميركي للطن ناقص
"كلفة الانتاج والبالغة ٠،٧٣ دولار اميركي للطن ، ما يساوي هامش
"ربح هو ٤،٧٧ دولار اميركي للطن الواحد ، بناء على ذلك وعلى
"القدرة الانتاجية للكسارة المحددة أعلاه يقدر الربح اليومي الصافي
"كما يلي :

" الانتاج اليومي × هامش الربح الصافي على الطن المنتج الواحد أي:
"٠،٠٠٠٢طن× ٤،٧٧ دولار اميركي للطن ما يعادل ٩٥٤٠٠ دولار
"اميركي يوميا ( خمسة وتسعون الفا واربعماية دولار اميركي) .

وبما أن لجنة الخبراء المشار اليها أعلاه ، قدمت في تقريرها دراسة
تفصيلية حول الأضرار اللاحقة بالجهة المستدعية ، سواء لجهة قيمة شراء
المعدات والآليات الناقصة اللازمة لإعادة التشغيل الى حالتها السابقة لتاريخ وقف
العمل ، أم لجهة احتساب اجمالي الضرر اللاحق بالجهة المستدعية منذ تاريخ
التوقف عن العمل ولغاية اعادة تشغيل الكسارة وبالتالي ، بينت لهذا المجلس في
تقريرها جميع المعلومات التي من شأنها أن تنير المحكمة في الأمور المطلوب
التحقيق فيها ، حيث ورد في التقرير المذكور ما يلي :

"تكون فترة إتقال الكسارة من ٩٩/٧/٢٨ ولغاية ٢٠٠٤/٩/١

"أي فترة خمس سنوات وستة وثلاثـــون يوما وفـــترة العمل

"الفعلـيـــــــــة ٥ سنوات ٢٧٠×يوم = ١٣٥٠ إضافة الى ٢٦ يوم

"عمل خلال فترة الـــ٣٦ يوم .

"ويكون المجموع : ١٣٥٠ + ٢٦ = ١٣٧٦ يوم

"وبما ان الربح الصافي اليومي للكسارة وكما فصلنا سابقا هو ٩٥٤٠٠

"دولار اميركي ويكون الضرر الذي لحق بالمستدعية من جراء إتقال الكسارة

"بقيمة :

"٩٥٤٠٠ د.أ. × ١٣٧٦ يوم = ١٣١٢٧٠٤٠٠ دولار اميركي.

"مائة وواحد وثلاثون مليون ومايتان وسبعون الف واربعمائة دولار

"أميركي .

"الضرر الذي لحق بثمن الكسارة :

"قيمة الكسارة مع التركيب : ٥٩١٦٩٢٣ دولار اميركي

"ناقص قيمة الاستهلاك لفترة توقف الكسارة عن العمل حيث احتسبت

"هذه النسبة من مجموع كلفة الإنتاج ، وقد بلغت بقيمة ٥٩١٦٩٢ سنويا أي ما

"مجموعه

"٥٩١٦٩٢ × ٥ سنوات = ٢٩٥٨٤٦٠ د.أ. .

"<u>٥٩١٦٩٢×٣٦</u> يوم = ٥٨٣٥٩ د.أ.

٣٦٥يوم

"المجمـــــوع = ٣٠١٦٨١٩ د.أ.

"فيكون الرصيد المتبقي هو الضرر الذي لحق الجهة المستدعية من ثمـــــن

"الكسارة

"٥٩١٦٩٢٣-٣٠١٦٨١٩ = ٢٩٠٠١٠٤ د.أ.

"مليونان وتسعمائة الف ومئة واربعة دولارات .

"ويما أن ثمن ما تبقى من الكسارة بلغ حسب تقديرنا بقيمة ٢٥٥٦٥ د.أ. يجب
"حسم هذا المبلغ من قيمة الضرر .

