**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

------------------------------------------------------------------- x

PIERRE FATTOUCH, MOUSSA FATTOUCH,  
UNITED LEBANESE QUARRIES AND CRUSHERS  
COMPANY S.A.L.

     Plaintiffs,

v.

THE REPUBLIC OF LEBANON,  
Its Ministries, Agencies, and Instrumentalities  
c/o Ministry of Justice

HER EXCELLENCY MARIE-CLAUD NAJIM,  
Minister of Justice

     Defendant State.

------------------------------------------------------------------- x

    Case No.: 1:20-CV-02599-EGS

## NOTICE OF MOTION TO DISMISS

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law of the Republic of Lebanon (the "Republic") and Her Excellency Marie-Claude Najm, Minister of Justice (the "Minister") dated March 29, 2021, the Republic and the Minister will move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6) for an order dismissing with prejudice the Amended Complaint filed on March 15, 2021 by the *Fattouch* plaintiffs and granting such other and further relief as the Court deems just and proper.

Dated: March 29, 2021  
    New York, New York

    CLEARY GOTTLIEB STEEN & HAMILTON LLP

    By: _____

    Carmine D. Boccuzzi, Jr. (D.C. Cir. NY0335)  
      cboccuzzi@cgsh.com  
    Rathna J. Ramamurthi (D.C. Cir. NY0337)  
      rramamurthi@cgsh.com  
    One Liberty Plaza  
    New York, New York 10006  
    Tel. (212) 225-2000 Fax (212) 225-3999

TO:  Jason Ian Poblete  
    POBLETE TAMARGO LLP  
    510 King Street, Suite 350  
    Alexandria, VA 22314

    Jeremy Ibrahim  
    P.O. Box 1025  
    Chadds Ford, PA 19317

    *Attorneys for plaintiffs*

    *Attorneys for the Republic of Lebanon and Her*  
    *Excellency Marie-Claude Najm, Minister of Justice*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- x

PIERRE FATTOUCH,                           :
MOUSSA FATTOUCH,                      :
UNITED LEBANESE QUARRIES AND CRUSHERS   :
COMPANY S.A.L.                         :
                                      :
        Plaintiffs,                    :
                                      :
v.                                          :   Case No.: 1:20-CV-02599-EGS
THE REPUBLIC OF LEBANON,              :
Its Ministries, Agencies, and Instrumentalities     :
c/o Ministry of Justice                    :
                                      :
HER EXCELLENCY MARIE-CLAUD NAJIM,    :
Minister of Justice                      :
                                      :
        Defendant State.            :

-------------------------------------------------------------------- x

## MEMORANDUM OF LAW OF THE REPUBLIC OF LEBANON AND HER EXCELLENCY MARIE-CLAUDE NAJM, MINISTER OF JUSTICE IN SUPPORT OF THEIR MOTIONS TO DISMISS PURSUANT TO RULES 12(b)(1), (2), (5) & (6)

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ................................................................................................... 2

    A.   The Original Complaint And Related Proceedings .................................. 2

    B.   The Amended Complaint.......................................................................... 3

ARGUMENT ........................................................................................................ 5

POINT I: THE CLAIM AGAINST THE REPUBLIC SHOULD BE DISMISSED FOR
FAILURE TO SERVE AND LACK OF JURISDICTION UNDER THE FSIA........................ 5

    A.   The Court Lacks Personal Jurisdiction Because Plaintiffs Have
        Not Remedied Their Defective Service Of The Republic In
        This Action. ............................................................................................. 5

    B.   The Court Lacks Subject Matter Jurisdiction Under The FSIA. ............. 6

    *1.*   *The Amended Complaint Fails To Allege That The Republic*
        *Has Explicitly Or Implicitly Waived Its Immunity To Suit In*
        *U.S. Court.* ............................................................................................... 7

    *2.*   *The Amended Complaint Fails To Allege Facts Satisfying The*
        *Requirements Of The FSIA's "Commercial Activity"*
        *Exception.* ................................................................................................ 9

    *3.*   *The FSIA's Expropriation Exception Remains Inapplicable*
        *Based On The Domestic Takings Rule And Because The*
        *Amended Complaint Does Not Allege The Presence Of*
        *Property In The United States.* .................................................................10

POINT II: THE CLAIM AGAINST THE MINISTER SHOULD BE DISMISSED FOR
FAILURE TO SERVE, LACK OF JURISDICTION, AND FAILURE TO STATE A CLAIM 11

