**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PIERRE FATTOUCH | : | |
| | : | |
| MOUSSA FATTOUCH | : | |
| | : | |
| UNITED LEBANESE QUARRIES AND | : | |
| CRUSHERS COMPANY S.A.L. | : | |
| *Plaintiffs* | : | Case No.: 1:20-CV-02599-EGS |
| *v.* | : | |
| THE REPUBLIC OF LEBANON, | : | |
| Its Ministries, Agencies, and Instrumentalities | : | |
| c/o Ministry of Justice | : | |
| | : | |
| HER EXCELLENCY MARIE-CLAUD NAJIM | : | |
| Minister of Justice | : | |
| *Defendant State.* | : | |

**MEMORANDUM OF LAW**

INTRODUCTION

Plaintiffs are in possession of final judgements that are the product of a legal system that

afforded the defendants due process of law. Defendants have persisted in failing to satisfy the

judgements, hence causing the plaintiffs to pursue relief under the Uniform Foreign-Country

Money Judgments Recognition Act of 2011, D.C. Code §15-361, §15.636 and, §15.364, et. seq.

As articulated in the amended complaint, the defendants have been aware of the finality of the

judgements since 2005 and 2017, yet they have not provided satisfaction to the plaintiffs.

In truth in fact, the defendants have actual notice of the initial complaint and amended

complaint. In the effort to again, in US Courts, the defendants have mounted a robust effort to

walk back the assurances provided to plaintiffs on both subject matter and personal jurisdiction.

First, the now disputed issue of personal jurisdiction is curable through the mechanics of 28

U.S.C. 1608; in an abundance of caution, particularly since the defendants have not authorized

1

their defense counsel to accept service of the amended complaint or execute a Waiver of Service of Summons for the Amended Complaint, plaintiffs have begun this process as specified in 28 U.S.C. 1608, which they would have done *ab initio* but for the belief that service at the Lebanon Embassy was agreed to by the defendants. Second, in the long and storied history of this claim, defendants provided to plaintiffs the agreement to waive immunity. This is not surprising because not everyone in authority in the Republic of Lebanon sought to besmirch the legitimacy of Lebanon's judicial system, due process and national constitution by failing to satisfy a lawful final judgement. It is clear that those presently in authority are determined to renege on the waiver of sovereign immunity that the Republic of Lebanon earlier provided to the plaintiffs, hence the need for this plea for relief to this Court.

The amended complaint, exhibits thereto, and the exhibits attached hereto, provide such notice and factual basis for this Court to deny the defendants motion to dismiss.

STANDARD

In their Motion to Dismiss, the defendant have challenged the legal sufficiency of the plaintiffs' jurisdictional allegations F.R.Civ.P. 12(b)(1),(2) and (5). Defendants claim that the facts alleged are insufficient. "If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." Phoenix Consulting v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). Defendants have also advanced a claim that the amended complaint should be dismissed pursuant to F.R.Civ.P. 12(b)(6), thereby challenging the adequacy of the amended complaint on its face. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The

complaint must be sufficient "to give a defendant fair notice of the claims" made against the defendants. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Under the 12(b)(6) standard, a court must treat the complaint's factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. Macharia v. United States, 238 F.Supp. 2d 13, 19 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (D.C.Cir.2003).

ARGUMENT

Defendants have pursued dismissal of plaintiffs amended complaint on the grounds that the Court lacks both personal and subject matter jurisdiction. Plaintiffs submit attached Exhibits A and B in support of denial of the motion to dismiss.

Personal Jurisdiction

This Court acquired personal jurisdiction because the defendants agreed to accept service of the initial Complaint through the Embassy of Lebanon. Section 1608(a) of the FSIA provides, *inter alia*, "(a)Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint *in accordance with any special arrangement for service* between the plaintiff and the foreign state or political subdivision; or . . ." [Emphasis added].

Prior to the filing of the initial Complaint, plaintiffs, through counsel, had been engaged in discussions with the Embassy of Lebanon in Washington D.C. regarding resolution of the claims of the plaintiff. Via the Embassy of Lebanon, the defendants agreed to the receipt of materials designed to pursue the "case correctly." [Exhibit A]. Absent any particularity or limitation by Judge Iskandar, plaintiffs acted to pursue the case correctly by filing the instant action under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011,

3

D.C. Code §15-361, §15.636 and, §15.364, et. seq. The correspondence from Judge Helen Iskandar, Head of State's Legal Department, discusses the ongoing communications between plaintiffs and defendants. Noteworthy is that the correspondence confirms the finality and legitimacy of the final judgements. Plaintiff followed the direction of Judge Iskandar and served the Embassy – which accepted the service of process – as reflected in the correspondence.

