**28 USC Ch. 97: JURISDICTIONAL IMMUNITIES OF FOREIGN STATES**

From Title 28—JUDICIARY AND JUDICIAL PROCEDURE
        PART IV—JURISDICTION AND VENUE

## CHAPTER 97—JURISDICTIONAL IMMUNITIES OF FOREIGN STATES

Sec.
1602.    Findings and declaration of purpose.
1603.    Definitions.
1604.    Immunity of a foreign state from jurisdiction.
1605.    General exceptions to the jurisdictional immunity of a foreign state.
1605A.   Terrorism exception to the jurisdictional immunity of a foreign state.
1605B.   Responsibility of foreign states for international terrorism against the United States.
1606.    Extent of liability.
1607.    Counterclaims.
1608.    Service; time to answer default.[1]

1609.    Immunity from attachment and execution of property of a foreign state.
1610.    Exceptions to the immunity from attachment or execution.
1611.    Certain types of property immune from execution.

### EDITORIAL NOTES

#### AMENDMENTS

**2016**—Pub. L. 114–222, §3(b)(1), Sept. 28, 2016, 130 Stat. 853, added item 1605B.
**2008**—Pub. L. 110–181, div. A, title X, §1083(a)(2), Jan. 28, 2008, 122 Stat. 341, added item 1605A.

[1] *So in original. Does not conform to section catchline.*

## §1602. Findings and declaration of purpose

The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2892.)

### STATUTORY NOTES AND RELATED SUBSIDIARIES

#### EFFECTIVE DATE

Pub. L. 94–583, §8, Oct. 21, 1976, 90 Stat. 2898, provided that: "This Act [enacting this chapter and section 1330 of this title, amending sections 1332, 1391, and 1441 of this title, and enacting provisions set out as notes under this section and section 1 of this title] shall take effect ninety days after the date of its enactment [Oct. 21, 1976]."

#### SHORT TITLE

For short title of Pub. L. 94–583 as the "Foreign Sovereign Immunities Act of 1976", see section 1 of Pub. L. 94–583, set out as a Short Title of 1976 Amendments note under section 1 of this title.

#### SEPARABILITY

Pub. L. 94–583, §7, Oct. 21, 1976, 90 Stat. 2898, provided that: "If any provision of this Act [enacting this chapter and section 1330 of this title, amending sections 1332, 1391, and 1441 of this title, and enacting provisions set out as notes under this section and section 1 of this title] or the application thereof to any

foreign state is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable."

## §1603. Definitions

For purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country.

(c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2892; amended Pub. L. 109–2, §4(b)(2), Feb. 18, 2005, 119 Stat. 12.)

### EDITORIAL NOTES

### AMENDMENTS

**2005**—Subsec. (b)(3). Pub. L. 109–2 substituted "(e)" for "(d)".

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–2 applicable to any civil action commenced on or after Feb. 18, 2005, see section 9 of Pub. L. 109–2, set out as a note under section 1332 of this title.

### EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## §1604. Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2892.)

### EDITORIAL NOTES

### REFERENCES IN TEXT

The time of enactment of this Act, referred to in text, probably means the time of enactment of Pub. L. 94–583, which was approved Oct. 21, 1976.

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## §1605. General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That—

(1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

(c) Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other

cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

(d) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the provisions of chapter 313 of title 46 and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

[(e), (f) Repealed. Pub. L. 110–181, div. A, title X, §1083(b)(1)(B), Jan. 28, 2008, 122 Stat. 341.]

(g) Limitation on Discovery.—

(1) In general.—(A) Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for section 1605A or section 1605B, the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

(B) A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

(2) Sunset.—(A) Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

(B) After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would—

(i) create a serious threat of death or serious bodily injury to any person;

(ii) adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

(iii) obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

(3) Evaluation of evidence.—The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

(4) Bar on motions to dismiss.—A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

(5) Construction.—Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

(h) Jurisdictional Immunity for Certain Art Exhibition Activities.—

(1) In general.—If—

(A) a work is imported into the United States from any foreign state pursuant to an agreement that provides for the temporary exhibition or display of such work entered into between a foreign state that is the owner or custodian of such work and the United States or one or more cultural or educational institutions within the United States;

(B) the President, or the President's designee, has determined, in accordance with subsection (a) of Public Law 89–259 (22 U.S.C. 2459(a)), that such work is of cultural significance and the temporary exhibition or display of such work is in the national interest; and

(C) the notice thereof has been published in accordance with subsection (a) of Public Law 89–259 (22 U.S.C. 2459(a)),

any activity in the United States of such foreign state, or of any carrier, that is associated with the temporary exhibition or display of such work shall not be considered to be commercial activity by such foreign state for purposes of subsection (a)(3).

(2) Exceptions.—

(A) Nazi-era claims.—Paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and—

(i) the property at issue is the work described in paragraph (1);

(ii) the action is based upon a claim that such work was taken in connection with the acts of a covered government during the covered period;

(iii) the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and

(iv) a determination under clause (iii) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

(B) Other culturally significant works.—In addition to cases exempted under subparagraph (A), paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and—

(i) the property at issue is the work described in paragraph (1);

(ii) the action is based upon a claim that such work was taken in connection with the acts of a foreign government as part of a systematic campaign of coercive confiscation or misappropriation of works from members of a targeted and vulnerable group;

(iii) the taking occurred after 1900;

(iv) the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and

(v) a determination under clause (iv) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

(3) Definitions.—For purposes of this subsection—

(A) the term "work" means a work of art or other object of cultural significance;

(B) the term "covered government" means—

(i) the Government of Germany during the covered period;

(ii) any government in any area in Europe that was occupied by the military forces of the Government of Germany during the covered period;

(iii) any government in Europe that was established with the assistance or cooperation of the Government of Germany during the covered period; and

(iv) any government in Europe that was an ally of the Government of Germany during the covered period; and

(C) the term "covered period" means the period beginning on January 30, 1933, and ending on May 8, 1945.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2892; amended Pub. L. 100–640, §1, Nov. 9, 1988, 102 Stat. 3333; Pub. L. 100–669, §2, Nov. 16, 1988, 102 Stat. 3969; Pub. L. 101–650, title III, §325(b)(8), Dec. 1, 1990, 104 Stat. 5121; Pub. L. 104–132, title II, §221(a), Apr. 24, 1996, 110 Stat. 1241; Pub. L. 105–11, Apr. 25, 1997, 111 Stat. 22; Pub. L. 107–77, title VI, §626(c), Nov. 28, 2001, 115 Stat. 803; Pub. L. 107–117, div. B, §208, Jan. 10, 2002, 115 Stat. 2299; Pub. L. 109–304, §17(f)(2), Oct. 6, 2006, 120 Stat. 1708; Pub. L. 110–181, div. A, title X, §1083(b)(1), Jan. 28, 2008, 122 Stat. 341; Pub. L. 114–222, §3(b)(2), Sept. 28, 2016, 130 Stat. 853; Pub. L. 114–319, §2(a), Dec. 16, 2016, 130 Stat. 1618.)

## Editorial Notes

## References in Text

Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, referred to in subsec. (g)(4), are set out in the Appendix to this title.

## Amendments

**2016**—Subsec. (g)(1)(A). Pub. L. 114–222 inserted "or section 1605B" after "but for section 1605A". Subsec. (h). Pub. L. 114–319 added subsec. (h).

**2008**—Subsec. (a)(7). Pub. L. 110–181, §1083(b)(1)(A), struck out par. (7) which provided for lack of jurisdictional immunity in certain cases in which money damages were sought against a foreign state for personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act.

Subsecs. (e), (f). Pub. L. 110–181, §1083(b)(1)(B), struck out subsecs. (e) and (f) which defined "torture", "extrajudicial killing", "hostage taking", and "aircraft sabotage" and provided for a 10-year statute of limitations for actions brought under former subsec. (a)(7) of this section.

Subsec. (g)(1)(A). Pub. L. 110–181, §1083(b)(1)(C), substituted "but for section 1605A" for "but for subsection (a)(7)".

**2006**—Subsec. (d). Pub. L. 109–304 substituted "section 31301 of title 46" and "chapter 313 of title 46" for "the Ship Mortgage Act, 1920 (46 U.S.C. 911 and following)" and "that Act", respectively.

**2002**—Subsec. (a)(7)(A). Pub. L. 107–117 amended Pub. L. 107–77. See 2001 Amendment note below.

**2001**—Subsec. (a)(7)(A). Pub. L. 107–77, as amended by Pub. L. 107–117, inserted before semicolon "or the act is related to Case Number 1:00CV03110(EGS) in the United States District Court for the District of Columbia".

