**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------------- x

PIERRE FATTOUCH, MOUSSA FATTOUCH,
UNITED LEBANESE QUARRIES AND CRUSHERS
COMPANY S.A.L.

     Plaintiffs,

v.

THE REPUBLIC OF LEBANON,
Its Ministries, Agencies, and Instrumentalities
c/o Ministry of Justice

HER EXCELLENCY MARIE-CLAUD NAJIM,
Minister of Justice

     Defendant State.

---------------------------------------------------------------------- x

Case No.: 1:20-CV-02599-EGS

## NOTICE OF MOTIONS TO DISMISS OR ALTERNATIVELY TO QUASH ATTEMPTED SERVICE

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law of the

Republic of Lebanon (the "Republic") and Her Excellency Marie-Claude Najm, former Minister

of Justice of Lebanon ("Ms. Najm") dated September 9, 2022; the Declaration of Rathna J.

Ramamurthi dated September 9, 2022, and all attached exhibits; and the prior record in the

above-captioned action, the Republic and Ms. Najm will move this Court pursuant to Federal

Rules of Civil Procedure 12(b)(1), (2), (5), and (6) for an order dismissing with prejudice the

Amended Complaint filed on March 15, 2021 by the *Fattouch* plaintiffs, or in the alternative

quashing the *Fattouch* plaintiffs' attempts at service as ineffective, and granting such other and

further relief as the Court deems just and proper.

Dated: September 9, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Carmine D. Boccuzzi, Jr. (cboccuzzi@cgsh.com)
One Liberty Plaza
New York, New York 10006
Tel. (212) 225-2508   Fax (212) 225-3999

Rathna J. Ramamurthi (rramamurthi@cgsh.com)
2112 Pennsylvania Ave NW
Washington D.C. 20037
Tel. (202) 974-1500    Fax (202) 974-1999

*Attorneys for the Republic of Lebanon and Her
Excellency Marie-Claude Najm, former Minister of
Justice*

TO:  Jason Ian Poblete
     POBLETE TAMARGO LLP
     510 King Street, Suite 350
     Alexandria, VA 22314

     Jeremy Ibrahim
     P.O. Box 1025
     Chadds Ford, PA 19317

     *Attorneys for plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------------- x

PIERRE FATTOUCH,                                                       :
MOUSSA FATTOUCH,                                                       :
UNITED LEBANESE QUARRIES AND CRUSHERS      :
COMPANY S.A.L.                                                        :
                                                                      :
      Plaintiffs,                                                   :
                                                                      :
v.                                                                    :  Case No.: 1:20-CV-02599-EGS
THE REPUBLIC OF LEBANON,                                              :
Its Ministries, Agencies, and Instrumentalities                      :
c/o Ministry of Justice                                              :
                                                                      :
HER EXCELLENCY MARIE-CLAUD NAJIM,              :
Minister of Justice                                                   :
                                                                      :
      Defendant State.                                              :

---------------------------------------------------------------------- x


**MEMORANDUM OF LAW OF THE REPUBLIC OF LEBANON AND HER
EXCELLENCY MARIE-CLAUDE NAJM IN SUPPORT OF THEIR COMPREHENSIVE
MOTIONS TO DISMISS THE AMENDED COMPLAINT OR ALTERNATIVELY TO
QUASH ATTEMPTED SERVICE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

    POINT I:  THE CLAIM AGAINST THE REPUBLIC SHOULD BE DISMISSED FOR
    FAILURE TO SERVE AND LACK OF JURISDICTION UNDER THE FSIA ................ 4

        A.    The Court Lacks Personal Jurisdiction Because Plaintiffs
            Have Not Properly Served The Republic In This Action. ................................ 4

        B.    The Court Lacks Subject Matter Jurisdiction Under
            The FSIA. ................................................................................................... 7

            *1. The Amended Complaint Fails To Allege That The*
            *Republic Has Explicitly Or Implicitly Waived Its Immunity*
            *To Suit In U.S. Court.* ................................................................................ 8

            *2. The Amended Complaint Fails To Allege Facts*
            *Satisfying The Requirements Of The FSIA's "Commercial*
            *Activity" Exception.* ............................................................................... 12

            *3. The FSIA's Expropriation Exception Is Inapplicable*
            *Based On The Domestic Takings Rule And Because The*
            *Amended Complaint Does Not Allege The Presence Of*
            *Property In The United States.* ................................................................ 13

    POINT II:  THE CLAIM AGAINST MS. NAJM SHOULD BE DISMISSED FOR
    FAILURE TO SERVE, LACK OF JURISDICTION, AND FAILURE TO STATE
    A CLAIM .............................................................................................................. 14

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adetoro v. King Abdullah Acad.*,
  Case No. 1:19-civ-01918 (TNM), 2019 WL 3457989 (D.D.C. July 30, 2019)........................5

*Af-Cap, Inc. v. Republic of Congo*,
  326 F. Supp. 2d 128 (D.D.C. 2004) ....................................................................................8

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989).............................................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................8

*Ballantine v. Dominican Republic*,
  Civil Action No. 19-CV-3598 (TJK), 2020 WL 4597159 (D.D.C. Aug. 11, 2020).................6

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017).......................................................................................................10

*De Csepel v. Republic of Hungary*,
  859 F.3d 1094 (D.C. Cir. 2017) .........................................................................................14

*Doe 1 v. Buratai*,
  318 F. Supp. 3d 218 (D.D.C. 2018) ..............................................................................17, 18

*Dominguez v. District of Columbia*,
  536 F. Supp. 2d 18 (D.D.C. 2008) .....................................................................................16

*Ellenbogen v. Canadian Embassy*,
  Civil Action No. CV 05-1553 (JDB), 2006 WL 8450006 (D.D.C. Apr. 26, 2006)...................7

*Erwin-Simpson v. AirAsia Berhad*,
  985 F.3d 883 (D.C. Cir. 2021) ...........................................................................................18