"وعليه ،
"يكون الضرر الذي لحق بالجهة المستدعية ككل :
١٣١٢٧٠٤٠٠ فترة التوقف عن العمل منذ صدور قرار المجلس الوزراء
"رقم ٣١تاريخ ٩٩/٧/٢٨ حتى صدور قرار محافظ البقاع رقــم ٢٥/م
"تاريـــــخ ٢٠٠٤/٩/١
"٢٩٠٠١٠٤ قيمة الكسارة بعد احتساب الاستهلاك وكأنها لا تزال قائمة

"٢٥٥٦٥ – ناقص قيمة الكسارة كخردة
"١٣٤١٤٤٩٣٩    د.أ.
"مابة واربعة وثلاثون مليونا وأربعة وأربعون ألفا وتسعمابة وتسعة وثلاثون
"دولار أميركي .

وبما ان تقرير لجنة الخبراء يشكل دليلا من جملة الأدلة التي تعرض على المحكمة ،
فللمحكمة أن تأخذ بمضمون التقرير ، اذا اقتنعت بأن ما ورد فيه مطابق للحقيقة ، كما لها ان
تهمله اذا تبين لها بسلطانها التقديري أنه لا يتفق مع الواقع .

وبما ان لجنة الخبراء المكلفة من قبل هذا المجلس ، نفذت المهمة الموكولة اليها ،
وتحققت من مدى الاضرار اللاحقة بالجهة المستدعية ، بحيث قدّرت الخسائر اللاحقة بهذه
الاخيرة استنادا الى معايير فنية ومادية ، انطلقت منها لتحديد مجمل هذه الخسائر ، حيث تبين ،
انها حددت ، وخلافا لما أدلى به ممثل الجهة المستدعية ، ساعات الانتاج الفعلية في اليوم بعشرين
ساعة بدلا من أربع وعشرين ساعة ، كما حددت كمية الانتاج اليومي للكسارة بعشرين الف (٢٠)
الف طن يوميا ، بدلا من (٢٤) الف طن أربعة وعشرين الف طن ، وفق ما ادلى به ممثل الجهة
المستدعية كما توصلت اللجنة المذكورة الى نتيجة مغايرة لما ادلى به هذا الاخير ايضا ، لجهة

الربح الصافي اليومي للجهة المستدعية ، حيث ادلى بأن الربح اليومي الصافي الذي كانت تحققه الكسارة كان بقيمة /١٢٥٠٠٠/ د.أ. ماية وخمسة وعشرون الف دولار أميركي ، بينما توصلت لجنة الخبراء المذكورة الى تقدير هذا الربح الصافي بقيمة /٩٥٤٠٠/ د.أ. خمسة وتسعين الفا واربعماية دولار اميركي .

وبما ان احتساب لجنة الخبراء الضرر اللاحق بالجهة المستدعية على اساس الربح الصافي اليومي طيلة فترة الاقفال ، من ١٩٩٩/٧/٢٨ ولغاية ٢٠٠٤/٩/١ ، على اساس ١٣٧٦ يوم عمل فعلي ، لا يعتبر ضررا محتملا ، بل ضررا أكيدا ، وذلك لان الترخيص للجهة المستدعية بإستثمار كسارتها قد أعطي لها لمدة عشرين سنة ، وان العمل في هذه الكسارة ، كان من المفترض ان يستمر طيلة هذه المدة ، لولا التوقيف التعسري ، والغير قانوني الصادر عن المستدعى ضدها ، والذي أدى الى اهدار حوالي خمس سنوات عمل من مدة الترخيص العائد للجهة المستدعية لاستثمار كسارتها .

وبما أن تقرير لجنة الخبراء الاخصائيين المبرز مع ملف هذه المراجعة يتصف بالجدية والواقعية ، اذ أنه شرح وفسّر كيفية الوصول الى تحديد الأضرار وتقدير التعويضات المترتبة للجهة المستدعية . وبالتالي إطلع إطلاعا كافيا للقيام بالمهمة الموكولة اني لجنة الخبراء المذكورة من قبل هذا المجلس .