CONCLUSION..................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Adetoro v. King Abdullah Acad.*,
  Case No. 19-civ-01918 (TNM), 2019 WL 3457989 (D.D.C. July 30, 2019)...........................6

*Af-Cap, Inc. v. Republic of Congo*,
  326 F. Supp. 2d 128 (D.D.C. 2004) ..................................................................... 6-7

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989)...........................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................7

*De Csepel v. Republic of Hungary*,
  859 F.3d 1094 (D.C. Cir. 2017) ......................................................................11

*Doe 1 v. Buratai*,
  318 F. Supp. 3d 218 (D.D.C. 2018) ............................................................13, 14

*Erwin-Simpson v. AirAsia Berhad*,
  985 F.3d 883 (D.C. Cir. 2021) ........................................................................14

*Fed. Republic of Germany v. Philipp*,
  141 S. Ct. 703 (2021).......................................................................................11

*Gretton Ltd. v. Republic of Uzbekistan*,
  Civil Action No. 18-1755 (JEB), 2019 WL 3430669 (D.D.C. July 30, 2019) ........................6

*Gutch v. Fed. Republic of Germany*,
  255 F. App'x 524 (D.C. Cir. 2007)....................................................................8

*Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*,
  291 F. Supp. 3d 21, 30 (D.D.C. 2017) ...........................................................15

*Lewis v. Mutond*,
  918 F.3d 142 (D.C. Cir. 2019) ........................................................................13

*Luxexpress 2016 Corp. v. Gov't of Ukraine*,
  Civil Action No. 18-cv-812 (TSC), 2020 WL 1308357
  (D.D.C. Mar. 19, 2020)...........................................................7, 8, 9, 10, 11

*Odhiambo v. Republic of Kenya*,
   764 F.3d 31 (D.C. Cir. 2014) ............................................................................8

*Odhiambo v. Republic of Kenya*,
   930 F. Supp. 2d 17 (D.D.C. 2013) ...........................................................12, 14

*Princz v. Fed. Republic of Germany*,
   26 F.3d 1166 (D.C. Cir. 1994) .........................................................................10

*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607 (1992) ..........................................................................................10

*Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019) .....................................................................................5-6

*Saint-Jean v. D.C. Pub. Sch. Div. of Transp.*,
   815 F. Supp. 2d 1, 2-3 (D.D.C. 2011) ...............................................................4

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) ....................................................................................13, 15

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994) .............................................................................6

*Valambhia v. United Republic of Tanzania*,
   964 F.3d 1135 (D.C. Cir. 2020) .........................................................................7

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
   296 F.3d 1154 (D.C. Cir. 2002) ......................................................................7, 8

**Statutes**

28 U.S.C. §§ 1604 ......................................................................................................7

28 U.S.C. §§ 1605 ................................................................................... 7, 9, 10-11

28 U.S.C. §§ 1606 ......................................................................................................7

28 U.S.C. §§ 1607 ......................................................................................................7

28 U.S.C. §§ 1608 ...................................................................................................5,6

D.C. Uniform Foreign-Country Money Judgments Recognition Act .................7, 13, 15

**Other Authorities**

Federal Rule of Civil Procedure 4(f) .........................................................................12

Federal Rules of Civil Procedure 12(b)(1), (2), (5) and (6)...........................................1

Defendants the Republic of Lebanon (the "Republic") and Her Excellency Marie-Claude Najm, Minister of Justice (the "Minister") submit this memorandum in support of their motions to dismiss the Amended Complaint filed by the *Fattouch* plaintiffs, dated March 15, 2021 (the "Amended Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6).

## PRELIMINARY STATEMENT

In their previous submissions, Defendants demonstrated the multiple independent bases requiring the dismissal of the original Complaint in this action.  Plaintiffs have not properly effected service on the Defendants and this wholly foreign matter—an attempt by Lebanese nationals to enforce judgments issued by a Lebanese court against the Republic of Lebanon in connection with quarries that plaintiffs purportedly owned and operated in Lebanon—has no jurisdictional connection to this United States.

*First*, the Court lacks personal jurisdiction over the Republic since plaintiffs have failed to serve the Republic as the Foreign Sovereign Immunities Act ("FSIA") requires.  And plaintiffs have not established subject matter jurisdiction since the Amended Complaint's allegations still do not support the application of the FSIA's so-called waiver, commercial activity, or expropriation exceptions to sovereign immunity.