Upon filing of the amended complaint, defense counsel declined to accept service of the amended complaint on behalf of their clients advising that they had not been authorized to do so. Given this shift in posture by the defendants, plaintiffs have begun the process under 28 U.S.C. 1608 to effectuate service of process in an abundance of caution should this Court determine that service was not effectuated. Although time consuming and costly, service of process will surely ensue. In this regard, plaintiffs seek leave of the Court for an additional sixty (60) days to serve the defendants. *See, e.g.,* Novak v. World Bank, 703 F.2d 1305, 1310 (D.C.Cir.1983) ("Although district courts have broad discretion to dismiss a complaint for failure to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained."). Further there is no prejudice to the defendants in allowing additional time to serve – particularly in light of there is no time limit for service under the FSIA, and the aforesaid reasons the plaintiff effectuated service at the Embassy of Lebanon. *See* Barot v. Embassy of Republic of Zambia, 785 F.3d 26 (D.C. Cir. 2015).

Subject Matter Jurisdiction

This Court has subject matter jurisdiction because the defendants waived sovereign immunity both by implication and explicitly. [*See* Exhibit B]. The Affidavit/Exhibit B clearly established that defendants waived sovereign immunity. Implicit waiver is found where "the

foreign state had "at some point indicated its amenability to suit." Odhiambo v. Republic Kenya, 764 F.3d 31, 35 (D.C. Cir. 2014) *citing* Odhiambo v. Republic of Kenya, 930 F.Supp.2d 17, 24 (D.D.C.2013) (Odhiambo I) (quoting Princz v. Federal Republic of Germany, 26 F.3d 1166, 1174 (D.C.Cir.1994)). The independent statements made by government officials to plaintiffs establish an implied, if not explicit waiver. It is sensible that this waiver was provided by the defendants when viewed in light of the other exhibits filed herein and with the amended complaint. As an example, Exhibit A is representative of the sentiment by the defendants that the plaintiffs possessed a valid final judgement that should be paid. As attested in the Affidavit [Exhibit B], the waiver was both clear and unambiguous. *See* World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1162 (D.C. Cir. 2002). In Exhibit A, the paragraph labeled "Third," whose assertion related to the agreement to arbitrate and arrive at a settlement is consistent with paragraph 20 of the amended complaint, is further factual evidence that the defendants waived sovereign immunity as attested to in the Affidavit [Exhibit B]. It appears that the present powers in Lebanon are unsurprisingly seeking to renege on the lawful and proper actions of their own government. Nonetheless the Affidavit is clear and unambiguous that the defendants waived sovereign immunity.

Defendants have also waived sovereign immunity as contemplated under 28 U.S.C. 1605(a)(2). Plaintiffs' business in Lebanon was effectively shut down by the defendant, ultimately resulting in the judgments sought to be recognized, to prevent plaintiffs from advancing commercial businesses in the United States. Here, the defendants behaved not as a government, but as a competitor. Ignoring judicial decisions, the defendants moved forward to continue to deprive plaintiffs of their right to conduct business. See D.I. 24-1, pp. 9 -14 titled "Responsibility."  The motive for this conduct is not an issue.  Republic of Argentina v.