**1997**—Subsec. (a)(7)(B)(ii). Pub. L. 105–11 substituted "neither the claimant nor the victim was" for "the claimant or victim was not".

**1996**—Subsec. (a)(7). Pub. L. 104–132, §221(a)(1), added par. (7).

Subsecs. (e) to (g). Pub. L. 104–132, §221(a)(2), added subsecs. (e) to (g).

**1990**—Subsec. (a)(6). Pub. L. 101–650 substituted "state" for "State" after "foreign".

**1988**—Subsec. (a)(6). Pub. L. 100–669 added par. (6).

Subsec. (b). Pub. L. 100–702, §1(3), struck out at end "Whenever notice is delivered under subsection (b)(1) of this section, the maritime lien shall thereafter be deemed to be an in personam claim against the foreign state which at that time owns the vessel or cargo involved: *Provided*, That a court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose, such value to be determined as of the time notice is served under subsection (b)(1) of this section."

Subsec. (b)(1). Pub. L. 100–640, §1(1), substituted "and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved" for "but such notice shall not be deemed to have been delivered, nor may it thereafter be delivered, if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit—unless the party was unaware that the vessel or cargo of a foreign state was involved, in which event the service of process of arrest shall be deemed to constitute valid delivery of such notice".

Subsec. (b)(2). Pub. L. 100–640, §1(2), substituted "paragraph (1) of this subsection" for "subsection (b)(1) of this section".

Subsecs. (c), (d). Pub. L. 100–702, §1(3), added subsecs. (c) and (d).

### Statutory Notes and Related Subsidiaries

## Effective Date of 2016 Amendment

Pub. L. 114–319, §2(b), Dec. 16, 2016, 130 Stat. 1619, provided that: "The amendment made by this section [amending this section] shall apply to any civil action commenced on or after the date of the enactment of this Act [Dec. 16, 2016]."

Amendment by Pub. L. 114–222 applicable to any civil action pending on, or commenced on or after, Sept. 28, 2016, and arising out of an injury to a person, property, or business on or after Sept. 11, 2001, see section 7 of Pub. L. 114–222, set out as a note under section 2333 of Title 18, Crimes and Criminal Procedure.

## Effective Date of 2008 Amendment

For applicability of amendments by Pub. L. 110–181 to pending cases, see section 1083(c) of Pub. L. 110–181, set out as an Effective Date note under section 1605A of this title.

## Effective Date of 1997 Amendment

Pub. L. 105–11 provided that the amendment made by that Act was effective with respect to any cause of action arising before, on, or after Apr. 25, 1997.

## Effective Date of 1996 Amendment

Pub. L. 104–132, title II, §221(c), Apr. 24, 1996, 110 Stat. 1243, provided that: "The amendments made by this subtitle [subtitle B (§221) of title II of Pub. L. 104–132, amending this section and section 1610 of this title] shall apply to any cause of action arising before, on, or after the date of the enactment of this Act [Apr. 24, 1996]."

## Effective Date of 1988 Amendment

Pub. L. 100–640, §3, Nov. 9, 1988, 102 Stat. 3334, provided that: "The amendments made by this Act [amending this section and section 1610 of this title] shall apply to actions commenced on or after the date of the enactment of this Act [Nov. 9, 1988]."

## Effective Date

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## Notification

Pub. L. 114–319, §3, Dec. 16, 2016, 130 Stat. 1620, provided that: "The Secretary of State shall ensure that foreign states that apply for immunity under Public Law 89–259 (22 U.S.C. 2459) are appropriately notified of the text of this Act [amending this section and enacting provisions set out as notes under this section and section 1 of this title]."

### CIVIL LIABILITY FOR ACTS OF STATE SPONSORED TERRORISM

Pub. L. 104–208, div. A, title I, §101(c) [title V, §589], Sept. 30, 1996, 110 Stat. 3009–121, 3009-172, provided that:

"(a) an [sic] official, employee, or agent of a foreign state designated as a state sponsor of terrorism designated [sic] under [former] section 6(j) of the Export Administration Act of 1979 [former 50 U.S.C. 4605(j)] while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under [former] section 1605(a)(7) of title 28, United States Code, for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in [former] section 1605(a)(7).

"(b) Provisions related to statute of limitations and limitations on discovery that would apply to an action brought under 28 U.S.C. 1605(f) and (g) shall also apply to actions brought under this section. No action shall be maintained under this action [sic] if an official, employee, or agent of the United States, while acting within the scope of his or her office, employment, or agency would not be liable for such acts if carried out within the United States."


## §1605A. Terrorism exception to the jurisdictional immunity of a foreign state

(a) IN GENERAL.—

(1) NO IMMUNITY.—A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

(2) CLAIM HEARD.—The court shall hear a claim under this section if—

(A)(i)(I) the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or

(II) in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083(c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) (as in effect before the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208) was filed;

(ii) the claimant or the victim was, at the time the act described in paragraph (1) occurred—

(I) a national of the United States;

(II) a member of the armed forces; or

(III) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment; and

(iii) in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration; or

(B) the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States District Court for the District of Columbia.


(b) LIMITATIONS.—An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208) not later than the latter of—

(1) 10 years after April 24, 1996; or

(2) 10 years after the date on which the cause of action arose.

(c) PRIVATE RIGHT OF ACTION.—A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—

(1) a national of the United States,

(2) a member of the armed forces,

(3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or

(4) the legal representative of a person described in paragraph (1), (2), or (3),

for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

(d) ADDITIONAL DAMAGES.—After an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies, by reason of the same acts on which the action under subsection (c) is based.

(e) SPECIAL MASTERS.—

(1) IN GENERAL.—The courts of the United States may appoint special masters to hear damage claims brought under this section.

(2) TRANSFER OF FUNDS.—The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. 10603c),[1] to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.

(f) APPEAL.—In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to section 1292(b) of this title.

(g) PROPERTY DISPOSITION.—

(1) IN GENERAL.—In every action filed in a United States district court in which jurisdiction is alleged under this section, the filing of a notice of pending action pursuant to this section, to which is attached a copy of the complaint filed in the action, shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is—

(A) subject to attachment in aid of execution, or execution, under section 1610;

(B) located within that judicial district; and

(C) titled in the name of any defendant, or titled in the name of any entity controlled by any defendant if such notice contains a statement listing such controlled entity.

(2) NOTICE.—A notice of pending action pursuant to this section shall be filed by the clerk of the district court in the same manner as any pending action and shall be indexed by listing as defendants all named defendants and all entities listed as controlled by any defendant.

(3) ENFORCEABILITY.—Liens established by reason of this subsection shall be enforceable as provided in chapter 111 of this title.

(h) DEFINITIONS.—For purposes of this section—

(1) the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation;

(2) the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages;

(3) the term "material support or resources" has the meaning given that term in section 2339A of title 18;

(4) the term "armed forces" has the meaning given that term in section 101 of title 10;

(5) the term "national of the United States" has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));

(6) the term "state sponsor of terrorism" means a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)),[1] section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism; and

(7) the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note).

(Added Pub. L. 110–181, div. A, title X, §1083(a)(1), Jan. 28, 2008, 122 Stat. 338.)

EDITORIAL NOTES

## REFERENCES IN TEXT

Section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008, referred to in subsec. (a)(2)(A)(i)(II), is section 1083(c) of Pub. L. 110–181, which is set out as a note below.

The enactment of this section and the date of the enactment of this section, referred to in subsecs. (a)(2)(A)(i)(II) and (b), refers to the date of enactment of Pub. L. 110–181, which was approved Jan. 28, 2008.

Section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997, referred to in subsec. (a)(2)(A)(i)(II) and (b), is Pub. L. 104–208, div. A, title I, §101(c) [title V, §589], which is set out as a note under section 1605 of this title.

Section 1404C of the Victims of Crime Act of 1984, referred to in subsec. (e)(2), is section 1404C of chapter XIV of title II of Pub. L. 98–473, which was classified to section 10603c of Title 42, The Public Health and Welfare, prior to editorial reclassification as section 20106 of Title 34, Crime Control and Law Enforcement.

Section 6(j) of the Export Administration Act of 1979, referred to in subsec. (h)(6), is section 6(j) of Pub. L. 96–72, which was classified to section 2405(j) of the former Appendix to Title 50, War and National Defense, prior to editorial reclassification as section 4605(j) of Title 50, and was repealed by Pub. L. 115–232, div. A, title XVII, §1766(a), Aug. 13, 2018, 132 Stat. 2232.