*Fed. Republic of Germany v. Philipp*,
  141 S. Ct. 703 (2021).........................................................................................................14

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)...........................................................................................................19

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*,
766 F.3d 74 (D.C. Cir. 2014) ...........................................................................................4

*Gretton Ltd. v. Republic of Uzbekistan*,
Civil Action No. 18-1755 (JEB), 2019 WL 3430669 (D.D.C. July 30, 2019) .........................6

*Gutch v. Fed. Republic of Germany*,
255 F. App'x 524 (D.C. Cir. 2007) ...................................................................................11

*Ivanenko v. Yanukovich*,
995 F.3d 232 (D.C. Cir. 2021) ................................................................................. *passim*

*Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*,
291 F. Supp. 3d 21, 30 (D.D.C. 2017) .............................................................................19

*Lewis v. Mutond*,
918 F.3d 142 (D.C. Cir. 2019) ........................................................................................18

*Luxexpress 2016 Corp. v. Gov't of Ukraine*,
Civil Action No. 18-cv-812 (TSC), 2020 WL 1308357 (D.D.C. Mar. 19, 2020) ...8, 12, 13, 14

*Mohammadi v. Islamic Republic of Iran*,
947 F. Supp. 2d 48 (D.D.C. 2013) ...................................................................................15

*Odhiambo v. Republic of Kenya*,
764 F.3d 31 (D.C. Cir. 2014) ......................................................................................9, 15

*Odhiambo v. Republic of Kenya*,
930 F. Supp. 2d 17 (D.D.C. 2013) ............................................................................15, 18

*Princz v. Fed. Republic of Germany*,
26 F.3d 1166 (D.C. Cir. 1994) ........................................................................................13

*Republic of Argentina v. Weltover, Inc.*,
504 U.S. 607 (1992) .................................................................................................12, 13

*Republic of Sudan v. Harrison*,
139 S. Ct. 1048 (2019) ................................................................................................4, 5

*SACE S.p.A. v. Republic of Paraguay*,
243 F. Supp. 3d 21 (D.D.C. 2017) ...................................................................................10

*Samantar v. Yousuf*,
560 U.S. 305 (2010) .................................................................................................17, 19

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
  30 F.3d 148 (D.C. Cir. 1994) ........................................................................5, 6

*Valambhia v. United Republic of Tanzania,*
  964 F.3d 1135 (D.C. Cir. 2020) ........................................................................8

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
  296 F.3d 1154 (D.C. Cir. 2002) ................................................................8, 9, 10

**Statutes**

28 U.S.C. § 1331 ............................................................................................8, 17

28 U.S.C. § 1332 ................................................................................................17

28 U.S.C. § 1391(f)(4) ....................................................................................8, 17

28 U.S.C. §§ 1604-1607 ......................................................................................8

28 U.S.C. § 1605 ..............................................................................8, 12, 13, 14

28 U.S.C. § 1608(a) ..................................................................................4, 5, 6, 7

28 U.S.C. § 1746 ..................................................................................................9

D.C. Code §§ 15-361, 364 ....................................................................................8

D.C. Uniform Foreign-Country Money Judgments Recognition Act ................8, 17, 19

**Other Authorities**

22 CFR § 93.2 ..................................................................................................6, 7

Federal Rule of Civil Procedure 4(f) ..................................................................15

Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6) ..............................1

Lebanese Civil Procedure Code, Article 399 ......................................................16

Lebanese Civil Procedure Code, Article 762 ................................................10, 11

U.N. Convention on Jurisdictional Immunities of States and Their Property, art. 7, *ratified*
  Nov. 21, 2008 by Lebanese Law No. 757/2006 ........................................10

Defendants the Republic of Lebanon (the "Republic") and Her Excellency Marie-Claude Najm, former Minister of Justice of Lebanon ("Ms. Najm")[1] submit this memorandum in support of their comprehensive motions to dismiss the Amended Complaint filed by the *Fattouch* plaintiffs, dated March 15, 2021, ECF No. 24 (the "Amended Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6), or in the alternative to quash attempted service.

## PRELIMINARY STATEMENT

On August 26, 2022, this Court denied without prejudice the pending motions to dismiss of the Republic and Ms. Najm in light of the seriatim attempts by plaintiffs to effectuate service. The Court invited the Republic and Ms. Najm to "fil[e] a comprehensive motion to dismiss/quash that includes only arguments that have not been mooted by subsequent service developments in this case."  The present motion sets forth the bases for dismissal of this action based on the current state of the record.  In short, plaintiffs have still failed to serve either defendant and the case should otherwise be dismissed given (i) the lack of any basis to support jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") for the claim against the Republic and (ii) the lack of personal jurisdiction or subject matter jurisdiction for the claim against Ms. Najm, along with the failure to state a claim against her.

*First*, the Court lacks personal jurisdiction over the Republic since plaintiffs have failed to serve the Republic as the Foreign Sovereign Immunities Act ("FSIA") requires.  Plaintiffs also have not established subject matter jurisdiction for the claim against the Republic since the

---

[1] At the time this action was filed, Her Excellency Marie-Claude Najm was the Lebanese Minister of Justice.  As of September 10, 2021, a new government was formed in Lebanon and accordingly Ms. Najm is no longer in office as the Minister of Justice.

Amended Complaint's allegations do not support the application of the FSIA's so-called waiver, commercial activity, or expropriation exceptions to sovereign immunity.

*Second*, the claim against Ms. Najm should be dismissed because plaintiffs have not properly served Ms. Najm; the Court lacks personal jurisdiction or subject matter jurisdiction for a claim against her; and the Amended Complaint fails to state a claim against her since the underlying judgments name the Republic, not Ms. Najm.

Accordingly, the Amended Complaint should be dismissed in full with prejudice or in the alternative, all of plaintiffs' attempts at service should be quashed.