وبما ان عبء اثبات عكس هذا التقرير المشار اليه أعلاه ، يقع على عاتق المستدعى ضدها – الدولة -- والتي لم تقدم لهذا المجلس أي دليل أو قرينة تدحض ما ورد في هذا التقرير ، ويمكّن هذا المجلس من مراقبة صحة تقدير لجنة الخبراء الاخصائيين في ضوء أقوال الدولة المفترضة ، وذلك لمعرفة ما اذا كان هذا التقدير مغايرا للواقع .

وبما ان وزارة المالية وهي الجهة المخولة عملا باحكام المادة الأولى من المرسوم رقم ٢٨٦٨ تاريخ ١٩٥٩/١٢/١٦ ( تنظيم وزارة المالية ) ادارة الاموال العمومية وحفظها ، وبالتالي

المحافظة على المالية العامة ، أفادت في مطالعتها رقم ٤٥٤٣ تاريخ ٨ نيسان ٢٠٠٥ ، ان لا علاقة لها بهذه المراجعة وهي غير معنية بموضوعها ، وذلك على الرغم مما ترتبه هذه المراجعة من اعباء مالية على الخزينة العامة . مع الاشارة الى انه سبق لهذه الوزارة في كتابها رقم ١٣٣٤/ص تاريخ ٢٠٠٤/٧/٢٧ المشار اليه في هذه المراجعة ، ان حذرت المستدعى ضدها من التبعات المالية والقانونية التي يمكن ان تترتب عن عدم تنفيذ القرارين الصادرين عن مجلس شورى الدولة ، بما يؤدي الى تحميل الخزينة اعباء مالية هي حتما بغنى عنها .

وبما ان الدولة – ممثلة بهيئة القضايا لدى وزارة العدل – وهي الجهة المخولة قانونا عملا باحكام المادة ١٨ من المرسوم الاشتراعي رقم ١٥١ تاريخ ١٩٨٣/٩/١٦ ( تنظيم وزارة العدل ) اقامة الدعاوى باسم الدولة والدفاع عنها في الدعاوى المقامة عليها والقيام بجميع الأعمال التي يتطلبها الدفاع عن مصالح الدولة أمام المحاكم ، تبلغت استدعاء المراجعة مع مرفقاتها بما فيها تقرير لجنة الخبراء . ولم تنازع بشأنها ، سواء لجهة الوقائع أم لجهة المسؤولية أم لجهة المبالغ المطالب بها ، على الرغم من انقضاء جميع المهل القانونية بل أكتفت بإيداع هذا المجلس لائحة بإبراز مطالعات الإدارات المختصة ودون ان تطلب في لائحتها هذه رد المراجعة ودون أن تدلي بأي سبب لردها او لعدم توجب التعويض المطالب به أو لجهة قيمة ومقدار هذا التعويض ، مما يستفاد من موقف الدولة هذا ، الموافقة على جميع ما ورد في استدعاء المراجعة ومرفقاتها سواء لجهة الوقائع أو المسؤولية أو الاضرار او المبالغ المطالب بها .

وبما أن وزارة الداخلية أدلت في مطالعتها رقم ٦٠٢٥ تاريخ ١٨ نيسان ٢٠٠٥ ان لجنة الخبراء المكلفة من قبل هذا المجلس قد وضعت تقريرها بعد اجراء الكشوفات ومعاينة المواقع والتحقق من الأضرار وذلك بوجود ممثلي الوزرات ( الداخلية ، والبلديات ، والعدل ، والبيئة ، والمالية ) وموافقتهم على محاضر الجلسات ، كما أدلت بأن تقدير الضرر اللاحق بالشركة المستدعية يدخل ضمن المهام الأساسية للجنة الخبراء وطلبت اتخاذ القرار اللازم على ضوء تقرير لجنة الخبراء والقوانين والانظمة النافذة .