*Second*, the Amended Complaint now purports to name the Minister as a defendant in this action, but that claim also fails.  Plaintiffs have not properly served the Minister, and the Court lacks personal jurisdiction or subject matter jurisdiction for a claim against the Minister. In addition, the Amended Complaint fails to state a claim against the Minister since the underlying judgments name the Republic, not the Minister.

Accordingly, the Amended Complaint should be dismissed in full with prejudice.

## BACKGROUND

Plaintiffs are Lebanese nationals and a Lebanese joint stock company.  Am. Compl. ¶ 2.

Plaintiffs allege that the Republic interfered with quarries they owned in Lebanon, cancelling

their licenses, destroying their equipment, and ordering closure of the quarries.  *Id.* ¶¶ 15-17.

According to plaintiffs, in connection with these events a Lebanese court issued two judgments

against the Republic in 2005 and two more judgments against the Republic in 2017.  *Id.* ¶¶ 18-

23.  Plaintiffs seek recognition and enforcement of those judgments in this Court.  *Id.* ¶¶ 27-30.

### A.  The Original Complaint And Related Proceedings

Plaintiffs filed the original Complaint in this action on September 15, 2020.  Compl.

(Sept. 15, 2020), ECF No. 1.  In light of the death of plaintiff Pierre Fattouch in November 2020,

plaintiffs moved for a 60-day extension of time for service, which the Court granted.  Mot. for

Extension of Time (Nov. 9, 2020), ECF No. 7; Minute Order (Nov. 9, 2020) (setting January 8,

2021 as the deadline for service).  On December 30, 2020, plaintiffs filed two affidavits of

service on the docket—one purporting to serve the Republic and one purporting to serve the

Minister (although it was unclear whether the latter was an improper attempt at "alternative"

service on the Republic).  Affs. of Service (Dec. 30, 2020), ECF Nos. 8-9.

Although the original Complaint did not list the Minister as a party or otherwise make

any allegations against her, based on a reference to the Minister in the caption and the service

affidavits, in an abundance of caution defense counsel reached out to plaintiffs' counsel to

confirm that the Minister was not named as a defendant.  *See* Decl. of Rathna J. Ramamurthi ¶ 4

(Mar. 11, 2021), ECF No. 22-1 ("Ramamurthi Decl.").  Plaintiffs' counsel initially indicated that

the Minister was not named, but refused to give confirmation despite repeated follow up from

defense counsel.  *Id.* ¶¶ 5-8.

Accordingly, the motion to dismiss filed in this action on March 1, 2021 set forth the reasons that plaintiffs' claim against the Republic fails (*i.e.*, insufficient service of process and lack of jurisdiction under the FSIA) and, again in an abundance of caution, the reasons that any purported claim against the Minister would fail (*i.e.*, the Minister was not named in the Lebanese judgments at issue, insufficient service of process, and lack of jurisdiction).  *See* Mem. of Law at 2-9 (Mar. 1, 2021), ECF No. 13.

Three days later, on March 4, 2021, plaintiffs filed an affidavit seeking an entry of default against the Minister.  Aff. in Support of Default (Mar. 4, 2021), ECF No. 14.  Defense counsel filed notices of special appearance on behalf of the Minister, and plaintiffs moved to strike those appearances.  Mot. to Strike (Mar. 5, 2021), ECF No. 17.  On Sunday, March 7, 2021, the Clerk of the Court made an entry of default against the Minister.  Default (Mar. 7, 2021), ECF No. 20. After defense counsel reached out to plaintiffs' counsel pursuant to Local Civil Rule 7(m) to obtain their consent to the default setting aside (and plaintiffs withheld such consent), *see* Ramamurthi Decl. ¶ 10, the Minister filed motions to set aside the entry of default and to dismiss, and an opposition to plaintiffs' motion to strike, Mots. to Set Aside Default and to Dismiss (Mar. 11, 2021), ECF No. 22; Mem. in Opp. to Pls.' Mot. to Strike (Mar. 11, 2021), ECF No. 23.  Plaintiffs have not timely filed a response to the Minister's motion to set aside the entry of default or a reply on their motion to strike.