Weltover, Inc., 504 U.S. 607, 614 (1992). The commercial exception applies because "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in "trade and traffic or commerce." *Ibid*. Next, the claim made by the plaintiffs is "based upon" that activity (or upon an act in connection with that activity) that is the aforesaid commercial activity of the defendants entering into the commercial space without lawful governmental authority simply to cease the operations of a commercial enterprise (plaintiffs' business). The relief sought before this Court, recognition of final judgements, does not extract the matter from the commercial exception. Lastly, the plaintiffs have pled in the amended complaint what is required under Republic of Argentina v. Weltover, Inc., The Court explained that "an effect is 'direct' if it follows as an immediate consequence of the defendant's" activity. Odhiambo v. Republic Kenya, *Ibid at* 38 *citing* Weltover, Inc., 504 U.S. at 618. Plaintiffs have pled that the defendants conduct was designed to "prevent plaintiffs from advancing commercial businesses in the United States." See D.I. 24 paras.12-13. Plaintiffs have pled that the intended effect of the defendants commercial activity to prevent the plaintiffs from advancing commercial interests in the United States, hence this "establishes or necessarily contemplates the United States as a place of performance causes a direct effect in the United States." Odhiambo v. Republic Kenya Id. at p.40. There is no requirement of "substantiality" or "foreseeability." With respect to the direct effect. Republic of Argentina v. Weltover, Inc., 504 U.S. at 618.

Defendants have waived sovereign immunity as contemplated under 28 U.S.C. 1605(a)(3). Defendants conduct that resulted in the judgments sought to be recognized were in violation of international law. Defendants seized equipment, contracts and other tangible property of the plaintiffs, as evidenced by the judgments sought to be recognized, without

6

providing just compensation and for no public purpose. Application of this exception hinges on a three-part inquiry: [1] the claim must be one in which "rights in property" are "in issue"; [2] the property in question must have been "taken in violation of international law"; and [3] one of two commercial-activity nexuses with the United States must be satisfied. Simon v. Republic Hungary, 911 F.3d 1172, 1177 (D.C. Cir. 2018). The amended complaint, exhibits attached thereto, and the exhibits attached hereto establish a "taking" as contemplated under section 1605(a)(3). In 1972, the Republic of Lebanon has ratified several pertinent international treaties, including the International Covenant on Civil and Political Rights ("ICCPR") wherein the defendants agreed to, inter alia, not interfere with economic rights and provide due process to enforce these rights. Since the final judgements were issues, the defendants have engaged in an ongoing violation of international law by failing to satisfy the judgements as required under the ICCPR. As pled in the amended complaint, the actual cause of the harm to the plaintiffs that resulted in the final judgements was conduct by an agency or instrumentality of the foreign state (See amended complaint, paras. 14 – 17). Plaintiffs contend that these agencies/instrumentalities of the defendant Republic of Lebanon engaged in commercial activity in the United States, at least at the time of the taking.

Defendant Marie-Claud Najim is an appropriate agency/instrumentality to be named as a defendant. The role of the Minister of Justice was elevated in this matter when the defendant Republic of Lebanon acted to assign the Minister of Justice "to do what is necessary to ensure the rights of defense of the State in the case of the FATTOUCHES." (*See* EXHIBIT C p.2) The ultimate relief sought before this Court is for the recognition of the final judgements in Lebanon. By it's own actions, the defendant Republic of Lebanon made the Minister of Justice a necessary party of plaintiffs to achieve this end.

<u>CONCLUSION</u>

The history of the conduct of the defendants is well documented in the exhibits to the amended complaint and this response. Over an extended period of time defendants have sought, as they do now, to evade the rule of law and satisfy the lawfully obtained final judgements secured by the plaintiffs. The defendants, however, acted in isolation. The exhibits referenced establish that many sectors of the Lebanese government not only acknowledged the validity of the judgements but castigated the defendant Republic of Lebanon for failure to satisfy the judgement. In the extended course of this matter, government officials waived sovereign immunity to allow the plaintiffs to obtain satisfaction in whatever forum they could pursue relief. One such forum is the courts of the United States. The issue of service of process is clearly disputed. Plaintiffs submit that service was proper. However, service of process under 28 U.S.C.1608 is being pursued in a abundance of caution. Should the Court determine that the FISA mechanics must be followed, leave for an additional 60 days to execute service thereunder is respectfully requested.

Respectfully submitted,

DATE: April 12, 2021

  /s/ Jeremey Ibrahim
Jeremy H. Gonzalez Ibrahim
Poblete Tamargo, LLP
510 King Street, Suite 340
Alexandria, VA 22314
703−566−3037


  /s/ Jason Poblete
Jason Poblete
Poblete Tamargo, LLP
510 King Street, Suite 340
Alexandria, VA 22314
703−566−3037

/s/ Mauricio Tamargo

Mauricio Tamargo

Poblete Tamargo, LLP

510 King Street, Suite 340
Alexandria, VA 22314

703−566−3037