Section 3 of the Torture Victim Protection Act of 1991, referred to in subsec. (h)(7), is section 3 of Pub. L. 102–256, which is set out as a note under section 1350 of this title.

STATUTORY NOTES AND RELATED SUBSIDIARIES

## EFFECTIVE DATE

Pub. L. 110–181, div. A, title X, §1083(c), Jan. 28, 2008, 122 Stat. 342, provided that:

"(1) IN GENERAL.—The amendments made by this section [enacting this section and amending sections 1605, 1607 and 1610 of this title and section 20104 of Title 34, Crime Control and Law Enforcement] shall apply to any claim arising under section 1605A of title 28, United States Code.

"(2) PRIOR ACTIONS.—

"(A) IN GENERAL.—With respect to any action that—

"(i) was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208) [28 U.S.C. 1605 note], before the date of the enactment of this Act [Jan. 28, 2008],

"(ii) relied upon either such provision as creating a cause of action,

"(iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and

"(iv) as of such date of enactment, is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure [28 U.S.C. App.],

that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code.

"(B) DEFENSES WAIVED.—The defenses of res judicata, collateral estoppel, and limitation period are waived—

"(i) in any action with respect to which a motion is made under subparagraph (A), or

"(ii) in any action that was originally brought, before the date of the enactment of this Act, under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208), and is refiled under section 1605A(c) of title 28, United States Code, to the extent such defenses are based on the claim in the action.

"(C) TIME LIMITATIONS.—A motion may be made or an action may be refiled under subparagraph (A) only—

"(i) if the original action was commenced not later than the latter of—

"(I) 10 years after April 24, 1996; or

"(II) 10 years after the cause of action arose; and

"(ii) within the 60-day period beginning on the date of the enactment of this Act.

"(3) RELATED ACTIONS.—If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208) [28 U.S.C. 1605 note], any other action arising out of the same act or incident may be brought

under section 1605A of title 28, United States Code, if the action is commenced not later than the latter of 60 days after—

"(A) the date of the entry of judgment in the original action; or

"(B) the date of the enactment of this Act [Jan. 28, 2008].

"(4) PRESERVING THE JURISDICTION OF THE COURTS.—Nothing in section 1503 of the Emergency Wartime Supplemental Appropriations Act, 2003 (Public Law 108–11, 117 Stat. 579) has ever authorized, directly or indirectly, the making inapplicable of any provision of chapter 97 of title 28, United States Code, or the removal of the jurisdiction of any court of the United States."

## SEVERABILITY

Pub. L. 110–181, div. A, title X, §1083(e), Jan. 28, 2008, 122 Stat. 344, provided that: "If any provision of this section [enacting this section and amending sections 1605, 1607 and 1610 of this title and section 20104 of Title 34, Crime Control and Law Enforcement] or the amendments made by this section, or the application of such provision to any person or circumstance, is held invalid, the remainder of this section and such amendments, and the application of such provision to other persons not similarly situated or to other circumstances, shall not be affected by such invalidation."

## SUDAN CLAIMS RESOLUTION

Pub. L. 116–260, div. K, title IX, Dec. 27, 2020, 134 Stat. 1821, provided in part: "That any unexpended balances remaining following the distributions described in section 7(b)(1) of the Sudan Claims Resolution Act [probably means section 1707(b)(1) of title XVII of div. FF of Pub. L. 116–260; see note below] that are determined by the Secretary of State, not later than September 30, 2030, and at the close of each fiscal year thereafter, to be excess to the needs of such distributions, shall be returned to the general fund of the Treasury".

Pub. L. 116–260, div. FF, title XVII, Dec. 27, 2020, 134 Stat. 3291, provided that:

## "SEC. 1701. SHORT TITLE.

"This title may be cited as the 'Sudan Claims Resolution Act'.

## "SEC. 1702. SENSE OF CONGRESS.

"It is the sense of Congress that—

"(1) the United States should support Sudan's democratic transition, particularly in light of the country's dire economic situation, and this is a critical moment to address longstanding issues in the relationship between the United States and Sudan;

"(2) as part of the process of restoring normal relations between Sudan and the United States, Congress supports efforts to provide meaningful compensation to individuals employed by or serving as contractors for the United States Government, as well as their family members, who personally have been awarded by a United States District Court a judgment for compensatory damages against Sudan; and

"(3) the terrorism-related claims of victims and family members of the September 11, 2001, terrorist attacks must be preserved and protected.

## "SEC. 1703. DEFINITIONS.

"In this Act [probably means "this title"]:

"(1) APPROPRIATE CONGRESSIONAL COMMITTEES.—The term 'appropriate congressional committees' means—

"(A) the Committee on Foreign Relations and the Committee on the Judiciary of the Senate; and

"(B) the Committee on Foreign Affairs and the Committee on the Judiciary of the House of Representatives.

"(2) CLAIMS AGREEMENT.—The term 'claims agreement' means the Claims Settlement Agreement Between the Government of the United States of America and the Government of the Republic of the Sudan, done at Washington, D.C., on October 30, 2020, including all annexes, appendices, side letters, related agreements, and instruments for implementation, including the escrow agreement among the Central Bank of Sudan, the Federal Reserve Bank of New York, and the escrow agent appointed thereby, as well as the escrow conditions release agreement, set out in an exchange of diplomatic notes between the United States and Sudan on October 21, 2020, and subsequently amended on December 19, 2020.

"(3) FOREIGN NATIONAL.—The term 'foreign national' means an individual who is not a citizen of the United States.

"(4) SECRETARY.—The term 'Secretary' means the Secretary of State.

"(5) STATE SPONSOR OF TERRORISM.—The term 'state sponsor of terrorism' means a country the government of which the Secretary has determined is a government that has repeatedly provided support for acts of international terrorism, for purposes of—

"(A) section 1754(c)(1)(A)(i) of the Export Control Reform Act of 2018 (50 U.S.C. 4813(c)(1)(A)(i));

"(B) section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371);

"(C) section 40(d) of the Arms Export Control Act (22 U.S.C. 2780(d)); or

"(D) any other provision of law.

"(6) SUDAN.—The term 'Sudan' means the Government of the Republic of the Sudan.

## "SEC. 1704. RECEIPT OF ADEQUATE FUNDS; IMMUNITIES OF SUDAN.

"(a) IMMUNITY.—

"(1) IN GENERAL.—Subject to section 1706, and notwithstanding any other provision of law, upon submission of a certification described in paragraph (2)—

"(A) Sudan, an agency or instrumentality of Sudan, and the property of Sudan or an agency or instrumentality of Sudan, shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution under section 1605(a)(7) (as such section was in effect on January 27, 2008) or section 1605A or 1610 (insofar as section 1610 relates to a judgment under such section 1605(a)(7) or 1605A) of title 28, United States Code;

"(B) section 1605A(c) of title 28, United States Code, section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008 (Public Law 110–181; 28 U.S.C. 1605A note), section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (Public Law 104–208; 28 U.S.C. 1605 note), and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Sudan, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court; and

"(C) any attachment, decree, lien, execution, garnishment, or other judicial process brought against property of Sudan, or property of any agency, instrumentality, official, employee, or agent of Sudan, in connection with an action that is precluded by subparagraph (A) or (B) shall be void.

"(2) CERTIFICATION.—A certification described in this paragraph is a certification by the Secretary to the appropriate congressional committees stating that—

"(A) the August 12, 1993, designation of Sudan as a state sponsor of terrorism has been formally rescinded;

"(B) Sudan has made final payments with respect to the private settlement of the claims of victims of the U.S.S. Cole attack; and

"(C) the United States Government has received funds pursuant to the claims agreement that are sufficient to ensure—

"(i) payment of the agreed private settlement amount for the death of a citizen of the United States who was an employee of the United States Agency for International Development in Sudan on January 1, 2008;

"(ii) meaningful compensation for claims of citizens of the United States (other than individuals described in section 1707(a)(1)) for wrongful death or physical injury in cases arising out of the August 7, 1998, bombings of the United States embassies located in Nairobi, Kenya, and Dar es Salaam, Tanzania; and

"(iii) funds for compensation through a fair process to address compensation for terrorism-related claims of foreign nationals for wrongful death or physical injury arising out of the events referred to in clause (ii).