## BACKGROUND

Plaintiffs are Lebanese nationals and a Lebanese joint stock company.  Am. Compl. ¶ 2. Plaintiffs allege that the Republic interfered with quarries they owned in Lebanon, cancelling their licenses, destroying their equipment, and ordering closure of the quarries.  *Id.* ¶¶ 15-17. According to plaintiffs, in connection with these events a Lebanese court issued two judgments against the Republic in 2005 and two more judgments against the Republic in 2017.  *Id.* ¶¶ 18-23.  Plaintiffs seek recognition and enforcement of those judgments in this Court.  *Id.* ¶¶ 27-30.

Plaintiffs filed the original Complaint in this action on September 15, 2020 and the Amended Complaint on March 15, 2021.  Compl. (Sept. 15, 2020), ECF No. 1; Am. Compl. (Mar. 15, 2021), ECF No. 24.  The Amended Complaint includes allegations purportedly regarding FSIA jurisdiction, referring vaguely to "assurances" against invocation of sovereign immunity, *id.* ¶¶ 10-11; "loss of revenue" of plaintiffs' U.S. businesses, *id.* ¶¶ 12-13; and alleged seizure of their property in Lebanon "without providing just compensation and for no public purpose," *id.* ¶ 14.  The Amended Complaint also asserts that the Court has subject matter jurisdiction over this action pursuant to a provision of the D.C. Code.  *Id.* ¶ 8.

Plaintiffs have tried to serve the Republic and Ms. Najm three times in this action, and each attempt has been deficient.

*First*, two months after filing the Complaint, plaintiffs moved for a 60-day extension of time for service.  Mot. for Extension of Time (Nov. 9, 2020), ECF No. 7.  The Court granted the extension, ordering that "[p]laintiffs must ensure service of process upon Defendants and file an AFFIDAVIT by no later than January 8, 2021, or the Court will dismiss the action without prejudice."  Minute Order (Nov. 9, 2020).  On December 30, 2020, plaintiffs filed affidavits on the docket purporting to have served the Republic and Ms. Najm by delivering copies of the original Complaint and Summons to an employee of the Republic's Embassy in Washington D.C. (although it was unclear whether the latter was an improper attempt at "alternative" service on the Republic).  Affs. of Service (Dec. 30, 2020), ECF Nos. 8-9.

*Second*, months after the Republic and Ms. Najm filed motions setting forth the reasons why plaintiffs' first attempt at service was insufficient, plaintiffs purported to have newly effectuated service on the Republic and Ms. Najm by having the Clerk of the Court mail the documents to Mrs. Helene Iskandar at the Ministry of Justice in Lebanon.  *See* Return of Service Aff. (Aug. 5, 2021), ECF No. 34.  After the Republic and Ms. Najm described why this second attempt at service remained insufficient, *see* Suppl. Mem. of Law at 2-4 (Sept. 13, 2021), ECF No. 35, plaintiffs requested an additional 60 days to effectuate service, Pls.' Mem. of Law at 3 (Sept. 22, 2021), ECF No. 37-1.  That request came one year after the Complaint was filed and more than eight months after the January 2021 deadline for service set by the Court.  *See* Minute Order (Nov. 9, 2020).  Accordingly, the Republic and Ms. Najm respectfully requested that any such extension be plaintiffs' last chance to complete service.  *See* Suppl. Reply Mem. of Law at 1 (Sept. 29, 2021), ECF No. 38.

*Third*, plaintiffs then made another attempt at service, *see* Return of Service Aff. (Oct. 26, 2021), ECF No. 41, which remains deficient as to the Republic and Ms. Najm, as set forth previously and below.[2]

Accordingly, the Amended Complaint should be dismissed as against the Republic and Ms. Najm for failure to serve, lack of jurisdiction, and/or failure to state a claim, or in the alternative, plaintiffs' attempted service should be quashed.

**ARGUMENT**

**POINT I**

**THE CLAIM AGAINST THE REPUBLIC SHOULD BE DISMISSED FOR FAILURE TO SERVE AND LACK OF JURISDICTION UNDER THE FSIA**

**A.  The Court Lacks Personal Jurisdiction Because Plaintiffs Have Not Properly Served The Republic In This Action.**

In order to establish personal jurisdiction over a foreign state, a plaintiff must demonstrate that service has been made on the foreign state in compliance with the FSIA. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1051 (2019); 28 U.S.C. § 1608(a).  The FSIA provides that where, as here, no "special arrangement for service between the plaintiff and the foreign state" exists and there is no "applicable international convention on service of judicial documents," the plaintiff must serve the foreign state "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the

---

[2] Plaintiffs have repeatedly tried to skirt the requirements for service of the Republic and Ms. Najm by asserting "actual notice" of the Complaint and Amended Complaint.  *E.g.*, Pls.' Mem. of Law at 1 (Apr. 12, 2021), ECF No. 29-1; Pls.' Mem. of Law at 1 (Sept. 22, 2021), ECF No. 37-1; Pls.' Mem. of Law at 1 (Nov. 16, 2021), ECF No. 43-1.  But actual notice is legally irrelevant.  *See Harrison*, 139 S. Ct. at 1058 (Section 1608(a)(3) "does not deem a foreign state properly served solely because the service method is reasonably calculated to provide actual notice."); *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014) (actual notice "cannot by itself validate an otherwise defective service" absent at least substantial compliance with Rule 4).

4

foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by

the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."

28 U.S.C. § 1608(a).[3]

>   None of plaintiffs' three attempts at service of the Republic meets these requirements.

>   *First*, plaintiffs' purported delivery of a copy of the original Complaint and Summons to

an employee of the Republic's Embassy in Washington D.C., Aff. of Service (Dec. 30, 2020),

ECF No. 9, is insufficient under the FSIA because service under Section 1608(a)(3) cannot be

accomplished through a mailing to an embassy and instead the mailing must be to the Ministry of

Foreign Affairs in the foreign state itself, as the U.S. Supreme Court has held.  *Harrison*, 139 S.