وبما أن مطلب الجهة المستدعية ، قد وافقت عليه المستدعى ضدها ، وان الفريقين في المراجعة الحاضرة قد توافقا على وصف الوقائع وماهية الضرر وحجمه وحصل تلاقي في الأقوال والإرادات ، وبالتالي يتحتم على القاضي أن يأخذ بما تحقق بينهما .

وبما أنه يستنتج مما تقدم ، ان عناصر الضرر ثابتة وموصوفة بدقة في تقرير لجنة الخبراء الاخصائيين ، ولم يسجل أي اعتراض بهذا الشأن ، اكان من الوجهة القانونية أو من الناحية المادية أو الواقعية أو الفنية أو التقنية أو المالية .

وبما انه فضلا عن ذلك فلم يتبين لهذا المجلس ، كما لم تدل الدولة ، بوجود أي استحالة قانونية او مادية او واقعية او أي سبب او عذر لعدم تنفيذ القرارات الثلاث الصادرة عن مجلس شورى الدولة المشار اليها في هذه المراجعة ، اذ ان القرار القضائي المبرم ، هو عنوان الحقيقة ، وان امتناع الادارة عن تنفيذ حكم قضائي ، هو امر استثنائي وغير مألوف في علاقة الادارة بالافراد في دولة يحترم فيها القانون ، وبالتالي تكون الجهة المستدعية محقة في طلب التعويض عن الاضرار اللاحقة بها .

وبما ان خطأ الادارة كان على درجة كبيرة من الجسامة ، أدى الى الحاق اضرارا جسيمة وأكيدة بالجهة المستدعية ، وان من حق هذه الاخيرة ، ان تعوض تعويضا كاملا عن الضرر الذي اصابها ، وهذا ما تنادي به مبادئ العدل والانصاف ، ولا يعتبر ذلك اثراء على حساب الاموال العامة ، اذ ان المبلغ المحكوم به للجهة المستدعية ما هو الا تعويضا عن اضرار لحقت بهذه الاخيرة بسبب الخطأ الغير مبرر المرتكب من المستدعى ضدها .

وبما أنه استنادا الى جميع العناصر المبينة اعلاه ، يجب الأخذ بمضمون تقرير لجنة الخبراء بكل محتوياته .

وبما ان الصلة السببية المباشرة والأكيدة بين خطأ الادارة والضرر الذي اصاب الجهة المستدعية ، هي متوفرة في القضية الحاضرة  مما يستوجب التعويض الموازي للضرر والثابت في تقرير لجنة الخبراء .

30

وبما أن كل ما أدلي به خلافا لما تقدم يكون مردودا لعدم ارتكازه على اساس قانوني صحيح .

وبما أنه يقتضي رد سائر المطالب الزائدة والمخالفة .

لذا_____ك

يقرر بالاجماع

<u>أو لا : في الشكل</u>

قبول المراجعة .

<u>ثانيا : في الاساس</u>

١- الزام الجهة المستدعى ضدها الدولة بأن تدفع للجهة المستدعية المبلغ المحدد في تقرير لجنة الخبراء وقدره مائة وأربعة وثلاثون مليونا ومائة واربعة واربعون ألفا وتسعمائة وتسعة وثلاثون دولارا أميركيا بما فيها الفائدة القانونية بمعدل ٩% اعتبارا من تاريخ تبليغ هذا القرار وحتى الدفع الفعلي او ما يوازيه بالنقد اللبناني بتاريخ الدفع .

٢- رد جميع مطالب الجهة المستدعية الزائدة والمتعلقة بالفائدة ورسملة الفوائد المحددة في تقرير الخبراء ورد طلب احالة المراجعة الى مجلس القضايا .

٣- تضمين المستدعى ضدها الرسوم والمصاريف القانونية .

قرارا أصدر وأفهم علنا بتاريخ السادس من تشرين الاول ٢٠٠٥ .

| الكاتب | المستشار | المستشار | الرئيس |
|---|---|---|---|
| نبيها طنوس | ناجي سرحال | طلال بيضون | عاصم صفي الدين |