### B.  The Amended Complaint

On March 15, 2021, plaintiffs filed an Amended Complaint.  Am. Compl. (Mar. 15, 2021), ECF No. 24.  Unlike the original Complaint, the Amended Complaint lists both the Republic and the Minister as defendant parties.  *Id.* ¶¶ 3-4.  The Amended Complaint also includes new allegations purportedly regarding FSIA jurisdiction, referring vaguely to "assurances" against invocation of sovereign immunity, *id.* ¶¶ 10-11; "loss of revenue" of

plaintiffs' U.S. businesses, ¶¶ 12-13; and alleged seizure of their property in Lebanon "without providing just compensation and for no public purpose," *id.* ¶ 14.  In addition, plaintiffs now assert that the Court has subject matter jurisdiction over this action pursuant to a provision of the D.C. Code.  *Id.* ¶ 8.  The gravamen of this case remains the same, *i.e.*, plaintiffs' attempt to obtain recognition of Lebanese judgments against the Republic arising out of events occurring entirely within Lebanon and with no connection whatsoever to the United States.

Plaintiffs' filing of the Amended Complaint moots their request for a default against the Minister.  *See Saint-Jean v. D.C. Pub. Sch. Div. of Transp.*, 815 F. Supp. 2d 1, 2-3 (D.D.C. 2011) (filing of amended complaint "mooted" previous motions for default judgment).  The Clerk's entry of default should in any event be set aside for the reasons set forth in the Minister's motion.  *See* Mem. of Law at 4-8 (Mar. 11, 2021), ECF No. 22.  Indeed, plaintiffs' failure to file a response of any kind to that motion means that they have conceded it pursuant to Local Civil Rule 7(b).  And the fact that plaintiffs' counsel has now inquired with defense counsel about waiver of service indicates that plaintiffs understand the Minister has not been properly served in this action, and nevertheless sought entry of default against her.  Relatedly, plaintiffs' motion to strike defense counsel's appearances on behalf of the Minister is baseless and should be denied.  *See* Mem. of Law at 9-10 (Mar. 11, 2021), ECF No. 23.  The Minister opposed that motion, and plaintiffs, no doubt recognizing the lack of merit to their position, filed no reply purporting to rebut any of her arguments.

## ARGUMENT

## POINT I

## THE CLAIM AGAINST THE REPUBLIC SHOULD BE DISMISSED FOR FAILURE TO SERVE AND LACK OF JURISDICTION UNDER THE FSIA

### A.  The Court Lacks Personal Jurisdiction Because Plaintiffs Have Not Remedied Their Defective Service Of The Republic In This Action.

In order to establish personal jurisdiction over a foreign state, a plaintiff must demonstrate that service has been made on the foreign state in compliance with the FSIA. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1051 (2019); 28 U.S.C. § 1608(a).  The FSIA provides that where, as here, no "special arrangement for service between the plaintiff and the foreign state" exists and there is no "applicable international convention on service of judicial documents," the plaintiff must serve the foreign state "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a).[1]

Here, the only purported service of the Republic is counsel's purported delivery of a copy of the original Complaint and summons to an employee of the Republic's Embassy in Washington D.C.  Aff. of Service (Dec. 30, 2020), ECF No. 8.  This is insufficient under the FSIA, as set forth in the Republic's original motion to dismiss.  *See* Mem. of Law at 2-4 (Mar. 1,

---

[1] Plaintiffs acknowledged that there is no applicable international convention under Section 1608(a)(2), and claimed that they "were making special arrangements in Lebanon" to effect service pursuant to Section 1608(a)(1).  Pls.' Mot. to Extend Time to Serve Defs. ¶ 3 (Nov. 9, 2020), ECF No. 7.  But Section 1608(a)(1) refers to an arrangement "between the plaintiff and the foreign state," not a unilateral purported special arrangement by plaintiffs.  There is no such arrangement between plaintiffs and the Republic here.  Despite the fact that the Republic explained this in its original motion to dismiss, Mem. of Law at 3 n.1 (Mar. 1, 2021), ECF No. 13, plaintiffs do not and cannot assert otherwise.

2021), ECF No. 13.  As the U.S. Supreme Court has held, service under Section 1608(a)(3) cannot be accomplished through a mailing to an embassy, and instead the mailing must be to the Ministry of Foreign Affairs in the foreign state itself.  *Harrison*, 139 S. Ct. at 1057.