"(b) SCOPE.—Subject to section 1706, subsection (a) of this section shall apply to all conduct and any event occurring before the date of the certification described in subsection (a)(2), regardless of whether, or the extent to which, application of that subsection affects any action filed before, on, or after that date.

"(c) AUTHORITY OF THE SECRETARY.—The certification by the Secretary referred to in subsection (a)(2) may not be delegated and may not be subject to judicial review.

## "SEC. 1705. REAUTHORIZATION OF AND MODIFICATIONS TO UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND.

[Amended section 20144 of Title 34, Crime Control and Law Enforcement.]

## "SEC. 1706. PRESERVATION OF CERTAIN PENDING INTERNATIONAL TERRORISM CLAIMS AGAINST SUDAN.

"(a) FINDINGS.—Congress makes the following findings:

"(1) It is the long-standing policy of the United States that civil lawsuits against those who support, aid and abet, and provide material support for international terrorism serve the national security interests of the United States by deterring the sponsorship of terrorism and by advancing interests of justice, transparency, and accountability.

"(2) Neither the claims agreement, nor any other aspect of the effort to normalize relations with Sudan—

"(A) resolved claims against Sudan involving victims and family members of the September 11, 2001, terrorist attacks; or

"(B) otherwise advanced the interests of the victims and family members of the September 11, 2001, terrorist attacks.

"(3) The claims referenced in paragraph (2)(A) remain pending in the multidistrict proceeding 03–MDL–1570 in the United States District Court for the Southern District of New York, and subsection (c) preserves and protects those claims.

"(b) Sense of Congress.—It is the sense of Congress that the executive branch should not file a Statement of Interest or any other submission, or intervene in any other way, in the multidistrict proceeding 03–MDL–1570, in connection to the rescission of the designation of Sudan as a state sponsor of terrorism or the restoration of Sudan's immunities from jurisdiction and execution in conformity with this Act [probably means "this title"], if such action would disadvantage terrorism victims.

"(c) In General.—Nothing in this Act [probably means "this title"] shall apply to, be construed to apply to, or otherwise affect—

"(1) any claim in any of the proceedings comprising the multidistrict proceeding 03-MDL-1570 in the United States District Court for the Southern District of New York brought by any person who, as of the date of the enactment of this Act [Dec. 27, 2020], has a claim pending against Sudan (including as a member of a class certified under Rule 23 of the Federal Rules of Civil Procedure or as a putative member of such a class pending certification); or

"(2) the enforcement of any judgment in favor of such person entered in such proceeding.

"(d) Applicable Law.—Proceedings described in subsection (c) shall be governed by applicable law in effect before the date of the enactment of this Act [Dec. 27, 2020], including—

"(1) chapter 97 of title 28, United States Code (commonly known as the 'Foreign Sovereign Immunities Act of 1976'), including 28 U.S.C. 1605A note [sic];

"(2) section 201 [probably means section 201(a), (b), (d)] of the Terrorism Risk Insurance Act of 2002 (Public Law 107–297; 28 U.S.C. 1610 note), with respect to any asset that, on or after the date of enactment of this Act, is designated as a blocked asset (as defined in subsection (d)(2) of that section);

"(3) rules governing the rights of parties to amend pleadings; and

"(4) other relevant provisions of law.

"(e) Rule of Construction.—Nothing in this section shall alter, impact the interpretation of, or otherwise affect—

"(1) any section of chapter 97 of title 28, United States Code; or

"(2) any other provision of law.

## "SEC. 1707. COMPENSATION FOR CERTAIN NATURALIZED UNITED STATES CITIZENS AND FOREIGN NATIONALS.

"(a) Compensation.—

"(1) In general.—There is authorized to be appropriated $150,000,000 for payment of compensation, notwithstanding any other provision of law, to any individual who—

"(A) has been awarded a judgment in any of the cases set forth in section (c) of the Annex to the claims agreement; and

"(B) is—

"(i) a United States employee or contractor injured in connection with the bombings of the United States embassies located in Nairobi, Kenya, and Dar es Salaam, Tanzania, who became a United States citizen after August 7, 1998, and before the date of the enactment of this Act [Dec. 27, 2020];

"(ii) a family member—

"(I) of a United States employee or contractor injured in connection with the bombings of the United States embassies located in Nairobi, Kenya, and Dar es Salaam, Tanzania; and

"(II) who is a United States citizen as of the date of the enactment of this Act; or

"(iii) a family member—

"(I) of a foreign national United States employee or contractor killed during those bombings; and

"(II) who is a United States citizen as of the date of the enactment of this Act.

"(2) Payments.—With the requirement of achieving parity in compensation between individuals who became United States citizens after August 7, 1998, and individuals who were United States citizens on or before August 7, 1998, payment of compensation under paragraph (1) to—

"(A) an individual described in paragraph (1)(B)(i) shall be based on the same standards used to determine the compensation for an employee or contractor injured in connection with the bombings described in that paragraph who was a United States citizen on or before August 7, 1998;

"(B) an individual described in paragraph (1)(B)(ii) shall be on an equal basis to compensation provided to a family member of an individual described in subparagraph (A); and

"(C) an individual described in paragraph (1)(B)(iii) shall be on an equal, or, where applicable, a pro rata basis to compensation provided to a family member of a United States employee or contractor who was a United States citizen killed during such bombings.

"(b) Distribution and Requirements.—

"(1) Distribution.—The Secretary shall distribute payments from funds made available to carry out subsection (a)(1) to individuals described in that subsection.

"(2) Authorization letter.—Not later than December 31, 2021, the Secretary shall send a letter to each individual who will receive payment under paragraph (1) informing the individual of the amount of compensation the individual will receive pending the execution of any writings under paragraph (3), and the standards used to determine compensation under subsection (a)(2), taking into account the individual's final judgment amount.

"(3) Requirement before distribution.—Before making a payment to an individual under paragraph (1), and after the delivery of the authorization letter under paragraph (2), the Secretary shall require the individual to execute a writing that includes a waiver and release of all the individual's rights to assert claims for compensatory or other relief in any form or to enforce any judgment against Sudan in connection with, and any claims against the United States related to, any claim, suit, or action specified in Article II of the claims agreement.

"(c) Foreign Nationals.—Notwithstanding any other provision of law or the claims agreement—

"(1) individuals described in subsection (a)(1) are not eligible to receive any compensation as provided by Sudan pursuant to Article III of the claims agreement; and

"(2) the funds provided by Sudan for distribution of compensation to such individuals pursuant to the Annex of the claims agreement shall be redistributed—

"(A) among all other individuals eligible for compensation under section (c) of the Annex to the claims agreement consistent with the principles set out in that Annex; or

"(B) if Sudan and the foreign nationals eligible for compensation reach a private settlement, then pursuant to the terms of that settlement.

"(d) Department of State Reporting Requirements.—

"(1) Initial report.—Not later than 90 days after the date of the enactment of this Act [Dec. 27, 2020], the Secretary shall submit to the appropriate congressional committees a report that includes a detailed description of the plan of the Department of State for the distribution of payments to each category of individual described in subsection (a)(1), including how the Department is arriving at compensation levels for each individual and the amount of compensation each such individual will receive from funds made available to carry out that subsection.

"(2) Updated report.—Not later than December 31, 2021, the Secretary shall submit to the appropriate congressional committees a report describing—

"(A) whether the distribution plan described in paragraph (1) was carried out; and

"(B) whether compensation levels were provided as described in the report required by paragraph (1).

"(e) Comptroller General Report.—Not later than December 31, 2022, the Comptroller General of the United States shall submit to the appropriate congressional committees a report assessing the implementation of this section by the Department of State, including whether—

"(1) all distributions were made in accordance with the requirements of subsections (a), (b), and (c); and

"(2) all individuals described in subsection (a)(1) received compensation from amounts made available to carry out that subsection in the manner described in subsection (a)(2).

## "SEC. 1708. TREATY AND EXECUTIVE AGREEMENT PRACTICE.

"(a) Findings.—Congress makes the following findings:

"(1) Congress and the executive branch share responsibility for the foreign relations of the United States pursuant to Article I and Article II of the Constitution of the United States.

"(2) All legislative powers of the Federal Government, including on matters of foreign relations, are vested in the Congress of the United States pursuant to section 1 of Article I of the Constitution.

"(3) The executive branch may not direct Congress to take any action, nor may it convey any legislative or other power assigned to Congress under the Constitution to any entity, domestic or foreign.

"(4) The original escrow release conditions agreement prescribed specific legislative text and purported both to require enactment of such text and provide a veto to Sudan over exceptions to that text.