Ct. at 1057.  Moreover, the other requirements of Section 1608(a)(3) are not satisfied, as the

documents were not dispatched by the Clerk of the Court and they were addressed to the

Ministry of Justice, not the Ministry of Foreign Affairs.  *See Transaero, Inc. v. La Fuerza Aerea

Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) ("[S]ection 1608(a) mandates service of the

Ministry of Foreign Affairs, the department most likely to understand American procedure" and

"strict adherence to the terms of 1608(a) is required.");  *Adetoro v. King Abdullah Acad.*, Case

No. 1:19-civ-01918 (TNM), 2019 WL 3457989, at *3 (D.D.C. July 30, 2019) (quashing service

because plaintiffs "themselves mailed the documents rather than the clerk of the court").  In

addition, the affidavit of service did not state that a notice of suit was included, and no signed

---

[3] Plaintiffs have acknowledged that there is no applicable international convention under Section 1608(a)(2), and in the past claimed that they "were making special arrangements in Lebanon" to effect service pursuant to Section 1608(a)(1). Pls.' Mot. to Extend Time to Serve Defs. ¶ 3 (Nov. 9, 2020), ECF No. 7. But Section 1608(a)(1) refers to an arrangement "between the plaintiff and the foreign state," not a unilateral purported special arrangement by plaintiffs. There is no such arrangement between plaintiffs and the Republic here. Despite the fact that the Republic explained this in its original motion to dismiss, Mem. of Law at 3 n.1 (Mar. 1, 2021), ECF No. 13, plaintiffs do not and cannot assert otherwise.

receipt was provided.  *See Gretton Ltd. v. Republic of Uzbekistan*, Civil Action No. 18-1755 (JEB), 2019 WL 3430669, at *3 (D.D.C. July 30, 2019) (omission of notice of suit and copy of the FSIA from service packet "would render service incomplete"), *appeal dismissed*, No. 19-7102, 2020 WL 4932321 (D.C. Cir. July 30, 2020).  Recognizing that this attempt at service was insufficient, plaintiffs' counsel asked defense counsel on March 18, 2021 whether "our client" would waive service.  *See also* Pls.' Resp. ¶ 5 (Apr. 12, 2021), ECF No. 29 (plaintiffs recognizing that "contrary to what plaintiffs relied upon when serving the initial Complaint at the Embassy for the Republic of Lebanon," service "would have to be made in accordance with the process under 28 U.S.C[.] 1608").

Second, plaintiffs' next attempt at service of the Republic is deficient because the service packet was again addressed to the Lebanese Ministry of Justice, not the head of the Lebanese Ministry of Foreign Affairs.  *See* Return of Service Aff. at 1 (Aug. 5, 2021), ECF No. 34; *see, e.g., Transaero*, 30 F.3d at 154; *Ballantine v. Dominican Republic*, No. 19-CV-3598 (TJK), 2020 WL 4597159, at *3 (D.D.C. Aug. 11, 2020) (plaintiffs "did not achieve timely service" *inter alia* because their attempted service was not directed to "the head of the ministry of foreign affairs").  Plaintiffs again conceded that that this attempt at service was deficient, and requested an additional 60-day extension for service.  Pls.' Mem. of Law at 3 (Sept. 22, 2021), ECF No. 37-1.

Third, plaintiffs' latest attempt at service is insufficient because the package did not contain a notice of suit (including a copy of the FSIA) as required, contrary to plaintiffs' counsel's assertion.  *See* Return of Service Aff. at 1 (Oct. 26, 2021), ECF No. 41; *Gretton Ltd.*, 2019 WL 3430669, at *3; 22 CFR § 93.2 (describing form and other notice of suit requirements).  After the Republic raised this issue, plaintiffs submitted as an exhibit the notice of suit that they claim was included.  *See* Ex. (Nov. 16, 2021), ECF No. 44.  But that document—even if it were

included in the service packet (it was not)—omits information from the required form notice of suit regarding jurisdiction and sovereign immunity, issues that are at the center of this matter. *Compare* Annex ¶ 7, 22 CFR § 93.2 ("The response may present jurisdictional defenses (including defenses relating to state immunity)") *with* Ex. at 5 (Nov. 16, 2021), ECF No. 44 ("The response may present any defenses"); *and* Annex ¶ 9, 22 CFR § 93.2 ("Questions relating to state immunities and to the jurisdiction of United States courts over foreign states are governed by the Foreign Sovereign Immunities Act") *with* Ex. at 5 (Nov. 16, 2021), ECF No. 44 ("Action is being brought under the Foreign Sovereign Immunities Act").  Moreover, a translation of the FSIA was not included.  *See* 28 U.S.C. § 1608(a)(3) (requiring translation of notice of suit); 22 CFR § 93.2(e) (describing copy of FSIA "as part of the Notice of Suit").

In sum, plaintiffs have made three attempts at service of the Republic, each of which has been deficient under the FSIA solely due to plaintiffs' lack of diligence in complying with clear legal requirements that have been repeatedly described by the Republic in this action.  As the Republic previously requested, plaintiffs' latest attempt at service should be the last attempt allowed.  *See Ellenbogen v. Canadian Embassy*, No. CV 05-1553 (JDB), 2006 WL 8450006, at *3 (D.D.C. Apr. 26, 2006) (ordering this for "plaintiff's third attempt at service of process . . . almost nine months after the complaint was filed" where delays had arisen from plaintiff's "misunderstandings of the law").  Plaintiffs' claim against the Republic should therefore be dismissed for lack of personal jurisdiction under the FSIA due to improper service, or at least all three of plaintiffs' attempts at service of the Republic should be quashed.