Moreover, the other requirements of Section 1608(a)(3) do not appear to be satisfied. The documents were not dispatched by the Clerk of the Court and they were addressed to the Ministry of Justice, not the Ministry of Foreign Affairs.  *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) ("[S]ection 1608(a) mandates service of the Ministry of Foreign Affairs, the department most likely to understand American procedure" and "strict adherence to the terms of 1608(a) is required."); *Adetoro v. King Abdullah Acad.*, Case No. 19-civ-01918 (TNM), 2019 WL 3457989, at *3 (D.D.C. July 30, 2019) (quashing service because plaintiffs "themselves mailed the documents rather than the clerk of the court").  In addition, the affidavit of service does not state that a notice of suit was included, and no signed receipt has been provided.  *See Gretton Ltd. v. Republic of Uzbekistan*, Civil Action No. 18-1755 (JEB), 2019 WL 3430669, at *3 (D.D.C. July 30, 2019) (omission of notice of suit and copy of the FSIA from service packet "would render service incomplete"), *appeal dismissed*, No. 19-7102, 2020 WL 4932321 (D.C. Cir. July 30, 2020); Minute Order (Nov. 9, 2020) ("Plaintiffs must ensure service of process upon Defendants and file an AFFIDAVIT by no later than January 8, 2021, or the Court will dismiss the action without prejudice.").  Indeed, plaintiffs' counsel asked defense counsel on March 18, 2021 whether "our client" would waive service, apparently recognizing that their previous purported service is insufficient.

### B.  The Court Lacks Subject Matter Jurisdiction Under The FSIA.

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state" in U.S. court, *e.g., Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989), and "'must be applied by the district courts in every action against a foreign sovereign, since subject-matter

jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity,'" *Af-Cap, Inc. v. Republic of Congo*, 326 F. Supp. 2d 128, 129 (D.D.C. 2004) (citation omitted).[2]  Where, as here, a plaintiff seeks recognition of a foreign judgment, the FSIA's requirements must be satisfied.  *See Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1137 (D.C. Cir. 2020) (affirming dismissal of action for recognition of Tanzanian court judgments under the D.C. Uniform Foreign-Country Money Judgments Recognition Act for lack of subject matter jurisdiction under the FSIA).

To establish subject matter jurisdiction under the FSIA, a plaintiff must show that one of the FSIA's enumerated exceptions to sovereign immunity applies.  28 U.S.C. §§ 1604-1607.  Here, plaintiffs conclusorily assert that the FSIA's first three exceptions confer jurisdiction, Am. Compl. ¶¶ 7, 10-14, but once again have not alleged facts to support that legal conclusion (nor could they).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *see also* Mem. of Law at 4-7 (Mar. 1, 2021), ECF No. 13.  Accordingly, the Amended Complaint should be dismissed.

### 1. The Amended Complaint Fails To Allege That The Republic Has Explicitly Or Implicitly Waived Its Immunity To Suit In U.S. Court.

The FSIA's first exception provides for jurisdiction where "the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  The waiver must be "clear[] and unambiguous[]."  *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002); *Luxexpress 2016 Corp. v. Gov't of Ukraine*, No. 18-cv-812 (TSC), 2020 WL 1308357, at *8 (D.D.C. Mar. 19, 2020) (no waiver despite presidential decree and

---

[2] Accordingly, neither 28 U.S.C. § 1331 nor D.C. Code §§ 15-361, 364, or 636 confers jurisdiction for a claim against the Republic.  *Cf.* Am. Compl. ¶¶ 5, 8.  And 28 U.S.C. § 1391(f)(4) speaks to venue, not jurisdiction.  *Cf.* Am. Compl. ¶ 6.

bilateral investment treaty referencing potential future claims because "a court will not find a foreign sovereign waived its immunity unless it 'has clearly and unambiguously done so'" (citation omitted)).   Here, the Amended Complaint still says nothing about any explicit waiver of immunity by the Republic in connection with plaintiffs' claims; instead, it merely alleges that "defendants assured plaintiffs that the collection of the judgments sought to be recognized would not be thwarted by invocation of any immunity provisions of any court, foreign or domestic." Am. Compl. ¶ 10.   Tellingly, plaintiffs do not identify or cite any actual communication or agreement containing such an assurance.   This vague and conclusory allegation does not demonstrate a "clear[] and unambiguous[]" waiver.   *World Wide Minerals*, 296 F.3d at 1162; *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 35 (D.C. Cir. 2014) ("exacting showing required for waivers of foreign sovereign immunity").