"(5) Congress rejected the approach described in paragraph (4).

"(6) The executive branch and Sudan subsequently amended the escrow release conditions agreement to eliminate the specific legislative text as well as the purported requirement for enactment and the purported veto over exceptions to that text.

"(b) AMENDMENT TO CASE-ZABLOCKI ACT.—[Amended section 112b of Title 1, General Provisions.]"

## LIBYA CLAIMS RESOLUTION

Pub. L. 110–301, Aug. 4, 2008, 122 Stat. 2999, provided that:

## "SECTION 1. SHORT TITLE.

"This Act may be cited as the 'Libyan Claims Resolution Act'.

## "SEC. 2. DEFINITIONS.

"In this Act—

"(1) the term 'appropriate congressional committees' means the Committee on Foreign Relations and the Committee on the Judiciary of the Senate and the Committee on Foreign Affairs and the Committee on the Judiciary of the House of Representatives;

"(2) the term 'claims agreement' means an international agreement between the United States and Libya, binding under international law, that provides for the settlement of terrorism-related claims of nationals of the United States against Libya through fair compensation;

"(3) the term 'national of the United States' has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));

"(4) the term 'Secretary' means the Secretary of State; and

"(5) the term 'state sponsor of terrorism' means a country the government of which the Secretary has determined, for purposes of [former] section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) [former 50 U.S.C. 4605(j)], section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism.

## "SEC. 3. SENSE OF CONGRESS.

"Congress supports the President in his efforts to provide fair compensation to all nationals of the United States who have terrorism-related claims against Libya through a comprehensive settlement of claims by such nationals against Libya pursuant to an international agreement between the United States and Libya as a part of the process of restoring normal relations between Libya and the United States.

## "SEC. 4. ENTITY TO ASSIST IN IMPLEMENTATION OF CLAIMS AGREEMENT.

"(a) DESIGNATION OF ENTITY.—

"(1) DESIGNATION.—The Secretary, by publication in the Federal Register, may, after consultation with the appropriate congressional committees, designate 1 or more entities to assist in providing compensation to nationals of the United States, pursuant to a claims agreement.

"(2) AUTHORITY OF THE SECRETARY.—The designation of an entity under paragraph (1) is within the sole discretion of the Secretary, and may not be delegated. The designation shall not be subject to judicial review.

"(b) IMMUNITY.—

"(1) PROPERTY.—

"(A) IN GENERAL.—Notwithstanding any other provision of law, if the Secretary designates any entity under subsection (a)(1), any property described in subparagraph (B) of this paragraph shall be immune from attachment or any other judicial process. Such immunity shall be in addition to any other applicable immunity.

"(B) PROPERTY DESCRIBED.—The property described in this subparagraph is any property that —

"(i) relates to the claims agreement; and

"(ii) for the purpose of implementing the claims agreement, is—

"(I) held by an entity designated by the Secretary under subsection (a)(1);

"(II) transferred to the entity; or

"(III) transferred from the entity.

"(2) OTHER ACTS.—An entity designated by the Secretary under subsection (a)(1), and any person acting through or on behalf of such entity, shall not be liable in any Federal or State court for any action taken to implement a claims agreement.

"(c) NONAPPLICABILITY OF THE GOVERNMENT CORPORATION CONTROL ACT.—An entity designated by the Secretary under subsection (a)(1) shall not be subject to chapter 91 of title 31, United States Code (commonly known as the 'Government Corporation Control Act').

## "SEC. 5. RECEIPT OF ADEQUATE FUNDS; IMMUNITIES OF LIBYA.

"(a) IMMUNITY.—

"(1) IN GENERAL.—Notwithstanding any other provision of law, upon submission of a certification described in paragraph (2)—

"(A) Libya, an agency or instrumentality of Libya, and the property of Libya or an agency or instrumentality of Libya, shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution contained in section 1605A, [former] 1605(a)(7), or 1610 (insofar as section 1610 relates to a judgment under such section 1605A or [former] 1605(a)(7)) of title 28, United States Code;

"(B) section 1605A(c) of title 28, United States Code, section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008 (Public Law 110–181; 122 Stat. 342; 28 U.S.C. 1605A note), section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 [Pub. L. 104–208, div. A, title I, §101(c)] (28 U.S.C. 1605 note), and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Libya, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court; and

"(C) any attachment, decree, lien, execution, garnishment, or other judicial process brought against property of Libya, or property of any agency, instrumentality, official, employee, or agent of Libya, in connection with an action that would be precluded by subparagraph (A) or (B) shall be void.

"(2) CERTIFICATION.—A certification described in this paragraph is a certification—

"(A) by the Secretary to the appropriate congressional committees; and

"(B) stating that the United States Government has received funds pursuant to the claims agreement that are sufficient to ensure—

"(i) payment of the settlements referred to in section 654(b) of division J of the Consolidated Appropriations Act, 2008 (Public Law 110–161; 121 Stat. 2342); and

"(ii) fair compensation of claims of nationals of the United States for wrongful death or physical injury in cases pending on the date of enactment of this Act [Aug. 4, 2008] against Libya arising under section 1605A of title 28, United States Code (including any action brought under [former] section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (28 U.S.C. 1605 note), that has been given effect as if the action had originally been filed under [section] 1605A(c) of title 28, United States Code, pursuant to section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008 (Public Law 110–181; 122 Stat. 342; 28 U.S.C. 1605A note)).

"(b) TEMPORAL SCOPE.—Subsection (a) shall apply only with respect to any conduct or event occurring before June 30, 2006, regardless of whether, or the extent to which, application of that subsection affects any action filed before, on, or after that date.

"(c) AUTHORITY OF THE SECRETARY.—The certification by the Secretary referred to in subsection (a)(2) may not be delegated, and shall not be subject to judicial review."

## APPLICABILITY TO IRAQ

Pub. L. 110–181, div. A, title X, §1083(d), Jan. 28, 2008, 122 Stat. 343, provided that:

"(1) APPLICABILITY.—The President may waive any provision of this section [enacting this section and amending sections 1605, 1607 and 1610 of this title and section 20104 of Title 34, Crime Control and Law Enforcement] with respect to Iraq, insofar as that provision may, in the President's determination, affect Iraq or any agency or instrumentality thereof, if the President determines that—

"(A) the waiver is in the national security interest of the United States;

"(B) the waiver will promote the reconstruction of, the consolidation of democracy in, and the relations of the United States with, Iraq; and

"(C) Iraq continues to be a reliable ally of the United States and partner in combating acts of international terrorism.

"(2) TEMPORAL SCOPE.—The authority under paragraph (1) shall apply—

"(A) with respect to any conduct or event occurring before or on the date of the enactment of this Act [Jan. 28, 2008];

"(B) with respect to any conduct or event occurring before or on the date of the exercise of that authority; and

"(C) regardless of whether, or the extent to which, the exercise of that authority affects any action filed before, on, or after the date of the exercise of that authority or of the enactment of this Act.

"(3) NOTIFICATION TO CONGRESS.—A waiver by the President under paragraph (1) shall cease to be effective 30 days after it is made unless the President has notified Congress in writing of the basis for the waiver as determined by the President under paragraph (1).

"(4) SENSE OF CONGRESS.—It is the sense of the Congress that the President, acting through the Secretary of State, should work with the Government of Iraq on a state-to-state basis to ensure compensation for any meritorious claims based on terrorist acts committed by the Saddam Hussein regime against individuals who were United States nationals or members of the United States Armed Forces at the time of those terrorist acts and whose claims cannot be addressed in courts in the United States due to the exercise of the waiver authority under paragraph (1)."

### EXECUTIVE DOCUMENTS

## Ex. Ord. No. 13477. Settlement of Claims Against Libya

Ex. Ord. No. 13477, Oct. 31, 2008, 73 F.R. 65565, provided:

By the authority vested in me as President by the Constitution and the laws of the United States of America, and pursuant to the August 14, 2008, claims settlement agreement between the United States of America and Libya (Claims Settlement Agreement), and in recognition of the October 31, 2008, certification of the Secretary of State, pursuant to section 5(a)(2) of the Libyan Claims Resolution Act (Public Law 110–301), and in order to continue the process of normalizing relations between the United States and Libya, it is hereby ordered as follows:

SECTION 1. All claims within the terms of Article I of the Claims Settlement Agreement (Article I) are settled.

(a) Claims of United States nationals within the terms of Article I are espoused by the United States and are settled according to the terms of the Claims Settlement Agreement.