### B.  The Court Lacks Subject Matter Jurisdiction Under The FSIA.

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state" in U.S. court, *e.g., Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989), and "'must be applied by the district courts in every action against a foreign sovereign, since subject-matter

jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity,'" *Af-Cap, Inc. v. Republic of Congo*, 326 F. Supp. 2d 128, 129 (D.D.C. 2004) (citation omitted).[4]  Where, as here, a plaintiff seeks recognition of a foreign judgment, the FSIA's requirements must be satisfied.  *See Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1137 (D.C. Cir. 2020) (affirming dismissal of action for recognition of Tanzanian court judgments under the D.C. Uniform Foreign-Country Money Judgments Recognition Act for lack of subject matter jurisdiction under the FSIA).

To establish subject matter jurisdiction under the FSIA, a plaintiff must show that one of the FSIA's enumerated exceptions to sovereign immunity applies.  28 U.S.C. §§ 1604-1607.  Here, plaintiffs conclusorily assert that the FSIA's first three exceptions confer jurisdiction, Am. Compl. ¶¶ 7, 10-14, but have not alleged facts to support that legal conclusion (nor could they). *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### 1. The Amended Complaint Fails To Allege That The Republic Has Explicitly Or Implicitly Waived Its Immunity To Suit In U.S. Court.

The FSIA's first exception provides for jurisdiction where "the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  The waiver must be "clear[] and unambiguous[]."  *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002); *Luxexpress 2016 Corp. v. Gov't of Ukraine*, No. 18-cv-812 (TSC), 2020 WL 1308357, at *8 (D.D.C. Mar. 19, 2020) (no waiver despite presidential decree and bilateral investment treaty referencing potential future claims because "a court will not find a

---

[4] Accordingly, neither 28 U.S.C. § 1331 nor D.C. Code §§ 15-361, 364, or 636 confers jurisdiction for a claim against the Republic.  *Cf.* Am. Compl. ¶¶ 5, 8.  And 28 U.S.C. § 1391(f)(4) speaks to venue, not jurisdiction.  *Cf.* Am. Compl. ¶ 6.

foreign sovereign waived its immunity unless it 'has clearly and unambiguously done so'" (citation omitted)), *aff'd sub nom. Ivanenko v. Yanukovich*, 995 F.3d 232 (D.C. Cir. 2021).

Here, the Amended Complaint says nothing about any explicit waiver of immunity by the Republic in connection with plaintiffs' claims; instead, it merely alleges that "defendants assured plaintiffs that the collection of the judgments sought to be recognized would not be thwarted by invocation of any immunity provisions of any court, foreign or domestic."  Am. Compl. ¶ 10. Tellingly, plaintiffs do not identify or cite any actual communication or agreement containing such an assurance.  This vague and conclusory allegation does not demonstrate a "clear[] and unambiguous[]" waiver.  *Ivanenko*, 995 F.3d at 239; *World Wide Minerals*, 296 F.3d at 1162; *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 35 (D.C. Cir. 2014) ("exacting showing required for waivers of foreign sovereign immunity").

In prior briefing, plaintiffs claimed an explicit waiver on the basis that unnamed government officials in non-descript meetings supposedly "encouraged" them "to seek relief in the United States Courts" and "assured [them] that collection efforts in the United States would not be objected to under sovereign immunity."  Ex. A at 4 (Apr. 12, 2021), ECF No. 29-2; *see also* Pls.' Mem. of Law at 8 (Apr. 12, 2021), ECF No. 29-1.  But plaintiffs did not provide any evidence that such statements were actually made, other than their say-so in a document that is styled as an affidavit but which is not notarized and does not meet the admissibility requirements for an unsworn declaration.  *See* 28 U.S.C. § 1746 (requiring such declarations to contain the statement "I declare (or certify, verify, or state) under penalty of perjury [under the laws of the United States of America] that the foregoing is true and correct").  Accordingly, this "evidence" should not be considered by the Court.  Even considering plaintiffs' "affidavit," they have failed to demonstrate the existence of a waiver since the document is devoid of any facts setting forth

who purportedly spoke to plaintiffs, in what words, how, when, or in what context.  This does not establish an explicit waiver "clearly and unambiguously," as required.  *See, e.g.*, *Ivanenko*, 995 F.3d at 239; *World Wide Minerals*, 296 F.3d at 1162.[5]

Since plaintiffs do not identify the purported speaker or the circumstances, they *a fortiori* have not met their burden of showing that any such individual had actual or apparent authority to waive the Republic's sovereign immunity.  *See SACE S.p.A. v. Republic of Paraguay*, 243 F. Supp. 3d 21, 24, 36 (D.D.C. 2017) (granting Paraguay's motion to dismiss where plaintiff failed to "allege that the Paraguayan official who purportedly effected an explicit waiver of Paraguay's sovereign immunity was actually authorized to do so").  Plaintiffs point to no provision of Lebanese law that authorizes an individual to waive the Republic's immunity through alleged oral statements, nor could they.  *See id.* at 36 ("[I]f an express waiver is going to serve as the basis for nullifying the presumption of sovereign immunity that the FSIA otherwise affords, it is reasonable to expect that the binding force of that foreign agent's waiver authority must be fully established.").  To the extent Lebanese law contemplates agreements that could have jurisdictional implications, *e.g.*, arbitration agreements, it requires issuance of a formal decree for them to be binding on the Republic, *see* Art. 762, Lebanese Civil Procedure Code (Ramamurthi Decl. Ex. A),[6] and plaintiffs cite no such decree here.  *See also* U.N. Convention on Jurisdictional Immunities of States and Their Property, art. 7, *ratified* Nov. 21, 2008 by Lebanese Law No. 757/2006 (express waivers must be "by international agreement; in a written

---

[5] The U.S. Supreme Court has held that the standard for establishing jurisdiction under the FSIA is "more rigorous" than in other contexts.  *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316, 1322 (2017).  It is not enough for allegations taken as true to set forth a "non-frivolous argument" for jurisdiction—the facts alleged must actually, and not just arguably, show that the FSIA's requirements are met.  *Id.* at 1324.