The Amended Complaint also makes reference to "ongoing communications and free exchange of documents" as "[c]onduct of" an explicit and implicit waiver.   Am. Compl. ¶ 11. That contention is unavailing.   An explicit waiver cannot be inferred from such conduct.   *See Gutch v. Fed. Republic of Germany*, 255 F. App'x 524, 525 (D.C. Cir. 2007) (Germany's conduct did not constitute a waiver where there was "no mention of waiver of German sovereign immunity in the courts of the United States").   And, as the Republic previously noted, Mem. of Law at 5 (Mar. 1, 2021), ECF No. 13, implicit waivers are found "only where a foreign state has: 1) filed a responsive pleading without raising sovereign immunity, 2) agreed to arbitrate in the United States, and 3) agreed to a particular choice of law," *i.e.*, a choice of law provision "selecting U.S. law."   *E.g.*, *Luxexpress*, 2020 WL 1308357, at *8-9.   The Amended Complaint still does not (and cannot) make any such allegation here.

**2.    The Amended Complaint Fails To Allege Facts Satisfying The Requirements Of The FSIA's "Commercial Activity" Exception.**

The FSIA's so-called "commercial activity" exception allows a U.S. court to exercise jurisdiction over a foreign state in an action "based [i] upon a commercial activity carried on in the United States by the foreign state; [ii] or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; [iii] or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  Here, the first two bases are inapplicable since plaintiffs concede that the relevant conduct took place in Lebanon, not the United States.  Am. Compl. ¶ 13 (claiming the harm was "caused by defendants' actions in Lebanon"); *id.* ¶ 12 ("Plaintiffs business [*sic*] in Lebanon was effectively shut down by the defendant").  The third basis also does not apply.

*First*, plaintiffs have once again failed to allege a "direct effect in the United States." 28 U.S.C. § 1605(a)(2); *see also* Mem. of Law at 6 (Mar. 1, 2021), ECF No. 13.  Where, as here, "the claims sound in tort, rather than contract, the court must focus on the 'locus of the tort' to determine where the direct effect occurred."  *Luxexpress*, 2020 WL 1308357, at *7 (citation omitted).  In *Luxexpress*, this Court held that since "plaintiffs' injuries stem[med] from the loss of their leases and specific property, inventory and other equipment, all of which occurred in Kyiv . . . the locus of the alleged torts [was] Ukraine."  *Id.*  Similarly here, plaintiffs claim loss of their licenses, physical destruction of their quarry equipment, and closure of their quarries in Lebanon.  Am. Compl. ¶¶ 15-17.  Accordingly, the "locus of the tort" is Lebanon and that is where any "direct effect occurred."  *Luxexpress*, 2020 WL 1308357, at *7.

Contrary to plaintiffs' assertion, any purported "stunting of plaintiff's business growth efforts in the United States" based on events in Lebanon, *see* Am. Compl. ¶ 13, is not an

"immediate consequence" that satisfies the requirements of Section 1605(a)(2).  *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992).  Even if the conduct at issue "prevent[ed] plaintiffs from advancing commercial businesses in the United States," Am. Compl. ¶ 12, even where "'an American individual or firm suffers some financial loss from a foreign tort, [that] cannot, standing alone, suffice' to show a 'direct effect' in the United States."  *Luxexpress*, 2020 WL 1308357, at *7 (loss of U.S. business is a "downstream consequence," not an "immediate consequence") (citation omitted).

*Second*, plaintiffs still do not allege that the Republic's purported conduct in Lebanon was "in connection with a commercial activity."  28 U.S.C. § 1605(a)(2); *see also* Mem. of Law at 6 (Mar. 1, 2021), ECF No. 13.  "[I]n determining whether an activity is commercial, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994) (internal quotations omitted).  Here, the Amended Complaint alleges that the Republic cancelled plaintiffs' permits, ordered closure of their quarries, and ordered state security forces to destroy quarry equipment. Am. Compl. ¶¶ 16-17.  These are actions of a sovereign, not a private party engaged in commerce.  *See Luxexpress*, 2020 WL 1308357, at *6 ("[A] state's confiscation of property within its borders is not a 'commercial' act" (citation omitted)).

### 3. The FSIA's Expropriation Exception Remains Inapplicable Based On The Domestic Takings Rule And Because The Amended Complaint Does Not Allege The Presence Of Property In The United States.