(i) No United States national may assert or maintain any claim within the terms of Article I in any forum, domestic or foreign, except under the procedures provided for by the Secretary of State.

(ii) Any pending suit in any court, domestic or foreign, by United States nationals (including any suit with a judgment that is still subject to appeal or other forms of direct judicial review) coming within the terms of Article I shall be terminated.

(iii) The Secretary of State shall provide for procedures governing applications by United States nationals with claims within the terms of Article I for compensation for those claims.

(iv) The Attorney General shall enforce this subsection through all appropriate means, which may include seeking the dismissal, with prejudice, of any claim of a United States national within the terms of Article I pending or filed in any forum, domestic or foreign.

(b) Claims of foreign nationals within the terms of Article I are settled according to the terms of the Claims Settlement Agreement.

(i) No foreign national may assert or maintain any claim coming within the terms of Article I in any court in the United States.

(ii) Any pending suit in any court in the United States by foreign nationals (including any suit with a judgment that is still subject to appeal or other forms of direct judicial review) coming within the terms of Article I shall be terminated.

(iii) Neither the dismissal of the lawsuit, nor anything in this order, shall affect the ability of any foreign national to pursue other available remedies for claims coming within the terms of Article I in foreign courts or through the efforts of foreign governments.

(iv) The Attorney General shall enforce this subsection through all appropriate means, which may include seeking the dismissal, with prejudice, of any claim of a foreign national within the terms of Article I pending or filed in any court in the United States.

SEC. 2. For purposes of this order:

(a) The term "United States national" has the same meaning as "national of the United States" in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22)), but also includes any entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches).

(b) The term "foreign national" means any person other than a United States national.

(c) The term "person" means any individual or entity, including both natural and juridical persons.

(d) The term "entity" means a partnership, association, trust, joint venture, corporation, group, subgroup, or other organization.

Sec. 3. This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, instrumentalities, or entities, its officers or employees, or any other person.

GEORGE W. BUSH.

## WAIVER OF SECTION 1083 OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2008

Determination of President of the United States, No. 2008–9, Jan. 28, 2008, 73 F.R. 6571, provided:

Memorandum for the Secretary of State

By the authority vested in me as President by the Constitution and the laws of the United States, including section 301 of title 3, United States Code, and section 1083(d) of the National Defense Authorization Act for Fiscal Year 2008 (the "Act"), I hereby determine that:

• All provisions of section 1083 of the Act, if applied to Iraq or any agency or instrumentality thereof, may affect Iraq or its agencies or instrumentalities, by exposing Iraq or its agencies or instrumentalities to liability in United States courts and by entangling their assets in litigation.

• The economic security and successful reconstruction of Iraq continue to be top national security priorities of the United States. Section 1083 of the Act threatens those key priorities. If permitted to apply to Iraq, section 1083 would risk the entanglement of substantial Iraqi assets in litigation in the United States—including those of the Development Fund for Iraq, the Central Bank of Iraq, and commercial entities in the United States in which Iraq has an interest. Section 1083 also would expose Iraq to new liability of at least several billion dollars by undoing judgments favorable to Iraq, by foreclosing available defenses on which Iraq is relying in pending litigation, and by creating a new Federal cause of action backed by the prospect of punitive damages to support claims that may previously have been foreclosed. If permitted to apply to Iraq, section 1083 would have a significant financial impact on Iraq and would result in the redirection of financial resources from the continued reconstruction of Iraq and the harming of Iraq's stability, contrary to the interests of the United States.

• A waiver of all provisions of section 1083 with respect to Iraq and any agency or instrumentality of Iraq is therefore in the national security interest of the United States and will promote the reconstruction of, the consolidation of democracy in, and the relations of the United States with, Iraq.

• Iraq continues to be a reliable ally of the United States and a partner in combating acts of international terrorism. The November 26, 2007, Declaration of Principles for a Long-Term Relationship of Cooperation and Friendship between the Republic of Iraq and the United States of America confirmed the commitment of the United States and Iraq to build an enduring relationship in the political, diplomatic, economic, and security arenas and to work together to combat all terrorist groups, including al-Qaida.

Accordingly, I hereby waive all provisions of section 1083 of the Act with respect to Iraq and any agency or instrumentality thereof.

You are authorized and directed to notify the Congress of this determination and waiver and the accompanying memorandum of justification [not set out in the Code], incorporated by reference herein, and to arrange for their publication in the Federal Register.

GEORGE W. BUSH.

_1 See References in Text note below._

## §1605B. Responsibility of foreign states for international terrorism against the United States

(a) DEFINITION.—In this section, the term "international terrorism"—

(1) has the meaning given the term in section 2331 of title 18, United States Code; and

(2) does not include any act of war (as defined in that section).

(b) RESPONSIBILITY OF FOREIGN STATES.—A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by—

(1) an act of international terrorism in the United States; and

(2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

(c) CLAIMS BY NATIONALS OF THE UNITED STATES.—Notwithstanding section 2337(2) of title 18, a national of the United States may bring a claim against a foreign state in accordance with section 2333 of that title if the foreign state would not be immune under subsection (b).

(d) RULE OF CONSTRUCTION.—A foreign state shall not be subject to the jurisdiction of the courts of the United States under subsection (b) on the basis of an omission or a tortious act or acts that constitute mere negligence.

(Added Pub. L. 114–222, §3(a), Sept. 28, 2016, 130 Stat. 853.)

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE

Section applicable to any civil action pending on, or commenced on or after, Sept. 28, 2016, and arising out of an injury to a person, property, or business on or after Sept. 11, 2001, see section 7 of Pub. L. 114–222, set out as an Effective Date of 2016 Amendment note under section 2333 of Title 18, Crimes and Criminal Procedure.

### STAY OF ACTIONS PENDING STATE NEGOTIATIONS

Pub. L. 114–222, §5, Sept. 28, 2016, 130 Stat. 854, provided that:

"(a) EXCLUSIVE JURISDICTION.—The courts of the United States shall have exclusive jurisdiction in any action in which a foreign state is subject to the jurisdiction of a court of the United States under section 1605B of title 28, United States Code, as added by section 3(a) of this Act.

"(b) INTERVENTION.—The Attorney General may intervene in any action in which a foreign state is subject to the jurisdiction of a court of the United States under section 1605B of title 28, United States Code, as added by section 3(a) of this Act, for the purpose of seeking a stay of the civil action, in whole or in part.

"(c) STAY.—

"(1) IN GENERAL.—A court of the United States may stay a proceeding against a foreign state if the Secretary of State certifies that the United States is engaged in good faith discussions with the foreign state defendant concerning the resolution of the claims against the foreign state, or any other parties as to whom a stay of claims is sought.

"(2) DURATION.—

"(A) IN GENERAL.—A stay under this section may be granted for not more than 180 days.

"(B) EXTENSION.—

"(i) IN GENERAL.—The Attorney General may petition the court for an extension of the stay for additional 180-day periods.

"(ii) RECERTIFICATION.—A court shall grant an extension under clause (i) if the Secretary of State recertifies that the United States remains engaged in good faith discussions with the foreign state defendant concerning the resolution of the claims against the foreign state, or any other parties as to whom a stay of claims is sought."

## §1606. Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2894; amended Pub. L. 105–277, div. A, §101(h) [title I, §117(b)], Oct. 21, 1998, 112 Stat. 2681–480, 2681-491; Pub. L. 106–386, div. C, §2002(g)(2), formerly §2002(f)(2), Oct. 28, 2000, 114 Stat. 1543, renumbered §2002(g)(2), Pub. L. 107–297, title II, §201(c)(3), Nov. 26, 2002, 116 Stat. 2337.)

### EDITORIAL NOTES

### AMENDMENTS

**2000**—Pub. L. 106–386, §2002(g)(2), formerly §2002(f)(2), as renumbered by Pub. L. 107–297, which directed repeal of section 101(h) [title I, §117(b)] of div. A of Pub. L. 105–277, was executed by striking out ", except any action under section 1605(a)(7) or 1610(f)" after "punitive damages", to reflect the probable intent of Congress. See 1998 Amendment note below.

**1998**—Pub. L. 105–277 inserted ", except any action under section 1605(a)(7) or 1610(f)" after "punitive damages".

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 1998 AMENDMENT

Amendment by Pub. L. 105–277 applicable to any claim for which a foreign state is not immune under section 1605(a)(7) of this title arising before, on, or after Oct. 21, 1998, see section 101(h) [title I, §117(c)] of Pub. L. 105–277, set out as a note under section 1610 of this title.

### EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## §1607. Counterclaims

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim—

(a) for which a foreign state would not be entitled to immunity under section 1605 or 1605A of this chapter had such claim been brought in a separate action against the foreign state; or

(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or

(c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2894; amended Pub. L. 110–181, div. A, title X, §1083(b)(2), Jan. 28, 2008, 122 Stat. 341.)

### EDITORIAL NOTES

### AMENDMENTS

**2008**—Subsec. (a). Pub. L. 110–181 inserted "or 1605A" after "section 1605".

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 2008 AMENDMENT

For applicability of amendments by Pub. L. 110–181 to pending cases, see section 1083(c) of Pub. L. 110–181, set out as an Effective Date note under section 1605A of this title.

### EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## §1608. Service; time to answer; default

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services —and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

(c) Service shall be deemed to have been made—

(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

(2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

(d) In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2894.)


### STATUTORY NOTES AND RELATED SUBSIDIARIES

## EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.


## §1609. Immunity from attachment and execution of property of a foreign state

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment [1] arrest [1] and execution except as provided in sections 1610 and 1611 of this chapter.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2895.)


### EDITORIAL NOTES

## REFERENCES IN TEXT

The time of enactment of this Act, referred to in text, probably means the time of enactment of Pub. L. 94–583, which was approved Oct. 21, 1976.

STATUTORY NOTES AND RELATED SUBSIDIARIES

## EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

$^1$ So in original. Probably should be followed by a comma.

# §1610. Exceptions to the immunity from attachment or execution

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or

(2) the property is or was used for the commercial activity upon which the claim is based, or

(3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law, or

(4) the execution relates to a judgment establishing rights in property—

(A) which is acquired by succession or gift, or

(B) which is immovable and situated in the United States: *Provided*, That such property is not used for purposes of maintaining a diplomatic or consular mission or the residence of the Chief of such mission, or

(5) the property consists of any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance covering the claim which merged into the judgment, or

(6) the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement, or

(7) the judgment relates to a claim for which the foreign state is not immune under section 1605A or section 1605(a)(7) (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved with the act upon which the claim is based.

(b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

(1) the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly, notwithstanding any withdrawal of the waiver the agency or instrumentality may purport to effect except in accordance with the terms of the waiver, or

(2) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a)(2), (3), or (5) or 1605(b) of this chapter, regardless of whether the property is or was involved in the act upon which the claim is based, or

(3) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605A of this chapter or section 1605(a)(7) of this chapter (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved in the act upon which the claim is based.

(c) No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

(d) The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if—

(1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and

(2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

(e) The vessels of a foreign state shall not be immune from arrest in rem, interlocutory sale, and execution in actions brought to foreclose a preferred mortgage as provided in section 1605(d).

(f)(1)(A) Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)),[1] section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701–1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.

(B) Subparagraph (A) shall not apply if, at the time the property is expropriated or seized by the foreign state, the property has been held in title by a natural person or, if held in trust, has been held for the benefit of a natural person or persons.

(2)(A) At the request of any party in whose favor a judgment has been issued with respect to a claim for which the foreign state is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A, the Secretary of the Treasury and the Secretary of State should make every effort to fully, promptly, and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and executing against the property of that foreign state or any agency or instrumentality of such state.

(B) In providing such assistance, the Secretaries—

(i) may provide such information to the court under seal; and

(ii) should make every effort to provide the information in a manner sufficient to allow the court to direct the United States Marshall's office to promptly and effectively execute against that property.


(3) Waiver.—The President may waive any provision of paragraph (1) in the interest of national security.

(g) Property in Certain Actions.—

(1) In general.—Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—

(A) the level of economic control over the property by the government of the foreign state;

(B) whether the profits of the property go to that government;

(C) the degree to which officials of that government manage the property or otherwise control its daily affairs;

(D) whether that government is the sole beneficiary in interest of the property; or

(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.


(2) United states sovereign immunity inapplicable.—Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgment entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act.

(3) Third-party joint property holders.—Nothing in this subsection shall be construed to supersede the authority of a court to prevent appropriately the impairment of an interest held by a person who is not liable in the action giving rise to a judgment in property subject to attachment in aid of execution, or execution, upon such judgment.

(Added Pub. L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2896; amended Pub. L. 100–640, §2, Nov. 9, 1988, 102 Stat. 3333; Pub. L. 100–669, §3, Nov. 16, 1988, 102 Stat. 3969; Pub. L. 101–650, title III, §325(b)(9), Dec. 1, 1990, 104 Stat. 5121; Pub. L. 104–132, title II, §221(b), Apr. 24, 1996, 110 Stat. 1242; Pub. L. 105–277, div. A, §101(h) [title I, §117(a)], Oct. 21, 1998, 112 Stat. 2681–480, 2681–491; Pub. L. 106–386, div. C, §2002(g)(1), formerly §2002(f)(1), Oct. 28, 2000, 114 Stat. 1543, renumbered §2002(g)(1), Pub. L. 107–297, title II, §201(c)(3), Nov. 26, 2002, 116 Stat. 2337; Pub. L. 110–181, div. A, title X, §1083(b)(3), Jan. 28, 2008, 122 Stat. 341; Pub. L. 112–158, title V, §502(e)(1), Aug. 10, 2012, 126 Stat. 1260.)


### Editorial Notes

# References in Text

The effective date of this Act, referred to in subsecs. (a) and (b), is 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as an Effective Date note under section 1602 of this title.

The enactment of section 1605A, referred to in subsec. (f)(1)(A), (2)(A), refers to the enactment of Pub. L. 110–181, which was approved Jan. 28, 2008.

The Trading with the Enemy Act, referred to in subsecs. (f)(1)(A) and (g)(2), is act Oct. 6, 1917, ch. 106, 40 Stat. 411, which was classified to sections 1 to 6, 7 to 39 and 41 to 44 of the former Appendix to Title 50, War and National Defense, prior to editorial reclassification as chapter 53 (§4301 et seq.) of Title 50. Section 5(b) of the Act, which was classified to section 5(b) of the former Appendix to Title 50, is classified to section 4305(b) of Title 50. For complete classification of this Act to the Code, see Tables.

The International Emergency Economic Powers Act, referred to in subsec. (g)(2), is title II of Pub. L. 95–223, Dec. 28, 1977, 91 Stat. 1626, which is classified generally to chapter 35 (§1701 et seq.) of Title 50, War and National Defense. For complete classification of this Act to the Code, see Short Title note set out under section 1701 of Title 50 and Tables.

### AMENDMENTS

**2012**—Subsec. (a)(7). Pub. L. 112–158, §502(e)(1)(A), inserted "or section 1605(a)(7) (as such section was in effect on January 27, 2008)" after "section 1605A".

Subsec. (b)(2). Pub. L. 112–158, §502(e)(1)(B)(i)(I), substituted "(5) or 1605(b)" for "(5), 1605(b), or 1605A".

Subsec. (b)(3). Pub. L. 112–158, §502(e)(1)(B)(i)(II), (ii), added par. (3).

**2008**—Subsec. (a)(7). Pub. L. 110–181, §1083(b)(3)(A), substituted "1605A" for "1605(a)(7)".

Subsec. (b)(2). Pub. L. 110–181, §1083(b)(3)(B), substituted "or (5), 1605(b), or 1605A" for "(5), or (7), or 1605(b)".

Subsec. (f)(1)(A), (2)(A). Pub. L. 110–181, §1083(b)(3)(C), inserted "(as in effect before the enactment of section 1605A) or section 1605A" after "section 1605(a)(7)".

Subsec. (g). Pub. L. 110–181, §1083(b)(3)(D), added subsec. (g).

**2000**—Subsec. (f)(2)(A), (B)(ii). Pub. L. 106–386, §2002(g)(1)(A), formerly §2002(f)(1)(A), as renumbered by Pub. L. 107–297, substituted "should make every effort to" for "shall".

Subsec. (f)(3). Pub. L. 106–386, §2002(g)(1)(B), formerly §2002(f)(1)(B), as renumbered by Pub. L. 107–297, added par. (3).

**1998**—Subsec. (f). Pub. L. 105–277 added subsec. (f).

**1996**—Subsec. (a)(7). Pub. L. 104–132, §221(b)(1), added par. (7).

Subsec. (b)(2). Pub. L. 104–132, §221(b)(2), substituted "(5), or (7)," for "or (5)," and "involved in the act" for "used for the activity".