[6] "Ramamurthi Decl." is the Declaration of Rathna J. Ramamurthi dated September 9, 2022, which is being filed today.

contract; or by a declaration before the court or by a written communication in a specific proceeding").

As to implicit waivers, these are found "in only three circumstances," *i.e.* where a foreign state has "(1) execut[ed] a contract containing a choice–of–law clause designating the laws of the United States as applicable; (2) fil[ed] a responsive pleading without asserting sovereign immunity; or (3) agree[d] to submit a dispute to arbitration in the United States." *E.g.*, *Ivanenko*, 995 F.3d at 239. Here, plaintiffs do not and cannot contend that there is any relevant contractual choice of law provision selecting U.S. law. It is indisputable that no responsive pleading has been filed in this action, and the Republic has consistently raised sovereign immunity in its submissions. And neither the Amended Complaint nor any of plaintiffs' exhibits so much as reference—much less demonstrate—any agreement to arbitrate (which could only be made by the Republic through an official decree, *see* Art. 762, Lebanese Civil Procedure Code (Ramamurthi Decl. Ex. A)).

The Amended Complaint also makes reference to "ongoing communications and free exchange of documents" as "[c]onduct of" an explicit and implicit waiver, Am. Compl. ¶ 11, and plaintiffs in the past have asserted that the Republic's willingness to consider settlement somehow constitutes "further factual evidence that the defendants waived sovereign immunity," Pls.' Mem. of Law at 5 (Apr. 12, 2021), ECF No. 29-1. A waiver cannot be inferred from such conduct. *See Ivanenko*, 995 F.3d at 240 (decree authorizing the "Ministry of Justice to litigate and settle claims brought by Ukrainian nationals in foreign courts" did not constitute a waiver); *Gutch v. Fed. Republic of Germany*, 255 F. App'x 524, 525 (D.C. Cir. 2007) (Germany's conduct did not constitute a waiver where there was "no mention of waiver of German sovereign immunity in the courts of the United States").

**2.   *The Amended Complaint Fails To Allege Facts Satisfying The Requirements Of The FSIA's "Commercial Activity" Exception.***

The FSIA's so-called "commercial activity" exception allows a U.S. court to exercise jurisdiction over a foreign state in an action "based [i] upon a commercial activity carried on in the United States by the foreign state; [ii] or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; [iii] or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Here, the first two bases are inapplicable since plaintiffs concede that the relevant conduct took place in Lebanon, not the United States. Am. Compl. ¶ 13 (claiming the harm was "caused by defendants' actions in Lebanon"); *id.* ¶ 12 ("Plaintiffs business [*sic*] in Lebanon was effectively shut down by the defendant"). The third basis also does not apply.

*First*, plaintiffs have failed to allege a "direct effect in the United States." 28 U.S.C. § 1605(a)(2). Where, as here, "the claims sound in tort, rather than contract, the court must focus on the 'locus of the tort' to determine where the direct effect occurred." *Luxexpress*, 2020 WL 1308357, at *7 (citation omitted). In *Luxexpress*, this Court held that since "plaintiffs' injuries stem[med] from the loss of their leases and specific property, inventory and other equipment, all of which occurred in Kyiv . . . the locus of the alleged torts [was] Ukraine." *Id.* Similarly here, plaintiffs claim loss of their licenses, physical destruction of their quarry equipment, and closure of their quarries in Lebanon. Am. Compl. ¶¶ 15-17. Accordingly, the "locus of the tort" is Lebanon and that is where any "direct effect occurred." *Luxexpress*, 2020 WL 1308357, at *7.

Contrary to plaintiffs' assertion, any purported "stunting of plaintiff's business growth efforts in the United States" based on events in Lebanon, *see* Am. Compl. ¶ 13, is not an "immediate consequence" that satisfies the requirements of Section 1605(a)(2). *See Republic of*

*Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992).  Even if the conduct at issue "prevent[ed] plaintiffs from advancing commercial businesses in the United States," Am. Compl. ¶ 12, even where "'an American individual or firm suffers some financial loss from a foreign tort, [that] cannot, standing alone, suffice' to show a 'direct effect' in the United States." *Luxexpress*, 2020 WL 1308357, at *7 (loss of U.S. business is a "downstream consequence," not an "immediate consequence") (citation omitted).

*Second*, plaintiffs do not allege that the Republic's purported conduct in Lebanon was "in connection with a commercial activity."  28 U.S.C. § 1605(a)(2).  "[I]n determining whether an activity is commercial, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce."  *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994) (internal quotations omitted).  Here, the Amended Complaint alleges that the Republic cancelled plaintiffs' permits, ordered closure of their quarries, and ordered state security forces to destroy quarry equipment.  Am. Compl. ¶¶ 16-17.  These are actions of a sovereign, not a private party engaged in commerce.  *See Luxexpress*, 2020 WL 1308357, at *6 ("[A] state's confiscation of property within its borders is not a 'commercial' act" (citation omitted)), *aff'd sub nom. Ivanenko*, 995 F.3d at 239 (alleged expropriation was "quintessentially sovereign" activity because it "could not have been carried out by a private participant in the marketplace").

### 3. The FSIA's Expropriation Exception Is Inapplicable Based On The Domestic Takings Rule And Because The Amended Complaint Does Not Allege The Presence Of Property In The United States.