The FSIA's "expropriation exception" confers jurisdiction where "rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried

on in the United States by the foreign state."  28 U.S.C. § 1605(a)(3).  None of those

requirements is met here.  As set forth in the Republic's original motion to dismiss, Mem. of

Law at 7 (Mar. 1, 2021), ECF No. 13, even assuming *arguendo* that plaintiffs have alleged a

taking by the Republic of plaintiffs' rights in property, the scope of the expropriation exception

does not cover a taking by a foreign state of property from its own citizens (*i.e.*, a domestic

taking).  *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 715-16 (2021); Am. Compl. ¶ 2

(plaintiffs are "Lebanese nationals" and a company incorporated under Lebanese law).  This is

unchanged by the Amended Complaint's conclusory allegation that Defendants' conduct was "in

violation of international law" because the purported taking occurred without "just compensation

and for no public purpose."  Am. Compl. ¶ 14; *Luxexpress*, 2020 WL 1308357 at *3 (rejecting

plaintiffs' argument "that taking property without just compensation violates international law"

and denying application of the expropriation exception because of the "domestic takings rule").

Moreover, the expropriation exception remains inapplicable based on the lack of any

allegation that the property at issue or any property exchanged for it is present in the United

States.  *See De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1108 (D.C. Cir. 2017) (directing

dismissal of claims against Hungary for failure to satisfy expropriation exception's commercial

nexus requirement for a foreign state); *see also* Mem. of Law at 7 (Mar. 1, 2021), ECF No. 13.

## POINT II

## THE CLAIM AGAINST THE MINISTER SHOULD BE DISMISSED FOR FAILURE TO SERVE, LACK OF JURISDICTION, AND FAILURE TO STATE A CLAIM

After initially listing solely the Republic as a defendant party in this action and refusing

to confirm despite defense counsel's repeated inquiries whether plaintiffs intended to name the

Minister as a defendant, *see* Mem. of Law at 2-4 (Mar. 11, 2021), ECF No. 22; Ramamurthi

Decl. ¶¶ 4-8, plaintiffs have now listed the Minister as a defendant party, Am. Compl. ¶ 4.[3]  But

plaintiffs have named the Minister "in her official capacity" and otherwise group her together

with the Republic throughout the Amended Complaint.  *E.g.*, Am. Compl. ¶¶ 10, 12-14.

Accordingly, the "real party in interest" in this action is the Republic, not the Minister; any

claims against the Minister should therefore "be treated as claims against [the Republic] itself,"

and dismissed for the reasons set forth *supra* Point I.  *See, e.g., Mohammadi v. Islamic Republic

of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013) (dismissing claims against Iranian officials where

Iran was the real party in interest); *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34-35

(D.D.C. 2013) (dismissing claims against Kenyan officials on FSIA grounds "because the suit is

in all respects a suit against the Kenyan government"), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014).

 Assuming *arguendo* that there is some separate claim against the Minister, that claim

fails since plaintiffs have not remedied any of the multiple independent defects set forth in

Defendants' previous submissions.  *See* Mem. of Law at 7-9 (Mar. 1, 2021), ECF No. 13; Mem.

of Law at 8-9 (Mar. 11, 2021), ECF No. 22.

 *First*, the only purported service of the Minister is through a Washington D.C. consular

officer.  Aff. of Service (Dec. 30, 2020), ECF No. 9.  But that does not satisfy the requirements

for service of the Minister, an individual in a foreign country.  Fed. R. Civ. P. 4(f); *see also*

Mem. of Law at 8 (Mar. 1, 2021), ECF No. 13; Mem. of Law at 8 (Mar. 11, 2021), ECF No. 22.

Plaintiffs have tacitly acknowledged this, as their counsel inquired with defense counsel

regarding waiver of service.

 *Second,* there is no basis for subject matter jurisdiction over a claim against the Minister.

Plaintiffs assert that there is jurisdiction under the FSIA, 28 U.S.C. § 1391(f)(4), 28 U.S.C.

---

[3] However, the Prayers for Relief still refer only to the "Defendant State," which the Amended Complaint defines as the Republic, *id.* ¶ 3, and the "Defendant's [singular] assets."

§ 1331, and the D.C. Uniform Foreign-Country Money Judgments Recognition Act of 2011.

Am. Compl. ¶¶ 5-8.  But none of these provisions creates subject matter jurisdiction here.  It is

well-settled that a claim against a foreign government official does not fall within the scope of

the FSIA.  *See, e.g., Samantar v. Yousuf*, 560 U.S. 305, 315-16 (2010).  Section 1391(f)(4)

governs venue, not jurisdiction, and in any event applies by its terms only to foreign states and

their political subdivisions.  And the D.C. Uniform Foreign-Country Money Judgments

Recognition Act is not a U.S. federal statute, so it does not confer subject matter jurisdiction in

federal court on its own or through 28 U.S.C. 1331.[4]  *See also* Mem. of Law at 8 (Mar. 1, 2021),

ECF No. 13; Mem. of Law at 8 (Mar. 11, 2021), ECF No. 22.