**1990**—Subsecs. (a)(6), (e). Pub. L. 101–650 substituted "state" for "State" after "foreign".

**1988**—Subsec. (a)(6). Pub. L. 100–669 added par. (6).

Subsec. (e). Pub. L. 100–640 added subsec. (e).

STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 2008 AMENDMENT

For applicability of amendments by Pub. L. 110–181 to pending cases, see section 1083(c) of Pub. L. 110–181, set out as an Effective Date note under section 1605A of this title.

### EFFECTIVE DATE OF 1998 AMENDMENT

Pub. L. 105–277, div. A, §101(h) [title I, §117(c)], Oct. 21, 1998, 112 Stat. 2681–480, 2681–491, provided that: "The amendments made by subsections (a) and (b) [amending this section and section 1606 of this title] shall apply to any claim for which a foreign state is not immune under section 1605(a)(7) of title 28, United States Code, arising before, on, or after the date of enactment of this Act [Oct. 21, 1998]."

### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–132 applicable to any cause of action arising before, on, or after Apr. 24, 1996, see section 221(c) of Pub. L. 104–132, set out as a note under section 1605 of this title.

### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–640 applicable to actions commenced on or after Nov. 9, 1988, see section 3 of Pub. L. 100–640, set out as a note under section 1605 of this title.

### EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## Satisfaction of Judgments From Blocked Assets of Terrorists, Terrorist Organizations, and State Sponsors of Terrorism

Pub. L. 107–297, title II, §201(a), (b), (d), Nov. 26, 2002, 116 Stat. 2337, 2339, as amended by Pub. L. 112–158, title V, §502(e)(2), Aug. 10, 2012, 126 Stat. 1260, provided that:

"(a) In General.—Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

"(b) Presidential Waiver.—

"(1) In general.—Subject to paragraph (2), upon determining on an asset-by-asset basis that a waiver is necessary in the national security interest, the President may waive the requirements of subsection (a) in connection with (and prior to the enforcement of) any judicial order directing attachment in aid of execution or execution against any property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations.

"(2) Exception.—A waiver under this subsection shall not apply to—

"(A) property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations that has been used by the United States for any nondiplomatic purpose (including use as rental property), or the proceeds of such use; or

"(B) the proceeds of any sale or transfer for value to a third party of any asset subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations.

"(d) Definitions.—In this section, the following definitions shall apply:

"(1) Act of terrorism.—The term 'act of terrorism' means—

"(A) any act or event certified under section 102(1) [Pub. L. 107–297, set out in a note under section 6701 of Title 15, Commerce and Trade]; or

"(B) to the extent not covered by subparagraph (A), any terrorist activity (as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iii))).

"(2) Blocked asset.—The term 'blocked asset' means—

"(A) any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) [now 50 U.S.C. 4305(b)] or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702); and

"(B) does not include property that—

"(i) is subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by statute other than the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the United Nations Participation Act of 1945 (22 U.S.C. 287 et seq.); or

"(ii) in the case of property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, or that enjoys equivalent privileges and immunities under the law of the United States, is being used exclusively for diplomatic or consular purposes.

"(3) Certain property.—The term 'property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations' and the term 'asset subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations' mean any property or asset, respectively, the attachment in aid of execution or execution of which would result in a violation of an obligation of the United States under the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, as the case may be.

"(4) Terrorist party.—The term 'terrorist party' means a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under [former] section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) [former 50 U.S.C. 4605(j)] or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371)."

## Waiver of Exception to Immunity From Attachment or Execution

Pub. L. 105–277, div. A, §101(h) [title I, §117(d)], Oct. 21, 1998, 112 Stat. 2681–480, 2681-492, which authorized the President to waive the requirements of section 101(h) [title I, §117] of Pub. L. 105–277, which amended this section and section 1606 of this title and enacted provisions set out as a note above, in the interest of national security, was repealed by Pub. L. 106–386, div. C, §2002(g)(2), formerly §2002(f)

(2), Oct. 28, 2000, 114 Stat. 1543, renumbered §2002(g)(2), Pub. L. 107–297, title II, §201(c)(3), Nov. 26, 2002, 116 Stat. 2337.

**EXECUTIVE DOCUMENTS**

## DETERMINATION TO WAIVE ATTACHMENT PROVISIONS RELATING TO BLOCKED PROPERTY OF TERRORIST-LIST STATES

Determination of President of the United States, No. 99–1, Oct. 21, 1998, 64 F.R. 59201, which provided for waiver of requirements of section 101(h) [title I, §117(b)] of div. A of Pub. L. 105–277, relating to blocked property of terrorist-list states, was superseded by Determination of President of the United States, No. 2001–3, Oct. 28, 2000, 65 F.R. 66483, set out below.

Determination of President of the United States, No. 2001–3, Oct. 28, 2000, 65 F.R. 66483, provided: Memorandum for the Secretary of State [and] the Secretary of the Treasury

By the authority vested in me as President by the Constitution and laws of the United States of America, including section 2002(f) [now 2002(g)] of H.R. 3244, "Victims of Trafficking and Violence Protection Act of 2000," (approved October 28, 2000) [section 2002(g) of Pub. L. 106–386, amending this section and section 1606 of this title and repealing provisions set out as a note above], I hereby determine that subsection (f)(1) of section 1610 of title 28, United States Code, which provides that any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.[C.] App. 5(b)[)] [now 50 U.S.C. 4305(b)], section 620a of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701–1702), and proclamations, orders, regulations, and licenses issued pursuant thereto, be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state claiming such property is not immune from the jurisdiction of courts of the United States or of the States under section 1605(a)(7) of title 28, United States Code, would impede the ability of the President to conduct foreign policy in the interest of national security and would, in particular, impede the effectiveness of such prohibitions and regulations upon financial transactions. Therefore, pursuant to section 2002(f) [now 2002(g)] of H.R. 3244, the "Victim's of Trafficking and Violence Protection Act of 2000," I hereby waive subsection (f)(1) of section 1610 of title 28, United States Code, in the interest of national security. This waiver, together with the amendment of subsection (f)(2) of the Foreign Sovereign Immunities Act [probably means subsec. (f)(2) of this section] and the repeal of the subsection (b) of section 117 of the Treasury and General Government Appropriations Act, 1999 [section 101(h) [title I, §117(b)] of div. A of Pub. L. 105–277, amending section 1606 of this title], supersedes my prior waiver of the requirements of subsections (a) and (b) of said section 117 [amending this section and section 1606 of this title], executed on October 21, 1998 [former Determination of President of the United States, No. 99–1, Oct. 21, 1998, 64 F.R. 59201].

The Secretary of State is authorized and directed to publish this determination in the Federal Register.

WILLIAM J. CLINTON.

*1 See References in Text note below.*

## §1611. Certain types of property immune from execution

(a) Notwithstanding the provisions of section 1610 of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act shall not be subject to attachment or any other judicial process impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States.

(b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if—

(1) the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of execution, or from execution, notwithstanding any withdrawal of the waiver which the bank, authority or government may purport to effect except in accordance with the terms of the waiver; or

(2) the property is, or is intended to be, used in connection with a military activity and

(A) is of a military character, or

(B) is under the control of a military authority or defense agency.

(c) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution in an action brought under section 302 of the Cuban Liberty and Democratic

Solidarity (LIBERTAD) Act of 1996 to the extent that the property is a facility or installation used by an accredited diplomatic mission for official purposes.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2897; amended Pub. L. 104–114, title III, §302(e), Mar. 12, 1996, 110 Stat. 818.)

### EDITORIAL NOTES

## REFERENCES IN TEXT

The International Organizations Immunities Act, referred to in subsec. (a), is title I of act Dec. 29, 1945, ch. 652, 59 Stat. 669, as amended, which is classified principally to subchapter XVIII (§288 et seq.) of chapter 7 of Title 22, Foreign Relations and Intercourse. For complete classification of this Act to the Code, see Short Title note set out under section 288 of Title 22 and Tables.

Section 302 of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, referred to in subsec. (c), is section 302 of Pub. L. 104–114, which amended this section and enacted section 6082 of Title 22, Foreign Relations and Intercourse.

## AMENDMENTS

**1996**—Subsec. (c). Pub. L. 104–114 added subsec. (c).

### STATUTORY NOTES AND RELATED SUBSIDIARIES

## EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–114 effective Aug. 1, 1996, or date determined pursuant to suspension authority of President under section 6085(b) or (c) of Title 22, Foreign Relations and Intercourse, see section 6085 of Title 22.

## EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.