The FSIA's "expropriation exception" confers jurisdiction where "rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried

on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3).  None of those requirements is met here.  Even assuming *arguendo* that plaintiffs have alleged a taking by the Republic of plaintiffs' rights in property, the scope of the expropriation exception does not cover a taking by a foreign state of property from its own citizens (*i.e.*, a domestic taking).  *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 715-16 (2021); *Ivanenko*, 995 F.3d at 237 (noting the U.S. Supreme Court's ruling in *Philipp* that "the domestic takings rule admits of no exception"); Am. Compl. ¶ 2 (plaintiffs are "Lebanese nationals" and a company incorporated under Lebanese law).  This is unchanged by the Amended Complaint's conclusory allegation that Defendants' conduct was "in violation of international law" because the purported taking occurred without "just compensation and for no public purpose."  Am. Compl. ¶ 14; *Luxexpress*, 2020 WL 1308357 at *3 (rejecting plaintiffs' argument "that taking property without just compensation violates international law" and denying application of the expropriation exception because of the "domestic takings rule").

Moreover, the expropriation exception is inapplicable based on the lack of any allegation that the property at issue or any property exchanged for it is present in the United States.  *See De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1108 (D.C. Cir. 2017) (directing dismissal of claims against Hungary for failure to satisfy expropriation exception's commercial nexus requirement for a foreign state).

## POINT II

### THE CLAIM AGAINST MS. NAJM SHOULD BE DISMISSED FOR FAILURE TO SERVE, LACK OF JURISDICTION, AND FAILURE TO STATE A CLAIM

After initially listing solely the Republic as a defendant party in this action and refusing to confirm despite defense counsel's repeated inquiries whether plaintiffs intended to name Ms. Najm as a defendant, the Amended Complaint lists Ms. Najm as a defendant party.  Am. Compl.

¶ 4.[7]  But plaintiffs have named Ms. Najm "in her official capacity" and otherwise group her together with the Republic throughout the Amended Complaint.  *E.g.*, Am. Compl. ¶¶ 10, 12-14. Accordingly, the "real party in interest" in this action is the Republic, not Ms. Najm; any claims against Ms. Najm should therefore "be treated as claims against [the Republic] itself," and dismissed for the reasons set forth *supra* Point I.  *See, e.g., Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013) (dismissing claims against Iranian officials where Iran was the real party in interest); *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34-35 (D.D.C. 2013) (dismissing claims against Kenyan officials on FSIA grounds "because the suit is in all respects a suit against the Kenyan government"), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014).

Assuming *arguendo* that there is some separate claim against Ms. Najm, that claim fails on multiple independent grounds.

*First*, Ms. Najm is an individual in a foreign country, so service is governed by Federal Rule of Civil Procedure 4(f), which as applicable here allows for service "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction," or "unless prohibited by the country's law . . . using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."  Fed. R. Civ. Pro. 4(f)(2)(A),

---

[7] The original Complaint did not list Ms. Najm as a party or otherwise make any allegations against her.  Based on a reference to Ms. Najm in the caption and in a service affidavit, in an abundance of caution defense counsel reached out to plaintiffs' counsel to confirm that Ms. Najm was not named as a defendant.  Decl. of Rathna J. Ramamurthi ¶ 4 (Mar. 11, 2021), ECF No. 22-1.  Plaintiffs' counsel indicated that Ms. Najm was not named, but refused to confirm despite follow up.  *Id.* ¶¶ 5-8.  Again in an abundance of caution, the Motion to Dismiss the original Complaint set forth the reasons that plaintiffs' claims against both the Republic and Ms. Najm failed.  *See* Mem. of Law at 2-9 (Mar. 1, 2021), ECF No. 13.  Nevertheless, three days later plaintiffs sought an entry of default against Ms. Najm, which was entered by the Clerk of the Court.  Aff. for Default (Mar. 4, 2021), ECF No. 14; Clerk's Entry of Default (Mar. 7, 2021), ECF No. 20.  Ms. Najm moved to set aside the entry of default and the Court granted that motion.  *See* Minute Order (May 11, 2021).  Even in the Amended Complaint, the Prayers for Relief still refer only to the "Defendant State," which the Amended Complaint defines as the Republic, *id.* ¶ 3, and the "Defendant's [singular] assets."

(2)(C)(ii).  Plaintiffs therefore must show that they served Ms. Najm in accordance with

Lebanese law.  *See Dominguez v. District of Columbia*, 536 F. Supp. 2d 18, 22 (D.D.C. 2008)

("[T]he party on whose behalf service is made has the burden of establishing its validity when

challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements

of the relevant portion of Rule 4 and any other applicable provision of law.") (quoting *Light v.*

*Wolf,* 816 F.2d 746, 751 (D.C. Cir. 1987)) (internal quotation marks omitted).

Under Article 399 of the Lebanese Civil Procedure Code, for service of an individual the

papers must be "delivered *to the person himself* at his location, place of residence, place of work

or anywhere he is present."  *See* Art. 399, Lebanese Civil Procedure Code (emphasis added)

(Ramamurthi Decl. Ex. B).  Moreover, if service is made "somewhere other than the

[individual's] site or place of residence" the process server must "examine[] official papers

which prove the person's identity" before delivering and must reference this proof of identity in

a notification report.  *See id.*

Here, none of plaintiffs' attempts at service of Ms. Najm—through the same methods as

their attempts to serve the Republic, *i.e.*, through a Washington D.C. consular officer, by mail to

Mrs. Helene Iskandar at the Ministry of Justice in Lebanon, and by mail to H.E. Abdallah Bou

Habib at the Ministry of Foreign Affairs in Lebanon—satisfies Article 399's requirements.

Plaintiffs' own affidavits show that there has been no delivery to Ms. Najm "[her]self at [her]

location, place of residence, place of work or anywhere [she] is present."  *See* Art. 399, Lebanese

Civil Procedure Code (Ramamurthi Decl. Ex. B); Aff. of Service (Dec. 30, 2020), ECF No. 8

(documents sent to Washington D.C. consular officer ); Return of Service Aff. at 1 (Aug. 5,

2021), ECF No. 34 (documents sent to Mrs. Helene Iskandar); DHL Statements (Aug. 5, 2021),

ECF Nos. 34-1, 34-3 (one delivery slip signed by "Sawsan" and the other unsigned); Return of

Service Aff. at 1 (Oct. 26, 2021), ECF No. 41 (documents sent to H.E. Abdallah Bou Habib);

DHL Statements (Oct. 26, 2021), ECF Nos. 41-1, 41-2 (delivery slip signed by "Norma").