Moreover, the allegations of the Amended Complaint demonstrate that the Minister has

conduct-based immunity for this claim, which defeats subject matter jurisdiction where a

defendant (i) is a public minister, official, or agent of a foreign state (ii) who acted in their

"official capacity" and (iii) exercising jurisdiction would "'enforce a rule of law against the

state.'"  *Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 231 (D.D.C. 2018) (citation omitted).  The first

and second requirements are satisfied since the Amended Complaint specifically alleges that Her

Excellency Marie-Claude Najm is the Lebanese Minister of Justice and that she was acting in her

"official capacity."  Am. Compl. ¶ 4.  As to the third requirement, exercising jurisdiction

"enforce[s] a rule of law against the state" where "a decision by this Court on the legality of the

[foreign official's] actions would amount to a decision on the legality of [the foreign state's]

actions" and/or the plaintiff is seeking a judgment that "would bind (or be enforceable against)

the foreign state."  *Buratai*, 318 F. Supp. 3d at 233; *Lewis v. Mutond*, 918 F.3d 142, 146 (D.C.

---

[4] The Amended Complaint also does not claim diversity jurisdiction, nor could it, since as Lebanese nationals, Am. Compl. ¶ 2, plaintiffs and Minister are aliens for jurisdictional purposes.  *See* 28 U.S.C. § 1332.

Cir. 2019).  That is exactly the situation here—plaintiffs seek to hold the Minister and the Republic liable on the same claim based on the same allegations, and are explicitly seeking enforcement against the Republic.  *See* Am. Compl. Count 1, Prayers for Relief; *see also Odhiambo*, 930 F. Supp. 2d at 35 ("A plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

*Third,* there is no basis for personal jurisdiction over the Minister, who is not a U.S. domiciliary, since the Amended Complaint does not allege that the Minister has *any* contacts with this jurisdiction, let alone contacts sufficient to confer jurisdiction over the Minister in this case.  *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888-91 (D.C. Cir. 2021) (affirming dismissal for lack of general personal jurisdiction, which requires contacts "so continuous and systematic" that the defendant is "essentially at home in the forum State," and lack of specific personal jurisdiction, which "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation") (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Buratai*, 318 F. Supp. 3d at 228-29 (dismissing claims against Nigerian government officials for lack of personal jurisdiction where "[f]ar from 'sufficient' contacts, the complaint does not allege that the Nigerian defendants had *any* contacts with the United States, much less that the Nigerian defendants directed their activities at the United States in any way or that the plaintiffs' claims arise from the defendants' U.S. contacts"); *see also* Mem. of Law at 8-9 (Mar. 1, 2021), ECF No. 13; Mem. of Law at 8-9 (Mar. 11, 2021), ECF No. 22.

*Finally*, the judgments that plaintiffs seek to enforce are against the "Lebanese State" or the "Lebanese State, Ministry of Interior," not the Minister.  *See* Am. Compl. Exs. A-D.  As the U.S. Supreme Court has held, a government official such as the Minister is not the equivalent of a foreign state.  *See Samantar*, 560 U.S. at 315-16.  And it is black-letter law that a plaintiff may not enforce a judgment against a party who is not named in the judgment.  *See Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*, 291 F. Supp. 3d 21, 30 (D.D.C. 2017) (D.C. Uniform Foreign-Country Money Judgments Recognition Act "may only be used to enforce a judgment 'between the parties' actually named in [the original judgment]"); *see also* Mem. of Law at 8 (Mar. 1, 2021), ECF No. 13; Mem. of Law at 9 (Mar. 11, 2021), ECF No. 22.  Plaintiffs' judgments do not name or otherwise reference the Minister and that alone requires dismissal of this action as against her.

**CONCLUSION**

For the foregoing reasons, the Republic and the Minister respectfully request that the

Court grant their Motions to Dismiss the Amended Complaint.

Dated: March 29, 2021

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Carmine D. Boccuzzi, Jr. (D.C. Cir. NY0335)
    cboccuzzi@cgsh.com
Rathna J. Ramamurthi (D.C. Cir. NY0337)
    rramamurthi@cgsh.com
One Liberty Plaza
New York, New York 10006
Tel. (212) 225-2508
Fax (212) 225-3999

*Attorneys for the Republic of Lebanon and Her*
*Excellency Marie-Claude Najm, Minister of Justice*