Plaintiffs also do not and cannot show that the process server examined Ms. Najm's official

identification papers and there is no mention of any notification report.

*Second,* there is no basis for subject matter jurisdiction over a claim against Ms. Najm.

Plaintiffs assert that there is jurisdiction under the FSIA, 28 U.S.C. § 1391(f)(4), 28 U.S.C.

§ 1331, and the D.C. Uniform Foreign-Country Money Judgments Recognition Act of 2011.

Am. Compl. ¶¶ 5-8.  But none of these provisions creates subject matter jurisdiction here.  It is

well-settled that a claim against a foreign government official does not fall within the scope of

the FSIA.  *See, e.g., Samantar v. Yousuf*, 560 U.S. 305, 315-16 (2010).  Section 1391(f)(4)

governs venue, not jurisdiction, and in any event applies by its terms only to foreign states and

their political subdivisions.  And the D.C. Uniform Foreign-Country Money Judgments

Recognition Act is not a U.S. federal statute, so it does not confer subject matter jurisdiction in

federal court on its own or through 28 U.S.C. 1331.[8]

Moreover, the allegations of the Amended Complaint demonstrate that Ms. Najm has

conduct-based immunity for this claim, which defeats subject matter jurisdiction where a

defendant (i) is a public minister, official, or agent of a foreign state (ii) who acted in their

"official capacity" and (iii) exercising jurisdiction would "'enforce a rule of law against the

state.'"  *Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 231 (D.D.C. 2018) (citation omitted).  The first

and second requirements are satisfied since the Amended Complaint specifically alleges that Ms.

Najm is the Lebanese Minister of Justice and that she was acting in her "official capacity."  Am.

---

[8] The Amended Complaint also does not claim diversity jurisdiction, nor could it, since as
Lebanese nationals, Am. Compl. ¶ 2, plaintiffs and Ms. Najm are aliens for jurisdictional
purposes.  *See* 28 U.S.C. § 1332.

Compl. ¶ 4.  As to the third requirement, exercising jurisdiction "enforce[s] a rule of law against the state" where "a decision by this Court on the legality of the [foreign official's] actions would amount to a decision on the legality of [the foreign state's] actions" and/or the plaintiff is seeking a judgment that "would bind (or be enforceable against) the foreign state." *Buratai*, 318 F. Supp. 3d at 233; *Lewis v. Mutond*, 918 F.3d 142, 146 (D.C. Cir. 2019).  That is exactly the situation here—plaintiffs seek to hold Ms. Najm and the Republic liable on the same claim based on the same allegations, and are explicitly seeking enforcement against the Republic.  *See* Am. Compl. Count 1, Prayers for Relief; *see also Odhiambo*, 930 F. Supp. 2d at 35 ("A plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

*Third,* there is no basis for personal jurisdiction over Ms. Najm, who is not a U.S. domiciliary, since the Amended Complaint does not allege that she has *any* contacts with this jurisdiction, let alone contacts sufficient to confer jurisdiction over her in this case.  *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888-91 (D.C. Cir. 2021) (affirming dismissal for lack of general personal jurisdiction, which requires contacts "so continuous and systematic" that the defendant is "essentially at home in the forum State," and lack of specific personal jurisdiction, which "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation") (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Buratai*, 318 F. Supp. 3d at 228-29 (dismissing claims against Nigerian government officials for lack of personal jurisdiction where "[f]ar from 'sufficient' contacts, the complaint does not allege that the Nigerian defendants had *any* contacts with the United States, much less that the Nigerian

defendants directed their activities at the United States in any way or that the plaintiffs' claims arise from the defendants' U.S. contacts").

*Finally*, the judgments that plaintiffs seek to enforce are against the "Lebanese State" or the "Lebanese State, Ministry of Interior," not Ms. Najm.  *See* Am. Compl. Exs. A-D.  As the U.S. Supreme Court has held, a (now former) government official such as Ms. Najm is not the equivalent of a foreign state.  *See Samantar*, 560 U.S. at 315-16.[9]  And it is black-letter law that a plaintiff may not enforce a judgment against a party who is not named in the judgment.  *See Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*, 291 F. Supp. 3d 21, 30 (D.D.C. 2017) (D.C. Uniform Foreign-Country Money Judgments Recognition Act "may only be used to enforce a judgment 'between the parties' actually named in [the original judgment]").  Plaintiffs' judgments do not name or otherwise reference Ms. Najm and that alone requires dismissal of this action as against her.

---

[9] Even if government officials were agencies or instrumentalities of a foreign state—they are not, as *Samantar* squarely holds—agencies and instrumentalities are presumed to be *separate* from the foreign state itself, *e.g., First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 627 (1983), so are not liable on a judgment against the foreign state.

**CONCLUSION**

For the foregoing reasons, the Republic and the Minister respectfully request that the

Court grant their Motions to Dismiss the Amended Complaint or Alternatively to Quash

Attempted Service.

Dated: September 9, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

    Carmine D. Boccuzzi, Jr. (cboccuzzi@cgsh.com)
    One Liberty Plaza
    New York, New York 10006
    Tel. (212) 225-2508   Fax (212) 225-3999

    Rathna J. Ramamurthi (rramamurthi@cgsh.com)
    2112 Pennsylvania Ave NW
    Washington D.C. 20037
    Tel. (202) 974-1500    Fax (202) 974-1999

    *Attorneys for the Republic of Lebanon and Her*
    *Excellency Marie-Claude Najm, former Minister of*
    *Justice*